**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**No. 95-524C**
**(Judge George W. Miller)**

---

**HOMER J. HOLLAND, HOWARD R. ROSS, and FIRST BANKS, INC.,**

**Plaintiffs,**

**v.**

**THE UNITED STATES,**

**Defendant.**

---

# DEFENDANT'S MOTION FOR RECONSIDERATION OF THE COURT'S OPINION AND ORDER DATED FEBRUARY 20, 2007

---

**STUART E. SCHIFFER**
**Deputy Assistant Attorney General**

**JEANNE E. DAVIDSON**
**Acting Director**

**KENNETH M. DINTZER**
**Assistant Director**

**JOHN H. ROBERSON**
**Trial Attorney**

**Commercial Litigation Branch**
**Civil Division**
**Department of Justice**
**Attn: Classification Unit**
**8th Floor, 1100 L Street**
**Washington, D.C. 20530**
**Tele: (202) 353-7972**
**Fax: (202) 514-8640**

**Attorneys for Defendant**

**OF COUNSEL:**

**RICHARD B. EVANS**
**ELIZABETH A. HOLT**
**WILLIAM G. KANELLIS**
**DAVID A. LEVITT**
**JOHN J. TODOR**

**February 27, 2007**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I. STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

II. PURSUANT TO ILLINOIS LAW AND GENERAL CONTRACT PRINCIPLES, PAYMENTS MADE BY ONE JOINT OBLIGOR IN CONNECTION WITH A COVENANT NOT TO SUE MUST BE CREDITED AGAINST THE POTENTIAL DAMAGE CLAIMS SOUGHT BY A PLAINTIFF . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## TABLE OF AUTHORITIES

### FEDERAL CASES

Bluebonnet Sav. Bank, F.S.B. v. United States,
339 F.3d 1341 (Fed. Cir. 2003) . . . . . . . . . . 8, 10

Coconut Grove Entm't, Inc. v. United States,
46 Fed. Cl. 249 (2000) . . . . . . . . . . 4

Cooper v. Wal-Mart Stores, Inc.,
959 F. Supp. 964 (C.D. Ill. 1997) . . . . . . . . . . 6

Cowhig v. National Military Establishment,
109 F. Supp. 519 (D.C. 1953), aff'd, 235 F.2d 817 (D.C. Cir. 1956) . . . . . . . . . . 9, 11

Fru-Con Constr. Corp. v. United States,
44 Fed. Cl. 298 (1999) . . . . . . . . . . 4

Holland v. United States,
57 Fed. Cl. 540 (2003) . . . . . . . . . . 3

Holland v. United States,
95-524C, Slip Op. (Fed. Cl. Nov. 17, 2006) . . . . . . . . . . *passim*

Holland v. United States,
95-524C, Slip Op. (Fed. Cl. Feb. 20, 2007) . . . . . . . . . . *passim*

Resolution Trust Corp. v. FSLIC,
25 F.3d 1493 (10th Cir. 1994) . . . . . . . . . . 3, 11

United States v. Wainer,
211 F.2d 669 (7th Cir. 1954) . . . . . . . . . . *passim*

United States v. Winstar,
518 U.S. 839 (1996) . . . . . . . . . . 3

Williams Elec. Games v. Garrity,
No. 97 C 3743, 2003 WL 21799937 (July 29, 2003, N.D. Ill.) . . . . . . . . . . 6, 7

Winstar v. United States,
64 F.3d 1531 (Fed. Cir. 1995) . . . . . . . . . . 3

Yuba Natural Res., Inc. v. United States,
904 F.2d 1577 (Fed. Cir. 1990) . . . . . . . . . . 4

## STATE CASES


<u>Brown v. Timpte Inc.</u>,
485 N.E.2d 488 (Ill. App. Ct. 1985) . . . . . . . . . . 6

<u>Burns v. Stouffer</u>,
100 N.E.2d 507 (Ill. App. Ct. 1951) . . . . . . . . . . 6

