**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| HOMER J. HOLLAND,<br>HOWARD R. ROSS,<br>AND FIRST BANK | ) | |
| Plaintiffs, | ) | No. 95-524 C |
| v. | ) | (Judge G. Miller) |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**PLAINTIFFS' MOTION FOR LEAVE TO REVISE AND SUPPLEMENT THEIR DAMAGES CLAIMS**

Pursuant to the Court's Order of March 13, 2007, Plaintiffs hereby submit their motion for leave to revise and supplement their damages claims.

As discussed in their March 12, 2007 filing, Plaintiffs must make a computational revision to one of their existing damages claims -- the claim for River Valley's loss in equity value as a result of the breach -- to conform that claim to the Court's November 17, 2006 liability ruling. Further, Plaintiffs seek leave to present a supplemental mitigation damages analysis supported by Federal Circuit decisions rendered during the two years elapsed since Plaintiffs last updated their damages claims for trial. If the court grants this motion, and in order to streamline trial preparation and proceedings, Plaintiffs also intend to forego their claim for the lost profits that River Valley would have earned by leveraging the breached regulatory capital to add incremental income-earning assets (other than San Antonio Federal Savings Bank) in the years following the breach.

In the interests of fairness and efficiency, and so that Plaintiffs may present for the Court's consideration at trial damages claims that closely conform to this Court's rulings and the

Federal Circuit's guidance, Plaintiffs respectfully request permission to make the revisions to their damages claims described below.

**I. Plaintiffs' Lost Value Claim Must Be Adapted to the Court's Preferred Stock Ruling**

In its recent decision finding the government liable to First Bank for breach of contract, the Court ruled that $5 million in FSLIC-owned preferred stock was not capital contractually promised to River Valley. *Holland v. United States*, 74 Fed. Cl. 225, 258-263 (2006). That ruling changes one of the factual inputs for Plaintiffs' lost value claim, and requires a simple adjustment so that Plaintiffs may seek recovery for the loss in value caused to River Valley by the elimination of $20 million -- instead of $25 million -- in promised regulatory capital. Pursuant to the Court's request during yesterday's status conference, Plaintiffs provide a brief explanation and calculation of this revision.

In his current expert report, dated December 18, 2003, Dr. Neil Murphy calculates that the elimination of $16.872 million in regulatory capital at River Valley I[1] caused a $14,794,441 million decline in value at River Valley I. The Court has ruled that $5 million (or 29.635%) of that $16.872 million in lost regulatory capital was not contractually promised. Thus, the loss of that $5 million (FSLIC preferred stock disqualified by the government for use as capital at River Valley I) cannot form the basis for a damages claim. Accordingly, Plaintiffs will revise their lost equity value damages claim to seek only the $10.410 million (or 70.365%) of the $14,794,441 decline attributable to Defendant's breach, as the Court has determined it.

The Court's ruling that the $5 million FSLIC preferred stock was not contractually promised capital has no effect on Dr. Murphy's calculation of the loss in value caused by the

[1] As in Dr. Murphy's expert report, Plaintiffs here use the term "River Valley I" to describe the thrift institution resulting from Holland and Ross's acquisition and merger of the Galva, Home, and Mutual institutions. Plaintiffs refer to the institution resulting from the Republic acquisition as "River Valley II."

$8.041 million in breached regulatory capital lost at River Valley II, and Plaintiffs' claim for the $7.051 million decline in equity value at that institution remains unchanged. In sum, Plaintiffs intend to claim $17.461 million in connection with their lost value claim, rather than the $21.846 million set forth in Dr. Murphy's expert report, and in Plaintiffs' Motion for Partial Summary Judgment.

Because the revision is wholly computational, and neither affects the methodology supporting Dr. Neil Murphy's expert opinion nor discloses a new theory, this adjustment requires no further expert disclosure or discovery. Indeed, under like circumstances earlier in this case, the Court (Judge Horn) permitted an adjustment to Plaintiffs' damages claims to account for a reduced amount of regulatory capital at issue without ordering additional discovery. *See* Tr. 53-58 (Dec. 3, 2003 Status Conf.) (permitting computational revision to Plaintiffs' damages claims following Plaintiffs' decision not to pursue damages in connection with goodwill arising from its acquisition of Peoria Savings).

