**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**No. 95-524C**
**(Judge George W. Miller)**

---

**HOMER J. HOLLAND, HOWARD R. ROSS, and FIRST BANK,**

**Plaintiffs,**

**v.**

**THE UNITED STATES,**

**Defendant.**

---

# DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE A NEW EXPERT REPORT WITH RESPECT TO DAMAGES

---

**MICHAEL HERTZ**
**Deputy Assistant Attorney General**

**JEANNE E. DAVIDSON**
**Director**

**KENNETH M. DINTZER**
**Assistant Director**

**JOHN H. ROBERSON**
**Trial Attorney**
**Commercial Litigation Branch**
**Civil Division**
**Department of Justice**
**Attn: Classification Unit**
**8th Floor, 1100 L Street**
**Washington, D.C. 20530**
**Tele: (202) 353-7972**
**Fax: (202) 514-8640**

**Attorneys for Defendant**

**OF COUNSEL:**

**RICHARD B. EVANS**
**ELIZABETH A. HOLT**
**WILLIAM G. KANELLIS**
**DAVID A. LEVITT**
**JOHN J. TODOR**

**April 3, 2007**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES . . . . . iii

SUMMARY . . . . . 1

ARGUMENT . . . . . 3

I. PLAINTIFFS' MOTION SHOULD BE DENIED BECAUSE FIRST BANK WAS JOINED AS A PARTY TO THIS CASE MORE THAN TEN YEARS AFTER THIS LAWSUIT WAS FILED AND AFTER THE CLOSE OF DISCOVERY ON THE CONDITION THAT IT WOULD ASSERT NO NEW DAMAGE CLAIMS . . . . . 3

A. The Court Permitted First Bank's Joinder On The Condition That It Assert No New Damage Claims . . . . . 3

B. First Bank Now Disregards Its Previous Representations To This Court That, If Permitted To Be Joined To This Action, It Would Not Change The Theories, Quantum, Or Facts Supporting Its Damage Claims . . . . . 6

C. First Bank's Attempt To Issue New Damage Theories Now Violates The Standards For Permissible Joinder Pursuant To Rule 17 . . . . . 7

II. PLAINTIFFS' MOTION SHOULD BE DENIED BECAUSE ITS REQUEST IS UNTIMELY . . . . . 9

III. THE PLAINTIFFS HAVE ALREADY BEEN PERMITTED TO REVISE THEIR DAMAGE THEORIES THREE TIMES FOLLOWING THE CLOSE OF EXPERT DISCOVERY . . . . . 12

IV. PLAINTIFFS' MOTION SHOULD BE DENIED BECAUSE IT WILL REQUIRE ADDITIONAL DISCOVERY CONCERNING TAX GROSS UP ISSUES . . . . . 14

V. SHOULD PLAINTIFFS BE PERMITTED TO SET FORTH THEIR TWO NEW THEORIES OF DAMAGES, WE SHOULD BE REIMBURSED FOR FEES AND COSTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

**TABLE OF AUTHORITIES**

**CASES**

**Page(s)**

Bank of America, FSB v. United States,
70 Fed. Cl. 246 (2006) ........ 12, 14

Bank of America, FSB v. United States,
51 Fed. Cl. 500 (2002) ........ 8

Citizens Fed. Bank, FSB v. United States,
59 Fed. Cl. 507 (2004) ........ 11, 13

Deponte Invs., Inc. v. United States,
60 Fed. Cl. 9 (2004) ........ 8

Fifth Third Bank of W. Ohio v. United States,
402 F.3d 1221 (Fed. Cir. 2005) ........ 11

Hansen Bancorp, Inc. v. United States,
No. 92-828C (Fed. Cl. Feb. 14, 2002) ........ 13

Holland v. United States,
62 Fed. Cl. 395 (2004) ........ 3, 8

Home Savings of America, FSB v. United States,
57 Fed. Cl. 694 (2003) ........ 9, 10, 11

Home Savings of America, FSB v. United States,
399 F.3d 1341 (Fed. Cir. 2005) ........ 10

Hughes v. United States,
71 Fed. Cl. 284 (2006) ........ 14

Intown Prop. Mgmt., Inc. v. Wheaton Van Lines, Inc.,
271 F.3d 164 (4th Cir. 2001) ........ 8

Kansas Elec. Power Co. v. Janis,
194 F.2d 942 (10th Cir. 1952) ........ 8

LaSalle Talman Bank FSB v. United States,
317 F.3d 1363 (Fed. Cir. 2003) ........ 11, 12

