# EXHIBIT 1

# UNITED STATES
# COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| HOMER J. HOLLAND & HOWARD R. ROSS, | ) | |
| Plaintiffs, | ) | |
| v. | ) | Docket No.: 95-524C |
| UNITED STATES, | ) | |

Pages: 1 through 127

Place: Washington, D.C.

Date: April 29, 2004

**HERITAGE REPORTING CORPORATION**

*Official Reporters*

1220 L Street, N.W., Suite 600

Washington, D.C. 20005-4018

(202) 628-4888

hrc@concentric.net

as a party there would be any debate as to whether First Banks is a contract party, there would be any need to revisit the liability ruling that Judge Horn issued in this case.

There is no doubt that River Valley and First Banks as its successor is a contract party. The Court has found the contracts to exist, has found the breach to have happened, and I don't think it is a good faith argument that First Banks under the Court's rules and under the laws the Court has interpreted it to date that First Banks is not a contract party.

So I don't think there is any need to revisit any of the liability issues. With respect to damages, Your Honor, again, I don't get it. If the government is concerned that we will have new damage theories, models, new experts, that will not happen. Your Honor, the Court has said the damages we have presented and the government has argued with belong to First Banks. We now seek to bring First Banks before the Court has the real party in interest to pursue those damages, the same models, the same theories, the same approaches, the same contracts, the same breaches.

I cannot imagine that joinder of First Banks or amendment to bring First Banks in would be anything

the government's motion for summary judgment on damages, which was filed while we were briefing, as I recall, the motion to dismiss, and we have sort of deferred. There has been no response by Plaintiffs for that.

MR. ROBERSON: Right.

THE COURT: Wouldn't that be the next item on the agenda?

MR. ROBERSON: Well, I think it goes to whether or not there is going to be any change whatsoever in their damage theories.

THE COURT: All right, Plaintiff tells us that there are going to be no changes whatsoever. What he is saying, I think, is, look, the nature of the damages claims has been clear at least since October of 2003, if not before then, and our problem was the Court told us we had the wrong party plaintiff. We may not think that that was such a wise decision, but we're stuck with it.

And now we're going to come back with the person that the Court has sort of told us is the right person, and that's the only change. The proof on damages is still the same. The only issue is if damages are awarded who gets them. If that's right, where is the prejudice to the government?

THE COURT: In that regard, Mr. Roberson seemed concerned that if the motion under Rule 17 were granted and First Banks came into the case, there would be new and different claims for damages.

MR. BERGMAN: Not so, Your Honor. We will have the same -- it's lost profits, lost value of the stock in the thrift. We will not seek to revive the restitution, the reliance. It is the same fundamental theories of damages and the like.

We can talk about the new documents that are coming in from the government and the new witnesses and the like, and whether that may have an impact, but that's wholly apart from any First Banks' issue.

In terms of First Banks coming --

THE COURT: So you are saying that the addition of First Banks, if we were to allow First Banks to come into the case as a Plaintiff, would result in no changes in the nature of the damages sought to be recovered by the now several Plaintiffs?

MR. BERGMAN: That is correct, Your Honor.

THE COURT: Okay.

MR. BERGMAN: The nature of the damages will be identical, and they are the damages that were identified in the complaint years and years ago, timely.

# EXHIBIT 2

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| HOMER J. HOLLAND,<br>HOWARD R. ROSS, AND<br>FIRST BANKS, INC.<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | No. 95-524C<br><br>(Judge G. Miller) |

**JOINT MOTION OF PLAINTIFFS HOLLAND, ROSS AND FIRST BANKS, INC. AND THIRD PARTY FIRST BANK MO TO JOIN FIRST BANK MO AS A PLAINTIFF, AND FOR LEAVE TO FILE THE THIRD AMENDED COMPLAINT**


*Of Counsel:*
Donald J. Gunn, Jr.
Gunn and Gunn
First Bank Building
Creve Couer
11901 Olive Blvd., Suite 312
P.O. Box 419002
St. Louis, Missouri 63141

Co-counsel for plaintiff First Banks, Inc. and proposed plaintiff/intervenor First Bank MO

Melvin C. Garbow
ARNOLD & PORTER, LLP
555 Twelfth Street, N.W.
Washington, D.C. 20004-1206

Counsel for plaintiffs Holland, Ross, First Banks, Inc., and for proposed plaintiff/intervenor First Bank MO


Dated: April 8, 2005

correct the name of the successor in interest to the River Valley Thrifts.[1] All substantive allegations in the Complaint, and all theories and computations of damages, would remain as they presently exist.

Joining First Bank MO as a plaintiff and real party in interest will facilitate the just and efficient resolution of the merits of the claims presented to the Court. Joinder will ensure that all interested parties are before the Court, and will allow the Court to grant complete relief for the government's already adjudicated breaches of contracts. First Bank MO will present the same claims and theories of damages that First Banks, Inc. is currently presenting (and that Holland and Ross had initially put forth on their own behalf), and will seek to recover only those categories of damages that the Court has ruled belonged to First Bank MO's direct predecessors-in-interest, the River Valley Thrifts. *See Holland v. United States*, 59 Fed. Cl. 735 (2004) ("*Holland II*"). Indeed, changing the identity of the successor-in-interest will not in any way affect any of the calculations that support the existing claims for damages. If First Bank MO is joined as a plaintiff, Plaintiffs and First Bank MO will *not* change the current expert reports concerning quantum of damages because those reports already analyze damages from the perspective of First Bank MO's predecessor in interest, the River Valley Thrifts. Plaintiffs and First Bank MO do not presently intend or expect to make any other revision to or supplementation of any of the reports. The defendant is already prepared to defend — indeed it is already defending — the claims First Bank MO will assert. For those reasons, the defendant will not be prejudiced by the joinder of First Bank MO.

[1] A "blackline" of the proposed Third Amended Complaint against the Second Amended Complaint (*i.e.*, a document showing the differences between the two) is attached as **Exhibit 2**.

### A. This Motion Is Timely

This motion comes within a reasonable time of any objection to First Banks, Inc.'s status as a real party in interest. The defendant filed its substituted motion — based as it was upon "information [then] only very recently obtained" — on January 26, 2005. Less than one month later, on February 23, 2005, the Court ordered Plaintiffs to submit a statement concerning the identity of the successor in interest to the River Valley Thrifts. Order of February 23, 2005 at 2. Plaintiffs provided their statement two days later, on February 25, 2005 (two weeks in advance of the March 11, 2005 deadline set by the Court and less than one month after the defendant filed its motion), and noted therein that "Plaintiffs are prepared to move immediately to file [a] Motion to Join or Substitute First Bank [MO] as plaintiff and real-party-in-interest." Pl.'s Statement, dated February 25, 2005. The Court did not invite such a motion from Plaintiffs at that point, but instead scheduled oral argument on defendant's motion for continuance for March 22, 2005. The day after that argument, the Court issued an Order requiring Current Plaintiffs to submit a motion to join or substitute First Bank MO by April 8, 2005. Order of March 23, 2005 at 1. This motion meets that deadline, and it is therefore submitted within a reasonable time.

