**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| HOMER J. HOLLAND,<br>HOWARD R. ROSS,<br>AND FIRST BANK | ) | |
| Plaintiffs, | ) | No. 95-524 C |
| v. | ) | (Judge G. Miller) |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR LEAVE TO REVISE AND SUPPLEMENT THEIR DAMAGES CLAIMS**

Pursuant to the Court's Order of March 13, 2007, Plaintiffs hereby submit this reply in support of their motion for leave to revise and supplement their damages claims.

Defendant's opposition attacks a straw man. Contrary to Defendant's arguments, First Bank's joinder to this case two years ago is wholly irrelevant to Plaintiffs' current request to supplement their damages claims, and no government prejudice will result from allowing Plaintiffs to pursue a claim for mitigation damages measured by the cost of retained earnings. As in all the other *Winstar*-related cases, Plaintiffs here have a right to present damages claims at trial that adhere to the guidance provided by the Federal Circuit in its *Winstar* damages decisions.[1] The Federal Circuit ruling approving the retained earnings damages claim that Plaintiffs now seek leave to assert was issued in March 2005, *Home Sav. of Am., FSB v. United*

[1] *See* Pl's Mar. 20, 2007 Motion at 5-6 (citing *Citizens Fed. Bank, FSB v. United States*, 59 Fed. Cl. 507 (2004); *The Long Island Sav. Bank, FSB v. United States*, No. 92-517 (Fed. Cl. April 15, 2003); *Sterling Sav. v. United States*, No. 95-829C (Fed. Cl. Dec.17, 2003); *Hansen Bancorp, Inc. v. United States*, No. 92-828C (Fed. Cl. Feb. 14, 2002); *Stan. Fed. Bank v. United States*, No. 92-844C (Fed. Cl. Mar. 13, 2002)).

*States*, 399 F.3d 1341 (Fed. Cir. 2005), and has since gained further approval in damages trials in this Court.[2] Plaintiffs should be permitted to account for this development, which post-dates Plaintiffs' last revision to their expert damages calculations.[3]

Furthermore, the Court should deny Defendant's request that Plaintiffs pay the costs Defendant alleges it has spent defending against Plaintiffs' damages claims. The "American rule" is that absent bad faith -- a showing Defendant does not and cannot make -- each party must bear its own litigation costs, including expert fees.[4] Moreover, Defendant's complaint that Plaintiffs have created inefficiencies by supplementing their damages claims over the years is belied by Defendant's own litigation conduct in this matter. It is Defendant -- not Plaintiffs -- who has extended this case several years beyond its initially scheduled 2004 trial date by interposing procedural objections and dispositive motions (including its 2003 Motion to Dismiss, 2004 and 2005 "real party in interest" objections, and 2006 "accord and satisfaction" defense) that it could have raised at the outset. That Plaintiffs now seek to update their damages claims in accordance with Federal Circuit jurisprudence is a byproduct of *Defendant's* litigation inefficiencies, and not a reason to reimburse Defendant's costs.

---

[2] *See, e.g.*, *Long Island Sav. Bank, FSB v. United States*, 67 Fed. Cl. 616 (Sept. 15, 2005).

[3] Plaintiffs also request that the Court grant their now unopposed motion to revise Dr. Murphy's lost value damages analysis in the manner described in Plaintiffs' March 20, 2007 Motion. *See* Def.'s Opp. Brief at 5 n.2 (consenting to Dr. Murphy's revision to account for the Court's Nov. 17, 2006 liability ruling).

[4] *See, e.g.*, *Applegate v. United States*, 52 Fed. Cl. 751, 755 (2002) ("Traditionally, under the so-called 'American Rule,' litigants generally pay their own way.") (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975)); *JL Simmons Co., Inc. v. United States*, 60 Fed. Cl. 388, 399 n.15 (2004) (American rule prevents recovery of expert fees beyond those costs specifically authorized by statute); *Total Minatome Corp. v. Jack/Wade Drilling, Inc.*, 258 F. 3d 385, 390 n.4 (5th Cir. 2001) ("The general rule in American lawsuits is that, absent a finding of bad faith, each party bear its own costs and expenses.").

