# EXHIBIT 1

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **AMERICAN FEDERAL BANK, FSB,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **No. 95-498C** |
| | ) | **(Judge Lettow)** |
| **UNITED STATES OF AMERICA,** | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S MEMORANDUM OF CONTENTIONS OF LAW**

Pursuant to the Court's orders dated December 14, 2004 and November 21, 2005, and paragraph 14 of Appendix A of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully submits the following memorandum of contentions of law.[1]

**INTRODUCTION AND SUMMARY OF THE CASE**

After a trial as to liability-related issues, this Court, on September 30, 2004, ruled that implied-in-fact "goodwill contracts" had been formed in 1982 with respect to four underlying thrift mergers. American Fed. Bank, FSB v. United States, 62 Fed. Cl. 185, 205 (2004) ("AmFed I"). The Court further determined that these implied-in-fact contracts were superseded by a "substitute[] contract" that was formed when AmFed undertook its modified stock conversion in late 1988, and that FIRREA's capital regulations breached this implied-in-fact, substitute contract in December 1989. Id. Lastly, the Court concluded that AmFed and the Government formed an implied-in-fact contract that permitted AmFed to count subordinated debentures issued in

---

1/ Simultaneous with the filing of this brief, we are also submitting, pursuant to RCFC App. A ¶ 14, a "Memorandum of Contentions of Fact."

account as an offset to these costs; and (4) the merger between CCB Financial Corporation ("CCB") and AmFed in mid-1997 "was extraneous to the breach and to the mitigation" and, thus, due to its remoteness, AmFed's stock price at the time of the CCB merger "cannot be used in measuring the actual cost of replacement capital."[5] Id. at 357.

On December 9, 2005, AmFed issued its eighth damage model – allegedly to demonstrate the cost it incurred in replacing the goodwill lost – prepared by Mr. John R. Jay, a mid-level manager with AmFed's current successor-in-interest, SunTrust Banks, Inc. ("SunTrust").[6] Mr. Jay issued a corrected report on December 13, 2005 (PX 3336), in which he claims that AmFed, and three subsequent acquirers, including SunTrust, have sustained in the past, and will sustain in the future, $92.973 million in damages as a result of two events: (1) the conversion of $13.5 million in subordinated debt to non-cumulative, perpetual preferred stock in 1990 and then, in 1993, the exchange of the preferred stock for common stock for non-breach reasons; and (2) raising $17.2 million in tangible capital in March 1993 by voluntarily issuing slightly more than two million shares of common stock. PX 3336 at 29-30.

In its Memorandum of Contentions of Facts and Law ("Pl. App. A"), AmFed further asserts that any damages awarded pursuant to Mr. Jay's hypothetical model will be subject to

---

5/ In response to a motion in limine that we filed on December 15, 2005, AmFed, on December 16, 2005, withdrew Dr. Kormendi's hypothetical "stock appreciation" model and indicated that it "will not present Dr. Kormendi's cost-of-replacement-capital calculations at trial, and will not offer Dr. Kormendi as a witness in plaintiff's case-in-chief." See also Order, American Fed. Bank, FSB v. United States, No. 95-498C (Fed. Cl. Jan. 13, 2006) (denying our motion as moot and stating that "[p]laintiff warrants that at the [upcoming trial] it will not offer any evidence in support of a model measuring cost of replacement capital by reference to AmFed's stock price").

6/ In a motion in limine filed simultaneously with these contentions, we dispute Mr. Jay's qualification to testify as an "expert," as well as the admissibility of his opinions.

# EXHIBIT 2

2007-5040

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

AMERICAN FEDERAL BANK, FSB,

Plaintiff-Appellee,

v.

THE UNITED STATES,

Defendant-Appellant.

Appeal From The United States Court of Federal Claims In 95-CV-498,
Judge Charles F. Lettow.

# BRIEF FOR DEFENDANT-APPELLANT, THE UNITED STATES

MICHAEL F. HERTZ
Deputy Assistant Attorney General

JEANNE E. DAVIDSON
Director
Commercial Litigation Branch
Civil Division
United States Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
(202) 514-7300

OF COUNSEL:

TIMOTHY ABRAHAM
ELIZABETH HOSFORD
SAMEER YERAWADEKAR
Trial Attorneys

Attorneys for Defendant-Appellant

April 9, 2007

On April 25, 2001, NCBC changed its name to National Commerce Financial Corporation ("NCFC"), and, on or about December 31, 2001, CCB&T merged into National Bank of Commerce ("NBC"), a wholly-owned subsidiary of NCFC. AmFed III, 72 Fed. Cl. at 596 (A000013).

On October 1, 2004, SunTrust Banks, Inc. ("SunTrust"), completed a merger with NCFC, and, on April 22, 2005, NBC, as a wholly-owned subsidiary of SunTrust, merged, without assistance, into SunTrust Bank, another wholly-owned subsidiary of SunTrust. AmFed III, 72 Fed. Cl. at 596 (A000013).

## SUMMARY OF ARGUMENT

We challenge four reversible errors committed by the trial court in this appeal. First, we challenge the trial court's decision to ignore the effect of AmFed's retention of earnings from 1989 through 1993. According to the court, the 1993 Offering and Exchange mitigated the entirety of goodwill excluded from regulatory capital, even though the court recognized that the retention of earnings prior to the 1993 Offering and Exchange replaced all but $4.3 million of the lost goodwill, and that further earnings retention in September 1993 replaced that remaining amount. Because the retention of earnings mitigated the breach, the trial court erred in awarding damages based upon costs of the 1993 Offering and Exchange, an event that was not necessary to mitigate the breach.

A trial court's ruling upon a motion to reopen the record is reviewed for an abuse of discretion. Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 331 (1971); Blinzler v. Marriott Int'l, Inc., 81 F.3d 1148, 1160 (1st Cir. 1996).

## II. The Trial Court Erred When It Failed To Consider The Extent To Which The Breach Was Mitigated By AmFed's Retention Of Earnings Prior To The 1993 Offering And Exchange

AmFed's damage claim is predicated upon the assumption that the proceeds from the 1993 Offering and Exchange were necessary to mitigate the breach resulting from the enactment of FIRREA. However, as the evidence at trial proved, at the time of the 1993 Offering and Exchange, AmFed had replaced all but approximately $4.3 million of the goodwill that was eliminated as a result of the enactment of FIRREA with retained earnings. A102897-98.

This Court has held on several occasions that a plaintiff is only entitled to recover the actual cost of mitigation directly related to the breach. See, e.g., LaSalle Talman Bank, F.S.B. v. United States, 317 F.3d 1363, 1371 (Fed. Cir. 2003); Old Stone Corp. v. United States, 450 F.3d 1360, 1375 (Fed. Cir. 2006) (costs only recoverable if proximately caused by the breach), cert. denied, __ S.Ct. __, 2007 WL 789098 (Mar. 19, 2007); Glendale Fed. Bank, FSB v. United States, 378 F.3d 1308, 1312 (Fed. Cir. 2004), cert. denied, 544 U.S. 904 (2005).