**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**No. 95-524C**
**(Judge George W. Miller)**

---

**HOMER J. HOLLAND, HOWARD R. ROSS, and FIRST BANK,**

**Plaintiffs,**

**v.**

**THE UNITED STATES,**

**Defendant.**

---

# DEFENDANT'S MOTION FOR LEAVE TO FILE AN AMENDED ANSWER TO PLAINTIFFS' THIRD AMENDED COMPLAINT

---

**MICHAEL HERTZ**
**Deputy Assistant Attorney General**

**JEANNE E. DAVIDSON**
**Director**

**KENNETH M. DINTZER**
**Assistant Director**

**JOHN H. ROBERSON**
**Trial Attorney**
**Commercial Litigation Branch**
**Civil Division**
**Department of Justice**
**Attn: Classification Unit**
**8th Floor, 1100 L Street**
**Washington, D.C. 20530**
**Tele: (202) 353-7972**
**Fax: (202) 514-8640**

**Attorneys for Defendant**

**OF COUNSEL:**

**RICHARD B. EVANS**
**ELIZABETH A. HOLT**
**WILLIAM G. KANELLIS**
**DAVID A. LEVITT**
**JOHN J. TODOR**

**April 17, 2007**

# TABLE OF CONTENTS


**Page**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I. The Assistance Agreements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. The Settlement Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

I. Pursuant To RCFC 15, The Government Is Entitled To Amend Our Answer To Add Our Counterclaims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

A. Plaintiffs Are Not Prejudiced By Our Motion To Amend Our Answer To Add Our Counterclaims . . . . . . . . . . . . . . . . . . . . 8

B. Our Motion To Amend Our Answer To Add Our Counterclaims Is Timely . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

C. Our Motion To Amend Our Answer To Add Our Counterclaims Is Not Futile . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

II. Pursuant To RCFC 13, The Government Is Entitled To Amend Our Answer To Add Our Counterclaims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

Americold Corp. v. United States,
28 Fed. Cl. 747 (1993) . . . . . . . . . . 7

Barnes Group, Inc. v. C & C Prods., Inc.,
716 F.2d 1023 (4th Cir. 1983) . . . . . . . . . . 15

Bluebonnet Sav. Bank, F.S.B. v. United States,
339 F.3d 1341 (Fed. Cir. 2003) . . . . . . . . . . 12, 13

Brock & Blevins Co. v. United States,
343 F.2d 951 (Ct. Cl. 1965) . . . . . . . . . . 12

Budd Co. v. Travelers Indem. Co.,
820 F.2d 787 (6th Cir. 1987) . . . . . . . . . . 15, 16

Buder v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,
644 F.2d 690 (8th Cir. 1981) . . . . . . . . . . 9

Cornwall v. U.S. Constr. Mfg., Inc.,
800 F.2d 250 (Fed. Cir. 1986) . . . . . . . . . . 10

Daff v. United States,
78 F.3d 1566 (Fed. Cir. 1996) . . . . . . . . . . 8

Edwards v. City of Goldsboro,
178 F.3d 231 (4th Cir. 1999) . . . . . . . . . . 8

Foman v. Davis,
371 U.S. 178 (1962) . . . . . . . . . . 7

Frantz Equip. Co. v. United States,
105 F. Supp. 490 (Ct. Cl. 1952) . . . . . . . . . . 7

Gillette v. Tansy,
17 F.3d 308 (10th Cir. 1994) . . . . . . . . . . 12

Holland v. United States,
74 Fed. Cl. 225 (2006) . . . . . . . . . . passim

Holland v. United States,
75 Fed. Cl. 492 (2007) . . . . . . . . . . passim

Howey v. United States,
481 F.2d 1187 (9th Cir. 1973) . . . . . . . . . . 12

Hurn v. Ret. Fund Trust of Plumbing, Heating & Piping Indus.,
648 F.2d 1252 (9th Cir. 1981) . . . . . . . . . . 8

In re Doctors Hosp. of Hyde Park, Inc.,
337 F.3d 951 (7th Cir. 2003) . . . . . . . . . . 15

Koston v. Sec'y of Dep't of Health & Human Servs.,
23 Cl. Ct. 597 (1991), aff'd, 974 F.2d 157 (Fed. Cir. 1992) . . . . . . . . . . 9

Madden v. United States,
371 F.2d 469 (Ct. Cl. 1967) . . . . . . . . . . 14

Mass. Bay Transp. Auth. v. United States,
129 F.3d 1226 (Fed. Cir. 1997) . . . . . . . . . . 13

McElrath v. United States,
102 U.S. 426 (1880) . . . . . . . . . . 8

Pipeliners Local Union No. 798 v. Ellerd,
503 F.2d 1193 (10th Cir. 1974) . . . . . . . . . . 10

Principal Mut. Life Ins. Co. v. United States,
26 Cl. Ct. 616 (1992) . . . . . . . . . . 6

Senza-Gel Corp. v. Seiffhart,
803 F.2d 661 (Fed. Cir. 1986) . . . . . . . . . . 8

Siemens Aktiengesellschaft v. United States,
26 Cl. Ct. 312 (1992) . . . . . . . . . . 6

Sinclair Oil Corp. v. Abraham,
291 F.3d 822 (Fed. Cir. 2002) . . . . . . . . . . 14

St. Paul Fire & Marine Ins. Co. v. United States,
31 Fed. Cl. 151 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

State of Alaska v. United States,
15 Cl. Ct. 276 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

T.J. Stevenson & Co. v. 81,193 Bags of Flour,
629 F.2d 338 (5th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

United States v. Hougham,
364 U.S. 310 (1960) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

United States v. Maxwell,
157 F.3d 1099 (7th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

United States v. Munsey Trust Co.,
332 U.S. 234 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

United States v. Wainer,
211 F.2d 669 (7th Cir. 1954) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

White v. Delta Constr. Int'l, Inc.,
285 F.3d 1040 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**STATE CASES**

City of Chicago v. Babcock,
143 Ill. 358, 32 N.E. 271 (Ill. 1892) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

JAC USA, Inc. v. Precision Coated Prods., Inc.,
No. 00 C 3780, 2003 WL 1627043 (N.D. Ill. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**FEDERAL RULES**

Fed. R. Civ. P. 13 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Fed. R. Civ. P. 15 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

RCFC 13 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

RCFC 15 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

## FEDERAL STATUTES

28 U.S.C. § 1503 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 12

28 U.S.C. § 2508 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 12

## STATE STATUTES

735 Ill. Comp. Stat. 5/2-608 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## MISCELLANEOUS

6 Wright & Miller, Fed. Practice & Procedure, § 1430 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

6 Wright & Miller, Fed. Practice & Procedure, § 1487 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

3 Moore's Fed. Practice, § 15.08, 0.835 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| HOMER J. HOLLAND,<br>HOWARD R. ROSS, and<br>FIRST BANK<br><br>Plaintiffs,<br><br>v.<br><br><br>THE UNITED STATES,<br><br>Defendant. | ) | Case No. 95-524C<br><br>(Judge George W. Miller)<br><br>(Winstar-Related Case) |

**DEFENDANT'S MOTION FOR LEAVE TO FILE AN AMENDED ANSWER TO PLAINTIFFS' THIRD AMENDED COMPLAINT**

Pursuant to Rules 13 and 15 of the Rules of the United States Court of Federal Claims ("RCFC"), and this Court's order dated March 20, 2007, defendant, the United States, respectfully requests the Court to grant our leave to amend our answer to plaintiffs' third amended complaint to assert affirmative counterclaims for breach of a covenant not to sue or, in the alternative, for a set-off. Our affirmative counterclaims arise from the Court's opinions and orders dated November 17, 2006, February 20, 2007, and February 28, 2007, construing the broad language of the accord and satisfaction provision of the Settlement Agreement, dated August 14, 1991, to be merely a covenant not to sue.[1] A copy of our amended answer, with

[1] Our proposed counterclaims are to be considered as an alternative argument to our affirmative defense of accord and satisfaction. Although the Court has rejected our accord and satisfaction defense, we respectfully disagree with the determination and accordingly reserve all of our rights with respect to this defense.

affirmative counterclaims, is attached to this motion. The amended answer is identical to our original answer to plaintiffs' third amended complaint, except that it pleads our affirmative counterclaims.

In short, our amended answer sets forth counterclaims that follow from the Court's finding of a covenant not to sue. First, we assert a counterclaim seeking damages for plaintiffs' breach of the Settlement Agreement's covenant not to sue. Second, and in the alternative, we assert a counterclaim for a set-off in the amount paid to plaintiffs' pursuant to the Settlement Agreement.

## FACTUAL BACKGROUND

### I. The Assistance Agreements

Two thrift acquisition transactions remain at issue in this case. First, on July 28, 1988, an assistance agreement was entered into by and among Messrs. Holland and Ross, the River Valley Savings Bank, F.S.B. ("River Valley I"), and the Federal Savings and Loan Insurance Corporation ("FSLIC"). The agreement related to the merger of Galva Federal Savings and Loan Association of Galva, Illinois ("Galva"), and Mutual Savings and Loan Association of Canton, Illinois ("Mutual"), with and into Home Federal Savings and Loan Association of Peoria, Illinois ("Home"), and the conversion of Home into River Valley I. Second, on July 29, 1988, FSLIC and the Rock Falls Savings and Loan Association ("Rock Falls"), Messrs. Holland and Ross's wholly-owned state chartered thrift, entered into an assistance agreement relating to the merger of Republic Savings and Loan Association of South Beloit, South Beloit, IL ("Republic"), with and into Rock Falls, which then became known as River Valley Savings Bank of Rock Falls, Illinois ("River Valley II").

