**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| HOMER J. HOLLAND,<br>HOWARD R. ROSS, and<br>FIRST BANK | ) | |
| Plaintiffs, | ) | Case No. 95-524C |
| v. | ) | (Judge George W. Miller) |
| | ) | (Winstar-Related Case) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**DEFENDANT'S AMENDED ANSWER TO PLAINTIFFS' THIRD AMENDED COMPLAINT**

For its amended answer to the complaint, defendant admits, answers, denies, and alleges as follows:

1. The allegations contained in paragraph 1 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

2. Denies the allegations contained in the first sentence of paragraph 2 for lack of knowledge or information sufficient to form a belief as to the truth of the matters asserted. Admits the allegations contained in the second sentence of paragraph 2 to the extent supported by the document cited; otherwise denies the remainder of the allegations contained in the second sentence of paragraph 2.

3. Denies the allegations contained in the first sentence of paragraph 3 for lack of knowledge or information sufficient to form a belief as to the truth of the matter asserted. The remainder of the allegations contained in paragraph 3 are conclusions of law to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

4. Admits the allegations contained in the first sentence of paragraph 4; the remaining allegations contained in paragraph 4 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, the defendant admits the remaining allegations contained in paragraph 4 to the extent that they are supported by the statute cited, which is the best evidence of its contents; otherwise they are denied.

5. The allegations contained in paragraph 5 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, the defendant admits the remaining allegations contained in paragraph 5 to the extent that they are supported by the statute cited, which is the best evidence of its contents; otherwise they are denied.

6. Admits the allegations contained in the first sentence of paragraph 6 to the extent that the plaintiffs asserts that FSLIC administered a fund that insured certain deposits held by thrift institutions; the remaining allegations contained in the first sentence of paragraph 6 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied; denies the allegations contained in the second and third sentences of paragraph 6 for lack of knowledge or information sufficient to form a belief as to the truth of the matters asserted.

7. The allegations contained in paragraph 7 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, the defendant admits the allegations contained in paragraph 7 to the extent that they are supported by the statute cited, which is the best evidence of its contents; otherwise they are denied.

8. The allegations contained in paragraph 8 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, the defendant

admits the allegations contained in paragraph 8 to the extent that they are supported by the statute cited, which is the best evidence of its contents; otherwise they are denied.

9. The allegations contained in paragraph 9 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, the defendant admits the allegations contained in paragraph 9 to the extent that they are supported by the statute cited, which is the best evidence of its contents; otherwise they are denied.

10. The allegations contained in paragraph 10 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, the defendant admits the allegations contained in paragraph 10 to the extent that they are supported by the statute cited, which is the best evidence of its contents; otherwise they are denied.

11. Admits the allegations contained in paragraph 11 that, beginning in the late 1970s and continuing to the present, many thrifts suffered losses caused by, among other things, changing economic conditions and poor management and that the failure of thrift institutions impacted the resources of FSLIC; the remainder of the allegations contained in paragraph 11 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

12. Admits the allegations contained in paragraph 12 that FHLBB has on occasion permitted the acquisition of certain savings and loan institutions by other institutions, and that FHLBB permitted the acquisitions of Galva, Mutual, Home, Republic and Peoria; denies the allegations contained in paragraph 12 that FHLBB and FSLIC “aggressively” implemented a policy of investment and acquisition; denies the allegations contained in paragraph 12 that the troubled institutions were essentially unsalable for lack of knowledge or information sufficient to

form a belief as to the truth of the matters asserted; the remainder of the allegations contained in paragraph 12 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

13. Admits the allegations contained in paragraph 13 that Galva's, Home's, Mutual's, Republic's and Peoria's liabilities exceeded their assets on the effective date of the Assistance Agreement relating to each of the institutions; the remainder of the allegations contained in paragraph 13 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

14. Denies the allegations contained in paragraph 14 for lack of knowledge or information sufficient to form a belief as to the truth of the matters asserted.

15. Admits the allegation contained in the first sentence of paragraph 15 that FSLIC made available a bid package to any investor expressing an interest in acquiring Galva, Mutual and Home to the extent supported by the document cited in the second sentence of paragraph 15, which is the best evidence of its contents; otherwise denies such allegation; the remainder of the allegations contained in the first sentence of paragraph 15 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied; admits the allegations contained in the second sentence of paragraph 15 to the extent supported by the document cited, which is the best evidence of its contents; otherwise denies the allegations contained in the second sentence of paragraph 15; denies the allegations contained in the third and fourth sentences of paragraph 15.

16. The allegations contained in paragraph 16 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

17. The allegations contained in paragraph 17 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

18. The allegations contained in paragraph 18 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

19. The allegations contained in paragraph 19 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

20. The allegations contained in paragraph 20 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

21. Admits the allegations contained in paragraph 21 to the extent supported by the offer cited, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 21.

