**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| HOMER J. HOLLAND,<br>STEVEN BANGERT, co-executor of the<br>ESTATE OF HOWARD R. ROSS,<br>AND FIRST BANK,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | No. 95-524C<br><br>(Judge George W. Miller) |

**DEFENDANT'S MOTION IN LIMINE TO PRECLUDE EXPERT TESTIMONY RELATED TO THREE UNDISCLOSED DAMAGES THEORIES**

Pursuant to Rules 12, 26(a)(2)(B) and 37(c)(1) of the Rules of the Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests an order in limine to preclude expert testimony at trial concerning three theories of damages that were not disclosed in plaintiffs' expert reports. The three damage claims were presented solely by argument of counsel and are unsupported by any expert testimony in violation of Winstar Procedural Order No. 2: Discovery Plan (Aug. 7, 1997, Ct. Fed. Cl.) and RCFC 26(a)(2)(c), which requires each party to disclose its expert opinion reports "at the times and in the sequence directed by the court." Therefore, Winstar Procedural Order No. 2 and RCFC 37(c)(1) prohibit plaintiffs' experts from testifying with respect to these three claims.

The purpose of a motion in limine is "to prevent a party before trial from encumbering the record with irrelevant, immaterial or cumulative matters." Norman v. United States, 56 Fed. Cl. 255, 267 (2003), aff'd, 429 F.3d 1081 (Fed. Cir. 2005), cert. denied, 126 S. Ct. 2288 (2006). "Such a motion enables a court to rule in advance on the admissibility of documentary or

testimonial evidence and thus expedite and render efficient a subsequent trial." Id. The Court of Federal Claims has consistently held that a ruling in limine "is a remedy designed to increas[e] trial efficiency and promot[e] improved accuracy of evidentiary determinations by virtue of the more thorough briefing and argument of the issues that are possible prior to the crush of trial." Weeks Dredging & Contracting, Inc. v. United States, 11 Cl. Ct. 37, 45 (1986) (citing Zenith Radio Corp. v. Matsushita Elec. Indus. Co., Ltd., 505 F. Supp. 1125, 1140 (E.D. Pa. 1980)); see also Inslaw, Inc. v. United States, 35 Fed. Cl. 295, 302-03 (1996), aff'd, 40 F.3d 843 (Fed. Cir. 1998); Int'l Graphics Div. of Moore Business Forms, Inc. v. United States, 5 Cl. Ct. 100, 104 (1984).

Addressing the introduction of testimony on these three damages claims prior to trial will increase efficiency. Further, we will suffer prejudicial harm if we must now prepare to defend against damages claims that were not disclosed in plaintiffs' expert reports. Therefore, pursuant to Federal Rules of Evidence 401 and 403, the Court should exclude this irrelevant evidence from trial.

**A. Plaintiffs' Expert Reports Failed To Disclose The Three New Damages Claims**

Plaintiff First Bank has asserted that, in 1992, but for the Government's breach, River Valley III would have acquired San Antonio Federal Savings Bank ("SAFSB"), a thrift located in South Texas. This would have permitted River Valley III to realize all of the profits actually achieved by Western Capital Holdings, Inc. ("WCHI"), SAFSB's ultimate acquirer. The February 22, 2005 expert report of Dr. Homer Holland, plaintiffs' expert, set forth a calculation of $28.6 million in lost profits related to the SAFSB acquisition. Plaintiffs' counsel, through argument alone and for the first time in plaintiff First Bank's motion for partial summary

judgment, subsequently presented three additional SAFSB-related damage claims for $45 million, $35 million, and $29.9 million, respectively.

These three new SAFSB claims present new computations and quanta of damages and involve new damages theories and evidence. In setting forth its $45 million claim, First Bank argued, for the first time in this case, that SAFSB-related damages can be computed by totaling the net income reported on the tax returns of WCHI and Western Capital Holdings Liquidating Trust ("WCHLT") between 1992 and 2004. Pl. Mot. for Partial Summ. J. (Sept. 21, 2005) at 18-20.

In the second new damages theory presented in First Bank's motion for summary judgment, Plaintiffs' counsel argued that River Valley would have acquired SAFSB in a non-breach world and then would have sold all of its assets at exactly the end of 1993, realizing a gain of $35 million. Pl. Mot. at 21. This $35 million theory results from two fundamental changes to the methodology presented in Dr. Holland's 2005 expert report. First, it changes the timing of the valuation of WCHI's assets from August of 1992 to year-end 1993. Second, it shifts the calculation of damages from one based upon the excess of book value over fair value as of the date of the SAFSB acquisition in August 1992, to one based upon the excess of fair value over book value at year-end 1993.

First Bank's third new claim for SAFSB-related damages began with $29.963 million, a figure that ostensibly is referenced in Dr. Holland's 2005 report, Pl. Mot. at 22-23, then eliminated the deductions of $1.3 million for alternative minimum taxes and River Valley interest expenses that Dr. Holland had previously recognized in his calculation. See Dr. Holland's 2005 Report at 5. Thus, First Bank's new $29.963 million claim contradicts the

valuation methodology Dr. Holland employed, adding $1.3 million more in damages than Dr. Holland presented in his February 2005 expert report.