<u>Cherney v. Soldinger</u>,
702 N.E.2d 231 (Ill. App. Ct. 1998) . . . . . . . . . . 7

<u>City of Chicago v. Babcock</u>,
32 N.E. 271 (Ill. 1892) . . . . . . . . . . 5

<u>De Lude v. Rimek</u>,
115 N.E.2d 561 (Ill. App. Ct. 1953) . . . . . . . . . . 6

<u>Holman v. Simborg</u>,
504 N.E.2d 967 (Ill. App. Ct. 1987) . . . . . . . . . . 5

<u>Kurth v. Amee, Inc.</u>,
278 N.E.2d 162 (Ill. App. Ct. 1972) . . . . . . . . . . 6

<u>Maher v. Chicago Park District</u>,
645 N.E.2d 295 (Ill. App. Ct. 1994) . . . . . . . . . . 6, 7, 8

<u>New York, C. & St. L. R. Co. v. American Transit Lines</u>,
97 N.E.2d 264 (Ill. 1951) . . . . . . . . . . 6

<u>Schoonover v. Int'l Harvester Co.</u>,
525 N.E.2d 1041 (Ill. App. Ct. 1988) . . . . . . . . . . 6, 7


## FEDERAL STATUTES


12 U.S.C. §§ 1463-64 (1989)
Financial Institutions Recovery, Reform, and Enforcement Act of 1989,
Pub. L. No. 101-73, 103 Stat. 183 § 215("FIRREA") . . . . . . . . . . 3


## STATE STATUTES


740 ILCS 100/2 at § 2 (c) . . . . . . . . . . 6

## FEDERAL RULES AND REGULATIONS

RCFC 7 . . . . . . . . . . 1

RCFC 59(a) . . . . . . . . . . 1

## MISCELLANEOUS

12 Richard Lord, Williston on Contracts § 36.22 (4th ed. 1999) . . . . . . . . . . 7

Restatement (Second) of Contracts at § 294 (3) . . . . . . . . . . 7

Restatement (Second) of Contracts at § 295 (3) . . . . . . . . . . 7

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **HOMER J. HOLLAND, HOWARD R. ROSS, and FIRST BANK,** | |
| **Plaintiffs,** | **Case No. 95-524C** |
| **v.** | **(Judge George W. Miller)** |
| **THE UNITED STATES,** | **(Winstar-Related Case)** |
| **Defendant.** | |

**DEFENDANT'S MOTION FOR RECONSIDERATION OF THE COURT'S OPINION AND ORDER DATED FEBRUARY 20, 2007**

Pursuant to Rules 7 and 59(a) of the Rules of the Court of Federal Claims, defendant, the United States, respectfully requests that this Court reconsider its opinion and order concerning liability dated February 20, 2007. We make this request so that the Court can address manifest errors of law that, we respectfully submit, are connected with the Court's determination, set forth for the first time on February 20, 2007, that the Settlement Agreement between the Federal Deposit Insurance Corporation ("FDIC") and plaintiffs was merely a "covenant not to sue" that *has no effect* upon this case. Op. and Order (Feb. 20, 2007) at 8.[1]

The manifest errors of law are twofold. First, the Court erred by failing to recognize that, pursuant to Illinois law and general principles of contract law, where there are multiple defendants with joint and several liability, payments received by a plaintiff in connection with a covenant not to sue must be credited as a setoff against any potential damage award given to

[1] Our citations to the Opinion and Order dated February 20, 2007, concerning our motion for reconsideration of the Court's liability decision, and to the Opinion and Order dated Nov. 17, 2006, are to the slip opinions.

plaintiff with respect to the other defendants.[2] See, e.g. United States v. Wainer, 211 F.2d 669, 673 (7th Cir. 1954) (if a release of a joint obligor is found not to release his co-obligor, the amount paid by the settling obligor should "serve to reduce the total debt by that amount as of the time of its payment, and [the other joint obligor] is liable for the balance remaining unpaid"). Instead of recognizing this doctrine of setoff connected with payments received in connection with a covenant not to sue, the Court stated that, pursuant to Illinois law, the covenant not to sue "would have *no effect* upon plaintiff's claims against defendant for breach of the forbearance promises by the OTS." Op. and Order (Feb. 20, 2007) at 9 (emphasis added).