## II. Plaintiffs Seek Leave to Present a Mitigation Damages Analysis Supported By Recent Federal Circuit Winstar Rulings

In the three years that have elapsed since this case was initially set for trial in March 2004, the Federal Circuit has reviewed damages rulings in more than 20 *Winstar*-related cases,[2]

[2] *See Citizens Fed. Bank v. United States*, 474 F.3d 1314 (Fed. Cir. 2007); *Long Island Sav. Bank v. United States*, 476 F.3d 917 (Fed. Cir. 2007); *Old Stone Corp. v. United States*, 450 F.3d 1360 (Fed. Cir. 2006); *LaSalle Talman v. United States*, 462 F.3d 1331 (Fed. Cir. 2006), *Nat'l Australia Bank v. United States*, 452 F.3d 1321 (Fed. Cir. 2006); *Local Oklahoma Bank v. United States*, 452 F.3d 1371 (Fed. Cir. 2006); *Am. Capital Corp. v. United States*, 472 F.3d 859 (Fed. Cir. 2006); *Caroline Hunt Trust Estate v. United States*, 470 F.3d 1044 (Fed. Cir. 2006); *Centex Corp. v. United States*, 395 F.3d 1283 (Fed. Cir. 2005); *Cal. Fed Bank, FSB v. United States*, 395 F.3d 1263 (Fed. Cir. 2005); *Home Sav. of Am., FSB v. United States*, 399 F.3d 1341 (Fed. Cir. 2005); *Fifth Third Bank v. United States*, 402 F.3d 1221 (Fed. Cir. 2005); *Westfed Holdings, Inc. v. United States*, 407 F.3d 1352 (Fed. Cir. 2005); *Hometown Fin., Inc. v. United States*, 409 F.3d 1360 (Fed. Cir. 2005); *Granite Mgmt. Corp. v. United States*, 416 F.3d 1373

Footnote continued on next page

and has developed certain principles to guide the Court of Federal Claims in its approach to evaluating *Winstar* damages claims. With the case now positioned for a 2007 trial, Plaintiffs seek the court's leave to present one additional damages claim, supported by a method of analysis that has gained the Federal Circuit's approval: mitigation damages measured by the cost of retained earnings. To streamline the issues for resolution at trial, Plaintiffs would present this claim for mitigation damages instead of their claim for damages based on the lost profits River Valley would have earned by leveraging the breached regulatory capital to acquire incremental income earnings assets.

As in *Home Savings*,[3] Plaintiffs will prove River Valley's actual costs in responding to the breach: "the premium between what they actually had to pay to generate [mitigation] capital and [an offsetting] rate of return." *Home Savings*, 57 Fed. Cl. 694, 713 (2003). The Federal Circuit in *Home Savings* approved this "costs of mitigation" measure, based on a *Winstar* plaintiff's costs to retain cash earnings to replace lost regulatory capital, and accounting for the "inherent benefits of cash over intangible capital" by subtracting a "'safe rate' of return [the thrift] could earn by investing that cash." *Home Savings*, 399 F.3d at 1354-55.[4]

---

Footnote continued from previous page
(Fed. Cir. 2005); *First Heights Bank, FSB v. United States*, 422 F.3d 1311 (Fed. Cir. 2005); *S. Cal. Fed. S&LA v. United States*, 422 F.3d 1319 (Fed. Cir. 2005); *First Nationwide Bank v. United States*, 431 F.3d 1342 (Fed. Cir. 2005); *Franklin Fed. Sav. Bank v. United States*, 431 F.3d 1360 (Fed. Cir. 2005); *Hansen Bancorp, Inc. v. United States*, 367 F.3d 1297 (Fed. Cir. 2004); *Barron Bancshares, Inc. v. United States*, 366 F.3d 1360 (Fed. Cir. 2004); *Admiral Fin. Corp. v. United States*, 378 F.3d 1336 (Fed. Cir. 2004); *Glendale Fed. Bank FSB v. United States*, 378 F.3d 1308 (Fed. Cir. 2004); *La Van v. United States*, 382 F.3d 1340 (Fed. Cir. 2004).

[3] *Home Sav. of Am., FSB v. United States*, 399 F.3d 1341 (Fed. Cir. 2005).