Suess v. United States,
74 Fed. Cl. 510 (2006) ........ 14

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **HOMER J. HOLLAND, HOWARD R. ROSS, and FIRST BANK,** | |
| **Plaintiffs,** | **Case No. 95-524C** |
| **v.** | **(Judge George W. Miller)** |
| **THE UNITED STATES,** | **(Winstar-Related Case)** |
| **Defendant.** | |

**DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE A NEW EXPERT REPORT WITH RESPECT TO DAMAGES**

Defendant, the United States, respectfully submits its opposition to plaintiffs' motion for leave to file a new expert report with respect to damages. We oppose plaintiffs' request that Dr. Holland be permitted to issue completely new theories of damages -- a "retained earnings" theory of mitigation damages coupled with a tax gross up claim -- while abandoning the primary portions of *three expert reports* he has issued (two after the close of expert discovery) with respect to lost profits based upon purported lost leverage.

**SUMMARY**

Enough is enough. Expert discovery in this case closed in 2001. Nonetheless, since the close of discovery, plaintiffs have changed their damage theories and calculations three times: in October 2003, when they introduced a new "steady state" theory of lost profits based upon purported lost leverage; in February 2005, when plaintiffs set forth a substantially re-worked lost profits model; and in September 2005, when First Bank issued new theories and calculations of damages with respect to the transactions involving San Antonio Federal Savings Bank ("SAFSB").

No other *Winstar* plaintiff has submitted as many revised theories of damages after the close of discovery. The time to stop plaintiffs' disregard of the procedural orders which this Court issued to govern the *Winstar* cases has long passed.

Moreover, given that this Court stated -- unequivocally -- that *"joining First Bank will not result in any further revision to plaintiffs' damages claims,"*[1] plaintiffs should not be permitted now to submit a *fourth post-discovery* revision to their damage claims. We have spent hundreds of thousands of dollars responding to plaintiffs' ephemeral damage theories *following the close of discovery*. By any reasonable measure, plaintiffs have already exceeded the boundaries of latitude given to a plaintiff in theorizing about its potential damages. First Bank now seeks, however, to walk away from its reduced leverage lost profits claims, the primary focus of Dr. Holland's initial expert report, and the subject of two expert reports issued by him after the close of discovery -- in order to assert two entirely new damage claims.

The Court should deny plaintiffs' motion and trial should proceed upon First Bank's existing expert reports with respect to damages.

---

[1] Holland v. United States, No 95-524C (May 12, 2005) (Opinion and Order permitting the joinder of First Bank) at 3 (emphasis added).

## ARGUMENT

### I. PLAINTIFFS' MOTION SHOULD BE DENIED BECAUSE FIRST BANK WAS JOINED AS A PARTY TO THIS CASE MORE THAN TEN YEARS AFTER THIS LAWSUIT WAS FILED AND AFTER THE CLOSE OF DISCOVERY ON THE CONDITION THAT IT WOULD ASSERT NO NEW DAMAGE CLAIMS

#### A. The Court Permitted First Bank's Joinder On The Condition That It Assert No New Damage Claims

When *First Banks, Inc.*, erroneously attempted to join this action in 2004 -- nine years after it agreed with Messrs. Holland and Ross *not* to pursue a claim in this Court -- we objected to that joinder because, among other reasons, we would likely face prejudice in the form of new damage theories and a new quantum of damages. In rejecting our opposition to the joinder of First Banks, Inc., this Court found that there would be minimal prejudice to the Government "'[i]f First Banks takes the position as you were describing it, [of] *absolutely no change in the theories of damages or the anticipated proof on damages.*'" Holland v. United States, 62 Fed. Cl. 395, 402 (2004) (quoting Hearing Tr. (April 29, 2004) at 60).

When the issue of the joinder of *First Bank* arose in 2005, this Court repeatedly stated in its opinions and orders that we would not be prejudiced by the joinder because First Bank had warranted that there would be no change in damage claims or computations with its joinder:

> Defendant next asserts prejudice as a result of plaintiffs' revised damages claims. The revision of plaintiffs' damages claims was authorized by the Court in its Order of January 14, 2005 as a result of the Court's having held previously that the claims for damages sought to be advanced by Messrs. Holland and Ross were in fact claims belonging to River Valley. *The movants have represented that joining First Bank MO will not result* in *any further revision to plaintiffs' damages claims. The Court will hold movants to that representation.*

Holland v. United States, No. 95-524C (May 12, 2005) (Opinion and Order permitting the joinder of First Bank) at 3 (emphasis added).