### B. Joinder of First Bank MO Will Not Prejudice the Defendant

No prejudice to the defendant will result from joinder of First Bank MO because nothing about the action will change except for the stated identity of the direct successor in interest to the River Valley Thrifts. No new facts will be alleged, no new theories will be asserted, and no change will be made in the quantification of Plaintiffs' damages.

During the March 22, 2005 oral argument, the defendant suggested that the portion of Dr. Holland's damages analysis in which he determined the diminution the breach caused in the

could not change any input to Dr. Holland's calculation, which adopts Mr. Blake's contemporaneous knowledge and intentions, and his formula for valuing the NOLs, and posits no change in these facts from the breach to no-breach scenario. Thus, joinder of First Bank MO simply will *not* affect the NOL component, or any other element, of Plaintiffs' damages calculations.

As in the *Winstar*-related case *Bank of America*, in which parties sought to join as additional plaintiffs under Rule 17:

> Defendant is . . . not prejudiced by the inclusion of the [later-filing parties] because their participation requires no revision of the government's defense. Whether the claim ultimately belongs to the [initial plaintiffs] or [the parties seeking to join as new plaintiffs] in no way alters defendant's liability, or the nature of its case. Under such circumstances, we find the claims of the [later filing parties] to relate back under Rule 17 to [the initial] timely filed claim."

*Bank of America, FSB v. United States*, 51 Fed. Cl. 500, 514-15 (2002). The same is true here, and the same result should follow.

### C. The Factual Allegations of the Complaint Will Not Change

First Bank MO seeks to join the action solely as the successor in interest to the River Valley Thrifts. This Court held previously that the initial Holland and Ross complaint set forth claims that belonged to the River Valley thrifts; those are the claims First Bank MO seeks to pursue. First Bank MO will not seek to allege any new operative facts. As the Third Amended Complaint reflects, joinder of First Bank MO will result in no material change to the Complaint.

### D. The Defendant Has Always Been Aware of the Relevant Parties

Here, the government has known of Holland, Ross, the River Valley Thrifts, First Banks, Inc., and First Bank MO from the very moment each of those entities became involved in any

# EXHIBIT 3

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| HOMER J. HOLLAND,<br>HOWARD R. ROSS,<br>AND FIRST BANKS, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | No. 95-524 C<br><br>(Judge G. Miller) |

**REPLY OF PLAINTIFFS HOLLAND, ROSS AND FIRST BANKS, INC. AND THIRD PARTY FIRST BANK MO IN SUPPORT OF THEIR JOINT MOTION TO JOIN FIRST BANK MO AS A PLAINTIFF, AND FOR LEAVE TO FILE THE THIRD AMENDED COMPLAINT**

Melvin C. Garbow
ARNOLD & PORTER, LLP
555 Twelfth Street, N.W.
Washington, D.C. 20004-1206

Counsel for plaintiffs Holland, Ross, First Banks, Inc., and for proposed plaintiff/intervenor First Bank MO

*Of Counsel*:
Donald J. Gunn, Jr.
Gunn and Gunn
First Bank Building
Creve Couer
11901 Olive Blvd., Suite 312
P.O. Box 419002
St. Louis, Missouri 63141

Co-counsel for plaintiff First Banks, Inc. and proposed plaintiff/intervenor First Bank MO

Dated: May 3, 2005

cases, and concern details of Plaintiffs' expert damages analysis that have nothing to do with the joinder of First Bank MO (or First Banks, Inc.).

**1. Defendant Is Not Entitled To Any Further Discovery**

Most of what Defendant identifies as "prejudice" relates to Defendant's perception that it did not obtain certain documents from First Banks, Inc. and its subsidiaries that Defendant's claims relate to certain aspects of Plaintiffs' damages theories. *See* Opp. to Mot. to Join at pp. 16-32. None of the discovery Defendant claims to have been denied bears any relationship to this Motion to Join or to the potential effects of First Bank MO's presence in this case – and Defendant makes no serious attempt to establish such a connection. Rather, Defendant argues that it "should have had access to," and that Plaintiffs "should have produced" during the fact discovery period, certain information that Defendant now considers relevant in light of Plaintiffs' expert reports on damages. *See id.* § II(D). The case management order for the *Winstar*-related cases does not provide for the re-opening of fact discovery following expert reports. Nor should it; the experts must opine on a closed factual record.

Given that First Bank MO proposes to join this case on a formal basis simply to replace First Banks, Inc. in its existing claims and theories as the successor to River Valley, the joinder does not give rise to any legitimate need for further discovery. It may be true in other circumstances that joining a new plaintiff to a case after discovery has expired could prejudice the defendant, or justify further discovery into a joined plaintiff's new theories or claims. But that is not the case here. Because the damages are viewed from the perspective of River Valley, the subsequent histories of First Banks, Inc. or First Bank MO are simply irrelevant. First Bank MO will pursue exactly the same claims and theories as First Banks, Inc., limited to the same

record developed during the fact and expert discovery the parties have already completed.[3] *See Advanced Magnetics* v. *Bayfront Properties, Inc.*, 106 F.3d 11, 21 (2d Cir. 1997) (no unfairness to defendant where new plaintiffs were joined after discovery, and substituted for existing plaintiffs to pursue identical claims).

As discussed above, real-parties-in-interest routinely have been permitted to join *Winstar*-related cases well past the close of discovery where they seek only to replace or join existing plaintiffs in order to pursue existing claims. *Bank of America*, 51 Fed. Cl. 500, 514 (2002), *First Annapolis Bancorp*, 54 Fed. Cl. at 541-43 (2002), *American Heritage Bancorp.*, 53 Fed. Cl. at 729-30 (2002). Outside of the *Winstar* context, the Courts of Appeals have held that no prejudice accrues to a defendant even where a new plaintiff joins a case in the middle of trial to participate as real-party-in-interest to claims identical to those being tried by existing plaintiffs. *Hill v. BASF Wyandotte Corp.*, 782 F.2d 1212, 1214 (4th Cir. 1986); *Metropolitan Paving Co., Inc. v. Int'l Union of Operating Engineers*, 439 F.2d 300, 306 (10th Cir. 1971) ("there [is] no prejudice to the defendant ... where the change is merely formal and in no way alters the known facts and issues on which the action is based").

The discovery-related "prejudice" that Defendant discusses at length does not and could not possibly relate to First Bank MO's joinder, and should be excluded from the Court's consideration of this motion. Nevertheless, Plaintiffs address each category of Defendant's discovery demands to demonstrate all of their irrelevance and inappropriateness at this stage in the case.