## I. <u>First Bank's Joinder is Irrelevant to Plaintiffs' Motion to Revise Their Damages Claims</u>

The central argument in Defendant's opposition brief -- that First Bank's joinder to this case was conditioned on a promise by Plaintiffs forever to refrain from revising their damages claims -- distorts the record, and mischaracterizes the Court's reasoning in joining the real-party-in-interest here. As Defendant recounts repeatedly in its brief, Plaintiffs represented to the Court that "the joinder of First Bank, MO is a ministerial act that will have no effect on the substance of the claims at issue in this action, and no effect on Plaintiffs' calculation for damages."[5] First Bank's addition to the case has proceeded as promised: Plaintiffs amended the complaint only to name First Bank as party plaintiff and to insert its name throughout the pleadings,[6] and this Court held Defendant liable to First Bank for the same breaches of contract that Holland and Ross alleged from the outset.[7]

Furthermore, Plaintiffs have *not* changed their damages claims "as a result of First Bank's joinder." Indeed, as promised, First Bank's joinder has had "no effect on Plaintiffs' calculations for damages."[8] This remains the case with Plaintiffs' motion for leave to supplement their damages claims with a cost of retained earnings analysis: *there is no relationship whatsoever between First Bank's joinder and Plaintiffs' proposed damages revision*. Rather, Plaintiffs' proposed revisions are aimed entirely at presenting a damages case consistent with prevailing Federal Circuit precedent.

When the Court ruled to permit First Bank's (and First Banks, Inc.'s) joinder, its decision

---

[5] Pl's Motion to Resume Pretrial Activities April 12, 2005.

[6] *See* Third Amended Complaint.

[7] *See Holland v. United States*, 74 Fed. Cl. 225, 258-263 (2006).

[8] *See* Def.'s Opp. Brief at 3-7 (quoting *Holland v. United States*, No. 95-524C, (Fed. Cl. May 12, 2005) (Opinion and Order permitting the joinder of First Bank).

was *not premised* on prohibiting *any* future revisions to Plaintiffs' damages claims. Rather, the Court directed that the joinder of First Bank may not cause or give rise to new damages claims. It has not. Plaintiffs have not revised their damages theories since the court-authorized submission of Dr. Holland's Second Supplemental Report in February 2005 -- prior to First Bank's joinder -- and seek to do so now for reasons that have nothing whatsoever to do with First Bank's addition to the case. Instead, almost two years removed from First Bank's joinder, Plaintiffs simply seek to harmonize their damages claims with the Federal Circuit's jurisprudence in preparation for a 2007 trial.[9]

## II. This Court Has Routinely Permitted *Winstar* Plaintiffs to Revise Their Damages Claims to Conform to Federal Circuit Precedent

As Plaintiffs demonstrated in their March 20, 2007 filing, this Court has routinely allowed *Winstar* plaintiffs to update their damages claims in reaction to Federal Circuit precedent, particularly when long periods have elapsed between the original development of a plaintiff's expert damages analysis and an eventual damages trial.[10] This approach is consistent with the Federal Circuit's expressed hope that *Winstar* plaintiffs adapt to its evolving guidance so that "the remainder of the *Winstar* cases can be disposed of … based on the particular facts of the

[9] In its opposition brief, Defendant states that should the Court permit Plaintiffs to pursue a retained earnings damages claim, Defendant would file yet another motion for reconsideration of this Court's ruling permitting First Bank's joinder. *See* Def.'s Opp. Brief at 9 n.5. The Court should decline Defendant's invitation to revisit First Bank's joinder, and refuse its proposed *ninth* brief on that issue. *See* Docket ## 232, 242, 250, 256, 262, 279, 283, 365 (Defendant's previous eight briefs opposing First Bank's joinder).