On March 31, 1991, River Valley II was merged with and into River Valley I. River Valley III refers to the institution that survived that merger. First Bank purports to be the successor in interest to the River Valley thrifts.

## II. <u>The Settlement Agreement</u>

On August 14, 1991, Messrs. Holland and Ross, River Valley III, and the Federal Deposit Insurance Corporation ("FDIC"), as the manager of the FSLIC Resolution Fund ("FRF") and as an agency of the United States, entered into a comprehensive settlement agreement ("Settlement Agreement") regarding the River Valley I and River Valley II Assistance Agreements (collectively, "River Valley Assistance Agreements"). Pursuant to the terms of the Settlement Agreement, River Valley III paid the FDIC $50,000 and the FDIC paid River Valley III $3,276,902.90. We contend that the Settlement Agreement settled all claims or causes of action between plaintiffs and the Government regarding the River Valley Assistance Agreements.[2] Specifically, the Settlement Agreement included a broadly worded accord and satisfaction provision, which demonstrated the parties' intent to release each other from any claims or causes of action regarding the River Valley Assistance Agreements. This Court has determined that the Settlement Agreement's language was broad enough to encompass the regulatory capital

---

[2] Although the Court has found that there was a single unified contract, <u>Holland v. United States</u>, 74 Fed. Cl. 225, 246 n.11 (2006), involving contractual promises of the Office of Thrift Supervision ("OTS"), as successor to the Federal Home Loan Bank Board ("FHLBB"), the Court nonetheless held that the Settlement Agreement settled, at most, the contractual claims between the plaintiffs and the FDIC alone, leaving unresolved the issue whether the FDIC succeeded to the rights and obligations of the FSLIC pursuant to the River Valley Assistance Agreements. As previously noted, we respectfully disagree with the Court's determination, and reserve our rights with respect to our contention that the Settlement Agreement constituted a complete accord and satisfaction of all claims against the Government connected with the River Valley Assistance Agreements.

assistance at issue in this case. Holland, 74 Fed. Cl. at 242. It also determined that the consideration exchanged was sufficient to encompass the regulatory capital provisions. Id. at 247. This provision, in its entirety, states as follows:

> Section 5 Accord and Satisfaction. Except as otherwise specifically provided herein, performance by each party of its respective obligations under this Settlement Agreement shall effect a complete accord and satisfaction of any and all obligations and liabilities of such party under the Assistance Agreements and, thenceforth, such party shall be fully discharged from any obligation or liability of any kind in connection therewith, including, without limitation, any and all actions, causes of action, suits, debts, sums of money, bonds, covenants, agreements, promises, damages, judgments, claims, and demands whatsoever, known or unknown, suspected or unsuspected, at law or in equity.

## PROCEDURAL HISTORY

On September 21, 2005, First Bank filed a motion for summary judgement upon liability and partial summary judgment upon damages. On December 7, 2005, we filed our response, presenting our affirmative defense of accord and satisfaction, which was set forth in a timely manner in all of our answers to plaintiffs' multiple complaints. On November 17, 2006, the Court ruled in favor of plaintiffs' motion for summary judgment upon liability, rejecting our accord and satisfaction defense. Holland, 74 Fed. Cl. at 227-28, 254-55. We filed a motion for reconsideration of that opinion on December 16, 2006, addressing what we believed to be errors related to the Court's decisions that (1) the Court need not decide whether the contractual rights and obligations of the FSLIC, pursuant to the River Valley Assistance Agreements, transferred to the FRF, as managed by the FDIC, id. at 252 n.16; and, (2) the complete accord and satisfaction between the FDIC, as manager of the FRF, and the plaintiffs, did not have any effect upon the

plaintiffs' claim against the OTS (as successor to the FHLBB) based upon the same unified River Valley Assistance Agreements.

On February 20, 2007, the Court denied our motion for reconsideration of the Court's November 17, 2006 opinion. In doing so, the Court stated for the first time in this case that, despite the broad language of the accord and satisfaction provision, it would construe the Settlement Agreement to be merely a covenant not to sue executed between the FDIC and the plaintiffs. Holland v. United States, 75 Fed. Cl. 492, 498 (2007).

On February 27, 2007, we filed a motion seeking reconsideration of the Court's holding that the release, construed by the Court as a covenant not to sue, "would have no effect upon plaintiff's claims against defendant for breach of the forbearance promises by OTS." Id. The Court denied our motion on February 28, 2007, stating that its February 20, 2007 opinion "did not address the effect on any future damages award of the payment made by FDIC as manager of the FRF to plaintiff First Bank's predecessor in interest pursuant to the August 14, 1991 Settlement Agreement. That issue therefore remains open." Order (Feb. 28, 2007).

On February 27, 2007, the Court issued an order for further proceedings in this case, including an order for the parties to file a proposed schedule of further proceedings by March 12, 2007. In our March 12, 2007 filing for further proceedings, we stated as follows:

> [W]e intend to seek leave of the Court, pursuant to [RCFC 13 and 15], to file an amended answer in order to conform to the Court's recent decision finding that the Settlement Agreement executed between the plaintiffs and the FDIC constituted a covenant not to sue. Our intended amendment would involve our assertion of an affirmative counterclaim for plaintiffs' breach of that covenant not to

> sue. This Court has, three times in the past, permitted plaintiffs to amend their complaint to conform to the Court's rulings.[3]

In its March 20, 2007 order, setting forth the timing of further proceedings in this case, the Court ordered us to file our motion for leave to file an amended answer by April 19, 2007.

## ARGUMENT

### I. Pursuant To RCFC 15, The Government Is Entitled To Amend Our Answer To Add Our Counterclaims

Rule 15(a) of the Rules of this Court provides that a party may amend its pleadings by leave of the court and that "leave shall be freely given when justice so requires." This Court has held that "'leave to amend should be freely permitted absent sufficient explicit reasons indicating that it should be denied.'" St. Paul Fire & Marine Ins. Co. v. United States, 31 Fed. Cl. 151, 153 (1994) (quoting State of Alaska v. United States, 15 Cl. Ct. 276, 279 (1988)); see Principal Mut. Life Ins. Co. v. United States, 26 Cl. Ct. 616, 623 (1992) (noting that Rule 15(a) "sets forth a permissive standard in regard to the granting of amendments" and that, in construing analogous Rule 15(a) of the Federal Rules of Civil Procedure, the United States Supreme Court has construed the rule "quite liberally"); Siemens Aktiengesellschaft v. United States, 26 Cl. Ct. 312, 313 (1992) (courts "have recognized the appropriateness of amending an answer to raise additional defenses").

The Supreme Court has indicated that Fed. R. Civ. P. 15, which is analogous to RCFC 15, Principal Mut. Life Ins. Co., 26 Cl. Ct. at 623, must be construed liberally and that

---

[3] See Order (Oct. 23, 2003) (permitting plaintiffs to file an amended complaint following dismissal of certain counts of their initial complaint); Op. and Order (Oct. 5, 2004) (permitting plaintiffs to join First Banks, Inc., following the dismissal of their damage claim); Op. and Order (May 12, 2005) (granting plaintiffs' motion to file a third amended complaint to join "First Bank MO").

amendment of pleadings should be allowed "except where prejudice to the opposing party would result," United States v. Hougham, 364 U.S. 310, 316 (1960), or there has been inappropriate behavior by the moving party:

> Rule 15(a) declares that leave to amend "shall be freely given when justice so requires"; this mandate is to be heeded. If the underlying facts or circumstances relied upon by a [party] may be a proper subject of relief, [the party] ought to be afforded an opportunity to test [its] claim on the merits. In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, etc. – the leave sought should, as the rules require, be "freely given."

Foman v. Davis, 371 U.S. 178, 182 (1962) (citations omitted), quoted in St. Paul Fire & Marine, 31 Fed. Cl. at 153.

In this case, 28 U.S.C. §§ 1503 and 2508 provide jurisdiction for our counterclaims.[4] Pursuant to these statutes, the liberal pleading rules have been found to protect our right to plead our counterclaims for breach of a covenant not to sue and for a set-off. See Americold Corp. v. United States, 28 Fed. Cl. 747, 751-52 (1993). It is well-established precedent that a plaintiff bringing suit in the Court of Federal Claims "subjects itself to the possibility of a judgment against it on any setoff, claim, or demand" by the Government. Id. at 750 (citing Frantz Equip.

---

[4] 28 U.S.C. § 1503 states: "The United States Court of Federal Claims shall have jurisdiction to render judgment upon any set-off or demand by the United States against any plaintiff in such court." Similarly, 28 U.S.C. § 2508 states: "Upon the trial of any suit in the United States Court of Federal Claims in which any setoff, counterclaim, claim for damages, or other demand is set up on the part of the United States against any plaintiff making claim against the United States in said court, the court shall hear and determine such claim or demand both for and against the United States and plaintiff."

Co. v. United States, 105 F. Supp. 490, 494-95 (Ct. Cl. 1952)); see also McElrath v. United States, 102 U.S. 426, 440 (1880); Daff v. United States, 78 F.3d 1566, 1573 (Fed. Cir. 1996).

Apart from the foregoing precedent protecting the Government's right to plead counterclaims, the factors considered in determining whether to grant a motion to amend pursuant to RCFC 15(a) do not otherwise weigh in the plaintiffs' favors in this case. Pursuant to RCFC 15(a), the court evaluates the following factors: "(1) undue delay, (2) bad faith,[5] (3) prejudice to the nonmovant, and (4) futility of amendment." Senza-Gel Corp. v. Seiffhart, 803 F.2d 661, 666-667 (Fed. Cir. 1986). "'Where there is lack of prejudice to the opposing party and the amended [pleading] is obviously not frivolous, or made as a dilatory maneuver in bad faith, it is an abuse of discretion to deny such a motion.'" Id. (quoting Hurn v. Ret. Fund Trust of Plumbing, Heating & Piping Indus., 648 F.2d 1252, 1254 (9th Cir. 1981)); see also Edwards v. City of Goldsboro, 178 F.3d 231, 242 (4th Cir. 1999) ("The law is well-settled 'that leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile.'" (citations omitted)).