22. Admits the allegations contained in the first sentence of paragraph 22 to the extent supported by the offer cited, which is the best evidence of its contents; otherwise denies the allegations contained in the first sentence of paragraph 22; the allegations contained in the remainder of paragraph 22 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

23. Admits the allegations contained in the first sentence of paragraph 23 to the extent supported by the document cited, which is the best evidence of its contents; otherwise denies the allegations contained in the first sentence of paragraph 23; denies the allegation contained in the second sentence of paragraph 23 that the business plan was the result of research and discussions involving, among others, the potential acquirors, bank management, and Government personnel for lack of knowledge or information sufficient to form a belief as to the truth of the matters

asserted; the remaining allegations contained in the second sentence of paragraph 23 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied; denies the allegation contained in the third sentence of paragraph 23 that "[a]pproval of a satisfactory business plan was" "a precondition to plaintiffs' willingness to participate in the transaction" for lack of knowledge or information sufficient to form a belief as to the truth of the matters asserted; the remaining allegations contained in the third sentence of paragraph 23 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied; the allegations contained in the fourth and sixth sentences of paragraph 23 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied; admits the allegations contained in the fifth sentence of paragraph 23 to the extent supported by the plan cited, which is the best evidence of its contents; otherwise denies the allegations contained in the fifth sentence of paragraph 23.

24. Admits the allegations contained in the first sentence of paragraph 24 to the extent supported by the plan cited, which is the best evidence of its contents; otherwise denies the allegations contained in the first sentence of paragraph 24; the allegations contained in the remainder of paragraph 24 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

25. The allegations contained in paragraph 25 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, admits the allegations in paragraph 25 to the extent they are supported by the documents cited, which are the best evidence of their contents; otherwise denies the allegations contained in paragraph 25.

26. The allegations contained in paragraph 26 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, admits the allegations in paragraph 26 to the extent they are supported by the documents cited, which are the best evidence of their contents; otherwise denies the allegations contained in paragraph 26.

27. Admits the allegation contained in paragraph 27 that the Assistance Agreement provided for a cash contribution by FSLIC of approximately $34,200,000 to River Valley I; admits the allegation contained in paragraph 27 that the Assistance Agreement provided for the purchase by FSLIC of 50,000 shares of Preferred Stock of River Valley I in the amount of $5 million; admits the remainder of the allegations contained in paragraph 27 to the extent supported by the Assistance Agreement, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 27.

28. The allegations contained in paragraph 28 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

29. The allegations contained in the first and second sentences of paragraph 29 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied; admits the allegations contained in the third sentence of paragraph 29 to the extent supported by the document cited, which is the best evidence of its contents; otherwise denies the allegations contained in the third sentence of paragraph 29.

30. Admits the allegations contained in the first sentence of paragraph 30 to the extent supported by the document cited, which is the best evidence of its contents; otherwise denies the allegations contained in the first sentence of paragraph 30; the allegations contained in the

remainder of paragraph 30 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

31. Admits the allegations contained in the first two sentences of paragraph 31; the remaining allegations contained in paragraph 31 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

32. The allegations contained in paragraph 32 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

33. The allegations contained in the first sentence of paragraph 33 that there was an "Acquisition Agreement" and that the agreement was in accord with the parties' negotiations and understanding are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact they are admitted to the extent supported by the documents referred to, which are the best evidence of their contents; otherwise denies those allegations and denies the remainder of the allegations contained in the first sentence of paragraph 33; admits the allegations contained in the second, third and fourth sentences of paragraph 33 to the extent supported by the documents cited, which are the best evidence of their contents; otherwise denies the allegations contained in the second, third, and fourth sentences of paragraph 33.

34. The allegations contained in paragraph 34 that there was an "Acquisition Agreement" and that the "Regulatory Capital Maintenance and Dividend Limitation Agreement" was a part of the "Acquisition Agreement" are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact they are admitted to the extent supported by the documents referred to, which are the best evidence of their contents; otherwise denies the remainder of the allegations contained in paragraph 34.

35. The allegations contained in paragraph 35 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact they are admitted to the extent supported by the documents cited, which are the best evidence of their contents; otherwise denies the allegations contained in paragraph 35.

36. The allegations contained in the first, second, and fourth sentences of paragraph 36 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact they are denied; denies the allegations contained in the third sentence of paragraph 36 for lack of knowledge or information sufficient to form a belief as to the truth of the matters asserted.

37. Denies the allegations contained in the first sentence of paragraph 37; the allegations contained in the second and third sentences of paragraph 37 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact they are denied.

38. Admits the allegation contained in paragraph 38 that Republic's liabilities exceeded its assets at the effective date of the Assistance Agreement; the remainder of the allegations contained in the first sentence of paragraph 38 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied; denies the allegation contained in the second sentence of paragraph 38 that FSLIC and FHLBB began soliciting bids for lack of knowledge or information sufficient to form a belief as to the truth of the matters asserted; the remainder of the allegations contained in the second sentence of paragraph 38 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied; denies the allegations contained in the third and

fourth sentences of paragraph 38; the allegations contained in the fifth sentence of paragraph 38 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

39. Admits the allegations contained in paragraph 39 to the extent supported by the document cited, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 39.