**B. Plaintiffs' Attempt To Introduce Three New Damages Claims Through Argument of Counsel Alone Violates RCFC 26.**

Plaintiffs presented these three new damage claims solely by argument of counsel and provided no support through expert or fact testimony in violation of RCFC 26. RCFC 26(a)(2)(B) specifies that an expert's testimony must be accompanied by a written report that discloses "the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; [and] any exhibits to be used as a summary of or support for the opinions." RCFC 26(a)(2)(B). "[T]he goal of this rule is disclosure of . . . all the opinions and analysis to be presented at trial." Alost v. United States, 73 Fed. Cl. 480, 504 (Fed. Cl. 2006) (emphasis added). Plaintiffs had a duty under Rule 26(e)(1) to supplement their expert reports when they "learn[ed] that in some material respect the information disclosed [wa]s incomplete or incorrect and [that] the additional or corrective information ha[d] not otherwise been made known to the other parties during the discovery process or in writing." RCFC 26(e)(1). Plaintiffs have been aware that their expert reports do not address these damages theories since the filing of First Bank's Motion for Partial Summary Judgment over two years ago, yet have taken no action to supplement any of their expert reports.

In addition, RCFC 26(a)(2)(c) requires each party to disclose its expert opinion reports "at the times and in the sequence directed by the court." Plaintiffs have not complied with this requirement because they did not disclose any expert opinion expressing these three theories of

damages by any of the multiple deadlines this Court has set forth for the filing of plaintiffs' expert reports in this case.

No expert testimony should be heard with respect to these three SAFSB claims. Procedural orders applicable to Winstar-related cases state that no testimony shall be received from plaintiffs' experts if it has not been properly disclosed. See Ex. 1 Winstar Procedural Order No. 2: Discovery Plan at § V(A)(4) (Aug. 7, 1997, Ct. Fed. Cl.) (barring the presentation of any testimony not previously disclosed). Furthermore, RCFC 37(c)(1) provides, in part:

> A party that without substantial justification fails to disclose information required by RCFC 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(a)(2), is not, unless such failure is harmless, permitted to use as evidence at trial, at a hearing or on a motion any witness or information not so disclosed.

Id. (emphasis added). The Advisory Committee Notes to Federal Rule of Civil Procedure 37(c) emphasize that this is an "automatic sanction[,]" which "provides a strong inducement for disclosure of material that the disclosing party would expect to use as evidence[.]" Fed. R. Civ. P. 37(c) advisory committee's note (1993) (emphasis added).

The significant prejudice that we will suffer should plaintiffs' experts be permitted to testify as to these three damages theories demonstrates that plaintiffs' failure to disclose the theories in expert reports was not harmless. The Federal Circuit has considered five factors to determine whether a failure to disclose evidence was without substantial justification or was harmless:

> (1) the surprise of the party against whom the witness was to have testified; (2) the ability of the party to cure that surprise; (3) the extent to which allowing the testimony would disrupt the trial; (4) the explanation for the party's failure to name the witness [or failure to disclose evidence] before trial; and (5) the importance of the testimony.

MicroStrategy Inc. v. Bus. Objects, S.A., 429 F.3d 1344, 1357 (Fed. Cir. 2005) (applying Fourth Circuit law). In MicroStrategy, the district court excluded evidence of the plaintiff's damages theories under FRCP 37(c)(1) for failure to identify these damages theories and the factual basis and methodology for its calculations in its responses to interrogatories. Id. at 1356. In concluding that the nondisclosure of the damages theories was neither substantially justified nor harmless and that the district court had not abused its discretion in excluding the new damages theories, the Federal Circuit found compelling the fact that the nondisclosure of the new theories prejudiced any response that the defendant could make. Id. at 1357. The plaintiff "could not cure the surprise without postponing trial and reopening discovery." Id. The court found no substantial justification for the plaintiff's failure to identify the damages theories as "the record show[ed] that most of the information [the plaintiff] sought to introduce was in its possession for over a year before trial." Id. (emphasis added). Finally, the Federal Circuit was not swayed by the fact that the exclusion left the plaintiff without important evidence of damages or causation for most of its business tort claims, noting that "[the plaintiff] alone is to blame for creating this situation." Id.