Here, given that plaintiffs received over $3.2 million as payment[3] from the FDIC, as manager of the Federal Savings and Loan Insurance Corporation ("FSLIC") Resolution Fund ("FRF"), pursuant to what the Court has determined was a covenant not to sue, and given the Court's determination of "the fact that under Illinois law the liability of FRF and OTS was both joint and several,"[4] it was, respectfully, a manifest error of law for the Court to ignore this setoff.

Related to this disregard of the setoff is the second error: a failure to recognize that the FDIC, as manager of the FRF, was, as a matter of law, the successor in interest to the FSLIC with respect to the River Valley I and River Valley II Assistance Agreements ("the Assistance

---

[2] Our discussion here is not to be construed as an agreement with the Court's determination that the Settlement Agreement constituted merely a covenant not to sue. Rather, our discussion concerns that which follows as a matter of law from that determination. In raising this issue we do not waive any argument we may make before this or any court regarding the nature or contents of the Settlement Agreement.

[3] Op. and Order (Nov. 17, 2006) at 9-10.

[4] Op. and Order (Feb. 20, 2007) at 2 n.1; see also Op. and Order (Nov. 17, 2006) at 36 n.16.

Agreements"). See Resolution Trust Corp. v. FSLIC, 25 F.3d 1493, 1505 (10th Cir. 1994).[5] Because, as we have repeatedly asserted, the FDIC, as manager of the FRF and as an agency of the United States, was the successor in interest to the FSLIC's Assistance Agreements, its payment of $3.2 million must -- at the least -- be credited against any of plaintiffs' potential damage claims against the United States, styled recently by plaintiffs as a claim against the OTS, for the breach of the same unified contract.[6] Assuming the Court's finding of a covenant not to sue, that payment has a setoff effect upon plaintiffs' claims against the United States and, we respectfully submit, it was a manifest error of law for this Court to conclude otherwise.

Finally, by demonstrating that payments made to plaintiffs connected with the covenant not to sue must inure to the benefit of the United States, we further demonstrate that the sole benefit provision of the Settlement Agreement cannot be interpreted to mean that the other benefits of the Settlement Agreement did not inure to the benefit of the United States.

---

[5] See also Op. and Order (Nov. 17, 2006) at 36 n.16 (recognizing that "in the Tenth Circuit's view, the forbearance promises of the FSLIC indeed transferred to the FRF."); id. at 34 (recognizing that we contended that section 215 of the Financial Institutions Recovery, Reform, and Enforcement Act of 1989, Pub. L. No. 101-73, 103 Stat. 183 ("FIRREA") "transferred all of the forbearance promises contained in the River Valley I and II Contracts to the FRF").

[6] As we have previously noted, there cannot be any dispute that there was but a single unified contract. This Court held that the Assistance Agreements "incorporate the FHLBB Resolutions and forbearance letters as part of the single integrated agreement for each transaction." Op. and Order (Nov. 17, 2006) at 27 n.11. Indeed, this Court cited statements from decisions of the Supreme Court, the Federal Circuit, and this Court, suggesting that the FSLIC and FHLBB *were both* contractually bound to recognize goodwill contracts. Op. and Order (Nov. 17, 2006) (citing United States v. Winstar, 518 U.S. 839, 868 (1996); Winstar v. United States, 64 F.3d 1531, 1544 (Fed. Cir. 1995); Holland v. United States, 57 Fed. Cl. 540, 565, 567 (2003)). Furthermore, plaintiffs have repeatedly indicated that there was but a single contract with "the government" that existed encompassing the obligations of both the FHLBB and FSLIC. See, e.g., Pl. Third Am. Compl. (May 18, 2005) at ¶¶ 12, 15, 16, 20, 23, 25, 44, 74-77.