[4] This claim will be additive to Plaintiffs' claim for the lost profits River Valley would have earned but for the breach by acquiring San Antonio Federal Savings Bank. *See* Restatement (Second) of Contracts §347 (a) & (b) (1981) ("the injured party has a right to damages based on his expectation interest as measured by (a) the loss in the value to him of the other party's
Footnote continued on next page

In the circumstances presented here, where an extended intervening period has elapsed between the preparation of expert reports and the assignment of a case for trial on damages, this Court has routinely allowed *Winstar* plaintiffs to revise their damages theories to conform their claims more closely to prevailing Federal Circuit precedent. *See, e.g.*, *Citizens Fed. Bank, FSB v. United States*, 59 Fed. Cl. 507 (2004); *Sterling Sav. v. United States*, No. 95-829C, Orders dated Nov. 10, 2003 (directing parties to address question whether changes in jurisprudence by the Federal Circuit since previous expert reports were prepared justifies revisions to damages claims) and Dec.17, 2003 (permitting revision of expert reports "for good cause shown") (attached as Exhibit 1); *Hansen Bancorp, Inc. v. United States*, No. 92-828C (Fed. Cl. Feb. 14, 2002) (Order authorizing revisions to expert report to adapt to intervening Federal Circuit rulings after a period of delay and where trial "was in sight") (attached as Exhibit 2).

Indeed, in *Citizens Federal*,[5] Chief Judge Damich allowed the Plaintiff there to supplement its damages claims in precisely the manner that Plaintiffs here intend, ruling that Citizens Federal could present an actual cost of replacement capital theory in lieu of an existing claim for lost profits:

> The Court is persuaded that allowing Plaintiffs to proceed on a cost of replacement theory would not only be fair and equitable, but also could save the parties the needless time and expense routinely associated with a long trial on lost profits. Because Plaintiffs'

---

Footnote continued from previous page
performance caused by its failure or deficiency, *plus* (b) *any other loss, including incidental or consequential loss, caused by the breach*") and comment (c) ("the injured party is entitled to recover for all loss actually suffered. Items of loss other than loss in value of the other party's performance are often characterized as incidental or consequential. *Incidental losses include costs incurred in a reasonable effort, whether successful or not, to avoid loss* …") (emphasis added). *See also* Restatement (Second) of Contracts § 350, cmt. h (1981) ("Actual efforts to mitigate" are recoverable as "incidental damages").

[5] *Citizens Fed. Bank, FSB v. United States,* 59 Fed. Cl. 507 (2004).

> theory is based on its actual costs of capital replacement, calculating those costs should be fairly straightforward. Moreover, Plaintiffs' theory is not an entirely new theory, as it relates to expectancy damages.

*Citizens Fed.*, 59 Fed. Cl. at 512.

Chief Judge Damich further observed that "other judges on this Court have allowed a plaintiff to supplement an expert report …. even when plaintiff has introduced a totally new damages theory." *Id.* (citing *The Long Island Sav. Bank, FSB v. United States*, No. 92-517 (Fed. Cl. April 15, 2003) and *Stan. Fed. Bank v. United States*, No. 92-844C (Fed. Cl. Mar. 13, 2002)). As one *Winstar* plaintiff argued successfully in urging the Court of Federal Claims to permit revision of its damages claims under similar circumstances, the government cannot claim a right to "coffin-corner" Plaintiffs by confining them to damages theories developed without the aid of developing Federal Circuit precedent. *See Sterling Sav. Assoc. v. United States*, No. 95-829C, Plaintiffs' Brief Amending Damage Expert Reports, dated Nov. 25, 2003 at 13 (Docket #155). That principle should apply here, where Plaintiffs seek to add a damages theory endorsed by the Federal Circuit in March 2005, after Plaintiffs last made revisions to their damages claims.

More generally, courts freely permit the supplementation of expert reports where the opposing party is afforded an opportunity to depose the expert before trial. *See Transamerica ins. Corp. v. United States*, 28 Fed. Cl. 418, 420-22 (1993) (expert witness testimony should be heard at trial provided the expert was made available for deposition before trial); *Mid-America Tablewares, Inc. v. Mogi Trading Co.*, 100 F.3d 1353 (7th Cir. 1996) (no prejudice from late disclosure of expert opinion where defendant had time to depose expert before trial); *ABB Air Preheater, Inc. v. Regenerative Environmental Equipment Co.*, 167 F.R.D. 668, 672 (D. N.J. 1996) ("the pivotal issue is whether admission of the evidence will result in incurable prejudice to the resisting party.").