> As for damages, *plaintiffs and First Bank MO have represented that the material factual allegations will not change with the joinder of First Bank MO.* As stated above, *the Court expects* that plaintiffs and *First Bank MO will honor that representation.*

Id. (emphasis added).

> [P]laintiffs represented that the joinder of First Bank MO 'will have no effect on the substance of the claims at issue in this action, and *no effect on Plaintiffs' calculation of damages.*

Holland v. United States, No. 95-524C (April 28, 2005) (Order granting plaintiffs' motion to resume pre-trial activities) at 1 (emphasis added).

In addition to its statements in its opinions and orders, during oral argument the Court repeatedly emphasized that prejudice would not ensue to the Government given plaintiffs' representations that the joinder of First Banks, Inc. would have *no effect* on plaintiffs' existing damage claims:

> THE COURT: All right, *Plaintiff tells us that there are going to be no changes whatsoever. . . .* And now we're going to come back with the person that the Court has sort of told us is the right person, and that's the only change. *The proof on damages is still the same. The only issue is if damages are awarded who gets them. If that's right, where is the prejudice to the government?*

Ex. 1, Hearing Tr. dated April 29, 2004 at 58:12-25 (emphasis added).

> THE COURT: In that regard, Mr. Roberson seemed concerned that if the motion under Rule 17 were granted and First Banks came into the case, there would be new and different claims for damages.

> MR. BERGMAN: Not so, Your Honor. We will have the same . . . . It is the same fundamental theories of damages and the like. . . .
>
> THE COURT: *So you are saying that the addition of First Banks, if we were to allow First Banks to come into the case as a Plaintiff, would result in no changes in the nature of the damages sought to be recovered by the now several Plaintiffs?*
>
> MR. BERGMAN: *That is correct,* Your Honor.

Id. at 89:1-20 (emphasis added).

First Bank, of course, does not deny that its retained earnings mitigation theory and accompanying tax gross up claims are completely new. Nor could it. Indeed, they are so new that plaintiff could not -- or chose not to -- disclose the quantum of the damages it proposes under these theories, or the exact method of computation for either theory, despite this Court's order requiring that they "submit a supplemental damages analysis" by March 20, 2007.[2] Of course, plaintiffs' decision not to reveal the quantification or exact methodology of its retained earnings and tax gross up claims may have been motivated by tactical concerns.[3] Clearly, by not disclosing the amount of damages connected with First Bank's two new theories, First Bank

---

[2] Holland v. United States, No. 95-524, Order (March 13, 2007) at 2. Plaintiffs were, however, able to set forth a precise calculation of the revised amount of damages in connection with Dr. Murphy's damages calculations. We do not oppose Dr. Murphy's revision, noting, however, our disagreement with the underlying premises and methodology he has employed.

[3] With respect to the disclosure of the methodology of its claims, plaintiff merely cites two *Winstar*-related cases and states that defendant is "familiar with the general approach of measuring mitigation damages by the cost of retained earnings." Pl. Mot. (March 20, 2007). Plaintiffs' reference to the retained earnings claims in two other Winstar cases adds little to clarify the theory that they intend to advance, given that in each of those cases, different "retained earnings" theories of damages were involved.

avoids, in this briefing, the quantification of (one measure of) the prejudice that will result to us if it is permitted to set forth a fourth revised damages claim.

**B. First Bank Now Disregards Its Previous Representations To This Court That, If Permitted To Be Joined To This Action, It Would Not Change The Theories, Quantum, Or Facts Supporting Its Damage Claims**

No amount of spin or sophistry can change the plain unequivocal fact that First Bank repeatedly told this Court that, with its joinder to this case, it would allege no new damage theories, amounts, or calculations, or change its current expert reports:

> First Bank MO *will present the same claims and theories of damages* that First Banks, Inc. is currently presenting. . . . Indeed, changing the identity of the successor-in-interest *will not in any way affect any of the calculations that support the existing claims for damages.* If First Bank MO is joined as a plaintiff, Plaintiffs and *First Bank MO will not change the current expert reports concerning quantum of damages. . . .*

Ex. 2, Joint Mot. of Pl. Holland and Ross, First Banks, Inc., and First Bank (April 8, 2005), at 2 (emphasis added).

> No prejudice to the defendant will result from joinder of First Bank MO because nothing about the action will change except for the stated identity of the direct successor in interest to the River Valley Thrifts. No new facts will be alleged, *no new theories will be asserted, and no change will be made in quantification of Plaintiffs' damages.*

Id. at 12 (emphasis added).