---

[3] Dr. Holland's Second Supplemental Report – undertaken to account for the deposition testimony of Defendant's late identified witnesses and to assess damages from the perspective of River Valley – will not change in any way with the joinder of First Bank MO.

utilization of River Valley's NOLs *notwithstanding* that Dr. Holland's report will not change. This discovery demand is simply unwarranted and obviously not related to any change occasioned by First Bank MO's joinder to this case. As discussed above, Defendant served 90 paragraphs of document requests on First Banks, Inc. during fact discovery, including requests concerning the acquisition of River Valley Holdings. That Defendant's requests did not seek information concerning First Banks' subsequent utilization of River Valley's NOLs – an issue that is irrelevant to this case – is not grounds for re-opening fact discovery.

### 2. Plaintiffs' Court-Authorized Adjustments To Dr. Holland's Expert Report Is Not Prejudicial And Is Unrelated to The Proposed Joinder

Defendant further contends it is prejudiced by Dr. Holland's Court-authorized adjustments to his damages analysis to calculate damages from the perspective of River Valley resulting from its breach-induced inability to acquire San Antonio Federal Savings Bank ("SAFSB"). This is not correct. First, and most importantly for purposes of this motion, Dr. Holland sought and received permission to make adjustments to the SAFSB component of his expectancy damages analysis in response to this Court's ruling that only River Valley – not Holland and Ross – is entitled to claim such damages. In other words, the revision is keyed to the change in perspective as between Holland and Ross and River Valley and is entirely unrelated to the subject underlying this motion – whether First Banks, Inc. or First Bank MO should sue as River Valley's successor. There is no prejudice in continuing to defend against a court-authorized adjustment to damages that is not related to the joinder of First Bank MO.

Equally as important, the adjustment to the SAFSB damages component of Dr. Holland's analysis has been made exactly as Plaintiffs described to Defendant and the Court, and in exact conformity with the Court's Order granting Plaintiffs permission to make this change. During

the December 2, 2004 status conference, Plaintiffs explained that Dr. Holland intended "to look at [damages], as the Court has directed from the perspective of River Valley, rather than the perspective of Holland and Ross." Tr. of Dec. 2, 2004 Hearing at 22. Plaintiffs explained that:

> [T]he first time around, Dr. Holland did some contortions, in some ways to make things from the perspective of Holland and Ross, and looking at it from the perspective of River Valley is, in many ways, more simple. One example that I can give is in Dr. Holland's existing report, he says in the but-for world, River Valley would have acquired San Antonio Federal Savings Bank. And then, he says that River Valley would have achieved taxable income of $29.963 million through the operation of San Antonio within River Valley. We can stop right there from the perspective of River Valley. River Valley, we know, would have acquired San Antonio, would have achieved $29 million in taxable income from San Antonio that it didn't receive because of the breach. We can stop there.

*Id.* Plaintiffs then sought the Court's leave for Dr. Holland to make this proposed change. In their Motion for Leave to Supplement or Revise Dr. Holland Expert Report, filed January 10, 2005, Plaintiffs again described in detail the proposed adjustment to the SAFSB component of Dr. Holland's damage report:

> To capture River Valley's experience, and thus to calculate properly First Banks' entitlement to damages, Dr. Holland will consider the actual cost to River Valley of losing the opportunity to acquire SAFSB. Rather than looking to the costs incurred by Holland and Ross and corporate entities other than River Valley to acquire SAFSB outside of River Valley – damages that River Valley did not suffer – River Valley can measure its damages simply by referring to profits that River Valley itself would have earned if the breach had not prevented River Valley from acquiring SAFSB. Thus, Plaintiffs seek leave for Dr. Holland to adjust his report to reflect the damages that First Banks as successor to River Valley suffered when the breach barred River Valley from acquiring SAFSB.

Mot. For Leave to Supp. or Revise at 4-5. Plaintiffs reiterated to the Court that the dollar figure ($29 million) representing the amount of income that River Valley would have earned had it

acquired SAFSB was "already featured in Dr. Holland's current expert report as an input in his calculation of the damages Holland and Ross suffered by their inability to utilize River Valley's NOLs." *Id.* (citing Corrected Expert Report of Dr. Homer J. Holland at ¶¶ 137 n.19, 142-143).

After considering Plaintiffs' Motion, the Court granted Plaintiffs permission to "adjust Dr. Holland's report so that it accurately reflects the damages of River Valley rather than the damages of Messrs. Holland and Ross." Order of January 14, 2005 at 1. In accordance with the Court's Order, Dr. Holland's Corrected Second Supplemental Expert Report features exactly the change to the SAFSB component of damages that Plaintiffs' described:

> In my Initial Report, I noted that WCHI [which acquired SAFSB when the breach prevented River Valley from doing so] purchased SAFSB for $29.963 million less than the value of its net assets. Because WCHI was required to recognize this $29.963 million as taxable income, I calculated that Howard Ross and I would have saved $9.533 million of taxes and $.967 million of other expenses had River Valley acquired SAFSB rather than WCHI. I must now measure the lost profits that River Valley (rather than Howard Ross and I) suffered because the breach prevented River Valley from acquiring SAFSB. The calculation is simple and straightforward, because but for the breach River Valley would have received the entire economic benefit (the $29.963 million) of the purchase of SAFSB . . . .

*See* Opp. to Mot. to Join at Exh. 12, Dr. Holland's Corrected Second Supplemental Report at 4-5, ¶¶ 6-9. Consistent with Plaintiffs description of the intended change, Dr. Holland did not alter any of his calculations. He merely adapted his existing analysis of the damages associated with River Valley's inability to acquire SAFSB to measure damages to River Valley rather than Holland and Ross. This Court-authorized revision will cause no prejudice to Defendant.

**3. Defendant Does Not Need to Develop New Defenses**

Finally with respect to prejudice, Defendant argues that joinder will require it to develop a "new defense" to Plaintiffs' claim that the breach caused River Valley to be sold to First Banks

*of Western Shoshone Indians v. United States*, 948 F.2d 1258 (Fed. Cir. 1991), in which the court rejected plaintiffs' attempt to add substantive new claims to the action 25 years after it was filed. Here, there has been no 25-year delay and no new substantive claims will be added; First Bank MO's claims are the very same claims Defendant has been defending from the outset. Defendant's analogy to *Little v. Liquid Air Corp.*, 952 F.2d 841, 846 (5th Cir. 1992), fails for the same reason: Unlike here, the proffered amendment in *Little* "would have radically altered the nature of a trial on the merits," because it "would have established an entirely new factual basis for the plaintiffs' claims and, consequently, would have required that the parties reopen discovery and alter their trial strategies." *Id.* First Bank MO's addition to this case requires nothing other than the formal substitution of its title for that of its parent company.

Finally, because First Bank MO will assert the same causes of action as its predecessors in this case, and rely on the same theories of damages, Defendant's concern that "FBMO has not participated in any discovery" is irrelevant. It is also incorrect. Defendant has taken extensive discovery from First Banks, Inc. on all matters relevant to this case, and Defendant's discovery requests to First Banks, Inc. defined the company to include its subsidiaries.