[10] *See* Pl's Mar. 20, 2007 Mot. at 4-6 (citing *Citizens Fed. Bank, FSB v. United States*, 59 Fed. Cl. 507 (2004); *Sterling Sav. v. United States*, No. 95-829C, (Fed. Cl. Nov. 10, 2003) (Order directing parties to address whether changes in intervening jurisprudence by the Federal Circuit justify revision to damages claims); *Sterling Sav. v. United States*, No. 95-829C, (Fed. Cl. Dec. 17, 2003) (Order permitting revision of expert reports); *The Long Island Sav. Bank, FSB v. United States*, No. 92-517 (Fed. Cl. April 15, 2003); *Stan. Fed. Bank v. United States*, No. 92-844C (Fed. Cl. Mar. 13, 2002); *Hansen Bancorp, Inc. v. United States*, No. 92-828C (Fed. Cl. Feb. 14, 2002) (Order authorizing revisions to expert report to adapt to intervening Federal Circuit rulings after a period of delay and where trial "was in sight")).

case, and without further dispute over the theory by which damages may be calculated."[11] In the context of consolidated cases working their way through trial and appeal, it is inevitable and desirable that parties whose cases remain pending react and adapt to decisions in closely related preceding cases. The Court should reject Defendant's argument that Plaintiffs must stick their heads in the sand and present to the Court a damages case that ignores developing law.

That Plaintiffs have supplemented their damages claims previously should not bar the revision Plaintiffs now propose. As was proper, Plaintiffs earlier revised their damages calculations in reaction to new information learned in discovery,[12] and to adapt to the Court's rulings on liability.[13] Moreover, Plaintiffs here are not the first *Winstar* plaintiffs to revise their damages claims more than once.[14]

For example, in the *American Federal* case, plaintiff initially designated two damages experts, each of whom presented initial reports in July 2001, and then supplemental expert reports in January 2005.[15] Then, in December 2005 -- after the Court ruled on the parties' respective cross-motions for summary judgment upon damages -- American Federal introduced a new cost of replacement capital damages model through a new expert, John Jay.[16] On March 21, 2006, in order to address certain information disclosed in the defendant's experts' reports and

[11] *Glendale Federal Bank, F.S.B. v. United States*, 378 F.3d 1308, 1313 (Fed. Cir. 2004).

[12] *See* Dr. Holland's Second Supplemental Report dated February 21, 2005 (responding to testimony by late disclosed government fact witness Larry Kenny).

[13] *See* December 2003 Supplemental Expert Reports of Dr. Holland and Dr. Murphy (responding to the Court's liability decision concerning Peoria goodwill).

[14] *See Sterling Savings v. United States*, 95-829C (Fed. Cl.) (multiple supplemental reports permitted to adapt to Federal Circuit precedent); *American Federal Bank, FSB v. United States*, 95-498C (Fed. Cl.) (same).

[15] *See Am. Fed. Bank FSB v. United States*, 68 Fed. Cl. 346, 355-360 (2005) (discussing reports and revised calculations of experts Roger Kormendi, PhD and S. Lynn Stokes, CPA).

[16] According to the government, Mr. Jay's model was the "*eighth* damage model" presented by American Federal. *See Am. Fed. Bank, FSB v. United States*, No. 95-498C, Def.'s Mem. of Contentions of Law at 3, Feb. 28, 2006 (emphasis in original) (attached as Exhibit 1).

depositions, American Federal revised its damages model and provided the Court with Mr. Jay's First Supplemental and Rebuttal Expert Report.[17] Finally, during American Federal's damages trial, Mr. Jay introduced another damages model during his rebuttal testimony in which he used different figures and applied a different methodology.[18] All of Mr. Jay's damages calculations were submitted past the initial discovery cut-off date, and after briefing on summary judgment, but were allowed by the Court as they were aimed at assisting the Court in making an accurate damages calculation at trial.[19]

As in *American Federal*, where later adaptation of Plaintiffs' damages claims assisted the Court in making a fair and reasonable approximation of damages at trial consistent with prevailing precedent, the Court here should allow Plaintiffs to submit their proposed retained earnings damages claim.