### A. Plaintiffs Are Not Prejudiced By Our Motion To Amend Our Answer To Add Our Counterclaims

"The single most important factor" in evaluating a motion to amend "is whether prejudice would result to the nonmovant." Senza-Gel, 803 F. 2d at 666; see 6 Wright & Miller, Fed. Practice & Procedure, § 1487 ("if the court is persuaded that no prejudice will accrue, the

[5] The Government has not raised its motion for leave to amend in bad faith.

amendment should be allowed"). Plaintiffs cannot validly allege – much less show – that prejudice will result from granting our motion to amend our answer to add counterclaims.

Expert discovery in this case closed in 2001. Nonetheless, since the close of discovery, plaintiffs have changed their damage theories and calculations three times: in October 2003, when they introduced a new "steady state" theory of lost profits based upon purported lost leverage; in February 2005, when plaintiffs set forth a substantially re-worked lost profits model; and in September 2005, when First Bank issued new theories and calculations of damages with respect to the transactions involving San Antonio Federal Savings Bank ("SAFSB"). Plaintiffs have now been allowed to amend their damage theories a fourth time. Order (April 11, 2007). In contrast, our motion to amend our answer to add counterclaims comes within a month after – and only as a result of – this Court's November 17, 2006, and February 20, 2007, and February 28, 2007 opinions.

In addition, the Court has already ordered a schedule for pretrial activities that provides ample time for any discovery prior to trial. Accordingly, the plaintiffs can suffer no prejudice by our motion to amend our answer to assert counterclaims that conform to the Court's recent opinions.

In contrast, the denial of our motion would substantially prejudice the Government. "[E]ven where some prejudice to the adverse party would result if the motion to amend were granted, that prejudice must be balanced against the hardship to the moving party if it is denied." Buder v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 644 F.2d 690, 694 (8th Cir. 1981) (emphasis added); see Koston v. Sec'y of Dep't of Health & Human Servs., 23 Cl. Ct. 597, 601 (1991) (prejudice to movant if the motion to amend is denied may also be considered), aff'd, 974

F.2d 157 (Fed. Cir. 1992); Cornwall v. U.S. Constr. Mfg., Inc., 800 F.2d 250, 252-53 (Fed. Cir. 1986) (recognizing that a court must consider the effect on the movant of the denial of a leave to amend).

This Court's opinions and orders dated November 17, 2006, February 20, 2007, and February 28, 2007, have now made clear, for the first time in this litigation, that the Court would construe the broad accord and satisfaction language of the Settlement Agreement to be merely a covenant not to sue executed between the FDIC and the plaintiffs. Holland, 75 Fed. Cl. at 498; see also Holland, 74 Fed. Cl. 225; Order (Feb. 28, 2007). The Court has also made clear that its decisions did not indicate that the $3.2 million net payment by the FDIC to the plaintiffs would not be calculated against plaintiffs' damages claims, but was merely not relevant for the purposes of considering liability. As a result, our proposed counterclaim constitutes a compulsory counterclaim. A counterclaim is compulsory "if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." RCFC 13(a); see also Fed. R. Civ. P. 13. The courts have accorded the terms "transaction" and "occurrence" "flexible and realistic construction in order to effect 'judicial economy,' i.e., trial in one action of all related controversies between the parties and . . . the avoidance of multiplicity of suits." Pipeliners Local Union No. 798 v. Ellerd, 503 F.2d 1193, 1198 (10th Cir. 1974). The Court itself has left open the possibility that the $3.2 million net payment by the FDIC to the plaintiffs could be relevant to a calculation of damages. Because the Court just recently construed the Settlement Agreement to be a breach of a covenant not to sue and, by holding such, the Court has made our counterclaims compulsory, the Government would be substantially prejudiced if it could not now respond to these new developments by asserting its counterclaims.

**B. Our Motion To Amend Our Answer To Add Our Counterclaims Is Timely**

Our motion to amend our answer is timely. We first notified the Court that we wished to file a motion to amend our answer mere days after the Court denied our February 27, 2007 motion for reconsideration. Further, our motion to amend comes pursuant to the Court's order scheduling further proceedings in this case.

The Government filed its original answer to the plaintiffs' third amended complaint on June 6, 2005. In that answer, we identified in a timely manner accord and satisfaction as an affirmative defense.[6] As discussed above, on November 17, 2006, the Court ruled upon plaintiffs' motion for summary judgment on liability and our cross-motion for summary judgment on liability. Holland, 74 Fed. Cl. 225. We filed motions for reconsideration on December 16, 2006, which the Court denied on February 20, 2007, Holland, 75 Fed. Cl. 492, and on February 27, 2007, which the Court denied on February 28, 2007. Order (Feb. 28, 2007).

On February 27, 2007, this Court issued an order for further proceedings in this case, including an order for the parties to file a proposed schedule of further proceedings by March 12, 2007. In our March 12, 2007 filing for further proceedings, we notified the Court that we intended to seek leave, pursuant to RCFC 13 and 15, to file an amended answer, with counterclaim, to "conform to the Court's recent decision finding that the Settlement Agreement executed between the plaintiffs and the FDIC constituted a covenant not to sue."

In its March 20, 2007 order, setting forth the timing of further proceedings in this case, the Court ordered us to file our motion for leave to file an amended answer by April 19, 2007.

---

[6] We also identified accord and satisfaction in a timely manner as an affirmative defense in our original answer, filed September 22, 1999, and our answer to plaintiffs' second amended complaint, filed January 27, 2005.

Therefore, our motion to file an amended answer to plaintiffs' third amended complaint is timely. We alerted the Court to the filing of this motion as soon as the Court denied our motions for reconsideration, which was the first time the Court found that there was no "accord and satisfaction," but, instead, a breach of a covenant not to sue.

Even if the Court views our motion as untimely, the Court should still grant us leave to file an amended answer. "The mere fact that an amendment is offered late in the case is . . . not enough to bar it; amendments may be offered at the trial, or even after reversal and remand." Howey v. United States, 481 F.2d 1187, 1191 n.3 (9th Cir. 1973) (quoting 3 Moore's Fed. Practice, § 15.08, 0.835); see Gillette v. Tansy, 17 F.3d 308, 313 (10th Cir. 1994) (finding that trial court abused its discretion in denying motion to amend, even though motion was filed after evidentiary hearing was complete); Brock & Blevins Co. v. United States, 343 F.2d 951, 955 (Ct. Cl. 1965) (allowing affirmative defense of accord and satisfaction raised four months after the trial court issued its opinion and findings of fact).

### C. Our Motion To Amend Our Answer To Add Our Counterclaims Is Not Futile

Our motion to amend our answer seeks to add a counterclaim for breach of a covenant not to sue or, in the alternative, for a set-off. Not only do 28 U.S.C. §§ 1503 and 2508 permit us to bring these counterclaims, but neither of these counterclaims are futile.

With respect to our counterclaim for breach of a covenant not to sue, "[o]ne of the basic principles of contract damages is that 'damages for breach of contract shall place the wronged party in as good a position as it would have been in, had the breaching party fully performed its obligation.'" Bluebonnet Sav. Bank, F.S.B. v. United States, 339 F.3d 1341, 1344-45 (Fed. Cir.

2003) (quoting Mass. Bay Transp. Auth. v. United States, 129 F.3d 1226, 1232 (Fed. Cir. 1997)). "Thus, the non-breaching party should not be placed in a better position through the award of damages then if there had been no breach." Id. (citing White v. Delta Constr. Int'l, Inc., 285 F.3d 1040, 1043 (Fed. Cir. 2002)).

As demonstrated above, the Court found that pursuant to the Settlement Agreement a covenant not to sue was entered into by which the FDIC paid plaintiffs a net amount of $3,226,902.90. If the Court were to require the Government to pay damages for breach of the assistance agreements, but failed to allow the Government to recover monies that it paid to plaintiffs to settle "any and all claims" with the FDIC in connection with the River Valley Assistance Agreements, the Court would place the plaintiffs in a better position than they would have been in had there been no breach. See Bluebonnet Sav. Bank, 339 F.3d at 1344-45. In essence, the plaintiffs would be able to take advantage of the benefit from the $3,226,902.90 payment the FDIC made to them, without having to satisfy the condition of their obligation; i.e., a covenant not to sue the FDIC. Put another way, the Government was deprived of the benefit of the $3,226,902.90 payment when plaintiffs sued the FDIC as successor to the FSLIC (styled as a claim against the United States). As a result, we should be able to amend our answer to assert a counterclaim for damages for the plaintiffs' breach of the Settlement Agreement's covenant not to sue.[7]

[7] The Court applied Illinois law to determine that "the release would be construed as a covenant not to sue and would have no effect upon plaintiff's claims against defendant for breach of the forbearance promises by the OTS." Holland, 75 Fed. Cl. at 498. If the Court determines, pursuant to the choice of law provision of the Settlement Agreement, that Illinois law governs our counterclaim for breach of a covenant not to sue, it is clear that Illinois law also specifically permits the filing of counterclaims seeking damages for breach of contract, including for breach of a covenant not to sue. See, e.g., JAC USA, Inc. v. Precision Coated Prods., Inc., No. 00 C

At the very least, however, the $3.2 million which the Government paid the plaintiffs pursuant to the Settlement Agreement should constitute a set-off against plaintiffs' damage claims. The Supreme Court and the Federal Circuit have long recognized the Government's common law right to offset or recoup debts owed to the Government against contract payments and damages due to the debtor. The right of offset was first recognized by the Supreme Court in United States v. Munsey Trust Co., 332 U.S. 234, 239 (1947), in which the Court held that the "government has the same right 'which belongs to every creditor, to apply the unappropriated moneys of his debtor, in his hands, in extinguishment of the debts due to him.'" (Citations omitted).