40. Admits.

41. Denies the allegation contained in the first sentence of paragraph 41 that the term was "crucial" for lack of knowledge or information sufficient to form a belief as to the truth of the matter asserted; admits the remainder of the allegations contained in the first sentence of paragraph 41 to the extent supported by the document cited, which is the best evidence of its contents; otherwise denies the remainder of the allegations contained in the first sentence of paragraph 41; the allegations contained in the remainder of paragraph 41 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

42. Admits the allegations contained in the first sentence of paragraph 42 to the extent supported by the document cited, which is the best evidence of its contents; otherwise denies the allegations contained in the first sentence of paragraph 42; denies the allegation contained in the second sentence of paragraph 42 that the business plan was the result of research and discussions for lack of knowledge or information sufficient to form a belief as to the truth of the matters asserted; the remaining allegations contained in the second sentence of paragraph 42 are conclusions of law to which no response is required; to the extent that they may be deemed

allegations of fact, they are denied; denies the allegations contained in the third sentence of paragraph 42 for lack of knowledge or information sufficient to form a belief as to the truth of the matters asserted; the allegations contained in the remainder of paragraph 42 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

43. Admits the allegations contained in the first sentence of paragraph 43 to the extent supported by the document cited, which is the best evidence of its contents; otherwise denies the allegations contained in the first sentence of paragraph 43; the allegations contained in the remainder of paragraph 43 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

44. The allegations contained in paragraph 44 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, admits the allegations in paragraph 44 to the extent they are supported by the documents cited, which are the best evidence of their contents; otherwise denies the allegations contained in paragraph 44.

45. The allegations contained in paragraph 45 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, admits the allegations in paragraph 45 to the extent they are supported by the documents cited, which are the best evidence of their contents; otherwise denies the allegations contained in paragraph 45.

46. Admits the allegation contained in paragraph 46 that the Assistance Agreement provided for a cash contribution by FSLIC of approximately $16,600,000 to RVSB; admits the remainder of the allegations contained in paragraph 46 to the extent supported by the Assistance

Agreement, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 46.

47. The allegations contained in the first and second sentences of paragraph 47 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied; admits the allegations contained in the third and fourth sentences of paragraph 47 to the extent supported by the document cited, which is the best evidence of its contents; otherwise denies the allegations contained in the third and fourth sentences of paragraph 47; the allegations contained in the remainder of paragraph 47 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

48. The allegations contained in paragraph 48 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

49. The allegations contained in paragraph 49 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

50. The allegations contained in the first sentence of paragraph 50 that there was an "Acquisition Agreement" and that the agreement was in accord with the parties' negotiations and understanding are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact they are denied; admits the remainder of the allegations contained in the first sentence of paragraph 50 to the extent supported by the documents referred to, which are the best evidence of their contents; otherwise denies the remainder of the allegations contained in the first sentence of paragraph 50; admits the allegations contained in the second, third and fourth sentences of paragraph 50 to the extent supported by the documents

cited, which are the best evidence of their contents; otherwise denies the allegations contained in the second, third, and fourth sentences of paragraph 50.

51. Admits the allegations contained in paragraph 51 to the extent supported by the document referred to, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 51.

52. The allegations contained in paragraph 52 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, admits to the extent supported by the document cited, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 52.

53. The allegations contained in the first, second, and fourth sentences of paragraph 53 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied; denies the allegations contained in the third sentence of paragraph 53 for lack of knowledge or information sufficient to form a belief as to the truth of the matters asserted.

54. Denies the allegations contained in the first sentence of paragraph 54; the allegations contained in the second and third sentences of paragraph 54 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

55. Admits the allegation contained in the first sentence of paragraph 55 that Peoria's liabilities exceeded its assets at the effective date of the Assistance Agreement; the remainder of the allegations contained in the first sentence of paragraph 55 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied;

the allegations contained in the second sentence of paragraph 55 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied; denies the allegation contained in the third sentence of paragraph 55.

56. The allegations contained in paragraph 56 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

57. Admits the allegations contained in paragraph 57 to the extent supported by the document cited, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 57.

58. Admits the allegations contained in paragraph 58 to the extent supported by the document cited, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 58.

59. The allegations contained in paragraph 59 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

60. The allegations contained in paragraph 60 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, admits the allegations in paragraph 60 to the extent they are supported by the documents cited, which are the best evidence of their contents; otherwise denies the allegations contained in paragraph 60.

61. The allegations contained in paragraph 61 are unintelligible and therefore no response is required; to the extent that they may be deemed allegations of fact, they are admitted to the extent supported by the documents cited, which are the best evidence of their contents; otherwise denies the allegations contained in paragraph 61.

62. Admits the allegations contained in paragraph 62 to the extent supported by the document cited, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 62.

63. The allegations contained in paragraph 63 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

64. Admits the allegations contained in the first sentence of paragraph 64; the allegations contained in the remainder of paragraph 64 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are admitted to the extent that they are supported by the referenced statute, which is the best evidence of its contents; otherwise denies the remainder of the allegations contained in paragraph 64.

65. Denies the allegations contained in the first sentence of paragraph 65 for lack of knowledge or information sufficient to form a belief as to the truth of the matters asserted; admits the allegations contained in the second and third sentences of paragraph 65 to the extent supported by the regulations cited, which are the best evidence of their content; otherwise denies the allegations contained in the second and third sentences of paragraph 65.

66. The allegations contained in the first and third sentences of paragraph 66 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied; admits the allegations contained in the second and fourth sentences of paragraph 66 to the extent supported by the document cited, which is the best evidence of its content; otherwise denies the allegations contained in the second and fourth sentences of paragraph 66.

67. The allegations that the Government abrogated agreements and received benefits from plaintiffs' operations of River Valley I and River Valley II are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied; denies the remainder of the allegations contained in paragraph 67 for lack of knowledge or information sufficient to form a belief as to the truth of the matters asserted.