In Southern States Rack and Fixture, Inc. v. Sherwin Williams Co., 318 F.3d 592 (4th Cir. 2003), relied upon by the Federal Circuit in MicroStrategy, the Fourth Circuit upheld the district court's exclusion of testimony by plaintiff Southern States' expert witness concerning a new opinion that the plaintiff had failed to disclose prior to trial. Id. at 593, 599. The Fourth Circuit noted that the basic purpose of Rule 37(c)(1) is the prevention of surprise and prejudice to the opposing party and that the rule does not require a finding of bad faith or callous disregard of

the discovery rules.[1] Id. at 596. The district court emphasized that "the ability to simply cross-examine an expert concerning a new opinion at trial is not the ability to cure" and pointed out that the "rules of expert disclosure are designed to allow an opponent to examine an expert opinion for flaws and to develop counter-testimony through that party's own experts[,]" which was not possible given the untimely disclosure. Id. at 598. The district court also found it important that the plaintiff could not "explain why it did not supplement its discovery responses when it knew of" the new opinion. Id.

Plaintiffs' three new SAFSB-related claims are, in fact, new expert theories presented after the close of expert discovery and made without the requisite presentation of a prior expert report and opinion. These claims, based on numerous valuation assertions and characterizations of evidence, cannot be made by argument of counsel alone, then presented in the testimony of plaintiffs' experts. They are an end-run around the discovery procedures with respect to damages mandated by this Court generally and by the Winstar procedural orders. See RCFC 26(a)(2)(B) and 37(c)(1); Procedural Order No. 2; Discovery Plan dated August 7, 1997, at § V(A).

---

[1] We recognize that a previous decision of this Court employed a test developed by the Third Circuit that required a showing of bad faith on the part of the non-disclosing party. See Banks v. United States, 75 Fed. Cl. 294, 298 (2007). Previous decisions of this Court, however, are not binding precedent here. See West Coast Gen. Corp. v. Dalton, 39 F.3d 312, 315 (Fed. Cir. 1994). Furthermore, the Banks court noted that it did not use the Southern States factors because "a fifth factor in that test, regarding a party's failure to name a witness before trial, is not applicable in the circumstances of this case." Banks, 75 Fed. Cl. at 298. The fifth factor described by the Banks court was not, in fact, a factor in the test applied by the Fourth Circuit in Southern States. Instead, it was a factor in Rambus, Inc. v. Infineon Technologies AG, 145 F. Supp. 2d 721 (E.D. Va. 2001), an opinion cited by the district court and quoted in the Southern States opinion. Southern States, 318 F.3d at 596. Regardless of its precise wording, the Fourth Circuit test's fifth factor focuses on the explanation for the failure to disclose, whether it be a failure to disclose a witness or an expert opinion.

Given the prohibitions on offering expert opinions that have not previously been disclosed in an expert report, the introduction of evidence related to these new damage theories would be improper and prejudicial to us and would disrupt the trial. Plaintiffs have been aware of the lack of disclosure regarding these three damages theories in Dr. Holland's expert report for at least two years; therefore, there can be no explanation or substantial justification for their failure to disclose this information. In fact, plaintiffs submitted a Third Supplemental Expert Report and Declaration by Dr. Holland dated June 1, 2007, to present supplemental mitigation damages analysis, but have never supplemented Dr. Holland's expert report to explain the three new SAFSB damages claims.

Furthermore, defendant's inability to prepare for the testimony to be presented by plaintiffs' expert is not harmless. As explained by the Southern States court, under the rules of expert disclosure, we should have had the opportunity to examine an expert opinion provided in a report on the three new damages theories for flaws and to develop counter-testimony through our own experts. S. States, 318 F.3d at 598. Cross-examination of plaintiffs' expert witnesses would not be a cure for the nondisclosure. Id. Indeed, this Court previously recognized that we would be prejudiced if First Bank changed its damage theories. Holland v. United States, No. 95-524C (May 12, 2005) (Opinion and Order permitting the joinder of First Bank) at 3. Therefore, RCFC 37(c)(1), along with Winstar Procedural Order No. 2, prohibits plaintiffs' experts from testifying with respect to the three new SAFSB damages claims. This Court should now preclude Dr. Holland, or any of plaintiffs' other experts, from offering any testimony with respect to these new theories.

## CONCLUSION

For the reasons set forth above, we respectfully request that our motion in limine be granted and that expert testimony on the three undisclosed SAFSB damages theories described above be precluded.

Respectfully submitted,

MICHAEL HERTZ
Deputy Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/ Kenneth M. Dintzer
KENNETH M. DINTZER
Assistant Director

/s/ John H. Roberson
JOHN H. ROBERSON
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor, 1100 L Street
Washington, D.C. 20530
Tele: (202) 353-7972
Fax: (202) 514-8640

Attorneys for Defendant

Of Counsel:

SCOTT D. AUSTIN
ELIZABETH A. HOLT
WILLIAM G. KANELLIS
AMANDA L. TANTUM
JOHN J. TODOR
Trial Attorneys
Department of Justice

November 2, 2007

**CERTIFICATE OF SERVICE**

I hereby certify that on this 2nd day of November 2007, a copy of the foregoing "DEFENDANT'S MOTION IN LIMINE TO PRECLUDE EXPERT TESTIMONY RELATED TO THREE UNDISCLOSED DAMAGES THEORIES" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ John H. Roberson
John H. Roberson