# ARGUMENT

## I. STANDARD OF REVIEW

The decision to grant a motion for reconsideration is within the Court's sound discretion. Yuba Natural Res., Inc. v. United States, 904 F.2d 1577, 1583 (Fed. Cir. 1990). To prevail upon such a motion in this Court, the movant must point to a manifest error of law or mistake of fact. See Coconut Grove Entm't, Inc. v. United States, 46 Fed. Cl. 249, 255 (2000); Fru-Con Constr. Corp. v. United States, 44 Fed. Cl. 298, 300 (1999).

## II. PURSUANT TO ILLINOIS LAW AND GENERAL CONTRACT PRINCIPLES, PAYMENTS MADE BY ONE JOINT OBLIGOR IN CONNECTION WITH A COVENANT NOT TO SUE MUST BE CREDITED AGAINST THE POTENTIAL DAMAGE CLAIMS SOUGHT BY A PLAINTIFF

This Court determined that the plaintiffs entered into regulatory capital contracts with both the FSLIC and the FHLBB pursuant to the Assistance Agreements. It also found that the OTS succeeded to the FHLBB's contractual rights and obligations under the Assistance Agreements. It further determined that, if the FDIC, as manager of the FRF, succeeded to the FSLIC's contractual obligations under the Assistance Agreements, there is joint and several liability between the OTS and FRF for a breach of the Assistance Agreements. Op. and Order (Nov. 17, 2006) at 36 n.16. The Court made its determination that there would be joint and several liability based upon its reading of Illinois law. Id.; see also Op. and Order (Feb. 20, 2007) at 5. This Court chose, however, not to resolve the issue of whether the FDIC, as manager of the FRF, succeeded to the FSLIC's contractual obligations under the Assistance Agreements, holding that the resolution of the "FSLIC's concurrent liabilities cannot be dispositive of plaintiffs' claims in this Court." Op. and Order (Nov. 17, 2006) at 36 n.16.

In its most recent opinion, the Court rejected our assertion that, pursuant to Illinois law concerning joint and several obligors, the Settlement Agreement's accord and satisfaction clause effected a complete release between plaintiffs and the United States. Instead, the Court determined that the effect of the Settlement Agreement resulted in "merely a covenant not to sue" between the plaintiffs and the FDIC, as manager of the FRF. Op. and Order (Feb. 20, 2007) at 6 (citing Holman v. Simborg, 504 N.E.2d 967, 970 (Ill. App. Ct. 1987). Because the Court found that the Settlement Agreement was merely a covenant not to sue involving just plaintiffs and the FDIC, as manager of the FRF, and not a complete release of any and all contractual obligations under the Assistance Agreements, it determined that "OTS was not released, and defendant is liable for breach by OTS of the forbearance promises." Id. at 8. Finally, the Court concluded that, because "the release would be construed as a covenant not to sue," it "would have *no effect* upon plaintiff's claims against defendant for breach of the forbearance promises by OTS." Id. at 9 (emphasis added).

We respectfully submit that, even assuming the predicates set forth in the Court's reasoning, the Court's ultimate conclusion is in error. At a minimum, the $3.2 million payment provided to the plaintiffs pursuant to the Settlement Agreement affects plaintiffs' claims for damages as a setoff "as of the time of its payment." Wainer, 211 F.2d at 673. Pursuant to longstanding Illinois law, "where a payment made by one joint tortfeasor is not intended to constitute satisfaction in full. . . it will operate as a partial satisfaction to be credited to any recovery against the remaining tortfeasors." Holman, 504 N.E.2d at 970 (citing City of Chicago