Here, no prejudice to the government will result from the Plaintiffs' submission of a supplemental mitigation damages analysis. As the Court's proposed schedule contemplates, Dr. Holland will submit his expert analysis more than 7 months before trial, and Defendant will have a period of several months to review Dr. Holland's expert report, depose Dr. Holland concerning his opinions, and submit a rebuttal report if it so chooses. *See* Proposed Scheduling Order of March 13, 2007 (scheduling supplemental expert discovery to take place from April 30-August 30, 2007). Further, all of this discovery is proposed to be completed more than 3 months before trial, leaving Defendant ample time to integrate a response to Dr. Holland's mitigation analysis into its preparation for trial. Moreover, Defendant is fully familiar with the general approach of measuring mitigation damages by the cost of retained earnings, having defended against the claim in several *Winstar*-related cases. *See, e.g. Home Savings*, 399 F.3d 1341; *Long Island Sav. Bank, FSB v. United States*, 67 Fed. Cl. 616 (2005).

At the same time, Plaintiffs would reduce the burdens of preparation for the damages trial by setting aside their claim for lost profits based on growing River Valley's asset portfolio. Adding the supplemental mitigation damages claim Plaintiffs propose will leave only three elements of damages for proof at trial: (1) First Bank's claim for the profits River Valley would have earned but for the breach by acquiring San Antonio Federal Savings Bank; (2) First Bank's claim for the diminished equity value in River Valley caused by breach, as set forth in Dr. Murphy' s expert reports (revised, as described in § I above, to account for the Court's liability ruling); and (3) First Bank's supplemental mitigation damages claim, based on the actual cost to River Valley of retaining earnings to replace the breached regulatory capital.[6] The parties have

[6] Plaintiffs may also seek an appropriate adjustment to "gross-up" their ultimate damages award to account for the future payment of income taxes. *See, e.g., LaSalle Talman v. United States*, 462 F.3d 1331, 1338 (Fed. Cir. 2006) (affirming the Court of Federal Claims' decision to

Footnote continued on next page

already briefed and prepared arguments and evidence concerning these first two elements of damages. In the seven months following the planned submission of Dr. Holland's mitigation analysis, the parties will have more than adequate time to prepare for trial of the proposed third claim.

**CONCLUSION**

For the reasons stated above, and to allow Plaintiffs to present a damages case for trial that conforms closely to this Court's rulings and the Federal Circuit's guidance, Plaintiffs respectfully request leave to revise and supplement their damages claims.

---

Footnote continued from previous page
increase a *Winstar* plaintiff's damages award to account for anticipated income tax payments at a rate of 39.5%.).

Respectfully Submitted,

/s/ David B. Bergman
David B. Bergman
ARNOLD & PORTER, LLP
555 Twelfth Street, N.W.
Washington, D.C. 20004-1206
(202) 942-5000 (tel.)
(202) 942-5999 (fax)

Counsel for plaintiffs
Holland and Ross and First Bank.

*Of Counsel*:
Melvin C. Garbow
Howard N. Cayne
Michael A. Johnson
Joshua P. Wilson
ARNOLD & PORTER, LLP
555 Twelfth Street, N.W.
Washington, D.C. 20004-1206

*Co-counsel for First Bank*:
Donald J. Gunn, Jr., Esq.
Sharon R. Wice, Esq.
Gunn and Gunn
First Bank Building
Creve Coeur
11901 Olive Blvd., Suite 312
P.O. Box 419002
St. Louis, Missouri 63141
(314) 432-4550 (tel.)
(314) 432-4489 (fax)

Dated: March 20, 2007

## CERTIFICATE OF SERVICE

I certify that on this 20th day of March 2007, I caused the foregoing **Plaintiffs' Motion for Leave to Revise and Supplement Their Damages Claims** to be filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

Dated: March 20, 2007 /s/ Joshua P. Wilson
Joshua P. Wilson