> *First Bank MO will pursue exactly the same claims and theories* as First Banks, Inc., *limited to the same record developed during* the fact and *expert discovery* the parties have already completed.

Ex. 3, First Bank Joinder Reply (May 3, 2005) at 6-7 (emphasis added).[4]

---

[4] See also Ex. 2 at 14 (plaintiffs stating that the joinder of First Bank will not affect any element of plaintiffs' damages and that First Bank will "not seek to allege any new operative

During oral argument, First Bank repeatedly asserted that it would not present new damage theories, quantifications of damages, or new facts to support their damage claims.

> MR. JOHNSON: The claim belongs to the successor in interest to River Valley, who is First Bank MO as we understand things today. The damages are the damages to River Valley. *They are not going to change. The damage theories are not going to change, the methods of computation are not going to change.*

Ex. 4, Hearing Tr. (March 22, 2005) at 17:1-11 (emphasis added). First Bank's arguments reiterated First Banks, Inc.'s previous representations when it attempted to join this case:

> MR BERGMAN: With respect to damages, Your Honor, again, I don't get it. *If the government is concerned that we will have new damage theories, models, new experts, that will not happen.* Your honor, the Court has said the damages we have presented and the government has argued with belong to First Banks. We now seek to bring First Banks before the Court has [sic] the real party in interest *to pursue those damages, the same models, the same theories, the same approaches. . . .*

Ex. 1, Hearing Tr. (April 29, 2004) at 11:13-22.

First Bank's motion to submit new damage theories can be viewed in no other light than this: It is an unequivocal repudiation of its prior warranties and representations to this Court when it sought to be joined to this case.

### C. First Bank's Attempt To Issue New Damage Theories Now Violates The Standards For Permissible Joinder Pursuant To Rule 17

This Court's prior adamant statements that it would hold plaintiffs' to their representation that there be no new damage theories is understandable, given that the first factor in determining

---

facts"); Ex. 3, at 19 ("First Bank MO will assert the same causes of action as its predecessors in this case, and rely on the same theories of damages"). Furthermore, First Banks, Inc. stipulated that it would adopt the existing expert reports of Dr. Holland and plaintiffs' previous filings in 2003 with respect to damages. See Ex.5, Stipulation of First Banks, Inc. (December 16, 2004).

whether to permit the late joinder of a plaintiff is whether the defendant will be prejudiced. Holland v. United States, 62 Fed. Cl. 395, 401-02 (2004) (citing Deponte Invs., Inc. v. United States, 60 Fed. Cl. 9 (2004)). The importance of the factor of prejudice to a defendant from a late joinder was recognized in Bank of America v. United States, 51 Fed. Cl. 500 (2002). In that case, the Court's decision regarding the joinder was premised upon its finding that the proposed plaintiffs' participation in the suit "*in no way enlarges* the fact, *nature, or amount* of the government's liability." Id. at 514 (emphasis added) (citing Kansas Elec. Power Co. v. Janis, 194 F.2d 942, 944 (10th Cir. 1952)).

The United States Court of Appeals for the Fourth Circuit, in a like manner, has pronounced that late joinder pursuant to Rule 17 is not permitted where a defendant will face increased damage claims:

> [C]ourts that have permitted late amendment under Rule 17 have not exposed defendants to additional liability without notice; they have ordinarily confronted requests to exchange a plaintiff or plaintiffs for another plaintiff or plaintiffs with identical claims. Courts have not permitted Rule 17 to be used late in the course of litigation if the opposing party would suffer undue prejudice.

Intown Prop. Mgmt, Inc. v. Wheaton Van Lines, Inc., 271 F.3d 164, 171 (4th Cir. 2001).

Conversely, in Deponte, when this Court determined that defendant would not be prejudiced by a Rule 17 joinder, it recognized that the "plaintiff has not altered its request for relief," and that "the facts and legal remedies will not be altered." Deponte, 60 Fed. Cl. at 11.