**B. The Proposed Amendment to Add First Bank MO Relates Back to the Original Complaint and Is Not Futile**

First Bank MO's claims relate back to the date of the initial complaint in this case. "As long as [the] defendant is fully apprised of a claim arising from specified conduct and has prepared to defend the action, his ability to protect himself will not be prejudicially affected if a new plaintiff is added, and he should not be permitted to invoke a limitations defense." 6A Wright & Miller, Fed. Prac. & Proc. § 1501 (1990, updated 2003). *Accord Holland III*, 62 Fed. Cl at 407-08; *Cross Construction Co. v. United States*, 225 Ct. Cl. 616 (1980); *Baldwin Park Community Hospital v. United States*, 231 Ct. Cl. 1011 (1982).

# EXHIBIT 4

# UNITED STATES
# COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| HOMER J. HOLLAND and<br>HOWARD R. ROSS,<br>FIRST BANKS, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Docket No.: 95-524C |

Pages: 1 through 62

Place: Washington, D.C.

Date: March 22, 2005

**HERITAGE REPORTING CORPORATION**

*Official Reporters*

1220 L Street, N.W., Suite 600
Washington, D.C. 20005-4018
(202) 628-4888
hrc@concentric.net

is already material sufficient in the record to establish that there's no genuine issue of material fact as to who the successor to the thrifts is?

MR. JOHNSON: Yes.

THE COURT: And that consists of the materials which have been submitted by the parties in connection with the motion for continuance and discovery?

MR. JOHNSON: That's correct.

THE COURT: Okay. Any thoughts on where we go from there in terms of procedurally?

MR. JOHNSON: Well, I think that, again, the Defendant should be required to respond to the outstanding motion for summary judgment on liability.

The Defendant suggests that a number of additional rounds of briefing and intervals of delay be inserted into the schedule the Court ordered on January 14th and modified thereafter.

Plaintiffs disagree entirely. There is no reason to delay expert discovery.

What we have here is a claim that belonged to River Valley, the Court held. And, of course, Plaintiffs had a different view during that briefing.

THE COURT: Understood.

MR. JOHNSON: But that's beside the point

for today's purposes. The claim belongs to the successor in interest to River Valley, who is First Bank MO as we understand things today.

The damages are the damages to River Valley. They are not going to change. The damage theories are not going to change, the methods of computation are not going to change. Barring any unknown issue now, anything Plaintiffs are not aware of, Dr. Holland would not amend his second supplemental damage report if First Bank MO were substituted for First Banks, Inc. So there is no reason to delay the Defendant's response to Dr. Holland's report, no reason to delay the Defendant's obligation to file a motion for summary judgment on damages, if any, on the same date that it submits its expert's rebuttal reports.

The claim is not going to change, it's merely the entity asserting the claim that could be changed if the Court wishes to proceed that way rather than decide the waiver point.

So we don't think any of this additional briefing is necessary that the Defendant is requesting in its submission and we think that the currently scheduled processes can simply run their course.

THE COURT: And that would take us through -- well, that would permit us to continue on

# EXHIBIT 5

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| HOMER J. HOLLAND,<br>HOWARD R. ROSS,<br>AND FIRST BANKS, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | ) | No. 95-524 C<br><br>(Judge G. Miller) |

STIPULATION OF FIRST BANKS, INC.

Pursuant to this Court's Order of December 3, 2004, Plaintiff First Banks, Inc. ("First Banks"), by and through its undersigned counsel, adopts the statements made on behalf of Plaintiffs Homer Holland and Howard Ross contained in the following documents, except to the extent that any such statements or submissions are inconsistent with or superceded by (1) supplemental, amended, or revised expert reports as First Banks may serve in response to its joinder as a Plaintiff, or in response to the dozens of boxes of documents that the defendant produced out of time, or the additional fact witnesses that the defendant identified out of time; or (2) the decisions of the Court in this case:

- the Initial Disclosures (September 22, 1999);
- the Objections and Responses of Plaintiffs Homer J. Holland and Howard R. Ross to Defendant's First Case-Specific Interrogatories And Second Request For Production of Documents (February 28, 2000);
- the expert reports, including any subsequent corrected, revised, or supplemental expert reports, of Homer J. Holland, Neil B. Murphy, and S. Lynn Stokes;
- the Parties' Joint Submission Describing Plaintiffs' Damages Claims and Setting Forth the Parties' Proposed Procedures for Resolution of Those Claims (October 10, 2003);
- the Joint Stipulation of Facts (December 31, 2003).

In addition, First Banks reserves the right to supplement or revise any previous statements or submissions in the event that after this date the defendant produces any additional documents or identifies any additional witnesses. Further, this stipulation shall not limit First Banks' rights under the Rules of the United States Court of Federal Claims to supplement or amend previous filings or submissions.

Respectfully submitted,

M.C. Garbow by Joshua P. Wilson

Melvin C. Garbow
ARNOLD & PORTER, LLP
555 Twelfth Street, N.W.
Washington, D.C. 20004-1206
(202) 942-5000 (tel.)
(202) 942-5999 (fax)

Counsel for plaintiffs
Holland and Ross and First Banks, Inc.

Of Counsel:

Howard N. Cayne
David B. Bergman
Michael A. Johnson
Joshua P. Wilson
ARNOLD & PORTER, LLP
555 Twelfth Street, N.W.
Washington, D.C. 20004-1206

Co-counsel for First Banks, Inc.:

Donald J. Gunn, Jr., Esq.
Sharon R. Wice, Esq.
Gunn and Gunn
First Bank Building
Creve Coeur
11901 Olive Blvd., Suite 312
P.O. Box 419002
St. Louis, Missouri 63141
(314) 432-4550 (tel.)
(314) 432-4489 (fax)

Dated: December 16, 2004

## CERTIFICATE OF SERVICE

I certify that on this 16th day of December 2004, the document entitled **Stipulation of First Banks, Inc.** was served by facsimile and First-Class Mail, postage prepaid on:

John H. Roberson, Esq.
James R. Whitman, Esq.
U.S. Dep't of Justice, Civil Division
Commercial Litigation Branch
1100 L Street, N.W.
Washington, D.C. 20530
Fax: 202-514-8640

*Attorney for Defendant*

Dated: December 16, 2004

Joshua P. Wilson

# EXHIBIT 6

Ryan, tto
Smith, P

# In the United States Court of Federal Claims

FILED
OCT 2 3 2003
U.S. COURT OF FEDERAL CLAIMS

* * * * * * * * * * * * * * * * * *

HOMER J. HOLLAND and HOWARD R. ROSS,

Plaintiffs,

v.

UNITED STATES,

Defendant.

* * * * * * * * * * * * * * * * * *

No. 95-524C
Filed: October 23, 2003

## ORDER

The court is in receipt of the parties' stipulation of dismissal of certain counts of the complaint with prejudice. In the parties' joint submission describing plaintiffs' damages claims and setting forth the parties' proposed procedures for resolution of those claims, the plaintiffs represent that they will not seek recovery for restitution of the benefit they conferred on the government under the contracts, and they will not seek to recover damages measured by the hypothetical cost of replacement capital. In addition, plaintiffs have elected not to seek damages relating to the government's breach of contract relating to the acquisition of Peoria Savings and Loan.