## III. <u>Plaintiffs' Retained Earnings Claim Will Not Prejudice Defendant</u>

Defendant argues that it will be prejudiced by Plaintiffs' proposed damages revision, complaining that Plaintiffs' retained earnings claim will require Defendants to engage in additional expert discovery. But the Court has already ordered a schedule for pretrial activities that provides ample time for expert discovery prior to trial, during which Defendant can prepare its defense. There can be no prejudice to Defendant where, as here, it is provided a full and fair opportunity to depose Plaintiffs' expert and prepare a rebuttal report before trial.[20]

---

[17] *Am. Fed. Bank, FSB v. United States*, 72 Fed. Cl. 586, 611 (2006).

[18] *Id*. at 611, 628.

[19] *Id*. at 612 (the Court used "Mr. Jay's *several* models to produce a . . . suitable [damages award]" (emphasis added)).

[20] *See Transamerica Ins. Corp. v. United States*, 28 Fed. Cl. 418, 420-22 (1993) (expert witness testimony should be heard at trial provided the expert was made available for deposition before trial); *Mid-America Tablewares, Inc. v. Mogi Trading Co.*, 100 F.3d 1353 (7th Cir. 1996) (no prejudice from late disclosure of expert opinion where defendant had time to depose expert

Footnote continued on next page

Indeed, given Defendant's most recent line of argument to the Federal Circuit concerning mitigation damages in the *Winstar* cases, it is Plaintiffs who may be prejudiced if they are barred from presenting a claim for the costs of retained earnings. In a brief filed yesterday in the *American Federal* case, Defendant argued that "the trial court erred" by awarding cost of replacement damages to the plaintiff there, "[b]ecause the retention of earnings mitigated the breach."[21] According to Defendant, the plaintiff "had replaced all but [a de minimis amount] amount of [breached] goodwill … with retained earnings."[22] Because the plaintiff did not quantify and claim damages in association with those retained earnings, Defendant argued, plaintiff forfeited its right to seek *any* other damages. Defendant would surely raise the same argument on appeal in this case if Plaintiffs were not permitted to present a damages computation based upon the cost of retained earnings, and the Court then awarded damages based upon another of Plaintiffs' damages theories.

Defendant argues that Plaintiffs' retained earnings claim would increase the total quantum of damages that Plaintiffs seek at trial. This is neither relevant nor correct. As Plaintiffs stated during the March 12, 2007 Status Conference, and in their March 20, 2007 filing, should the Court permit Plaintiffs to submit a retained earnings claim, Plaintiffs intend to

---

Footnote continued from previous page
before trial); *ABB Air Preheater, Inc. v. Regenerative Environmental Equipment Co.*, 167 F.R.D. 668, 672 (D. N.J. 1996) ("the pivotal issue is whether admission of the evidence will result in incurable prejudice to the resisting party.").

[21] *Am. Fed. Bank, FSB v. United States*, No. 2007-5440, Defendant-Appellant's Brief at 18 (attached as Exhibit 2).

[22] *Id.* at 21.

set aside their claim for lost leverage profits, reducing Plaintiffs' claims for damages by roughly $31 million.[23] Plaintiffs' claim for retained earnings damages will not exceed this amount.

Defendant further complains that Plaintiffs did not set forth the precise contours of their retained earnings damages claim in their March 20, 2007 filing. No such requirement was imposed by the Court's March 13, 2007 Order, which directed Plaintiffs to "file and serve a *motion for leave* … to submit a supplemental damages analysis" -- not to set forth the analysis itself. As Plaintiffs explained, and Defendant is aware, Plaintiffs intend to seek retained earnings damages consistent with *Home Savings*, *see* Pl's March 20, 2007 filing at 4, a claim against which the government has defended in several other cases. Should the Court grant Plaintiffs' motion, Plaintiffs will disclose their retained earnings analysis through an expert report by Dr. Holland on June 1, 2007, as the Court's March 20, 2007 Scheduling Order provides.