Consistent with the Supreme Court's decision in Munsey Trust, the Court of Claims similarly recognized the Government's right of offset in Madden v. United States, 371 F.2d 469, 473 (Ct. Cl. 1967), in which the Court held that the Government's right to offset debts owed to it against damages awarded to the debtor for an equitable adjustment of contract was superior to an attorney's lien. See also Sinclair Oil Corp. v. Abraham, 291 F.3d 822, 828-29 (Fed. Cir. 2002)

---

3780, 2003 WL 1627043, at * 7, 11 (N.D. Ill. 2003) (granting summary judgment, based upon Illinois law, as to counterclaim found to breach a settlement agreement that includes a covenant not to sue); City of Chicago v. Babcock, 143 Ill. 358, 366-67, 32 N.E. 271 (Ill. 1892) ("The legal effect of such a covenant [not to sue] is not the same as that of a release. . . . [T]he covenant does not operate as a release of either the covenantee or the other tort feasors, but the former must resort to his suit for breach of the covenant, and the latter cannot invoke the covenant as a bar to the action against them."); 735 Ill. Comp. Stat. 5/2-608 ("Any claim by one or more defendants against one or more plaintiffs, or against one or more codefendants, whether in the nature of setoff, recoupment, cross claim or otherwise, and whether in tort or contract, for liquidated or unliquidated damages, or for any other relief, may be pleaded as a cross claim in any action, and when so pleaded shall be called a counterclaim.").

(proceeds received by a purchaser of gasoline from its settlement with a refiner would offset the gasoline purchaser's asserted refund from a DOE fund).[8]

Thus, the Court should permit the Government to assert damages for its counterclaim for breach of the covenant not to sue or, at the very least, a set-off of the FDIC's net payment of $3,226,902.90.

**II. Pursuant To RCFC 13, The Government Is Entitled To Amend Our Answer To Add Our Counterclaims**

In addition to RCFC 15(a), RCFC 13(f) provides another basis for permitting the Government's motion to amend our answer to add our counterclaims for breach of a covenant not to sue or, in the alternative, for a set-off. RCFC 13(f) provides that, when "justice requires," the Court has the discretion to "set up [a] counterclaim by amendment" if the defendant has failed timely to set up a counterclaim. "Generally, courts have been quite liberal about granting leave to amend under Rule 13(f)." 6 Wright & Miller, Fed. Practice & Procedure, § 1430; see Budd Co. v. Travelers Indem. Co., 820 F.2d 787, 791-92 (6th Cir. 1987) (quoting same). "In exercising its discretion under Rule 13(f), the district court must balance 'the equities, including whether the non-moving party will be prejudiced, whether additional discovery will be required, and whether the court's docket will be strained.'" Id. at 792 (quoting Barnes Group, Inc. v. C &

[8] If the Court instead determines, pursuant to the choice of law provision of the Settlement Agreement, that Illinois law governs our claim for set-off, it is clear that Illinois law also recognizes our right of set-off. See, e.g., In re Doctors Hosp. of Hyde Park, Inc., 337 F.3d 951, 955 (7th Cir. 2003) (applying Illinois law, which recognizes a "common law right of setoff"); United States v. Maxwell, 157 F.3d 1099, 1102 (7th Cir. 1998) ("[T]he federal government is considered to be a single-entity that is entitled to set off one agency's debt to a party against that party's debt to another agency."); United States v. Wainer, 211 F.2d 669, 673 (7th Cir. 1954) (if a release of a joint obligor is found not to release his co-obligor, the amount paid by the settling obligor should "serve to reduce the total debt by that amount as of the time of its payment, and [the other joint obligor] is liable for the balance remaining unpaid").

C Prods., Inc., 716 F.2d 1023, 1035 n.35 (4th Cir. 1983)). "Courts appear particularly hesitant to deny amendment, even at late stages in the proceedings, when the interest in resolving all related issues militates in favor of such a result and no prejudice is demonstrated." Id.; see, e.g., T.J. Stevenson & Co. v. 81,193 Bags of Flour, 629 F.2d 338, 369-71 (5th Cir. 1980) (district court did not abuse its discretion by allowing addition of counterclaim after close of all evidence when nonmoving party was not prejudiced).

As discussed above, with respect to RCFC 15, plaintiffs will not suffer prejudice by the Court's granting of our motion to amend our answer to assert our counterclaims, but in contrast, we will be prejudiced if we are not allowed to amend our answer to assert our compulsory counterclaims, as necessitated by the Court's recent opinions and orders. Nor was there undue delay in filing our motion, and as a result of the trial not being scheduled to begin until December 3, 2007, there will be no undue delay in the proceedings of this case. Finally, it is in the interest of the Court to grant our motion pursuant to RCFC 13(f), so that all issues related to this matter will be resolved. Thus, the Court should grant our motion to amend our answer to add our counterclaims.

## CONCLUSION

For the foregoing reasons, we respectfully request that the Court grant our motion for leave to amend our answer to plaintiffs' third amended complaint to add a counterclaim for breach of a covenant not to sue or, in the alternative, for a set-off, and to order that the amended answer that accompanies this motion be filed.

Respectfully submitted,

MICHAEL F. HERTZ
Deputy Assistant Attorney General

JEANNE E. DAVIDSON
Acting Director

/s/ Kenneth M. Dintzer
KENNETH M. DINTZER
Assistant Director

/s/ John H. Roberson
JOHN H. ROBERSON
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor, 1100 L Street
Washington, D.C. 20530
Tele: (202) 353-7972
Fax: (202) 514-8640
Attorneys for Defendant

Of Counsel:

RICHARD B. EVANS
ELIZABETH A. HOLT
WILLIAM G. KANELLIS
DAVID A. LEVITT
JOHN J. TODOR

April 17, 2007

**CERTIFICATE OF SERVICE**

I hereby certify that on this 17th day of April 2007, a copy of the foregoing "DEFENDANT'S MOTION FOR LEAVE TO FILE AN AMENDED ANSWER TO PLAINTIFFS' THIRD AMENDED COMPLAINT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ John H. Roberson
John H. Roberson

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| HOMER J. HOLLAND,<br>HOWARD R. ROSS, and<br>FIRST BANK | ) | |
| Plaintiffs, | ) | Case No. 95-524C |
| v. | ) | (Judge George W. Miller) |
| | ) | (Winstar-Related Case) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**DEFENDANT'S AMENDED ANSWER TO PLAINTIFFS' THIRD AMENDED COMPLAINT**

For its amended answer to the complaint, defendant admits, answers, denies, and alleges as follows:

1. The allegations contained in paragraph 1 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

2. Denies the allegations contained in the first sentence of paragraph 2 for lack of knowledge or information sufficient to form a belief as to the truth of the matters asserted. Admits the allegations contained in the second sentence of paragraph 2 to the extent supported by the document cited; otherwise denies the remainder of the allegations contained in the second sentence of paragraph 2.

3. Denies the allegations contained in the first sentence of paragraph 3 for lack of knowledge or information sufficient to form a belief as to the truth of the matter asserted. The remainder of the allegations contained in paragraph 3 are conclusions of law to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

4. Admits the allegations contained in the first sentence of paragraph 4; the remaining allegations contained in paragraph 4 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, the defendant admits the remaining allegations contained in paragraph 4 to the extent that they are supported by the statute cited, which is the best evidence of its contents; otherwise they are denied.

5. The allegations contained in paragraph 5 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, the defendant admits the remaining allegations contained in paragraph 5 to the extent that they are supported by the statute cited, which is the best evidence of its contents; otherwise they are denied.

6. Admits the allegations contained in the first sentence of paragraph 6 to the extent that the plaintiffs asserts that FSLIC administered a fund that insured certain deposits held by thrift institutions; the remaining allegations contained in the first sentence of paragraph 6 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied; denies the allegations contained in the second and third sentences of paragraph 6 for lack of knowledge or information sufficient to form a belief as to the truth of the matters asserted.

7. The allegations contained in paragraph 7 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, the defendant admits the allegations contained in paragraph 7 to the extent that they are supported by the statute cited, which is the best evidence of its contents; otherwise they are denied.

8. The allegations contained in paragraph 8 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, the defendant

admits the allegations contained in paragraph 8 to the extent that they are supported by the statute cited, which is the best evidence of its contents; otherwise they are denied.

9. The allegations contained in paragraph 9 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, the defendant admits the allegations contained in paragraph 9 to the extent that they are supported by the statute cited, which is the best evidence of its contents; otherwise they are denied.

10. The allegations contained in paragraph 10 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, the defendant admits the allegations contained in paragraph 10 to the extent that they are supported by the statute cited, which is the best evidence of its contents; otherwise they are denied.

11. Admits the allegations contained in paragraph 11 that, beginning in the late 1970s and continuing to the present, many thrifts suffered losses caused by, among other things, changing economic conditions and poor management and that the failure of thrift institutions impacted the resources of FSLIC; the remainder of the allegations contained in paragraph 11 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

12. Admits the allegations contained in paragraph 12 that FHLBB has on occasion permitted the acquisition of certain savings and loan institutions by other institutions, and that FHLBB permitted the acquisitions of Galva, Mutual, Home, Republic and Peoria; denies the allegations contained in paragraph 12 that FHLBB and FSLIC "aggressively" implemented a policy of investment and acquisition; denies the allegations contained in paragraph 12 that the troubled institutions were essentially unsalable for lack of knowledge or information sufficient to

form a belief as to the truth of the matters asserted; the remainder of the allegations contained in paragraph 12 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

13. Admits the allegations contained in paragraph 13 that Galva's, Home's, Mutual's, Republic's and Peoria's liabilities exceeded their assets on the effective date of the Assistance Agreement relating to each of the institutions; the remainder of the allegations contained in paragraph 13 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

14. Denies the allegations contained in paragraph 14 for lack of knowledge or information sufficient to form a belief as to the truth of the matters asserted.