68. Denies.

69. Denies the allegation contained in the first and third sentences of paragraph 69 for lack of knowledge and information sufficient to form a belief as to the truth of the matters asserted; the allegations contained in the second sentence of paragraph 69 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

70. Denies.

71. Admits the allegations contained in the first and second sentences of paragraph 71 to the extent supported by the document cited, which is the best evidence of its content; otherwise denies the allegations contained in the first and second sentences of paragraph 71; denies the allegations contained in the third and fourth sentences of paragraph 71.

72. Defendant denies the allegations contained in paragraph 72 with respect to River Valley Holdings Inc.; otherwise denies the allegations contained in paragraph 72 for lack of knowledge and information sufficient to form a belief as to the truth of the matters asserted.

**Count I**

73. The responses to paragraphs 1 through 72 are incorporated as if fully set forth.

74. The allegations contained in paragraph 74 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

75. Denies.

76. Denies.

77. Denies that plaintiffs are entitled to the relief requested or to any relief whatsoever.

**Count II**

78. The responses to paragraphs 1 through 72 are incorporated as if fully set forth.

79. Denies.

80. Denies.

81. Denies.

82. Denies the allegation that plaintiff, First Bank, MO ("FBMO") is the successor in interest to River Valley I and River Valley III for lack of knowledge or information sufficient to form a belief as to the matter asserted; otherwise denies that FBMO is entitled to the relief requested or to any relief whatsoever.

**Count III**

83. The responses to paragraphs 1 through 72 are incorporated as if fully set forth.

84. Denies.

85. Denies.

86. Denies.

87. Denies the allegation that FBMO is the successor in interest to River Valley I and River Valley III for lack of knowledge or information sufficient to form a belief as to the matter

asserted; otherwise denies that FBMO is entitled to the relief requested or to any relief whatsoever.

**Count IV**

88. The responses to paragraphs 1 through 72 are incorporated as if fully set forth.

89. Denies.

90. Denies.

91. Denies that plaintiffs are entitled to the relief requested or to any relief whatsoever.

92. Denies that plaintiffs are entitled to the relief requested in the complaint's prayer for relief or to any relief whatsoever.

93. Denies each and every allegation not previously admitted or otherwise qualified.

**DEFENSES AND AFFIRMATIVE DEFENSES**

94. Plaintiffs have failed to state, in whole or in part, claims against defendant upon which relief may be granted.

95. Plaintiffs have asserted claims that are beyond the Court's subject matter jurisdiction.

96. Plaintiff is barred from recovering prejudgment interest from defendant.

97. Defendant asserts the affirmative defense of estoppel.

98. Defendant asserts the affirmative defense of lack of authority or intent to bind the Government by contract.

99. Defendant asserts the affirmative defense of lack of causation.

100. Defendant asserts the affirmative defense of lack of privity.

101. Defendant asserts the affirmative defense of lack of standing.

102. Defendant asserts the affirmative defense of accord and satisfaction.

103. Defendant asserts the affirmative defense of res judicata.

104. Defendant asserts the affirmative defense of failure to mitigate.

105. Defendant asserts the affirmative defense of recoupment.

## COUNTERCLAIMS[1]

106. Jurisdiction for these counterclaims are provided by 28 U.S.C. §§ 1503 and 2508.

107. On July 28, 1988, an assistance agreement ("Galva/Mutual/Home Assistance Agreement") was entered into by and among Messrs. Holland and Ross, the River Valley Savings Bank, F.S.B. ("River Valley I"), and the Federal Savings and Loan Insurance Corporation ("FSLIC") relating to the merger of Galva Federal Savings and Loan Association of Galva, Illinois ("Galva"), and Mutual Savings and Loan Association of Canton, Illinois ("Mutual"), with and into Home Federal Savings and Loan Association of Peoria, Illinois ("Home"), and the conversion of Home into River Valley I.

108. The "Accounting Principles" section of the Galva/Mutual/Home Assistance Agreement provided, in part, as follows:

> Except as otherwise provided, any computations made for purposes of this Agreement shall be governed by generally accepted accounting principles as applied in the savings and loan industry, except that where such principles conflict with the terms of this Agreement, applicable regulations of the Bank Board or [FSLIC], or any

[1] Our Counterclaims are premised upon the Court's finding, in its February 20, 2007 opinion, that the Settlement Agreement entered into between Messrs. Holland and Ross and River Valley III, dated August 14, 1991, constituted a covenant not to sue. Our Counterclaims do not preclude our right to appeal any or all of the findings of fact and law, as determined by the Court, as of the date of this filing.

> resolution or action of the Bank Board approving or relating to the Transaction or to this Agreement; then this Agreement, such regulations, or such resolution or action shall govern . . . .

109. Pursuant to the Galva/Mutual/Home Assistance Agreement, among other things, FSLIC contributed cash in the amount of $34,215,888 to River Valley I plus $13,000 per diem from April 1, 1988, to, and including, the effective date of the agreement, which eliminated the existing net worth deficit.