v. Babcock, 32 N.E. 271, 273 (Ill. 1892).[7] Numerous other cases have recognized the effect of payments received pursuant to a covenant not to sue. See, e.g., Wainer, 211 F.2d at 673; Williams Elec. Games v. Garrity, No. 97 C 3743, 2003 WL 21799937 at *2 (July 29, 2003, N.D. Ill) (recognizing that, under the common law, amounts received by a plaintiff for execution of a covenant not to sue are to be setoff); Cooper v. Wal-Mart Stores, Inc., 959 F. Supp. 964, 969 (C.D. Ill. 1997); New York, C. & St. L. R. Co. v. American Transit Lines, 97 N.E.2d 264 (Ill. 1951) ("any amounts received by plaintiff for execution of a covenant not to sue some one or more of the joint tortfeasors are to be applied in reduction of the damages recoverable from those remaining in the suit"); Maher v. Chicago Park District, 645 N.E.2d 295, 296-97 (Ill. App. Ct. 1994); Schoonover v. Int'l Harvester Co., 525 N.E.2d 1041, 1042-43 (Ill. App. Ct. 1988); Brown v. Timpte Inc., 485 N.E.2d 488, 491 (Ill. App. Ct. 1985); Kurth v. Amee, Inc., 278 N.E.2d 162, 163 (Ill. App. Ct. 1972); De Lude v. Rimek, 115 N.E.2d 561, 563 (Ill. App. Ct. 1953); Burns v. Stouffer, 100 N.E.2d 507, 511 (Ill. App. Ct. 1951).[8]

The basic rationale of the setoff rule is one of public policy: that plaintiffs are not entitled to double recoveries and that settlements are to be encouraged. See Williams, 2003 WL 21799937 at *2 ; Cooper, 959 F. Supp. at 969; Maher, 645 N.E.2d at 297; Schoonover, 525

[7] We do not contend that the payment made by the FDIC was *not* intended to constitute satisfaction in full of plaintiffs' claims against the United States with respect to the Assistance Agreements. Indeed, we believe, and have asserted in the past, just the opposite. We make this assumption solely for the purposes of addressing the Court's opinion and order, with which we respectfully disagree.

[8] This setoff principle has also been set forth in Illinois' Joint Tortfeasor Contribution Act. See 740 ILCS 100/2 at § 2 (c) ("When a release or covenant not to sue . . . is given in good faith to one or more persons liable in tort arising out of the same injury, . . . it reduces the recovery on any claim against the others to the extent of any amount stated in the release or the covenant, or in the amount of the consideration actually paid for it, whichever is greater.")

N.E.2d at 1042-43. The basis for this setoff policy is rooted in common law. Williams, 2003 WL 21799937 at *2; Maher, 645 N.E.2d at 297; Schoonover, 525 N.E.2d at 1042. As the Illinois Court of Appeals has stated in the context of analyzing the effect of a settlement upon multiple defendants, common law rules apply "not only to those who were technically joint tortfeasors, but to wrongdoers whose conduct produced the same single injury" including "to co-obligors on a contract." Cherney v. Soldinger, 702 N.E.2d 231, 234-35 (Ill. App. Ct. 1998).

While the majority of the cases cited above are in the joint tortfeasor context,[9] their holdings are consistent with the Restatement (Second) of Contracts' pronouncement concerning the effect of a contract not to sue, which notes, in addition to its statement that payments received by a joint obligee is a setoff, that an agreement that payments *are not* to be considered setoffs is invalid:

> Any consideration received by the obligee for discharge of one promisor discharges the duty of each other promisor of the same performance to the extent of the amount or value received. *An agreement to the contrary is not effective* unless it is made with a surety and expressly preserves the duty of his principal.

Restatement (Second) of Contracts at § 295 (3) (emphasis added); see also Restatement (Second) of Contracts at § 294 (3); 12 Richard Lord, Williston on Contracts § 36:22 (4th ed. 1999) at 702 ("the amount or value of any consideration received by the obligee from one or more of the obligors, in total or partial satisfaction of their obligations, is to be credited to the extent of the amount received"). Thus, even if the Court were to determine that the covenant not to sue provided that the FDIC's payments to plaintiffs would not be a setoff (e.g., through the Court's

[9] In Wainer, 211 F.2d 669, the Court of Appeals for the Seventh Circuit discussed the principle of an setoff involving a settlement agreement connected with a tax liability. Wainer, 211 F.2d at 670-71.

interpretation of the effect of the sole benefit clause), the Restatement (Second) of Contracts instructs that such an agreement would not be effective. See also Bluebonnet Sav. Bank, F.S.B. v. United States, 339 F.3d 1341, 1345 (Fed. Cir. 2003) (plaintiff should not recover more than it suffered in injury).