Here, this Court permitted First Bank to join this litigation based upon plaintiffs' repeated representations that First Bank would not change the theory or quantum of damages. Plaintiffs now, however, are not talking about a fine tuning or an "update" of their existing damage

theories. First Bank proposes a wholesale abandonment of the plaintiffs' primary theory of damages and an assertion of *completely new damage claims*, comprised of purported "mitigation" damages in the form of retained earnings -- coupled with a tax gross up claim. Accordingly, the prejudice to us from the joinder of First Bank would be dramatically increased if this Court permitted First Bank to set forth these entirely new damage claims. Indeed, reconsideration of this Court's decision to permit the joinder of First Bank would be warranted and dismissal of First Bank proper given its disregard of its warranties in joining this action at such a late date, especially given that the decision of First Bank's parent corporation not to join this action was undertaken voluntarily -- twelve years ago -- as an agreed-upon arrangement with Messrs. Holland and Ross.[5]

## II. PLAINTIFFS' MOTION SHOULD BE DENIED BECAUSE ITS REQUEST IS UNTIMELY

Plaintiffs waited to request leave to file a fourth report from Dr. Holland until after this Court had decided the parties' summary judgment motions with respect to damages and ordered the filing of proposed pre-trial schedules. First Bank attempts to justify its untimely request by making the odd claim that it needed guidance from other cases before it recognized its own purported injuries from the breach. For example, First Bank quotes from this Court's decision in Home Savings, in proposing its new theory that "actual costs in responding to the breach" can be measured pursuant to "'the premium between what they actually had to pay to generate [mitigation] capital and [an offsetting] rate of return.'" Pl. Mot. (March 20, 2007) at 4 (quoting Home Savings of America, FSB v. United States, 57 Fed. Cl. 694 (2003).

[5] Should First Bank be permitted to go forward with its new damage claims, we intend to renew our motion for reconsideration of this Court's decision permitting its joinder.

The Home Savings decision quoted by plaintiffs, however, was issued *in September 2003, more than three-and-a-half years ago.* Thus, plaintiffs must be deemed to have known about the "retained earnings" theory of damages since, at least, September 2003. They have ignored that theory as they made repeated revisions to their damage models and as the parties briefed summary judgment motions with respect to damages. Indeed, after September 2003, Messrs. Holland and Ross have: (1) informed this Court that "they will present only two alternative claims for damages." Ex. 6, Holland v. United States, Order (Oct. 23, 2003); (2) presented revised expert reports from Dr. Holland and Dr. Murphy on December 23, 2003; (3) presented a revised expert report from Dr. Holland on February 22, 2005; and (4) set forth three new SAFSB-related damage claims in their motion for summary judgment with respect to damages filed on September 21, 2005. Plaintiffs have been given three opportunities following the Home Savings decision to revise their theories of damages; they should not be given a fourth opportunity.

Moreover, the response of the Federal Circuit to the arguments presented in this Court's Home Savings opinion cannot add credence to any claim that plaintiffs have only now understood what a retained earnings theory entails. The Federal Circuit's decision in Home Savings was issued *more than two years ago.* See Home Savings of America, FSB v. United States, 399 F.3d 1341 (Fed. Cir. 2005).

In short, First Bank's citation to the Home Savings opinion as justification for their untimely request to present new damage theories is a red herring. If plaintiffs were truly concerned with being guided by the Federal Circuit's decisions, they would recognize that the Home Savings fact pattern is different from that found here. Home Savings involved an actual replacement of capital through stock issuances. There was no capital replacement by stock

issuance here. Moreover, in Home Savings, the Federal Circuit set forth no discussion of the retained earnings claim as it approved the use of a proxy ("imputed" cost) for a short period after the actual replacement capital was retired.

Furthermore, although plaintiffs profess to receiving "newfound" guidance from the Federal Circuit, they do not even attempt to reconcile Home Savings with LaSalle Talman Bank FSB v. United States, 317 F.3d 1363 (Fed. Cir. 2003), in which the Federal Circuit emphasized the requirement that any replacement of capital damage claim utilize the "actual" cost of replacement capital. Indeed, *following* its Home Savings opinion, the Federal Circuit has emphasized that Home Savings stands for the proposition that "actual" costs must be used:

> Plaintiff's cover damages theory is based entirely upon hypothetical costs that were never actually incurred. In that regard, *this case is distinguishable* from [Home Savings], in which we affirmed the trial court's cover damages award based on costs incurred when the plaintiff thrift *actually* raised new capital to replace lost supervisory goodwill.