Plaintiffs represent that they will limit their damages to those caused by the government's breaches of contracts relating to the acquisitions of the Home, Mutual, Galva, and Republic thrifts. Further, plaintiffs state that they will present only two alternative claims for damages. First, plaintiffs will claim expectancy damages measuring the increased gains that Holland and Ross would have achieved from their operation and sale of the River Valley thrifts absent the government breach. Second, plaintiffs will claim lost value damages equal to the breach-induced decline in value of plaintiffs' ownership interests in River Valley, measured close to the time of the breach.

As set forth in the parties' stipulation of dismissal, pursuant to Rule 41(a)(1)(ii) of the Rules of the United States Court of Federal Claims, the following claims outlined in the complaint are **DISMISSED**, with prejudice: Count IV, unjust enrichment, Count V, restitution, Count VI, reformation of contracts; Counts IX and X, frustration of purpose. Finally, for the sake of clarity and to narrow the issues in this case, the court **ORDERS** the plaintiffs to file an amended complaint, which clearly states the remaining claims and

issues in this case.

**IT IS SO ORDERED.**

**MARIAN BLANK HORN**
**Judge**

# EXHIBIT 7

Desmond, J
DeRnelle, G

# In the United States Court of Federal Claims

RECEIVED
2003 MAR 21 P 1:14
CASE PROCESSING UNIT
CIVIL DIVISION/DMS

FILED
MAR 21 2002
U.S. COURT OF FEDERAL CLAIMS

* * * * * * * * * * * * * * * * * * *

**STANDARD FEDERAL BANK (formerly known as Heritage Federal Savings Bank),**

**Plaintiff,**

**v.**

**UNITED STATES,**

**Defendant.**

* * * * * * * * * * * * * * * * * * *

**No. 92-844C**
**Filed: March 21, 2002**

## ORDER

The court held a status conference in the above captioned Winstar-related case on Thursday, March 14, 2002. At the status conference, the court addressed plaintiff's motion for leave to file a supplemental expert report on reliance damages. Plaintiff's motion for leave to file a supplemental expert report was filed only the day before the status conference, on March 13, 2002. The amended complaint in the case was filed January 31, 2002, the defendant conceded liability, except for the successor in interest issue, on February 2, 2002, this court resolved the successor in interest issue as well as issues of liability on February 25, 2002 and the court's order scheduling the March 14, 2002 status conference was issued on February 25, 2002. In response to inquiries from the court, plaintiff's counsel stated both that the plaintiff had not considered requesting leave to file a supplemental expert report until the court issued its decision on liability on February 25, 2002 and that the decision to request leave was made the day before the status conference. According to a status report memorandum filed by the plaintiff on January 11, 2001, however, plaintiff considered the possible need for supplemental expert discovery more than a year prior to the court's decision on liability. Despite the plaintiff's last minute filing of a motion for leave to file a supplemental expert report, at the status conference, defendant, nonetheless, submitted to the court a carefully prepared opposition to the plaintiff's motion.

Because of the issuance of several decisions from the United States Court of Appeals for the Federal Circuit addressing the issue of damages in Winstar-related cases after the exchange of expert reports in the instant case had been accomplished, and because the plaintiff has claimed reliance damages in its complaint, which according to the plaintiff are inadequately addressed in the plaintiff's previous export report, in order to have a complete airing of the issues raised, the court **GRANTS** plaintiff's motion for leave to file a supplemental expert report on reliance damages. Plaintiff may submit a supplemental expert report to the defendant on or before **Monday, April 15, 2002**. Defendant may

depose plaintiff's expert on or before **Wednesday, May 15, 2002**. Defendant may submit a supplemental expert report to the plaintiff on or before **Friday, June 14, 2002**. Plaintiff may depose defendant's experts on or before **Monday, July 15, 2002**. Plaintiff shall be responsible for all of defendant's reasonable expenses related to the additional expert discovery described above. If plaintiff chooses not to submit a supplemental expert report, it shall file notice with the court so stating at the earliest possible time.

At the status conference, the court and the parties also discussed the resolution of plaintiff's non contract claims. Pursuant to those discussions, plaintiff has indicated it will file a motion to voluntarily dismiss those claims on or before **Wednesday, March 27, 2002**.

Finally, at the status conference, the court and the parties discussed a schedule for moving the case towards a trial on damages. Pursuant to those discussions, the parties shall submit Appendix G filings as detailed in the Rules of the United States Court of Federal Claims (RCFC), and as modified below, on or before **Wednesday, August 14, 2002**. The filings with the court are to include:

a. Witness List. Each party shall file a separate statement setting forth a list of witnesses to be called at trial, other than those to be used exclusively for impeachment. As to each witness, the party shall indicate the specific topics to be addressed in the expected testimony and the time needed for direct examination.

b. Joint Trial Exhibit List. The parties are to file a joint trial exhibit list divided into five sections:

i. Joint stipulated exhibits, to be numbered starting with 1-99 or 1-999, or further, as needed;

ii. Plaintiff's exhibits, to be numbered starting with 100-199, or 1000-1999, or the number sequence to begin following the completion of the 100 or 1000 sequence of numbers utilized for the joint exhibits;

iii. Defendant's exhibits, to be numbered 200-299 or 2000-2999, or the number sequence to begin following the completion of the 100 or 1000 sequence of numbers utilized for the plaintiff's exhibits;

iv. Plaintiff's objections to defendant's exhibits, including the basis for each objection; and

v. Defendant's objections to plaintiff's exhibits, including the basis for each objection.

The actual exhibits shall be brought to the trial by the parties with sufficient copies, including one for the witness, two for the court and the official copy to be submitted to the court reporter. The exhibits shall be bound or in a loose leaf notebook with all the pages in an exhibit sequentially numbered. If an exhibit itself contains separate documents, those separate documents shall be identified by an index attached to that exhibit or in the joint trial exhibit list. All pages in the exhibits shall be separately numbered. Loose submissions, such as maps, photographs, physical evidence and charts, may be submitted. Reduced copies of charts and photographs should be included in the bound volumes, if possible.

c. Stipulations. The parties shall file a joint stipulation of facts and a joint stipulation of issues of law containing separately numbered paragraphs covering all matters to which the parties have been able to stipulate during the course of proceedings. The court urges the parties to achieve joint stipulations to the fullest extent possible in order to reduce the time required for trial.

d. Issues of Fact and Law. The parties shall file a joint statement setting forth the issues of fact and the issues of law to be resolved by the court. Issues should be set forth in sufficient detail to enable the court to resolve the case in its entirety by addressing each of the issues listed. The statement of issues shall control the admissibility of evidence at trial and evidence will be deemed to be irrelevant unless it pertains to one or more of the issues.