## IV. <u>The Court Should Deny Defendant's Request for Costs</u>

The Court should deny Defendant's request that Plaintiffs pay all Defendant's alleged costs in defending against Plaintiffs damages claims. "The general rule in American lawsuits is that, absent a finding of bad faith, each party bear its own costs and expenses,"[24] including expert fees.[25] Defendant cites no reason to depart from that standard here and certainly can make no allegation that Plaintiffs are acting in bad faith to revise their damages claims. Indeed, Defendant's own litigation conduct is responsible for the years-long delays in this case that have occasioned Plaintiffs' need to update their damages analyses.

---

[23] *See* Pl's Supp. Appdx. dated Sept. 21, 2005 at Tab 2 (Dr. Holland's Corrected Second Supp. Report at 17, ¶ 48 (b)(c) & (d)).

[24] *See Total Minatome Corp*, 258 F.3d 385, 390 n.4 (5th Cir. 2001); *see also Applegate v. United States*, 52 Fed. Cl. 751, 755 (2002); *Griffin v. United States*, 21 Cl. Ct. 1, 5 (1990) ("Since 1796, the United States has followed the general rule that each party to a judicial proceeding must bear its own costs of litigation.").

[25] *See JL Simmons Co., Inc. v. United States*, 60 Fed. Cl. 388, 399 n.15 (2004).

Since this Court's original liability ruling in favor of Holland and Ross in July 2003, Defendant has interposed an unending series of procedural objections and dispositive motions, all of which raised issues that Defendant could have litigated much earlier in the case. In fact, Defendant could have challenged the standing of Plaintiffs Holland and Ross, opposed the joinder of River Valley's successor, and asserted its "accord and satisfaction" defense *all in connection with the 2001 and 2002 summary judgment briefing* in this case -- if not sooner. Instead, Defendant has raised these issues individually, in succession, over the last three years.[26]

Defendant's inefficient approach to litigating these issues -- resulting in the cancellation of *three* previously scheduled damages trials -- has imposed significant costs and expenses on Plaintiffs, whose ultimate damages award will not benefit from pre-judgment interest. Because Defendant's own litigation conduct is responsible for the delays here, Plaintiffs should not be charged with any of Defendant's costs associated with Plaintiffs' rightful amendment of its damages theories to conform its trial presentation to the current state of law.

## **CONCLUSION**

For the reasons stated, the Court should grant Plaintiffs' motion for leave to submit a supplemental retained earnings damages analysis. Plaintiffs further respectfully request that the Court grant Plaintiffs' unopposed motion to revise Dr. Murphy's damages analysis in the manner described in Plaintiffs' March 20, 2007 filing. In addition, Plaintiffs request that the Court deny Defendant's requests for costs, and deny Defendant leave to submitted any proposed motion to revisit First Bank's joinder.

---

[26] *See* Def.'s Mot. to Dismiss dated Dec. 2, 2003 (seeking dismissal of Holland and Ross); Def.'s Opposition to Joinder of First Banks, Inc. dated April 12, 2004; Def.'s Motion for Continuance dated Jan. 25, 2005 (challenging joinder of First Banks, Inc.); Def.'s Cross Motion for Summary Judgment dated Dec. 5, 2005 (raising accord and satisfaction defense).

Respectfully Submitted,

/s/ David B. Bergman
David B. Bergman
ARNOLD & PORTER, LLP
555 Twelfth Street, N.W.
Washington, D.C. 20004-1206
(202) 942-5000 (tel.)
(202) 942-5999 (fax)

Counsel for plaintiffs
Holland and Ross and First Bank.