15. Admits the allegation contained in the first sentence of paragraph 15 that FSLIC made available a bid package to any investor expressing an interest in acquiring Galva, Mutual and Home to the extent supported by the document cited in the second sentence of paragraph 15, which is the best evidence of its contents; otherwise denies such allegation; the remainder of the allegations contained in the first sentence of paragraph 15 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied; admits the allegations contained in the second sentence of paragraph 15 to the extent supported by the document cited, which is the best evidence of its contents; otherwise denies the allegations contained in the second sentence of paragraph 15; denies the allegations contained in the third and fourth sentences of paragraph 15.

16. The allegations contained in paragraph 16 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

17. The allegations contained in paragraph 17 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

18. The allegations contained in paragraph 18 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

19. The allegations contained in paragraph 19 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

20. The allegations contained in paragraph 20 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

21. Admits the allegations contained in paragraph 21 to the extent supported by the offer cited, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 21.

22. Admits the allegations contained in the first sentence of paragraph 22 to the extent supported by the offer cited, which is the best evidence of its contents; otherwise denies the allegations contained in the first sentence of paragraph 22; the allegations contained in the remainder of paragraph 22 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

23. Admits the allegations contained in the first sentence of paragraph 23 to the extent supported by the document cited, which is the best evidence of its contents; otherwise denies the allegations contained in the first sentence of paragraph 23; denies the allegation contained in the second sentence of paragraph 23 that the business plan was the result of research and discussions involving, among others, the potential acquirors, bank management, and Government personnel for lack of knowledge or information sufficient to form a belief as to the truth of the matters

asserted; the remaining allegations contained in the second sentence of paragraph 23 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied; denies the allegation contained in the third sentence of paragraph 23 that "[a]pproval of a satisfactory business plan was" "a precondition to plaintiffs' willingness to participate in the transaction" for lack of knowledge or information sufficient to form a belief as to the truth of the matters asserted; the remaining allegations contained in the third sentence of paragraph 23 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied; the allegations contained in the fourth and sixth sentences of paragraph 23 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied; admits the allegations contained in the fifth sentence of paragraph 23 to the extent supported by the plan cited, which is the best evidence of its contents; otherwise denies the allegations contained in the fifth sentence of paragraph 23.

24. Admits the allegations contained in the first sentence of paragraph 24 to the extent supported by the plan cited, which is the best evidence of its contents; otherwise denies the allegations contained in the first sentence of paragraph 24; the allegations contained in the remainder of paragraph 24 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

25. The allegations contained in paragraph 25 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, admits the allegations in paragraph 25 to the extent they are supported by the documents cited, which are the best evidence of their contents; otherwise denies the allegations contained in paragraph 25.

26. The allegations contained in paragraph 26 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, admits the allegations in paragraph 26 to the extent they are supported by the documents cited, which are the best evidence of their contents; otherwise denies the allegations contained in paragraph 26.

27. Admits the allegation contained in paragraph 27 that the Assistance Agreement provided for a cash contribution by FSLIC of approximately $34,200,000 to River Valley I; admits the allegation contained in paragraph 27 that the Assistance Agreement provided for the purchase by FSLIC of 50,000 shares of Preferred Stock of River Valley I in the amount of $5 million; admits the remainder of the allegations contained in paragraph 27 to the extent supported by the Assistance Agreement, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 27.

28. The allegations contained in paragraph 28 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

29. The allegations contained in the first and second sentences of paragraph 29 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied; admits the allegations contained in the third sentence of paragraph 29 to the extent supported by the document cited, which is the best evidence of its contents; otherwise denies the allegations contained in the third sentence of paragraph 29.

30. Admits the allegations contained in the first sentence of paragraph 30 to the extent supported by the document cited, which is the best evidence of its contents; otherwise denies the allegations contained in the first sentence of paragraph 30; the allegations contained in the

remainder of paragraph 30 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

31. Admits the allegations contained in the first two sentences of paragraph 31; the remaining allegations contained in paragraph 31 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

32. The allegations contained in paragraph 32 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

33. The allegations contained in the first sentence of paragraph 33 that there was an "Acquisition Agreement" and that the agreement was in accord with the parties' negotiations and understanding are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact they are admitted to the extent supported by the documents referred to, which are the best evidence of their contents; otherwise denies those allegations and denies the remainder of the allegations contained in the first sentence of paragraph 33; admits the allegations contained in the second, third and fourth sentences of paragraph 33 to the extent supported by the documents cited, which are the best evidence of their contents; otherwise denies the allegations contained in the second, third, and fourth sentences of paragraph 33.

34. The allegations contained in paragraph 34 that there was an "Acquisition Agreement" and that the "Regulatory Capital Maintenance and Dividend Limitation Agreement" was a part of the "Acquisition Agreement" are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact they are admitted to the extent supported by the documents referred to, which are the best evidence of their contents; otherwise denies the remainder of the allegations contained in paragraph 34.

35. The allegations contained in paragraph 35 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact they are admitted to the extent supported by the documents cited, which are the best evidence of their contents; otherwise denies the allegations contained in paragraph 35.

36. The allegations contained in the first, second, and fourth sentences of paragraph 36 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact they are denied; denies the allegations contained in the third sentence of paragraph 36 for lack of knowledge or information sufficient to form a belief as to the truth of the matters asserted.

37. Denies the allegations contained in the first sentence of paragraph 37; the allegations contained in the second and third sentences of paragraph 37 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact they are denied.

38. Admits the allegation contained in paragraph 38 that Republic's liabilities exceeded its assets at the effective date of the Assistance Agreement; the remainder of the allegations contained in the first sentence of paragraph 38 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied; denies the allegation contained in the second sentence of paragraph 38 that FSLIC and FHLBB began soliciting bids for lack of knowledge or information sufficient to form a belief as to the truth of the matters asserted; the remainder of the allegations contained in the second sentence of paragraph 38 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied; denies the allegations contained in the third and

fourth sentences of paragraph 38; the allegations contained in the fifth sentence of paragraph 38 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

39. Admits the allegations contained in paragraph 39 to the extent supported by the document cited, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 39.

40. Admits.

41. Denies the allegation contained in the first sentence of paragraph 41 that the term was “crucial” for lack of knowledge or information sufficient to form a belief as to the truth of the matter asserted; admits the remainder of the allegations contained in the first sentence of paragraph 41 to the extent supported by the document cited, which is the best evidence of its contents; otherwise denies the remainder of the allegations contained in the first sentence of paragraph 41; the allegations contained in the remainder of paragraph 41 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

42. Admits the allegations contained in the first sentence of paragraph 42 to the extent supported by the document cited, which is the best evidence of its contents; otherwise denies the allegations contained in the first sentence of paragraph 42; denies the allegation contained in the second sentence of paragraph 42 that the business plan was the result of research and discussions for lack of knowledge or information sufficient to form a belief as to the truth of the matters asserted; the remaining allegations contained in the second sentence of paragraph 42 are conclusions of law to which no response is required; to the extent that they may be deemed

allegations of fact, they are denied; denies the allegations contained in the third sentence of paragraph 42 for lack of knowledge or information sufficient to form a belief as to the truth of the matters asserted; the allegations contained in the remainder of paragraph 42 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

43. Admits the allegations contained in the first sentence of paragraph 43 to the extent supported by the document cited, which is the best evidence of its contents; otherwise denies the allegations contained in the first sentence of paragraph 43; the allegations contained in the remainder of paragraph 43 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

44. The allegations contained in paragraph 44 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, admits the allegations in paragraph 44 to the extent they are supported by the documents cited, which are the best evidence of their contents; otherwise denies the allegations contained in paragraph 44.

45. The allegations contained in paragraph 45 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, admits the allegations in paragraph 45 to the extent they are supported by the documents cited, which are the best evidence of their contents; otherwise denies the allegations contained in paragraph 45.

46. Admits the allegation contained in paragraph 46 that the Assistance Agreement provided for a cash contribution by FSLIC of approximately $16,600,000 to RVSB; admits the remainder of the allegations contained in paragraph 46 to the extent supported by the Assistance

Agreement, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 46.

47. The allegations contained in the first and second sentences of paragraph 47 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied; admits the allegations contained in the third and fourth sentences of paragraph 47 to the extent supported by the document cited, which is the best evidence of its contents; otherwise denies the allegations contained in the third and fourth sentences of paragraph 47; the allegations contained in the remainder of paragraph 47 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

48. The allegations contained in paragraph 48 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

49. The allegations contained in paragraph 49 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

50. The allegations contained in the first sentence of paragraph 50 that there was an "Acquisition Agreement" and that the agreement was in accord with the parties' negotiations and understanding are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact they are denied; admits the remainder of the allegations contained in the first sentence of paragraph 50 to the extent supported by the documents referred to, which are the best evidence of their contents; otherwise denies the remainder of the allegations contained in the first sentence of paragraph 50; admits the allegations contained in the second, third and fourth sentences of paragraph 50 to the extent supported by the documents

cited, which are the best evidence of their contents; otherwise denies the allegations contained in the second, third, and fourth sentences of paragraph 50.

51. Admits the allegations contained in paragraph 51 to the extent supported by the document referred to, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 51.