110. The Galva/Mutual/Home Assistance Agreement provided that "($8,000,000) of the cash contributions made by [FSLIC] under this § 6(a)(1) and (2) shall be credited to River Valley [FSB's] net worth account and shall constitute regulatory capital as defined in § 561.13 of the Insurance Regulations, 12 C.F.R. § 561.13 (1988) . . ." subject to certain restrictions, including the following provisions affecting growth and the payment of dividends:

> [F]or purposes any provision of the Insurance Regulations . . . [River Valley I] shall be deemed to have regulatory capital not exceeding one dollar ($1.00) less than the fully phased in regulatory capital requirement of § 563.13 (b)(4)(A) of the Insurance Regulations by reason of the credit to regulatory capital provided by this [section]; and provided further that in determining whether and when to declare a dividend payment to its stockholders, [River Valley I] shall not include, in its calculation of available regulatory capital, the credit to regulatory capital provided by this paragraph.

111. Section 6(b)(1) of the Galva/Mutual/Home Assistance Agreement provided that a $4.6 million subordinated debenture to be "duly executed by [River Valley I] and secured by the INVESTORS" was to "be included in [River Valley I's] regulatory capital pursuant to § 561.13 of the Insurance Regulations."

112. In the Galva/Mutual/Home Assistance Agreement, FSLIC agreed to reimburse River Valley I for (a) 90 percent of losses it may incur upon the disposition of certain covered

assets identified in the Assistance Agreement, (b) 90 percent of losses it may incur on unidentified covered assets consisting of real estate owned and mortgage loans that become non-performing within eighteen months from the conversion date up to $2.5 million of such assets, and (c) 90 percent of any write-down approved by the FSLIC. FSLIC also agreed to reimburse River Valley I for 100 percent of accrued but uncollected interest on covered assets through the effective date at such time as River Valley I and FSLIC agreed it was uncollectible and was to be written-off. River Valley I agreed to reimburse FSLIC for (a) 90 percent of all covered asset recoveries, and (b) 100 percent of any tax benefits related to covered assets resulting from any cost, expense, or loss which was reimbursed by FSLIC, or which was deductible on River Valley I's Federal or state income tax return.

113. Section 25 of the Galva/Mutual/Home Assistance Agreement, entitled "Successors and Assigns," restricted the assignment of any rights or obligations under the agreement, providing as follows:

> All the terms and provisions of this Agreement shall be binding upon and inure to the benefit of the parties and their respective transferees, successors, and assigns, but this Agreement may not be assigned to any party nor may any rights or obligations under it be transferred or delegated to or vested in any other party, through merger, consolidation, or otherwise, without the prior written consent of [FSLIC].

114. Section 26 of the Galva/Mutual/Home Assistance Agreement, entitled "Sole Benefit," provided as follows:

> It is the intention of the parties that this Agreement, the assumption of obligations and statements of responsibilities under it, and all of its conditions and provisions are for the sole benefit of the parties hereto and for the benefit of no other person. Nothing expressed or referred to in this Agreement is intended or shall be construed to give any

> person other than the parties hereto any legal or equitable right, remedy, or claim under, or in respect to, this Agreement or any of its provisions.

115. On July 29, 1988, FSLIC and the Rock Falls Savings and Loan Association ("Rock Falls"), Messrs. Holland and Ross's wholly-owned state chartered thrift, entered into an assistance agreement ("Republic Assistance Agreement") relating to the merger of Republic Savings and Loan Association of South Beloit, South Beloit, IL ("Republic") with and into Rock Falls, which then became known as River Valley Savings Bank of Rock Falls, Illinois ("River Valley II").

116. The "Accounting Principles" section of the Republic Assistance Agreement provided, in part, as follows:

> Except as otherwise provided herein, any computations made for purposes of this Agreement shall be governed by generally accepted accounting principles as applied in the savings and loan industry, except that where such principles conflict with the terms of the Agreement, applicable regulations, or any resolution or action of the Bank Board approving or relating to the Transaction or to this Agreement, then this Agreement, such regulations, or such resolution or action shall govern . . . .

117. Pursuant to the Republic Assistance Agreement, among other things, FSLIC contributed $16,600,000 in cash to River Valley II "plus $7,500 per diem for each day after March 31, 1988, until the [e]ffective date" of the agreement, which eliminated all but $1.310 million of the existing net worth deficit.

118. The Republic Assistance Agreement provided that "$5,000,000 of the cash contribution made [by FSLIC] under this § 6 (a)(1) shall be credited to [River Valley II's] regulatory capital account and shall constitute regulatory capital as defined in § 561.13 of

the Insurance Regulations (12 C.F.R. § 561.13 (1987)) . . ." subject to certain restrictions, including the following provisions affecting growth and the payment of dividends:

> [F]or purposes of any provision of the Insurance Regulations . . . [River Valley II] shall be deemed to have regulatory capital not exceeding one dollar ($1.00) less than the full-phased in regulatory capital requirement of Section 563.13 of the Insurance Regulations by reason of the credit to regulatory capital provided by this [section]; and provided further that in determining whether and when to declare a dividend payment to its stockholders [River Valley II] shall not include in its calculation of available regulatory capital the credit to regulatory capital resulting from this [section] . . . .

119. In the Republic Assistance Agreement, FSLIC agreed to provide assistance to River Valley II for certain covered assets, real estate owned (REO), and certain loans that were 90 days delinquent as of the Effective Date or became 90 days delinquent within a year and a half thereafter. The agreement provided that FSLIC and River Valley II would share covered asset losses (defined as the excess of the book value of the asset over the net proceeds received on liquidation or the amount of any approved write down), with FSLIC reimbursing River Valley II for 80 percent of the first $600,000 of covered asset capital losses and write-downs and 100 percent of covered asset losses thereafter. (FSLIC could require the write-down of covered assets to any level.) River Valley II agreed to reimburse FSLIC for 100 percent of all covered asset recoveries and all net tax benefits resulting from any cost, expense, or loss that had been reimbursed by FSLIC, which was deductible on River Valley II's Federal or state income tax return or that reduced the balance of River Valley II's bad debt reserve.