Accordingly, given the Court's recent finding of a covenant not to sue and its previous determination that "[i]f OTS and FRF were both contractually liable for the forbearance promises, that contractual liability would have been joint and several,"[10] the payment of over $3.2 million by the FDIC, as manager of the FRF, to release *all* claims connected with the Assistance Agreements must be credited as a setoff to the plaintiffs' claims against the United States -- if the FDIC, as manager of the FRF, succeeded to the FSLIC's rights and obligations under the Assistance Agreements. As a result, we respectfully submit that it was a manifest error of the Court to fail to make a determination -- which is simply a legal determination involving statutory interpretation -- as to whether the FDIC, as manager of the FRF, did, indeed, succeed as a matter of law to the FSLIC's rights and obligations under the Assistance Agreements.

As in the past, we expect plaintiffs to argue that we have waived the argument we make here with respect to a setoff. The notion of a setoff arose only in the context of the Court's determination, made for the first time on February 20, 2007, that the accord and satisfaction clause effected a mere covenant not to sue.[11]

[10] Op. and Order (Nov. 17, 2006) at 36 n.16.

[11] Pursuant to Illinois law, "a defendant's right to a setoff of plaintiff's settlement may be raised at any time." Maher, 645 N.E.2d at 297.

We also expect that plaintiffs will argue that the sole benefit clause of the Settlement Agreement bars the application of the setoff against their claims against the United States. Again, however, the Restatement (Second) of Contracts precludes such an interpretation, barring as ineffective any agreement in a covenant not to sue precluding the application of an amount paid against the debts of co-obligors. Moreover, given this Court's determinations that there was a single integrated agreement for each of the River Valley transactions involving both the FSLIC and FHLBB and that there would be joint and several liability between the FDIC and OTS as successors to those unified agreements -- and assuming that the FDIC is, indeed, the successor in interest to the FSLIC's rights and obligations under the Assistance Agreements -- such an argument must fail for these reasons, too. As this Court has already determined, "the FDIC was authorized to and did act as an agency of the United States." Op. and Order (Nov. 17, 2006) at 17. The Settlement Agreement cannot be read to preclude the inuring of the benefit to the FDIC's principal, the United States, of the effect of a complete release of the plaintiffs' claims against the FDIC arising from or connected with the Assistance Agreements. See, e.g., Cowhig v. National Military Establishment, 109 F. Supp. 519, 520 (D.C. 1953) (where plaintiff's claim was against the National Military Establishment and the Secretary of Defense, the settlement between plaintiff and the Office of Scientific Research and Development extinguished all rights plaintiff "might have had against the United States with respect to, or arising out of, the contract concerning which the settlement was made"), aff'd, 235 F.2d 817 (D.C. Cir. 1956)).

It is for this reason, we respectfully assert, that the Court erred in determining that the complete release of the FDIC, an agency of the United States, connected with the same unified and joint and several contractual obligations as to the OTS, did not effect a complete release of

the United States in connection with the River Valley I and II Assistance Agreements.[12] Put another way, the proper analytic focus concerning the effect of the Settlement Agreement should be upon whether that agreement's release provisions benefitted the United States, not whether they benefitted the OTS. Given the unitary nature of the contract and the joint and several liability of the FDIC and OTS, once the United States is released from any and all claims made in connection with the Assistance Agreements, it is released entirely.[13] At the very least, it is incorrect to fail to credit the United States for the $3.2 million payment made by the FDIC to plaintiff in full settlement of any and all claims under those agreements. Any alternative holding would permit the plaintiffs to recover more than they lost in the breach -- an improper "windfall." Bluebonnet, 339 F.3d at 1345.