Fifth Third Bank of W. Ohio v. United States, 402 F.3d 1221, 1237 (Fed. Cir. 2005) (emphasis added).[6]

Moreover, in attempting to justify their untimely motion, plaintiffs ignore authority of this Court -- issued *after* the Home Savings opinion -- which is at odds with the theory they

---

[6] Similarly, while plaintiffs cite to this Court's opinion in Citizens Federal Bank, FSB v. United States, 59 Fed. Cl. 507 (2004), the damage theory in that case is distinguishable from that to which plaintiffs allude in their motion for leave. Citizens Federal involved actual costs from an actual action -- an exchange of non-cumulative preferred stock for subordinated notes -- which brought that thrift into compliance with its capital requirements. Citizens, 59 Fed. Cl. at 510. It did not involve a retained earnings theory of damages involving a "premium" offset by a "safe rate of return," the theory that plaintiffs suggest they will set forth. Pl. Mot. (March 20, 2007) at 4. Thus, plaintiffs are incorrect when they state that the Citizens Court "allowed the Plaintiff there to supplement its damages claims in precisely the manner that Plaintiffs here intend." Pl. Mot. (March 20, 2007) at 5.

apparently intend to propound. See Bank of America, FSB v. United States, 70 Fed. Cl. 246, 249 (2006). In Bank of America, the Court rejected the plaintiff's retained earnings theory of damages (after defendant was put through the burden of setting forth the benefits to the thrift of its retained earnings), because the Court could not conclude that "plaintiff's net cost of retaining earnings increased as a result of the breach." Id. at 249. There, the Government demonstrated that the benefit to the thrift from the retained earnings grossly exceeded the purported "cost" of retained earnings, resulting in an offset that, while not fully accepted by the Court, nonetheless caused it to conclude that plaintiff had not set forth a quantifiable, compensable injury. Bank of America, 70 Fed. Cl. at 249. The Court's conclusion in Bank of America was driven by its recognition that plaintiffs could not set forth a calculation that properly accounted for the corresponding benefits of the retained earnings. Id. at 248 (citing LaSalle, 317 F.3d at 1375 (requiring that "the benefits of . .. capital must be credited")).

The discussion of retained earnings in Bank of America underscores the complexity of retained earnings theories and the futility of plaintiffs' attempt to propound such a claim now. Thus, we would be prejudiced if we were now required to address First Bank's new damage theories.

## III. THE PLAINTIFFS' HAVE ALREADY BEEN PERMITTED TO REVISE THEIR DAMAGE THEORIES THREE TIMES FOLLOWING THE CLOSE OF EXPERT DISCOVERY

Plaintiffs cite a number of cases for the proposition that "this Court has routinely allowed *Winstar* plaintiffs to revise their damage theories." Pl. Mot. (March 20, 2007) at 5. In *none of the Winstar* cases cited by plaintiff, however, has this Court permitted the number of revisions to a plaintiff's expert's damage reports that First Bank now proposes with the issuance of a *third*

supplemental report from Dr. Holland. Indeed, in three of the cases cited by plaintiffs, the Court permitted *just a single* revised report from plaintiffs' experts. See Citizens Fed. Bank, FSB v. United States, 59 Fed. Cl. 507 (2004) (*one* supplemental report permitted, issued by Dr. James on February 17, 2004); Hansen Bancorp, Inc. v. United States, No. 92-828C (Fed. Cl. Feb. 14, 2002) (*one* supplemental expert report permitted, issued by Leslie Patten on April 8, 2002); Standard Federal Bank v. United States, No. 92-844C (Fed. Cl.) (*one* supplemental expert report permitted, issued by Dr. Kaplan on April 15, 2002). Moreover, in Long Island Savings Bank, FSB v. United States, No. 92-517C (Fed. Cl.), the Court permitted each of plaintiff's two experts to each issue just a *single* supplemental expert report, with Dr. James issuing a revised report on April 22, 2003, and Prof. Calomiris issuing his revised report on August 27, 2004. In only one case cited by plaintiffs has this Court permitted the same expert the opportunity to issue more than one supplemental expert report. In Sterling Savings v. United States, 95-829C (Fed. Cl.), the Court permitted plaintiffs to issue *two* rounds of supplemental expert reports, one round in December 2003/January 2004, (with three-page updates by Dr. James and Dr. Horwitz in December 2003, followed by a January 9, 2004 report by Dr. James) and another round in December 2006 (providing updates to both their reports).

In fact, in no *Winstar* cases cited by First Bank has any plaintiff's expert been given the opportunity to issue *three* supplemental expert reports; and here, given that plaintiffs revised their SAFSB claims improperly within a summary judgment motion, the correct point of reference with respect to yet another revision would actually be to *four revisions* of plaintiffs' damage theories. What makes this all the more objectionable is that here, unlike the other cases where revisions were permitted, the issue of a late joinder is involved, with First Bank's joinder

based upon its express representations that it would merely assert the existing damage claims without changing the theory or quantum of damages.