e. Deposition Testimony. Any party intending to present substantive evidence by way of deposition testimony, other than as provided by Fed. R. Evid. 801(d), shall serve and file a separate motion for leave to file the transcript of this testimony. The motion shall show cause why the deposition testimony should be admitted and identify specifically the portion of the transcript the party intends to use at trial. The opposing party may file a response to this motion. Sufficient copies of proposed deposition pages for use at trial must be brought to the trial by the party intending to use such deposition testimony.

f. Responses. The parties are expected to cooperate in the preparation of the above-described documents. Any responses to matters raised by the opposing party should therefore be included in each party's initial submission. However, if anything new or unexpected is discovered, it may be addressed in a brief response which must be filed under cover of a motion for leave of the court to file the response, immediately upon making the discovery.

g. Memorandum of Contentions of Law and Fact. Each party shall file a memorandum of contentions of law and fact. The memorandum shall contain a summary of the party's basic factual contentions and any applicable legal authority. The memorandum also shall contain a full but concise exposition of the party's theory of damages, including an overview of that party's expert's report(s). Finally, each memorandum shall address all anticipated legal questions, including evidentiary problems, that the party expects may arise during the court of trial.

The parties shall appear at a pretrial conference on **Wednesday, August 28, 2002** at the National Courts Building, 717 Madison Place, N.W., Washington D.C. 20005. The courtroom number shall be posted on the day of the conference. Counsel for both parties shall appear in person. Prior to the pretrial conference, but after the filing of the Appendix G materials, the parties shall have held at least one discussion on settlement.

**IT IS SO ORDERED.**

**MARIAN BLANK HORN**
**Judge**

# EXHIBIT 8

# In the United States Court of Federal Claims

FILED
APR 26 2002
U.S. COURT OF FEDERAL CLAIMS

STANDARD FEDERAL BANK (formerly known as Heritage Federal Savings Bank),

Plaintiff,

v.

UNITED STATES,

Defendant.

No. 92-844C
Filed: April 26, 2002

## ORDER

The court held a telephone conference with the parties on April 26, 2002 to discuss plaintiff's motion for clarification of the court's March 21, 2002 order and defendant's response. In the March 21, 2002 order, after discussion with the parties at a March 14, 2002 status conference, the court granted the plaintiff's motion for leave to file a supplemental expert report on reliance damages, but required plaintiff to pay "all of defendant's reasonable expenses related to the additional expert discovery . . . ."

The order directing plaintiff to pay defendant's costs was a direct result of the fact that plaintiff had delayed the filing of its motion for leave to conduct supplemental discovery for a lengthy period of time. Although the exact date is not stated in the record inherited by the court, expert discovery closed in this case no later than April 27, 2000.[1]

---

[1] Procedural Order No. 2, signed by then Chief Judge Smith on August 11, 1997, addressed the discovery procedure for all Winstar-related cases before the court, except for the Glendale v. United States and Statesman v. United States cases and the Priority Cases identified in Appendix D of the Case Management Order. Pursuant to Procedural Order No. 2, expert discovery for the first-thirty Winstar-related cases, including the instant case, commenced upon the close of case specific fact discovery. According to the order issued on April 8, 1998 by Judge Hodges, the discovery judge at that time for the Winstar-related cases, case specific discovery for the first-thirty cases was set to close on July 31, 1999. Under Procedural Order No. 2, the plaintiff had thirty days to identify its expert witness(es) after the close of case specific factual discovery. Following the identification of its expert witness(es), plaintiff had sixty days to submit its expert report(s) to the defendant. Upon receipt of the plaintiff's expert report(s), the defendant had ninety days to depose the plaintiff's expert(s). The defendant's receipt of the plaintiff's expert report(s) also triggered the time for defendant to identify its expert witness(es). Defendant had thirty days after receiving the plaintiff's expert report(s) to identify any expert witnesses. Upon identifying its expert witness(es), the defendant had ninety days to submit its expert

In January of 2001, plaintiff in this case twice indicated to the court, first in a status report submitted on January 8, 2001 and then at a status conference on January 16, 2001, that it might file a motion for leave to conduct supplemental expert discovery following the United States Court of Appeals for the Federal Circuit's decisions in California Federal Bank v. United States and Glendale Federal Bank v. United States. The Federal Circuit issued its opinion in Glendale Federal Bank v. United States, 239 F.3d 1374 (Fed. Cir. 2001) on February 16, 2001 and in California Federal Bank v. United States, 245 F.3d 1342 (2001) on April 3, 2001. This court issued its opinion granting plaintiff's motion for partial summary judgment on contract liability in the instant case on February 25, 2002. On the same day, the court scheduled a status conference for March 14, 2002 at which the parties were to be prepared to discuss a schedule for resolving damages. On March 13, 2002, the day before the status conference and without advance notice to the government, the plaintiff filed its motion for leave to conduct supplemental expert discovery. The motion was filed almost two years after the latest possible date for the close of expert discovery, over a year following the Federal Circuit's decision in Glendale Federal Bank v. United States, 239 F.3d 1374, and almost a year following the Federal Circuit's decision in California Federal Bank v. United States, 245 F.3d 1342.

Plaintiff's motion for clarification asks the court to limit plaintiff's financial responsibility to: (a) court reporter costs and transcript fees incurred in connection with the supplemental deposition of plaintiff's expert and the government's expert; (b) travel expenses incurred by the government's expert in connection with his deposition; and (c) charges, at his customarily hourly rate, for time spent by the government's expert at his deposition and traveling to and from the place of the deposition. According to letters attached to the motion for clarification and sent by plaintiff's counsel to defendant's counsel concerning the cost of the supplemental discovery, plaintiff believed that it was not required, under the court's March 21, 2002 order, to pay the cost of defendant's expert's review and analysis of the plaintiff's expert's supplemental report, the preparation of defendant's own supplemental expert report and the time spent by defendant's experts in preparing for their supplemental deposition.

The court's March 21, 2002 order is unequivocal. After granting the plaintiff's motion to file a supplemental expert report, and setting out a schedule for supplemental discovery, as requested by the plaintiff, the order states: "Plaintiff shall be responsible for all of defendant's reasonable expenses related to the additional expert discovery described above." Moreover, the court's statements at the March 14, 2002 status conference, at which the supplemental discovery was discussed, also are unambiguous. At the conference, the court stated: "I have allowed the plaintiff to go ahead and supplement their

---

report(s) to the plaintiff. After receiving the defendant's expert report(s), the plaintiff had sixty days to depose the defendant's expert(s). Therefore, while there was no specific date for the close of expert discovery and no date mentioned in the record, assuming that each party took the maximum amount of time to complete discovery, the latest date expert discovery could have closed was April 27, 2000.

report, but at the same time any difficulties or expenses should be borne by the plaintiff as a result." The court also stated:

> And the expense issue and the location is very clear. It is to be borne by the plaintiff, the cost, and actually I don't really care whether it's in Washington or not, but if Washington is the location that's convenient for the defendant, then it will be Washington. If you can work it out with each other than you go somewhere else, but it's the cost that will be borne by the plaintiff.