*Of Counsel*:
Melvin C. Garbow
Howard N. Cayne
Michael A. Johnson
Joshua P. Wilson
ARNOLD & PORTER, LLP
555 Twelfth Street, N.W.
Washington, D.C. 20004-1206

*Co-counsel for First Bank*:
Donald J. Gunn, Jr., Esq.
Sharon R. Wice, Esq.
Gunn and Gunn
First Bank Building
Creve Coeur
11901 Olive Blvd., Suite 312
P.O. Box 419002
St. Louis, Missouri 63141
(314) 432-4550 (tel.)
(314) 432-4489 (fax)

Dated: April 10, 2007

**CERTIFICATE OF SERVICE**

I certify that on this 10th day of April 2007, I caused the foregoing **Plaintiffs' Reply in Support of Their Motion for Leave to Revise and Supplement Their Damages Claims** to be filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

Dated: April 10, 2007 /s/ Joshua P. Wilson
Joshua P. Wilson

# EXHIBIT 1

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| AMERICAN FEDERAL BANK, FSB, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 95-498C |
| | ) | (Judge Lettow) |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

## DEFENDANT'S MEMORANDUM OF CONTENTIONS OF LAW

Pursuant to the Court's orders dated December 14, 2004 and November 21, 2005, and paragraph 14 of Appendix A of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully submits the following memorandum of contentions of law.[1]

## INTRODUCTION AND SUMMARY OF THE CASE

After a trial as to liability-related issues, this Court, on September 30, 2004, ruled that implied-in-fact "goodwill contracts" had been formed in 1982 with respect to four underlying thrift mergers. American Fed. Bank, FSB v. United States, 62 Fed. Cl. 185, 205 (2004) ("AmFed I"). The Court further determined that these implied-in-fact contracts were superseded by a "substitute[] contract" that was formed when AmFed undertook its modified stock conversion in late 1988, and that FIRREA's capital regulations breached this implied-in-fact, substitute contract in December 1989. Id. Lastly, the Court concluded that AmFed and the Government formed an implied-in-fact contract that permitted AmFed to count subordinated debentures issued in

---

1/ Simultaneous with the filing of this brief, we are also submitting, pursuant to RCFC App. A ¶ 14, a "Memorandum of Contentions of Fact."

account as an offset to these costs; and (4) the merger between CCB Financial Corporation ("CCB") and AmFed in mid-1997 "was extraneous to the breach and to the mitigation" and, thus, due to its remoteness, AmFed's stock price at the time of the CCB merger "cannot be used in measuring the actual cost of replacement capital."[5] Id. at 357.

On December 9, 2005, AmFed issued its eighth damage model – allegedly to demonstrate the cost it incurred in replacing the goodwill lost – prepared by Mr. John R. Jay, a mid-level manager with AmFed's current successor-in-interest, SunTrust Banks, Inc. ("SunTrust").[6] Mr. Jay issued a corrected report on December 13, 2005 (PX 3336), in which he claims that AmFed, and three subsequent acquirers, including SunTrust, have sustained in the past, and will sustain in the future, $92.973 million in damages as a result of two events: (1) the conversion of $13.5 million in subordinated debt to non-cumulative, perpetual preferred stock in 1990 and then, in 1993, the exchange of the preferred stock for common stock for non-breach reasons; and (2) raising $17.2 million in tangible capital in March 1993 by voluntarily issuing slightly more than two million shares of common stock. PX 3336 at 29-30.

In its Memorandum of Contentions of Facts and Law ("Pl. App. A"), AmFed further asserts that any damages awarded pursuant to Mr. Jay's hypothetical model will be subject to

---

5/ In response to a motion in limine that we filed on December 15, 2005, AmFed, on December 16, 2005, withdrew Dr. Kormendi's hypothetical "stock appreciation" model and indicated that it "will not present Dr. Kormendi's cost-of-replacement-capital calculations at trial, and will not offer Dr. Kormendi as a witness in plaintiff's case-in-chief." See also Order, American Fed. Bank, FSB v. United States, No. 95-498C (Fed. Cl. Jan. 13, 2006) (denying our motion as moot and stating that "[p]laintiff warrants that at the [upcoming trial] it will not offer any evidence in support of a model measuring cost of replacement capital by reference to AmFed's stock price").