52. The allegations contained in paragraph 52 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, admits to the extent supported by the document cited, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 52.

53. The allegations contained in the first, second, and fourth sentences of paragraph 53 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied; denies the allegations contained in the third sentence of paragraph 53 for lack of knowledge or information sufficient to form a belief as to the truth of the matters asserted.

54. Denies the allegations contained in the first sentence of paragraph 54; the allegations contained in the second and third sentences of paragraph 54 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

55. Admits the allegation contained in the first sentence of paragraph 55 that Peoria's liabilities exceeded its assets at the effective date of the Assistance Agreement; the remainder of the allegations contained in the first sentence of paragraph 55 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied;

the allegations contained in the second sentence of paragraph 55 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied; denies the allegation contained in the third sentence of paragraph 55.

56. The allegations contained in paragraph 56 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

57. Admits the allegations contained in paragraph 57 to the extent supported by the document cited, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 57.

58. Admits the allegations contained in paragraph 58 to the extent supported by the document cited, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 58.

59. The allegations contained in paragraph 59 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

60. The allegations contained in paragraph 60 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, admits the allegations in paragraph 60 to the extent they are supported by the documents cited, which are the best evidence of their contents; otherwise denies the allegations contained in paragraph 60.

61. The allegations contained in paragraph 61 are unintelligible and therefore no response is required; to the extent that they may be deemed allegations of fact, they are admitted to the extent supported by the documents cited, which are the best evidence of their contents; otherwise denies the allegations contained in paragraph 61.

62. Admits the allegations contained in paragraph 62 to the extent supported by the document cited, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 62.

63. The allegations contained in paragraph 63 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

64. Admits the allegations contained in the first sentence of paragraph 64; the allegations contained in the remainder of paragraph 64 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are admitted to the extent that they are supported by the referenced statute, which is the best evidence of its contents; otherwise denies the remainder of the allegations contained in paragraph 64.

65. Denies the allegations contained in the first sentence of paragraph 65 for lack of knowledge or information sufficient to form a belief as to the truth of the matters asserted; admits the allegations contained in the second and third sentences of paragraph 65 to the extent supported by the regulations cited, which are the best evidence of their content; otherwise denies the allegations contained in the second and third sentences of paragraph 65.

66. The allegations contained in the first and third sentences of paragraph 66 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied; admits the allegations contained in the second and fourth sentences of paragraph 66 to the extent supported by the document cited, which is the best evidence of its content; otherwise denies the allegations contained in the second and fourth sentences of paragraph 66.

67. The allegations that the Government abrogated agreements and received benefits from plaintiffs' operations of River Valley I and River Valley II are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied; denies the remainder of the allegations contained in paragraph 67 for lack of knowledge or information sufficient to form a belief as to the truth of the matters asserted.

68. Denies.

69. Denies the allegation contained in the first and third sentences of paragraph 69 for lack of knowledge and information sufficient to form a belief as to the truth of the matters asserted; the allegations contained in the second sentence of paragraph 69 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

70. Denies.

71. Admits the allegations contained in the first and second sentences of paragraph 71 to the extent supported by the document cited, which is the best evidence of its content; otherwise denies the allegations contained in the first and second sentences of paragraph 71; denies the allegations contained in the third and fourth sentences of paragraph 71.

72. Defendant denies the allegations contained in paragraph 72 with respect to River Valley Holdings Inc.; otherwise denies the allegations contained in paragraph 72 for lack of knowledge and information sufficient to form a belief as to the truth of the matters asserted.

**Count I**

73. The responses to paragraphs 1 through 72 are incorporated as if fully set forth.

74. The allegations contained in paragraph 74 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

75. Denies.

76. Denies.

77. Denies that plaintiffs are entitled to the relief requested or to any relief whatsoever.

## Count II

78. The responses to paragraphs 1 through 72 are incorporated as if fully set forth.

79. Denies.

80. Denies.

81. Denies.

82. Denies the allegation that plaintiff, First Bank, MO ("FBMO") is the successor in interest to River Valley I and River Valley III for lack of knowledge or information sufficient to form a belief as to the matter asserted; otherwise denies that FBMO is entitled to the relief requested or to any relief whatsoever.

## Count III

83. The responses to paragraphs 1 through 72 are incorporated as if fully set forth.

84. Denies.

85. Denies.

86. Denies.

87. Denies the allegation that FBMO is the successor in interest to River Valley I and River Valley III for lack of knowledge or information sufficient to form a belief as to the matter

asserted; otherwise denies that FBMO is entitled to the relief requested or to any relief whatsoever.

**Count IV**

88. The responses to paragraphs 1 through 72 are incorporated as if fully set forth.

89. Denies.

90. Denies.

91. Denies that plaintiffs are entitled to the relief requested or to any relief whatsoever.

92. Denies that plaintiffs are entitled to the relief requested in the complaint's prayer for relief or to any relief whatsoever.

93. Denies each and every allegation not previously admitted or otherwise qualified.

**DEFENSES AND AFFIRMATIVE DEFENSES**

94. Plaintiffs have failed to state, in whole or in part, claims against defendant upon which relief may be granted.

95. Plaintiffs have asserted claims that are beyond the Court's subject matter jurisdiction.

96. Plaintiff is barred from recovering prejudgment interest from defendant.

97. Defendant asserts the affirmative defense of estoppel.

98. Defendant asserts the affirmative defense of lack of authority or intent to bind the Government by contract.

99. Defendant asserts the affirmative defense of lack of causation.

100. Defendant asserts the affirmative defense of lack of privity.

101. Defendant asserts the affirmative defense of lack of standing.

102. Defendant asserts the affirmative defense of accord and satisfaction.

103. Defendant asserts the affirmative defense of res judicata.

104. Defendant asserts the affirmative defense of failure to mitigate.

105. Defendant asserts the affirmative defense of recoupment.

## COUNTERCLAIMS[1]

106. Jurisdiction for these counterclaims are provided by 28 U.S.C. §§ 1503 and 2508.

107. On July 28, 1988, an assistance agreement ("Galva/Mutual/Home Assistance Agreement") was entered into by and among Messrs. Holland and Ross, the River Valley Savings Bank, F.S.B. ("River Valley I"), and the Federal Savings and Loan Insurance Corporation ("FSLIC") relating to the merger of Galva Federal Savings and Loan Association of Galva, Illinois ("Galva"), and Mutual Savings and Loan Association of Canton, Illinois ("Mutual"), with and into Home Federal Savings and Loan Association of Peoria, Illinois ("Home"), and the conversion of Home into River Valley I.

108. The "Accounting Principles" section of the Galva/Mutual/Home Assistance Agreement provided, in part, as follows:

> Except as otherwise provided, any computations made for purposes of this Agreement shall be governed by generally accepted accounting principles as applied in the savings and loan industry, except that where such principles conflict with the terms of this Agreement, applicable regulations of the Bank Board or [FSLIC], or any

[1] Our Counterclaims are premised upon the Court's finding, in its February 20, 2007 opinion, that the Settlement Agreement entered into between Messrs. Holland and Ross and River Valley III, dated August 14, 1991, constituted a covenant not to sue. Our Counterclaims do not preclude our right to appeal any or all of the findings of fact and law, as determined by the Court, as of the date of this filing.

> resolution or action of the Bank Board approving or relating to the Transaction or to this Agreement; then this Agreement, such regulations, or such resolution or action shall govern . . . .

109. Pursuant to the Galva/Mutual/Home Assistance Agreement, among other things, FSLIC contributed cash in the amount of $34,215,888 to River Valley I plus $13,000 per diem from April 1, 1988, to, and including, the effective date of the agreement, which eliminated the existing net worth deficit.

110. The Galva/Mutual/Home Assistance Agreement provided that "($8,000,000) of the cash contributions made by [FSLIC] under this § 6(a)(1) and (2) shall be credited to River Valley [FSB's] net worth account and shall constitute regulatory capital as defined in § 561.13 of the Insurance Regulations, 12 C.F.R. § 561.13 (1988) . . ." subject to certain restrictions, including the following provisions affecting growth and the payment of dividends:

> [F]or purposes any provision of the Insurance Regulations . . . [River Valley I] shall be deemed to have regulatory capital not exceeding one dollar ($1.00) less than the fully phased in regulatory capital requirement of § 563.13 (b)(4)(A) of the Insurance Regulations by reason of the credit to regulatory capital provided by this [section]; and provided further that in determining whether and when to declare a dividend payment to its stockholders, [River Valley I] shall not include, in its calculation of available regulatory capital, the credit to regulatory capital provided by this paragraph.

111. Section 6(b)(1) of the Galva/Mutual/Home Assistance Agreement provided that a $4.6 million subordinated debenture to be "duly executed by [River Valley I] and secured by the INVESTORS" was to "be included in [River Valley I's] regulatory capital pursuant to § 561.13 of the Insurance Regulations."

112. In the Galva/Mutual/Home Assistance Agreement, FSLIC agreed to reimburse River Valley I for (a) 90 percent of losses it may incur upon the disposition of certain covered

assets identified in the Assistance Agreement, (b) 90 percent of losses it may incur on unidentified covered assets consisting of real estate owned and mortgage loans that become non-performing within eighteen months from the conversion date up to $2.5 million of such assets, and (c) 90 percent of any write-down approved by the FSLIC. FSLIC also agreed to reimburse River Valley I for 100 percent of accrued but uncollected interest on covered assets through the effective date at such time as River Valley I and FSLIC agreed it was uncollectible and was to be written-off. River Valley I agreed to reimburse FSLIC for (a) 90 percent of all covered asset recoveries, and (b) 100 percent of any tax benefits related to covered assets resulting from any cost, expense, or loss which was reimbursed by FSLIC, or which was deductible on River Valley I's Federal or state income tax return.