120. Section 25 of the Republic Assistance Agreement, entitled "Successors and Assigns," restricted the assignment of any rights or obligations under the agreement, providing as follows:

> All the terms and provisions of this Agreement shall be binding upon and inure to the benefit of the parties and their respective transferees, successors, and assigns, but this Agreement may not be assigned to any party nor may any rights or obligations under it be transferred or delegated to or vested in any other party, through merger, consolidation, or otherwise, without the prior written consent of [FSLIC].

121. Section 26 of the Republic Assistance Agreement, entitled "Sole Benefit," provided as follows:

> It is the intention of the parties that this Agreement, the assumption of obligations and statements of responsibilities under it, and all of its conditions and provisions are for the sole benefit of the parties hereto and for the benefit of no other person or persons. Nothing expressed or referred to in this Agreement is intended or shall be construed to give any person or persons other than the parties hereto any legal or equitable right, remedy, or claim under, or in respect to, this Agreement or any of its provisions.

122. On August 9, 1989, the Financial Institutions Reform Recovery, and Enforcement Act ("FIRREA") was enacted. The Office of Thrift Supervision ("OTS"), which succeeded the Federal Home Loan Bank Board ("FHLBB") as a result of FIRREA, issued implementing regulations for the new legislation on November 8, 1989, with an effective date of December 7, 1989.

123. Prior to the passage of FIRREA, the FSLIC administered a fund that insured deposits held by thrift institutions. Subsequent to FIRREA, the Federal Deposit Insurance Corporation ("FDIC"), as successor to the FSLIC, insured deposits held by thrift institutions.

124. The FDIC, as manager of the FSLIC Resolution Fund ("FRF"), was the successor in interest to the FSLIC, including with respect to the Galva/Mutual/Home and Republic Assistance Agreements (collectively, "River Valley Assistance Agreements"). Section 215 of

FIRREA (codified at 12 U.S.C. § 1821a); see Resolution Trust Corp. v. FSLIC, 25 F.3d 1493, 1505-06 (10th Cir. 1994).

125. On March 31, 1991, River Valley II was merged with and into River Valley I. River Valley III refers to the institution that survived that merger. As of September 25, 1991, River Valley Holdings, Inc. ("RV Holdings") was the holding company for River Valley III.

126. First Bank purports to be the successor in interest to the River Valley thrifts.

127. On August 14, 1991, Messrs. Holland and Ross, River Valley III, and the FDIC, as the manager of the FRF, entered into a comprehensive settlement agreement ("Settlement Agreement") regarding the River Valley Assistance Agreements (as well as a transaction with Peoria Savings and Loan Association, Peoria, IL, which subsequently merged into River Valley I, and is no longer at issue in this litigation).

128. Under the terms of the Settlement Agreement, River Valley III paid the FDIC $50,000 and the FDIC paid River Valley III $3,276,902.90. These payments constituted a settlement of any and all claims or causes of action regarding, or in connection with, the River Valley Assistance Agreements.

129. This Court has found the Settlement Agreement constituted merely a covenant not to sue between the plaintiffs and the FDIC, as manager of the FRF and as an agency of the United States, of "any and all obligations and liabilities of such party under the Assistance Agreements" and "any obligation or liability of any such kind in connection therewith, including, without limitation, any and all actions, causes of action, suits, debts, sums of money, bonds, covenants, agreements, promises, damages, judgments, claims, and demands whatsoever, known or unknown, suspected or unsuspected, at law or in equity."

130. The Settlement Agreement included a broadly worded accord and satisfaction provision, which demonstrated the parties' intent to release each other from any claims or causes of action regarding the River Valley Assistance Agreements. This provision, in its entirety, states:

> Section 5 Accord and Satisfaction. Except as otherwise specifically provided herein, performance by each party of its respective obligations under this Settlement Agreement shall effect a complete accord and satisfaction of any and all obligations and liabilities of such party under the Assistance Agreements and, thenceforth, such party shall be fully discharged from any obligation or liability of any kind in connection therewith, including, without limitation, any and all actions, causes of action, suits, debts, sums of money, bonds, covenants, agreements, promises, damages, judgments, claims, and demands whatsoever, known or unknown, suspected or unsuspected, at law or in equity.

131. The Settlement Agreement's "Entire Agreement" provision states:

> (h) Entire Agreement. This Settlement Agreement embodies the entire Settlement Agreement among the parties hereto with respect to the subject matters herein and supersedes all prior agreements and understandings among the parties, oral or written, concerning such matters.