Indeed, we respectfully suggest that the only way this Court's failure to consider the effect of the setoff payment under the covenant not to sue logically follows is if the Court agrees with plaintiffs' contention that the "single integrated" contract involving forbearance rights and obligations set forth in the Assistance Agreements transferred with the passage of FIRREA to the

---

[12] The reference to "the parties" in the accord and satisfaction clause itself adds nothing to the analysis to limit the scope of the effect of the release. In most, if not all cases where a plaintiff has contested the effect of a release upon a joint obligor it is because the joint obligor is *not* named in the release. The issue is *what the effect of that release* naming only one party has upon other joint obligors.

[13] If the sole benefit clause of the Settlement Agreement is to be interpreted such that the benefits of that settlement do not inure to the benefit of the United States because the United States was not literally named in the Settlement Agreement, then it should follow likewise that the similar sole benefit clause of the Assistance Agreements with the FSLIC (and, according to this Court, the FHLBB), preclude a finding of liability against the United States because the United States was not a named party in the Assistance Agreement. This is, of course, nonsense. It demonstrates, however, the error of an argument asserting that the sole benefit clause of the Settlement Agreement involving the FDIC, acting as an agency of the United States, precludes the inurement of any benefit of that Agreement to the United States.

OTS solely, and not to the FDIC, as manager of the FRF. This, though, is a purely legal matter, involving an interpretation of the statutory provisions of FIRREA, and it is one that, we respectfully submit, the Court must now resolve. We believe plaintiff's position is unsupported by the plain text of FIRREA. It is also contradicted by the opinion of the Court of Appeals for the Tenth Circuit in Resolution Trust Corp., 25 F.3d at 1505. Moreover, we are unaware of any case in the history of the Winstar litigation where a plaintiff has claimed and a Court has determined that the OTS was the sole successor to the rights and obligations of FSLIC Assistance Agreements.

In short, we respectfully submit that it is incorrect to suggest that a settlement agreement entered into between an agency of the United States and a plaintiff precludes the inurement of the benefits to the United States of the payments made to a plaintiff under that agreement or the release set forth in that agreement. See, e.g., Cowhig, 109 F. Supp. at 520. By failing to recognize that the Settlement Agreement with plaintiffs was entered into by the FDIC, as successor in interest to the FSLIC, and that plaintiffs received payments of $3.2 million as part of a broad release of all claims under the Assistance Agreements, this Court has rendered the effect of the Settlement Agreement in this case a nullity. We respectfully submit that these are manifest errors of law, and accordingly we request reconsideration of the Court's Opinion and Order dated February 20, 2007.

## CONCLUSION

For the foregoing reasons we respectfully request that the Court reconsider its Opinion and Order dated February 20, 2007, determine that the FDIC, as the manager of the FRF succeeded to the rights and obligations of the FSLIC pursuant to the River Valley I and River

Valley II Assistance Agreements, and hold that the $3.2 million received by plaintiffs pursuant to the Settlement Agreement constitutes, at the least, a setoff against plaintiffs' damage claims.

Respectfully submitted,

STUART E. SCHIFFER
Deputy Assistant Attorney General

JEANNE E. DAVIDSON
Acting Director

/s/ Kenneth M. Dintzer
KENNETH M. DINTZER
Assistant Director

/s/ John H. Roberson
JOHN H. ROBERSON
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor, 1100 L Street
Washington, D.C. 20530
Tele: (202) 353-7972
Fax: (202) 514-8640
Attorneys for Defendant

Of Counsel:

RICHARD B. EVANS
ELIZABETH A. HOLT
WILLIAM G. KANELLIS
DAVID A. LEVITT
JOHN J. TODOR

February 27, 2007

**CERTIFICATE OF SERVICE**

I hereby certify that on this 27th day of February 2007, a copy of the foregoing "DEFENDANT'S MOTION FOR RECONSIDERATION OF THE COURT'S OPINION AND ORDER DATED FEBRUARY 20, 2007" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ John H. Roberson
John H. Roberson