## IV. PLAINTIFFS' MOTION SHOULD BE DENIED BECAUSE IT WILL REQUIRE ADDITIONAL DISCOVERY CONCERNING TAX GROSS UP ISSUES

If plaintiffs are permitted to set forth their new retained earnings and tax gross-up claims, the Government would require additional discovery in order to respond to such claims. Assuming for the sake of argument that a tax gross-up would be appropriate, which we would dispute here, as we have in other Winstar-cases, determining the appropriate tax rates at which to gross up a suggested award is a factual matter that requires information and knowledge of First Bank's past, current, and likely future tax situation. See, e.g., Hughes v. United States, 71 Fed. Cl. 284 319-20 (2006) (noting various issues affecting tax gross up claim including the effect of counsel's contingent fee on plaintiffs' tax basis, the allocation of tax consequences between different plaintiffs, the uncertainty as to the time of the determination that no tax would have been paid, and the sporadic nature of taxes paid by the plaintiff); Suess v. United States, 74 Fed. Cl. 510, 514-15 (2006) (holding that, because the receivership's tax liability on the damage award was not known, plaintiffs would have to file a Rule 60(b) motion if the receivership ultimately paid taxes); Bank of American v. United States, 70 Fed. Cl. 246, 252-53 (2006) (permitting plaintiffs to apply for Rule 60(b) relief in the event its damages award is ultimately subject to tax).

Thus permitting First Bank to pursue a tax gross up claim now would necessarily require additional discovery, likely in the form of, among other things, First Banks, Inc.'s recent tax returns and supporting schedules, intra-company tax sharing agreements and related records,

depositions of one or more First Bank (or First Banks, Inc.) employees, and additional expert reports and depositions. Such discovery would potentially further delay the trial schedule and would also prejudice the Government by requiring additional time and expense associated with the analysis of yet another new claim.

## V. SHOULD PLAINTIFFS BE PERMITTED TO SET FORTH THEIR TWO NEW THEORIES OF DAMAGES, WE SHOULD BE REIMBURSED FOR FEES AND COSTS

As a suggested *quid pro quo*, First Bank now proposes that, if it is permitted to set forth its new retained earnings and tax gross up claims, it will abandon its heretofore primary damage claim -- the leverage-based lost profits claims asserted by Dr. Holland. While plaintiffs assert that this will "streamline" the upcoming trial, we are willing to venture that First Bank's decision to turn its back on the multiple expert reports concerning lost profits issued by Dr. Holland is not being offered altruistically but, instead, is motivated by other factors.

In any event, plaintiff's proposal will not streamline *our* trial preparations. Indeed, we will have to issue new reports addressing both First Bank's retained earnings and tax gross up theories of damages. We anticipate that, if First Bank is allowed to go forward with its new claims, we will likely retain a new expert or experts to address its new theories. In contrast, we have already deposed Dr. Holland with respect to his lost profits claims and issued expert reports responding to those claims. Moreover, we understand Dr. Holland's current theory and methodology and are ready to move forward at trial to demonstrate why his lost profits calculations are unreliable. Having to turn now to First Bank's new theories of damages will not streamline our efforts; it will only complicate our efforts -- to our prejudice.

Should this Court, despite our objection, permit First Bank to present its new damage theories, the Court should award us an unconditional reimbursement by plaintiffs of all of our costs -- including expert fees -- expended in responding to plaintiff's multiple supplemental reports concerning lost profits issued following the close of discovery. Indeed, that is the remedy ordered by this Court in numerous *Winstar*-related cases where the Court has permitted (single) revisions to plaintiffs' damage theories. For example, in Standard Federal, this Court held that plaintiff "shall be responsible for all of defendant's reasonable expenses related to the additional expert discovery," including the deposition of plaintiff's expert, defendant's submission of supplemental expert reports, and the deposition of defendant's experts by plaintiff. Standard Federal, No. 92-844C, Order (March 21, 2002) at 2 (annexed hereto as Ex. 7); see also Standard Federal, No. 92-844C, Order (April 26, 2002) at 3 (reiterating its Order of March 21, 2002, requiring plaintiff to pay all of defendant's expert fees in connection defendant's response to plaintiff's revised expert reports) (annexed hereto as Ex. 8). Similarly, in Long Island, this Court cited the Standard Federal precedent as it set forth the scope of costs to be paid to defendant resulting from a plaintiffs' revision of its damage theories: "As the motion for leave to serve the supplemental expert reports was filed after discovery closed, plaintiffs shall be responsible for all of defendant's reasonable costs related to *both* additional reports." Long Island Savings Bank, No. 92-517C, Order (April 15, 2003) (annexed hereto as Ex. 9).