Finally, at the conference, counsel for plaintiff asked the court: "Just so we are clear, do the costs include the fees of the defendant's expert?" and the court responded: "Yes. It includes the cost. If you want to do this, you have got to pay for it. If you don't want to do it, you don't have to pay for it. You are asking for it late. You are asking for it well after the fact."

In light of the clear language of the March 21, 2002 order and the court's comments at the March 14, 2002 conference, the court believes that it is unnecessary to clarify the March 21, 2002 order.[2] To respond to plaintiff's inquiry, however, the court notes that the phrase "all of defendant's reasonable expenses related to the additional expert discovery . . ." contained in the order at issue includes the reasonable cost of defendant's expert's review and analysis of the plaintiff's expert's supplemental report, the preparation of defendant's own supplemental expert report, if necessary, and the time spent by defendant's experts in preparing for and appearing at a supplemental deposition, if necessary. To address plaintiff's concern over its belief that its liability to defendant concerning the supplemental expert discovery could be open ended, which, based on the April 26, 2002 telephone conference and defendant's responsive filings does not appear unfounded, the court reminds the defendant that the plaintiff is only required to pay the reasonable costs of supplemental discovery, excluding such extraneous costs as preparing defendant's experts for trial on damages. The court is available in the event that the parties are unable to agree upon the calculation of defendant's reasonable costs related to the supplemental discovery.

**IT IS SO ORDERED.**

**MARIAN BLANK HORN**
**Judge**

---

[2] If plaintiff had wished to file a motion for reconsideration, it should have done so pursuant to Rule 83.2(f) of the Rules of the United States Court of Federal Claims. To succeed on a motion for reconsideration, the moving party "must show: (1) that an intervening change in controlling law has occurred; (2) that previously unavailable evidence is now available; or (3) granting the motion is necessary to prevent manifest injustice. " Coconut Grove Entm't, Inc. v. United States, 46 Fed. Cl. 249, 255 (2000) (citing Fru-Con Const. Corp. v. United States, 44 Fed. Cl. 298, 301 (1999)). The court notes that plaintiff has not asserted the presence of any of the above mentioned factors.

# EXHIBIT 9

Davidson, J
Madden, J

# In the United States Court of Federal Claims

FILED
APR 15 2003
U.S. COURT OF FEDERAL CLAIMS

RECEIVED
2004 APR 16 P 1:00
CASE PROCESSING UNIT
CIVIL DIVISION/OIL

THE LONG ISLAND SAVINGS BANK, FSB, et al.,

Plaintiffs,

v.

THE UNITED STATES OF AMERICA,

Defendant.

No. 92-517C

(Filed: April 15, 2003)

## ORDER

This matter is before the Court on plaintiffs' motion, filed on February 1, 2002, to serve supplemental expert reports concerning damages. The motion was held in abeyance pending resolution of other motions that have now been decided. Defendant opposes this motion, and oral arguments were heard on April 2, 2003. Parties have been allowed to submit similar supplemental expert reports in several other Winstar cases. See, e.g., Standard Fed. Bank v. United States, No. 92-844C (Fed. Cl. Mar. 21, 2002); Hansen Bancorp, Inc. v. United States, 51 Fed. Cl. 737 (2002); Admiral Fin. Corp. v. United States, No. 93-489C (Fed. Cl. Jan. 31, 2002); First Fed. Sav. Bank of Hegewisch v. United States, No. 93-162C (Fed. Cl. Oct. 17, 2001). In some of these cases, the supplemental reports in question contained new damages theories. See, e.g., Pl.'s Mot. for Leave to File Supp. Expert Reports on Reliance Damages, Stand. Fed. Bank v. United States, No. 92-844C, at 1 (Fed. Cl. filed Mar. 13, 2002) (requesting leave to submit a supplemental expert report as to reliance damages even though "[n]either of Plaintiff's [previous] expert reports addressed recovery of reliance damages"); Opp'n of the United States to Admiral's Mot. for Leave to Supplement the Report of Vincent Love, Admiral Fin. Corp. v. United States, No. 93-489C, at 6 (Fed. Cl. filed Jan. 16, 2002) (stating that the supplemental report to be filed by the plaintiff "add new opinions on damages"). Therefore, after careful consideration of the briefs and oral arguments, the Court GRANTS plaintiffs' motion. The Court reserves ruling on the admissibility of the evidence at this time, however, because the proper procedure would be a motion in limine or summary judgment.

As the motion for leave to serve the supplemental expert reports was filed after discovery closed, plaintiffs shall be responsible for all of defendant's reasonable costs related to *both* additional reports. In Standard Fed. Bank v. United States, No. 92-844C, at 3 (Fed. Cl. Apr. 26, 2002), Judge Horn expounded that those costs include "the reasonable cost of defendant's expert's review and analysis of the plaintiff's expert's supplemental report, the preparation of defendant's own supplemental expert report, if necessary, and the time spent by defendant's experts in preparing for and appearing at a supplemental deposition, if necessary." Plaintiffs in this case will be responsible for the same costs, but as in Standard Fed. Bank, they are "only required to pay reasonable costs of supplemental discovery, excluding such extraneous costs as preparing defendant's experts for trial on damages." Id.

Lawrence S. Margolis

LAWRENCE S. MARGOLIS
Senior Judge, U.S. Court of Federal Claims

# EXHIBIT 10

**Winstar Coordinating Committee 90-8C July 23, 1997**

**PAGE 1 TO PAGE 99**

**Heritage Reporting**

**(202) 628-4888**

**CONDENSED TRANSCRIPT AND CONCORDANCE**
**PREPARED BY:**

*Heritage Reporting Corporation*
*Suite 625*
*1220 L Street, N. W.*
*Washington, DC 20005*
*Phone: (202) 628-4888*
*FAX: (202) 371-0935*

Page 85

going to involve many different kinds of burdens with regard to discovery. We believe that there is a self-policing effect to the order that we presented because it has very tight deadlines and provides for extensions and provides for the Court to give extensions for good cause showing.

We want to move these cases along. If we submit these incredibly burdensome discovery requests, the government's going to come and say I need an extension. And if we're being unreasonable, they're going to get an extension and we're not going to get our cases pushed along.

So we have a strong motivation not to submit spurious discovery. And we don't think you need to impose numerical limits. The rules of the Court currently don't provide for it.

If you are inclined to provide numerical limits, they need to be much greater. Common discovery is taking the place of discovery in 120 to 130 cases. You can't do that in 20 depositions. Maybe 30. I'm not sure.

I understand that about 400 interrogatories were submitted in the Glendale case alone. I strongly suspect that 25 is not enough under any interpretation. And it's certainly not enough if you have to ask one question at a time with no conjunctive subculture disjunctives.

There's a discovery Judge in this case. If you made Judge Miller available, if one side or the other if

Page 86

he's in discovery, there's a remedy and we think that's what the Court ought to use.