6/ In a motion in limine filed simultaneously with these contentions, we dispute Mr. Jay's qualification to testify as an "expert," as well as the admissibility of his opinions.

# EXHIBIT 2

2007-5040

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

AMERICAN FEDERAL BANK, FSB,

Plaintiff-Appellee,

v.

THE UNITED STATES,

Defendant-Appellant.

Appeal From The United States Court of Federal Claims In 95-CV-498, Judge Charles F. Lettow.

# BRIEF FOR DEFENDANT-APPELLANT, THE UNITED STATES

MICHAEL F. HERTZ
Deputy Assistant Attorney General

JEANNE E. DAVIDSON
Director
Commercial Litigation Branch
Civil Division
United States Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
(202) 514-7300

OF COUNSEL:

TIMOTHY ABRAHAM
ELIZABETH HOSFORD
SAMEER YERAWADEKAR
Trial Attorneys

Attorneys for Defendant-Appellant

April 9, 2007

On April 25, 2001, NCBC changed its name to National Commerce Financial Corporation ("NCFC"), and, on or about December 31, 2001, CCB&T merged into National Bank of Commerce ("NBC"), a wholly-owned subsidiary of NCFC. AmFed III, 72 Fed. Cl. at 596 (A000013).

On October 1, 2004, SunTrust Banks, Inc. ("SunTrust"), completed a merger with NCFC, and, on April 22, 2005, NBC, as a wholly-owned subsidiary of SunTrust, merged, without assistance, into SunTrust Bank, another wholly-owned subsidiary of SunTrust. AmFed III, 72 Fed. Cl. at 596 (A000013).

## SUMMARY OF ARGUMENT

We challenge four reversible errors committed by the trial court in this appeal. First, we challenge the trial court's decision to ignore the effect of AmFed's retention of earnings from 1989 through 1993. According to the court, the 1993 Offering and Exchange mitigated the entirety of goodwill excluded from regulatory capital, even though the court recognized that the retention of earnings prior to the 1993 Offering and Exchange replaced all but $4.3 million of the lost goodwill, and that further earnings retention in September 1993 replaced that remaining amount. Because the retention of earnings mitigated the breach, the trial court erred in awarding damages based upon costs of the 1993 Offering and Exchange, an event that was not necessary to mitigate the breach.

A trial court's ruling upon a motion to reopen the record is reviewed for an abuse of discretion. Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 331 (1971); Blinzler v. Marriott Int'l, Inc., 81 F.3d 1148, 1160 (1st Cir. 1996).

## II. The Trial Court Erred When It Failed To Consider The Extent To Which The Breach Was Mitigated By AmFed's Retention Of Earnings Prior To The 1993 Offering And Exchange

AmFed's damage claim is predicated upon the assumption that the proceeds from the 1993 Offering and Exchange were necessary to mitigate the breach resulting from the enactment of FIRREA. However, as the evidence at trial proved, at the time of the 1993 Offering and Exchange, AmFed had replaced all but approximately $4.3 million of the goodwill that was eliminated as a result of the enactment of FIRREA with retained earnings. A102897-98.

This Court has held on several occasions that a plaintiff is only entitled to recover the actual cost of mitigation directly related to the breach. See, e.g., LaSalle Talman Bank, F.S.B. v. United States, 317 F.3d 1363, 1371 (Fed. Cir. 2003); Old Stone Corp. v. United States, 450 F.3d 1360, 1375 (Fed. Cir. 2006) (costs only recoverable if proximately caused by the breach), cert. denied, __ S.Ct. __, 2007 WL 789098 (Mar. 19, 2007); Glendale Fed. Bank, FSB v. United States, 378 F.3d 1308, 1312 (Fed. Cir. 2004), cert. denied, 544 U.S. 904 (2005).