113. Section 25 of the Galva/Mutual/Home Assistance Agreement, entitled "Successors and Assigns," restricted the assignment of any rights or obligations under the agreement, providing as follows:

> All the terms and provisions of this Agreement shall be binding upon and inure to the benefit of the parties and their respective transferees, successors, and assigns, but this Agreement may not be assigned to any party nor may any rights or obligations under it be transferred or delegated to or vested in any other party, through merger, consolidation, or otherwise, without the prior written consent of [FSLIC].

114. Section 26 of the Galva/Mutual/Home Assistance Agreement, entitled "Sole Benefit," provided as follows:

> It is the intention of the parties that this Agreement, the assumption of obligations and statements of responsibilities under it, and all of its conditions and provisions are for the sole benefit of the parties hereto and for the benefit of no other person. Nothing expressed or referred to in this Agreement is intended or shall be construed to give any

> person other than the parties hereto any legal or equitable right, remedy, or claim under, or in respect to, this Agreement or any of its provisions.

115. On July 29, 1988, FSLIC and the Rock Falls Savings and Loan Association ("Rock Falls"), Messrs. Holland and Ross's wholly-owned state chartered thrift, entered into an assistance agreement ("Republic Assistance Agreement") relating to the merger of Republic Savings and Loan Association of South Beloit, South Beloit, IL ("Republic") with and into Rock Falls, which then became known as River Valley Savings Bank of Rock Falls, Illinois ("River Valley II").

116. The "Accounting Principles" section of the Republic Assistance Agreement provided, in part, as follows:

> Except as otherwise provided herein, any computations made for purposes of this Agreement shall be governed by generally accepted accounting principles as applied in the savings and loan industry, except that where such principles conflict with the terms of the Agreement, applicable regulations, or any resolution or action of the Bank Board approving or relating to the Transaction or to this Agreement, then this Agreement, such regulations, or such resolution or action shall govern . . . .

117. Pursuant to the Republic Assistance Agreement, among other things, FSLIC contributed $16,600,000 in cash to River Valley II "plus $7,500 per diem for each day after March 31, 1988, until the [e]ffective date" of the agreement, which eliminated all but $1.310 million of the existing net worth deficit.

118. The Republic Assistance Agreement provided that "$5,000,000 of the cash contribution made [by FSLIC] under this § 6 (a)(1) shall be credited to [River Valley II's] regulatory capital account and shall constitute regulatory capital as defined in § 561.13 of

the Insurance Regulations (12 C.F.R. § 561.13 (1987)) . . ." subject to certain restrictions, including the following provisions affecting growth and the payment of dividends:

> [F]or purposes of any provision of the Insurance Regulations . . . [River Valley II] shall be deemed to have regulatory capital not exceeding one dollar ($1.00) less than the full-phased in regulatory capital requirement of Section 563.13 of the Insurance Regulations by reason of the credit to regulatory capital provided by this [section]; and provided further that in determining whether and when to declare a dividend payment to its stockholders [River Valley II] shall not include in its calculation of available regulatory capital the credit to regulatory capital resulting from this [section] . . . .

119. In the Republic Assistance Agreement, FSLIC agreed to provide assistance to River Valley II for certain covered assets, real estate owned (REO), and certain loans that were 90 days delinquent as of the Effective Date or became 90 days delinquent within a year and a half thereafter. The agreement provided that FSLIC and River Valley II would share covered asset losses (defined as the excess of the book value of the asset over the net proceeds received on liquidation or the amount of any approved write down), with FSLIC reimbursing River Valley II for 80 percent of the first $600,000 of covered asset capital losses and write-downs and 100 percent of covered asset losses thereafter. (FSLIC could require the write-down of covered assets to any level.) River Valley II agreed to reimburse FSLIC for 100 percent of all covered asset recoveries and all net tax benefits resulting from any cost, expense, or loss that had been reimbursed by FSLIC, which was deductible on River Valley II's Federal or state income tax return or that reduced the balance of River Valley II's bad debt reserve.

120. Section 25 of the Republic Assistance Agreement, entitled "Successors and Assigns," restricted the assignment of any rights or obligations under the agreement, providing as follows:

> All the terms and provisions of this Agreement shall be binding upon and inure to the benefit of the parties and their respective transferees, successors, and assigns, but this Agreement may not be assigned to any party nor may any rights or obligations under it be transferred or delegated to or vested in any other party, through merger, consolidation, or otherwise, without the prior written consent of [FSLIC].

121. Section 26 of the Republic Assistance Agreement, entitled "Sole Benefit," provided as follows:

> It is the intention of the parties that this Agreement, the assumption of obligations and statements of responsibilities under it, and all of its conditions and provisions are for the sole benefit of the parties hereto and for the benefit of no other person or persons. Nothing expressed or referred to in this Agreement is intended or shall be construed to give any person or persons other than the parties hereto any legal or equitable right, remedy, or claim under, or in respect to, this Agreement or any of its provisions.

122. On August 9, 1989, the Financial Institutions Reform Recovery, and Enforcement Act ("FIRREA") was enacted. The Office of Thrift Supervision ("OTS"), which succeeded the Federal Home Loan Bank Board ("FHLBB") as a result of FIRREA, issued implementing regulations for the new legislation on November 8, 1989, with an effective date of December 7, 1989.

123. Prior to the passage of FIRREA, the FSLIC administered a fund that insured deposits held by thrift institutions. Subsequent to FIRREA, the Federal Deposit Insurance Corporation ("FDIC"), as successor to the FSLIC, insured deposits held by thrift institutions.

124. The FDIC, as manager of the FSLIC Resolution Fund ("FRF"), was the successor in interest to the FSLIC, including with respect to the Galva/Mutual/Home and Republic Assistance Agreements (collectively, "River Valley Assistance Agreements"). Section 215 of

FIRREA (codified at 12 U.S.C. § 1821a); see Resolution Trust Corp. v. FSLIC, 25 F.3d 1493, 1505-06 (10th Cir. 1994).

125. On March 31, 1991, River Valley II was merged with and into River Valley I. River Valley III refers to the institution that survived that merger. As of September 25, 1991, River Valley Holdings, Inc. ("RV Holdings") was the holding company for River Valley III.

126. First Bank purports to be the successor in interest to the River Valley thrifts.

127. On August 14, 1991, Messrs. Holland and Ross, River Valley III, and the FDIC, as the manager of the FRF, entered into a comprehensive settlement agreement ("Settlement Agreement") regarding the River Valley Assistance Agreements (as well as a transaction with Peoria Savings and Loan Association, Peoria, IL, which subsequently merged into River Valley I, and is no longer at issue in this litigation).

128. Under the terms of the Settlement Agreement, River Valley III paid the FDIC $50,000 and the FDIC paid River Valley III $3,276,902.90. These payments constituted a settlement of any and all claims or causes of action regarding, or in connection with, the River Valley Assistance Agreements.

129. This Court has found the Settlement Agreement constituted merely a covenant not to sue between the plaintiffs and the FDIC, as manager of the FRF and as an agency of the United States, of "any and all obligations and liabilities of such party under the Assistance Agreements" and "any obligation or liability of any such kind in connection therewith, including, without limitation, any and all actions, causes of action, suits, debts, sums of money, bonds, covenants, agreements, promises, damages, judgments, claims, and demands whatsoever, known or unknown, suspected or unsuspected, at law or in equity."

130. The Settlement Agreement included a broadly worded accord and satisfaction provision, which demonstrated the parties' intent to release each other from any claims or causes of action regarding the River Valley Assistance Agreements. This provision, in its entirety, states:

> Section 5 Accord and Satisfaction. Except as otherwise specifically provided herein, performance by each party of its respective obligations under this Settlement Agreement shall effect a complete accord and satisfaction of any and all obligations and liabilities of such party under the Assistance Agreements and, thenceforth, such party shall be fully discharged from any obligation or liability of any kind in connection therewith, including, without limitation, any and all actions, causes of action, suits, debts, sums of money, bonds, covenants, agreements, promises, damages, judgments, claims, and demands whatsoever, known or unknown, suspected or unsuspected, at law or in equity.

131. The Settlement Agreement's "Entire Agreement" provision states:

> (h) Entire Agreement. This Settlement Agreement embodies the entire Settlement Agreement among the parties hereto with respect to the subject matters herein and supersedes all prior agreements and understandings among the parties, oral or written, concerning such matters.

132. Plaintiffs Holland and Ross filed this action on August 8, 1995.

133. In their action, plaintiffs named "the parties" as the FDIC, FSLIC, OTS, and FHLBB. E.g., Pl. Third Am. Compl. (May 18, 2005) at ¶ 4 ("Under Section 401 of [FIRREA], . . . FHLBB was abolished as of October 8, 1989; its functions and responsibilities, for the purposes relevant to this action, were transferred by the statute to the Director of the [OTS]."); ¶ 7 ("Under Section 401 of FIRREA, FSLIC was abolished as of August 9, 1989, and its responsibilities and functions, for the purposes relevant to this action, were transferred to the Federal Deposit Insurance Corporation ('FDIC')"); ¶ 8 ("FDIC is designated under FIRREA as the successor in

interest to FSLIC for purposes relevant to this action."); ¶ 9 ("The Director of the OTS has been designated under FIRREA as the successor in interest to the FHLBB for purposes relevant to this action."); ¶ 25 ("On July 29, 1988, FHLBB, FSLIC, Homer J. Holland, Howard R. Ross, and River Valley I executed and delivered a series of integrated documents which together comprise a unitary agreement."); ¶ 44 ("On July 29, 1988, FHLBB, FSLIC, Homer J. Holland, Howard R. Ross, and River Valley II executed and delivered a series of integrated documents concerning the conversion and merger of Republic with and into River Valley II and comprising a unitary agreement among them."); ¶¶ 74-77 (alleging a contract between plaintiffs and "the government" and seeking damages from injuries caused by the United States).