132. Plaintiffs Holland and Ross filed this action on August 8, 1995.

133. In their action, plaintiffs named "the parties" as the FDIC, FSLIC, OTS, and FHLBB. E.g., Pl. Third Am. Compl. (May 18, 2005) at ¶ 4 ("Under Section 401 of [FIRREA], . . . FHLBB was abolished as of October 8, 1989; its functions and responsibilities, for the purposes relevant to this action, were transferred by the statute to the Director of the [OTS]."); ¶ 7 ("Under Section 401 of FIRREA, FSLIC was abolished as of August 9, 1989, and its responsibilities and functions, for the purposes relevant to this action, were transferred to the Federal Deposit Insurance Corporation ('FDIC')"); ¶ 8 ("FDIC is designated under FIRREA as the successor in

interest to FSLIC for purposes relevant to this action."); ¶ 9 ("The Director of the OTS has been designated under FIRREA as the successor in interest to the FHLBB for purposes relevant to this action."); ¶ 25 ("On July 29, 1988, FHLBB, FSLIC, Homer J. Holland, Howard R. Ross, and River Valley I executed and delivered a series of integrated documents which together comprise a unitary agreement."); ¶ 44 ("On July 29, 1988, FHLBB, FSLIC, Homer J. Holland, Howard R. Ross, and River Valley II executed and delivered a series of integrated documents concerning the conversion and merger of Republic with and into River Valley II and comprising a unitary agreement among them."); ¶¶ 74-77 (alleging a contract between plaintiffs and "the government" and seeking damages from injuries caused by the United States).

134. In their action, plaintiffs claim that a single integrated contract existed encompassing the obligations of both the FHLBB and FSLIC. E.g., Pl. Third Am. Compl. (May 18, 2005) at ¶ 25 ("On July 29, 1988, FHLBB, FSLIC, Homer J. Holland, Howard R. Ross, and River Valley I executed and delivered a series of integrated documents which together comprise a unitary agreement."); ¶ 44 ("On July 29, 1988, FHLBB, FSLIC, Homer J. Holland, Howard R. Ross, and River Valley II executed and delivered a series of integrated documents concerning the conversion and merger of Republic with and into River Valley II and comprising a unitary agreement among them."); ¶¶ 74-77 (alleging a contract between plaintiffs and "the government" and seeking damages from injuries caused by the United States); see also, e.g., id. at ¶ 12 ("FHLBB and FSLIC provided a variety of cash and non-cash inducements to encourage such acquisitions."); ¶ 15 ("FHLBB and FSLIC solicited bids from potential acquirors."); ¶ 16 ("FHLBB and FSLIC represented that FSLIC would provide a major infusion of funds . . . . [and] FHLBB and FSLIC represented by various references to capital requirements and forbearances

from capital requirements that the government would provide an opportunity for Holland and Ross to leverage their investment of capital."); ¶ 20 ("FSLIC and FHLBB intended to provide and promised to provide Holland and Ross with a commercially sound opportunity."); ¶ 23 ("All parties to the negotiations, including FHLBB and FSLIC, recognized that the government's agreement . . . was to be authorized to treat the FSLIC cash contribution as regulatory capital."); ¶ 25(f) ("FSLIC and the FHLBB agreed with Holland and Ross and River Valley I that: (I) the secretary of the FHLBB shall send to River Valley I a letter concerning forbearances by the FHLBB and the FSLIC with respect to certain regulatory requirements."); ¶ 44(j).

135. On October 25, 2004, the Court granted plaintiffs' joint motion to join First Banks, Inc. as a plaintiff pursuant to Rule 17(a) of the Rules of the United States Court of Federal Claims and to file a second amended complaint, which was filed on October 28, 2004.

136. On May 12, 2005, the Court granted plaintiffs' joint motion to join First Bank as a plaintiff and to file a third amended complaint, which was filed on May 18, 2005, and listed Holland, Ross, and First Bank as plaintiffs. The Court deemed plaintiffs to have substituted First Bank for First Banks, Inc.

137. The accord and satisfaction provision releases and resolves all claims between the plaintiffs and Government with respect to the River Valley Assistance Agreements. Even if the Settlement Agreement's accord and satisfaction provision is not a release for all claims between the plaintiffs and the Government with respect to the River Valley Assistance Agreements, then the Settlement Agreement is nonetheless a covenant not to sue that was executed between the FDIC, as manager of the FRF and as an agency of the United States, and the plaintiffs. See Holland v. United States, No. 95-524C, 2007 WL 625312 (Fed. Cl. Feb. 20, 2007).

138. Plaintiffs breached the Settlement Agreement's covenant not to sue when Messrs. Holland and Ross filed suit against the FDIC (styled as a claim against the United States) in 1995, 2004, and 2005; when First Bank was joined to this suit in 2005; and when First Banks, Inc. was joined to this suit in 2004, as First Bank was deemed in 2005 to have been substituted for First Banks, Inc.

139. Plaintiffs have not refunded to the FDIC, as manager of the FRF and as an agency of the United States, the FDIC's net payment to plaintiffs of $3,226,902.90, made pursuant to the terms of the Settlement Agreement.

140. On March 28, 2007, the Estate of Howard Ross filed a motion to be substituted for Howard Ross. Accordingly, the Estate of Howard Ross is deemed to have breached the covenant not to sue.

141. Plaintiffs are jointly and severally liable for the breach of the Settlement Agreement's covenant not to sue.

## COUNTERCLAIM FOR BREACH OF THE COVENANT NOT TO SUE

### Count I – Breach Of The Covenant Not To Sue By First Bank

142. Defendant incorporates by reference paragraphs 106 through 141 above.

143. By filing its lawsuit against the FDIC in 2005, First Bank breached the Settlement Agreement's covenant not to sue the FDIC, as manager of the FRF and as an agency of the United States.