The Court's award of costs to the Government in these Winstar-related cases followed from the plaintiffs' contravention of the procedural Orders established for all Winstar-related cases concerning the production of expert reports by plaintiffs. Expert discovery in this case is

governed by Procedural Order No. 2 ("Discovery Plan") (Aug. 7, 1997), which provides, in relevant part:

> 2. Absent agreement of the parties, each plaintiff shall deliver to defendant a *final* written report prepared and signed by each witness identified pursuant to Paragraph V.A.1. within 60 days after identification. The written report shall contain: (a) a complete statement of all opinions to be expressed by the witness and the basis and reasons for all opinions; (b) the data or other information considered by the witness in forming the opinions; and (c) all exhibits to be used as a summary of or in support for the opinions of the witness. . . .
>
> 4. If a plaintiff fails to comply with the provisions of this section with regard to any expert witness it proposes to call, no opinion testimony will be received from that witness on behalf of that plaintiff.

Id. at ¶¶ 2, 4 (emphasis added).

The provisions in the Discovery Plan relating to expert discovery materialized from the desire *of plaintiffs* in the Winstar-related cases to limit the amount of time devoted to analysis of their damages claims. The Discovery Plan was debated in hearings before the Managing Judge, during which counsel for the Plaintiffs' Coordinating Committee ("PCC") stressed the importance of deadlines, and emphasized that the Government would have the facts, plaintiffs' expert reports, and the transcripts of plaintiffs' expert depositions before being required to present Government expert reports. See Plaintiffs in All Winstar-Related Cases, No. 90-8C, Tr. at 87-88 (July 23, 1997, Mr. Gavin for the PCC) (annexed hereto as Ex. 10).

Thus, the Discovery Plan provided for a single round of expert discovery. Indeed, in La Van v. United States, Discovery Judge Hodges found that, although a Winstar expert may make non-substantive, typographical or simple arithmetic changes, experts are *not* permitted to

raise *new* theories or opinions following the close of the discovery period. See Ex. 11, La Van v. United States, No. 90-581C, Orders (July 13, 2000) and (Aug. 2, 2000).

Accordingly, this Court should deny First Bank's motion to submit revised expert reports concerning its two new damage theories. In any event, however, we should be reimbursed for all of our reasonable costs spent responding to plaintiff's *multiple revised expert reports* issued by Dr. Holland with respect to his lost-leverage lost-profits claim.

We have already brought a motion (dated March 23, 2004) seeking reimbursement for our costs in responding to plaintiffs' supplemental reports concerning lost profits claims in December 2003. In that motion, we sought reimbursement of $155,503. On April 30, 2004, this Court decided to defer its decision on our motion until it achieved the "requisite detailed familiarity with the positions of the parties' damages experts." Holland v. United States, No. 95-524C, Order (April 30, 2004). We respectfully renew our motion for those costs.

Furthermore -- and for the same reasons -- we request reimbursement for our costs in responding to Dr. Holland's second supplemental expert report with respect to lost profits issued in February 2005, and which plaintiffs also now propose abandoning.

Finally, if First Bank is permitted to assert its new retained earnings and tax gross up damages theories, we should also be awarded all of our reasonable costs in responding to these claims as well, in accord with this Court's decisions in Standard Federal and Long Island. Perhaps by engaging as its expert Dr. Holland, a plaintiff in this case, First Bank was able to avoid the costs typically borne by parties in the retention of experts. This does not mean, however, that *we* can avoid the costs of responding to his multiple untimely opinions as he has repeatedly changed his opinions. Thus, if First Bank is permitted to set forth new theories of

damages over our objection, it should be ordered, at the least, to pay all of our experts' costs incurred after the close of discovery in responding to Dr. Holland's lost leverage lost profits model and to his new retained earnings and tax gross up theories of damages.

## CONCLUSION

For the foregoing reasons, we respectfully request that the Court deny plaintiffs' motion for leave to file a new expert report with respect to damages.

Respectfully submitted,

MICHAEL F. HERTZ
Deputy Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/ Kenneth M. Dintzer
KENNETH M. DINTZER
Assistant Director

/s/ John H. Roberson
JOHN H. ROBERSON
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor, 1100 L Street
Washington, D.C. 20530
Tele: (202) 353-7972
Fax: (202) 514-8640
Attorneys for Defendant

Of Counsel:

RICHARD B. EVANS
ELIZABETH A. HOLT
WILLIAM G. KANELLIS
DAVID A. LEVITT
JOHN J. TODOR

April 3, 2007