We've already talked about the fact that the government has proposed common discovery for the government

We don't oppose depositions. We do oppose interrogatories and documents and third party discovery. We don't think that's common discovery.

With regard to case specific discovery, we had proposed initial disclosures like you would get in Federal Court litigation work. Going in you say here are the people who should have knowledge. So that people can start to plan. We thought that was important, especially because our order provides as you indicated that the first 90 days is only going to be documents. And that's something that we're consistent with the government on.

But if we're not going to have any interrogatories, this initial discovery, disclosure if you will, could be very helpful to the parties in formulating the case. It's consistent with the way cases are handled in most Federal Courts and we urge you to adopt our proposal in that regard. And as Mr. Stouck points out, it's the way it will work here under the new proposed rules as well.

Let's see, I'll try to skip here. One further point I forgot to make with regard to limitations. If you're inclined to implement limitations, they ought not to

Page 87

be per case. They ought to be per transaction. Because one case may have one transaction and one case may have seven transactions. Not that I'm urging you to implement limitations.

With regard to expert discovery, we basically propose that it be completed in seven months The government's process changes the deadlines and the filing dates to add an additional two months.

We think that seven months is more than enough time to conduct expert discovery. It's much more than the period allowed for expert discovery in the priority cases. I don't see any basis to build in at the front an additional two months delay. If something special happens, they can always come to the Court.

In that regard, I would note that the order that we submitted gave you the discretion to order expert discovery during phase two for special reasons. The government's order would take away that discretion. It deletes that provision of our order.

One other sort of unique thing of what the government has proposed is they proposed that after plaintiffs – after we have a year of fact discovery by both sides, after plaintiffs submit their experts' reports, the government will have 120 days unilaterally to conduct more fact discovery relating to damages

Page 88

That's not the way it's ever worked in any case I've ever been involved with. Usually, you've got simultaneous exchanges of experts' reports. A year is enough time to do your damages discovery By the time we get to these cases, the government will have been through the priority cases. They're going to have, they're going to know what the damages issues are. They're going to know what the damages theories are. They're going to know what the experts are.

And I think you should make it very clear in this order that you don't anticipate this to happen. And that parties are not to go about and try to undermine the careful plan that's set forth in this order in connection with seeking extensions in discovery disputes relating to expert discovery.

If there's some need to conduct fact discovery after an expert report, it's handled – let's change the way we do it and let's move – let's just have a discovery period free for all addressing both and do it all at the same time. I don't think that's necessary, but it's certainly preferable to adding another 120 days of fact discovery on damages after we do our expert report.

One final note. We had put in a provision that provided that if there's a discovery dispute that affects many cases, there ought to be a procedure to treat that

Page 89

discovery dispute under common issues procedures. That's been eliminated from the proposal in the government's submission

I would urge the Court to look very carefully at the word changes that have been made. The way these are structured is that the order as we've submitted is in plain black and white the things that the government took out or have a line through them. The things that the government added are indicated in grey. That will give you a good indication of who had what in their orders and where the differences came from. Thank you for your consideration.

THE COURT: Okay. Mr. Cohen.

MR. COHEN: Yes, Your Honor. I'll try to make this brief. Because there are just a few major principles that are at stake.

The first principle deals with so-called common discovery. The purpose of common discovery as I recall was to – it actually began as an attempt to limit the number of times a single individual would be deposed.

It has grown from that under the plaintiffs' proposal from an attempt to limit the number of depositions to the point where under the plaintiff's plan common discovery would overwhelm specific discovery and it would do so for a number of reasons.

First, it would do so because their definition of

Page 90

common discovery is so broad that indeed the way Mr. Garvin explained it makes it even worse. He's saying, as I understood it, that the government could not decline to produce a document if it mentioned a case specific – a specific institution or a number of institutions.

Under that definition, their definition being that anything is common which is not solely case specific, whatever that means, their definition of common discovery is so broad that it could cover everything, not simply something which is allegedly common.

The second reason why the common discovery threatens to overwhelm under the plaintiff's proposal specific discovery is that they have no limits on the number of document interrogatories or requests for productions of documents or requests for admissions that could be served.

So as I heard the counsel explain, it's possible that we could receive well over 400 opportunities, well over 400 requests for productions of documents, well over 400 requests for admissions. And in that way common discovery, which was not intended to do anything much more than prevent numerous depositions of one person would overwhelm the case specific discovery.

In contrast, our provision for common discovery puts a limit by attempting to define more carefully the nature of common discovery by limiting the number of

# EXHIBIT 11

Davidson, J.
Brown, G.

# In the United States Court of Federal Claims

FILED
JUL 13 2000
U.S. COURT OF FEDERAL CLAIMS

* * * * * * * *

| | | |
|---|---|---|
| LA VAN, et al., | * | |
| Plaintiffs, | * | |
| and | * | |
| FEDERAL DEPOSIT INSURANCE CORPORATION, | * | No. 90-581C |
| | * | |
| Plaintiff-Intervenor, | * | Filed: July 13, 2000 |
| | * | |
| v. | * | |
| UNITED STATES OF AMERICA, | * | |
| Defendant. | * | |

* * * * * * * *

## ORDER

FDIC seeks leave to amend its expert report beyond the 60 day period permitted by Procedural Order 2, §V.A.2. Defendant opposes any amendments to the expert report. §V.A.2. does not provide for amendments to the expert report. The agreement states, "each plaintiff shall deliver to defendant a final written report . . . within 60 days after identification." While we encourage the parties to permit reasonable requests for exceptions that are in the interest of justice, we cannot require it in this case, given this language. Counsel may appeal to the Chief Judge or request clarification if they wish.

Robert H. Hodges, Jr.
Judge

# In the United States Court of Federal Claims

* * * * * * * *

LA VAN, et al., *

Plaintiffs, *

and *

FEDERAL DEPOSIT INSURANCE CORPORATION, *

Plaintiff-Intervenor, *

v. *

UNITED STATES OF AMERICA, *

Defendant. *

* * * * * * * *

No. 90-581C

Filed: August 2, 2000

FILED
AUG 02 2000
U.S. COURT OF FEDERAL CLAIMS

**ORDER**

We ruled on plaintiff FDIC's request that it be permitted to amend the expert report of Dr. Litan based on the representations made to the court by the United States. While the hearing was not recorded, we recall stating that experts always are permitted to revise and extend their reports, and indeed are required to do so. Defendant's representation was that this expert addressed new issues that resulted in new causes of action. That is the basis upon which we denied plaintiff's supplemental report. Defendant represented to the court that it would be impossibly prejudiced by these new causes of action because the expert already had been deposed. If any of these representations were not correct, we will reconsider. Defendant will respond within the time allowed by applicable rules of this court.

Robert H. Hodges, Jr.
Judge

**CERTIFICATE OF SERVICE**

I hereby certify that on this 3rd day of April 2007, a copy of the foregoing "DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE A NEW EXPERT REPORT WITH RESPECT TO DAMAGES " was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ John H. Roberson
John H. Roberson