134. In their action, plaintiffs claim that a single integrated contract existed encompassing the obligations of both the FHLBB and FSLIC. E.g., Pl. Third Am. Compl. (May 18, 2005) at ¶ 25 ("On July 29, 1988, FHLBB, FSLIC, Homer J. Holland, Howard R. Ross, and River Valley I executed and delivered a series of integrated documents which together comprise a unitary agreement."); ¶ 44 ("On July 29, 1988, FHLBB, FSLIC, Homer J. Holland, Howard R. Ross, and River Valley II executed and delivered a series of integrated documents concerning the conversion and merger of Republic with and into River Valley II and comprising a unitary agreement among them."); ¶¶ 74-77 (alleging a contract between plaintiffs and "the government" and seeking damages from injuries caused by the United States); see also, e.g., id. at ¶ 12 ("FHLBB and FSLIC provided a variety of cash and non-cash inducements to encourage such acquisitions."); ¶ 15 ("FHLBB and FSLIC solicited bids from potential acquirors."); ¶ 16 ("FHLBB and FSLIC represented that FSLIC would provide a major infusion of funds . . . . [and] FHLBB and FSLIC represented by various references to capital requirements and forbearances

from capital requirements that the government would provide an opportunity for Holland and Ross to leverage their investment of capital."); ¶ 20 ("FSLIC and FHLBB intended to provide and promised to provide Holland and Ross with a commercially sound opportunity."); ¶ 23 ("All parties to the negotiations, including FHLBB and FSLIC, recognized that the government's agreement . . . was to be authorized to treat the FSLIC cash contribution as regulatory capital."); ¶ 25(f) ("FSLIC and the FHLBB agreed with Holland and Ross and River Valley I that: (I) the secretary of the FHLBB shall send to River Valley I a letter concerning forbearances by the FHLBB and the FSLIC with respect to certain regulatory requirements."); ¶ 44(j).

135. On October 25, 2004, the Court granted plaintiffs' joint motion to join First Banks, Inc. as a plaintiff pursuant to Rule 17(a) of the Rules of the United States Court of Federal Claims and to file a second amended complaint, which was filed on October 28, 2004.

136. On May 12, 2005, the Court granted plaintiffs' joint motion to join First Bank as a plaintiff and to file a third amended complaint, which was filed on May 18, 2005, and listed Holland, Ross, and First Bank as plaintiffs. The Court deemed plaintiffs to have substituted First Bank for First Banks, Inc.

137. The accord and satisfaction provision releases and resolves all claims between the plaintiffs and Government with respect to the River Valley Assistance Agreements. Even if the Settlement Agreement's accord and satisfaction provision is not a release for all claims between the plaintiffs and the Government with respect to the River Valley Assistance Agreements, then the Settlement Agreement is nonetheless a covenant not to sue that was executed between the FDIC, as manager of the FRF and as an agency of the United States, and the plaintiffs. See Holland v. United States, No. 95-524C, 2007 WL 625312 (Fed. Cl. Feb. 20, 2007).

138. Plaintiffs breached the Settlement Agreement's covenant not to sue when Messrs. Holland and Ross filed suit against the FDIC (styled as a claim against the United States) in 1995, 2004, and 2005; when First Bank was joined to this suit in 2005; and when First Banks, Inc. was joined to this suit in 2004, as First Bank was deemed in 2005 to have been substituted for First Banks, Inc.

139. Plaintiffs have not refunded to the FDIC, as manager of the FRF and as an agency of the United States, the FDIC's net payment to plaintiffs of $3,226,902.90, made pursuant to the terms of the Settlement Agreement.

140. On March 28, 2007, the Estate of Howard Ross filed a motion to be substituted for Howard Ross. Accordingly, the Estate of Howard Ross is deemed to have breached the covenant not to sue.

141. Plaintiffs are jointly and severally liable for the breach of the Settlement Agreement's covenant not to sue.

**COUNTERCLAIM FOR BREACH OF THE COVENANT NOT TO SUE**

**Count I – Breach Of The Covenant Not To Sue By First Bank**

142. Defendant incorporates by reference paragraphs 106 through 141 above.

143. By filing its lawsuit against the FDIC in 2005, First Bank breached the Settlement Agreement's covenant not to sue the FDIC, as manager of the FRF and as an agency of the United States.

144. First Bank also breached the Settlement Agreement's covenant not to sue the FDIC, as manager of the FRF and as an agency of the United States, by First Banks, Inc.'s filing

of its lawsuit in 2004, as First Bank was deemed in 2005 to have been substituted for First Banks, Inc.

**Count II – Breach Of The Covenant Not To Sue By Mr. Holland**

145. Defendant incorporates by reference paragraphs 106 through 141 above.

146. By filing this lawsuit against the FDIC in 1995, 2004, and 2005, Mr. Holland breached the Settlement Agreement's covenant not to sue the FDIC, as manager of the FRF and as an agency of the United States.

**Count III – Breach Of The Covenant Not To Sue By The Estate Of Mr. Ross**

147. Defendant incorporates by reference paragraphs 106 through 141 above.

148. By filing its lawsuit against the FDIC in 1995, 2004, and 2005, Mr. Ross breached the Settlement Agreement's covenant not to sue the FDIC, as manager of the FRF and as an agency of the United States.

149. By filing a motion to be substituted for Mr. Ross, the Estate of Holland Ross is now deemed to have breached the Settlement Agreement's covenant not to sue the FDIC, as manager of the FRF and as an agency of the United States.

WHEREFORE, defendant respectfully requests damages for plaintiffs' breach of the Settlement Agreement's covenant not to sue the FDIC, as manager of the FRF and as an agency of the United States. This amount includes the FDIC's net payment of $3,226,902.90 ($3,276,902.90 paid by the FDIC to River Valley III, minus $50,000 paid by River Valley III to the FDIC) pursuant to the Settlement Agreement, plus lost earnings to the FRF as a result of the FDIC's payment of this amount; or, in the alternative, earnings First Bank or its successor in

interest made upon the FDIC's net payment of $3,226,902.90; as well as such other and further relief as the Court may deem just and proper.

**COUNTERCLAIM FOR SET-OFF**

**Count I – Set-Off Against First Bank**

150. Defendant incorporates by reference paragraphs 106 through 141.

151. By filing its lawsuit against the FDIC in 2005, First Bank breached the Settlement Agreement's covenant not to sue the FDIC, as manager of the FRF and as an agency of the United States.

152. First Bank also breached the Settlement Agreement's covenant not to sue the FDIC, as manager of the FRF and as an agency of the United States, by First Banks, Inc.'s filing of its lawsuit in 2004, as First Bank was deemed in 2005 to have been substituted for First Banks, Inc.

153. First Bank has failed to repay to the FDIC, as manager of the FRF and as an agency of the United States, the FDIC's net payment of $3,226,902.90, paid pursuant to the terms of the Settlement Agreement.

**Count II – Set-Off Against Mr. Holland**

154. Defendant incorporates by reference paragraphs 106 through 141 above.

155. By filing this lawsuit against the FDIC in 1995, 2004, and 2005, Mr. Holland breached the Settlement Agreement's covenant not to sue the FDIC, as manager of the FRF and as an agency of the United States.

156. Mr. Holland has failed to repay to the FDIC, as manager of the FRF and as an agency of the United States, the FDIC's net payment of $3,226,902.90, paid pursuant to the terms of the Settlement Agreement.

**Count III – Set-Off Against The Estate Of Mr. Ross**

157. Defendant incorporates by reference paragraphs 106 through 141 above.

158. By filing its lawsuit against the FDIC in 1995, 2004, and 2005, Mr. Ross breached the Settlement Agreement's covenant not to sue the FDIC, as manager of the FRF and as an agency of the United States.

159. By filing a motion to be substituted for Mr. Ross, the Estate of Holland Ross is now deemed to have breached the Settlement Agreement's covenant not to sue the FDIC, as manager of the FRF and as an agency of the United States.

160. The Estate of Mr. Ross has failed to repay to the FDIC, as manager of the FRF and as an agency of the United States, the FDIC's net payment of $3,226,902.90, paid pursuant to the terms of the Settlement Agreement.

WHEREFORE, and in the alternative to its counterclaim against plaintiffs for the breach of the covenant not to sue, defendant respectfully requests that the FDIC's net payment of $3,226,902.90 ($3,276,902.90 paid by the FDIC to River Valley III, minus $50,000 paid by River Valley III to the FDIC), which constituted a settlement of any and all claims or causes of action regarding the River Valley Assistance Agreements, be set-off against any amount awarded to the plaintiffs by the Court in this case, as well as such other and further relief as the Court may deem just and proper.

Respectfully submitted,

MICHAEL F. HERTZ
Deputy Assistant Attorney General

JEANNE E. DAVIDSON
Acting Director

/s/ Kenneth M. Dintzer
KENNETH M. DINTZER
Assistant Director

/s/ John H. Roberson
JOHN H. ROBERSON
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor, 1100 L Street
Washington, D.C. 20530
Tele: (202) 353-7972
Fax: (202) 514-8640
Attorneys for Defendant

Of Counsel:

RICHARD B. EVANS
ELIZABETH A. HOLT
WILLIAM G. KANELLIS
DAVID A. LEVITT
JOHN J. TODOR

April 17, 2007

**CERTIFICATE OF SERVICE**

I hereby certify that on this 17th day of April 2007, a copy of the foregoing "DEFENDANT'S AMENDED ANSWER TO PLAINTIFFS' THIRD AMENDED COMPLAINT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ John H. Roberson
John H. Roberson