144. First Bank also breached the Settlement Agreement's covenant not to sue the FDIC, as manager of the FRF and as an agency of the United States, by First Banks, Inc.'s filing

of its lawsuit in 2004, as First Bank was deemed in 2005 to have been substituted for First Banks, Inc.

**Count II – Breach Of The Covenant Not To Sue By Mr. Holland**

145. Defendant incorporates by reference paragraphs 106 through 141 above.

146. By filing this lawsuit against the FDIC in 1995, 2004, and 2005, Mr. Holland breached the Settlement Agreement's covenant not to sue the FDIC, as manager of the FRF and as an agency of the United States.

**Count III – Breach Of The Covenant Not To Sue By The Estate Of Mr. Ross**

147. Defendant incorporates by reference paragraphs 106 through 141 above.

148. By filing its lawsuit against the FDIC in 1995, 2004, and 2005, Mr. Ross breached the Settlement Agreement's covenant not to sue the FDIC, as manager of the FRF and as an agency of the United States.

149. By filing a motion to be substituted for Mr. Ross, the Estate of Holland Ross is now deemed to have breached the Settlement Agreement's covenant not to sue the FDIC, as manager of the FRF and as an agency of the United States.

WHEREFORE, defendant respectfully requests damages for plaintiffs' breach of the Settlement Agreement's covenant not to sue the FDIC, as manager of the FRF and as an agency of the United States. This amount includes the FDIC's net payment of $3,226,902.90 ($3,276,902.90 paid by the FDIC to River Valley III, minus $50,000 paid by River Valley III to the FDIC) pursuant to the Settlement Agreement, plus lost earnings to the FRF as a result of the FDIC's payment of this amount; or, in the alternative, earnings First Bank or its successor in

interest made upon the FDIC's net payment of $3,226,902.90; as well as such other and further relief as the Court may deem just and proper.

**COUNTERCLAIM FOR SET-OFF**

**Count I – Set-Off Against First Bank**

150. Defendant incorporates by reference paragraphs 106 through 141.

151. By filing its lawsuit against the FDIC in 2005, First Bank breached the Settlement Agreement's covenant not to sue the FDIC, as manager of the FRF and as an agency of the United States.

152. First Bank also breached the Settlement Agreement's covenant not to sue the FDIC, as manager of the FRF and as an agency of the United States, by First Banks, Inc.'s filing of its lawsuit in 2004, as First Bank was deemed in 2005 to have been substituted for First Banks, Inc.

153. First Bank has failed to repay to the FDIC, as manager of the FRF and as an agency of the United States, the FDIC's net payment of $3,226,902.90, paid pursuant to the terms of the Settlement Agreement.

**Count II – Set-Off Against Mr. Holland**

154. Defendant incorporates by reference paragraphs 106 through 141 above.

155. By filing this lawsuit against the FDIC in 1995, 2004, and 2005, Mr. Holland breached the Settlement Agreement's covenant not to sue the FDIC, as manager of the FRF and as an agency of the United States.

156. Mr. Holland has failed to repay to the FDIC, as manager of the FRF and as an agency of the United States, the FDIC's net payment of $3,226,902.90, paid pursuant to the terms of the Settlement Agreement.

**Count III – Set-Off Against The Estate Of Mr. Ross**

157. Defendant incorporates by reference paragraphs 106 through 141 above.

158. By filing its lawsuit against the FDIC in 1995, 2004, and 2005, Mr. Ross breached the Settlement Agreement's covenant not to sue the FDIC, as manager of the FRF and as an agency of the United States.

159. By filing a motion to be substituted for Mr. Ross, the Estate of Holland Ross is now deemed to have breached the Settlement Agreement's covenant not to sue the FDIC, as manager of the FRF and as an agency of the United States.

160. The Estate of Mr. Ross has failed to repay to the FDIC, as manager of the FRF and as an agency of the United States, the FDIC's net payment of $3,226,902.90, paid pursuant to the terms of the Settlement Agreement.

WHEREFORE, and in the alternative to its counterclaim against plaintiffs for the breach of the covenant not to sue, defendant respectfully requests that the FDIC's net payment of $3,226,902.90 ($3,276,902.90 paid by the FDIC to River Valley III, minus $50,000 paid by River Valley III to the FDIC), which constituted a settlement of any and all claims or causes of action regarding the River Valley Assistance Agreements, be set-off against any amount awarded to the plaintiffs by the Court in this case, as well as such other and further relief as the Court may deem just and proper.

Respectfully submitted,

MICHAEL F. HERTZ
Deputy Assistant Attorney General

JEANNE E. DAVIDSON
Acting Director

/s/ Kenneth M. Dintzer
KENNETH M. DINTZER
Assistant Director

/s/ John H. Roberson
JOHN H. ROBERSON
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor, 1100 L Street
Washington, D.C. 20530
Tele: (202) 353-7972
Fax: (202) 514-8640
Attorneys for Defendant

Of Counsel:

RICHARD B. EVANS
ELIZABETH A. HOLT
WILLIAM G. KANELLIS
DAVID A. LEVITT
JOHN J. TODOR

April 17, 2007

**CERTIFICATE OF SERVICE**

I hereby certify that on this 17th day of April 2007, a copy of the foregoing "DEFENDANT'S AMENDED ANSWER TO PLAINTIFFS' THIRD AMENDED COMPLAINT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ John H. Roberson
John H. Roberson