**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **HOMER J. HOLLAND,** | ) | |
| **HOWARD R. ROSS, and** | ) | |
| **FIRST BANK,** | ) | |
| | ) | **Case No. 95-524C** |
| **Plaintiffs,** | ) | |
| | ) | **(Judge George W. Miller)** |
| **v.** | ) | |
| | ) | **(Winstar-Related Case)** |
| **THE UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE THE TESTIMONY OF DR. NEIL MURPHY RELATING TO PLAINTIFFS' NEW DAMAGE CLAIM**

Pursuant to Rule 7 of the Rules of the United States Court of Federal Claims ("RCFC") and Federal Rules of Evidence ("FRE") 401, 701 and 702, defendant, the United States, respectfully requests that the Court exclude from evidence the testimony of plaintiffs' identified expert, Dr. Neil Murphy. Plaintiffs' recent representations regarding the damage quantum to be proffered by Dr. Murphy reflect that plaintiffs intend to disregard the Court's earlier ruling that the $5 million in preferred stock would not count as regulatory capital. Plaintiffs' justification for circumventing the order reflects a misunderstanding of the law of damages in this Circuit, and because Dr. Murphy's damage claim is tied to this misapprehension of law, his damage analysis is legally barred and irrelevant.

## FACTUAL BACKGROUND

### I. Dr. Murphy's Damage Claim

Dr. Murphy's damages model is predicated upon assumptions he made about the valuation of preferred stock created as a component of River Valley's acquisitions of Galva, Mutual, and Home in 1988. On July 29, 1988, as part of the FSLIC-assisted acquisition of

Galva/Mutual/Home, FSLIC purchased Series A preferred stock in River Valley I for $5 million. Joint Statement of Fact ("JSF") ¶¶ 80, 102, 103. On March 28, 1991, the FDIC sold this preferred stock back to River Valley I for $3.675 million. JSF ¶ 278. Dr. Murphy contends that the difference between the estimated value of the preferred stock in 1988 and the price at which River Valley I redeemed the stock in 1991 provides a basis for estimating a purported breach-related decline in River Valley I and River Valley II. PX 606 at 17-21.

## II. The Court's November 17, 2006 Order

In its November 17, 2006 Order, this Court considered the preferred stock acquisition in light of the terms of the Assistance Agreement, the Forebearance Letter, the FHLBB Resolution, and other documents. The Court observed:

> In the River Valley I Assistance Agreement, FSLIC agreed to purchase 50,000 shares of River Valley I preferred stock for $5,000,000. JA 4835. Although Resolution 88-638 and the Assistance Agreement both expressly promised that River Valley could count $8,000,000 of the FSLIC cash contributions and the $4,600,000 subordinated debenture in its regulatory capital, neither document expressly promised such treatment specifically for the $5,000,000 in preferred stock, nor did the forbearance letter contain such an express promise.

Holland v. United States, 74 Fed. Cl. 225, 259-60 (2006). Taking into account the recent decisions of the Court of Appeals for the Federal Circuit in Southern California Federal Savings & Loan Association v. United States, 422 F.3d 1319 (Fed. Cir. 2005), and Barron Bancshares, Inc. v. United States, 366 F.3d 1360, 1375 (Fed. Cir. 2004), this Court concluded that there existed no contractual promise with respect to counting the $5 million in preferred stock as regulatory capital:

> the contract documents are devoid of a promise by the Government to allow River Valley to include the preferred stock in its regulatory capital. The contract's silence regarding the treatment of preferred stock is not an ambiguity; rather, it reflects absence of any promise, especially in light of the fact that the contract documents specifically enumerated the other regulatory capital promises. Therefore, the contract documents (*i.e.,* the FHLBB resolution, Assistance Agreement, and forbearance letter) show that the preferred stock was included in regulatory capital only because the existing regulations specifically called for such treatment, in contrast to the promises with respect to the subordinated debt and the $8 million of the capital credit, forbearances from the application of GAAP for which River Valley bargained.

Holland, 74 Fed. Cl. at 263.

In response to the Court's order, plaintiffs sought leave to adjust their damage claims. Because Dr. Murphy's original damage claim was purportedly tied to the amount of regulatory capital phased out by the breach, and because the Court's order reduced the amount of breach-related capital by $5 million, plaintiffs asserted that they "intend to claim $17.461 million in connection with their lost value claim, rather than the $21.846 million set forth in Dr. Murphy's expert report[.]" Pl. Mot. for Leave to Revise and Supplement Their Damages Claims (Mar. 20, 2007) at 3. Plaintiffs explained that they "will revise their lost equity value damages claim to seek only the $10.410 million (or 70.365%) of the $14,794,441 decline attributable to Defendant's breach, as the Court has determined it." Id. at 2. Plaintiffs averred further that, "[b]ecause the revision is wholly computational, and neither affects the methodology supporting Dr. Neil Murphy's expert opinion nor discloses a new theory, this adjustment requires no further expert disclosure or discovery." Id. at 3. In their reply brief, plaintiffs requested that this Court grant their motion to "revise Dr. Murphy's lost value damages analysis in the manner described in

Plaintiffs' March 20, 2007 Motion. Pl. Reply (April 10, 2007) at 2 n.2. The Court granted plaintiffs' motion, see Order (April 11, 2007), and did not provide the Government an opportunity to depose Dr. Murphy on what analysis, if any, underlie his revised computation.

## III. Plaintiffs Revive Their Abandoned Damage Claim

Without seeking leave of the Court, plaintiffs have signaled an intention to attempt to increase their "lost value" damage claim to $21.846 million – the amount of their damage claim prior to the Court's November 17, 2006 Order. Plaintiffs claim that the "breaching actions were a substantial factor in causing a combined total reduction in value of at least $21.846 million in River Valley thrifts." Id. at ¶ 168. The $14.794 million loss figure for River Valley I and $21.846 million combined damage figure for River Valley I and II are the precise sums that plaintiffs disavowed in their motion to amend their damage claims.

Plaintiffs did not seek a motion for reconsideration of the Court's November 17, 2006 Order, nor did they seek leave of the Court to amend their damage claim. Further, plaintiffs did not provide notice, as required by Federal Rule of Civil Procedure 26(e), that they were revising their damage claim to include the effect on River Valley of the reduction in capital of $5 million in preferred stock. Contrary to their prior representations to this Court, plaintiffs contend, in their contentions of fact and law, that Dr. Murphy's primary damage claim is for $21.846 million. Further, notwithstanding their prior attestations, plaintiffs now claim that FIRREA caused River Valley I to incur "the entire $14.794 million loss." Pl. Mem. (Sept. 25, 2007) at ¶ 164.

## ARGUMENT

### I. Dr. Murphy's Opinion Must Be Excluded Because It Is Legally Barred And Irrelevant

#### A. Motions *In Limine*

The motion *in limine* is the appropriate venue to for the Court to "filter[] out irrelevant evidence and perform[] its function of simplifying issues for trial." Inslaw, Inc. v. United States, 35 Fed. Cl. 295, 303 (1996). Where, as here, an expert's testimony would not assist the trier of fact because it is not relevant, it must be excluded. See Micro Chem., Inc. v. Lextron, Inc., 317 F.3d 1387, 1391 (Fed. Cir. 2003) (the trial court must "exclude expert testimony that is irrelevant or does not result from the application of reliable methodologies or theories to the facts of the case.").

#### B. The Law Of Expectancy Damages And The Prohibition Against Windfall Awards

"One way the law makes the non-breaching party whole is to give him the benefits he expected to receive had the breach not occurred." Glendale Federal Bank, F.S.B. v. United States, 239 F.3d 1374, 1380 (Fed. Cir. 2001) (citing RESTATEMENT (SECOND) OF CONTRACTS § 344(a) (1981)). Plaintiffs' expectation interest in this case, as reflected by its claim for the purported "diminished value" of River Valley's stock, is the "interest in having the benefit of [its] bargain by being put in as good a position as [it] would have been in had the contract been performed." See RESTATEMENT (SECOND) OF CONTRACTS § 344(a) (1981).

Plaintiffs apparently believe that the "substantial factor" test permits them to recover even for harm that was not caused by the breach – i.e., purported damages that relate to the disallowance from regulatory capital of $5 million in preferred stock. Plaintiffs' position

contravenes elementary tenets of the law of contract damages. Although the Court of Appeals for the Federal Circuit has acknowledged that the fact of causation may be proved in certain circumstances by a determination that the breach of contract was a "substantial factor" in causing harm to plaintiff, Citizens Fed. Bank v. United States, 474 F.3d 1314, 1318 (Fed. Cir. 2007), the court did not abandon, nor alter, the long-recognized axiom that the quantum of any damage sum must be reduced by those damages caused by matters independent of the breach. See, e.g., Bluebonnet Sav. Bank, F.S.B. v. United States, 339 F.3d 1341, 1345 (Fed. Cir. 2003) ("To derive the proper amount for the damages award, the costs resulting from the breach must be reduced by the costs, if any, that the plaintiffs would have experienced absent a breach.").

Indeed, the Restatement of Contracts recognizes that in circumstances such as these, where a party alleges a loss of value caused by the breach, the damage quantum must be limited to those damages caused by the breach:

> [i]f defective or partial performance is rendered, the loss in value caused by the breach is equal to the difference between the value that the performance would have had if there had been no breach and the value of such performance as was actually rendered.

RESTATEMENT (SECOND) OF CONTRACTS § 347 (1981), comment b. This rule necessitates segregating those losses realized as a result of the breach from those costs caused by other factors. See e.g., Southern Nat'l Corp. v. United States, 57 Fed. Cl. 294, 306 (2003) (rejecting plaintiffs' lost profits claim because it did not reflect categories of activities, opportunities, or lines of businesses that the thrift would have undertaken in the "but-for" world).

Accordingly, the Federal Circuit has held that the non-breaching party may not be compensated for those costs caused by factors not related to the breach: "Courts should avoid

bestowing an 'unfair windfall' on the plaintiff by compensating him or her above and beyond the losses suffered under the breached agreement." Hansen Bancorp, Inc. v. United States, 367 F.3d 1297, 1315 (Fed. Cir. 2004) (citing LaSalle Talman Bank, F.S.B. v. United States, 317 F.3d 1363, 1371 (Fed. Cir. 2003); see RESTATEMENT (SECOND) OF CONTRACTS § 347 (1981).

**C. Dr. Murphy's Damage Estimate Is Legally Barred Because It Would Provide Plaintiffs An Impermissable Windfall**

In this matter, this Court has held that the $5 million in preferred stock could not count as contractual capital. Nonetheless, Dr. Murphy's damage sum includes amounts which plaintiffs have attributed to the loss of this non-contractual preferred stock, thus providing a windfall to plaintiffs. Because Dr. Murphy's damage sum seeks relief which is barred by law, it is irrelevant to this litigation, and should be excluded pursuant to Federal Rule of Evidence 702. See, e.g., Liquid Dynamics Corp. v. Vaughan Co., Inc., 449 F.3d 1209, 1224 n.2 (Fed. Cir. 2006) (affirming exclusion of expert testimony which was irrelevant because it was based upon an impermissible claim construction, among other things).

Respectfully submitted,

MICHAEL F. HERTZ
Deputy Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/ Kenneth M. Dintzer
KENNETH M. DINTZER
Assistant Director

/s/ John H. Roberson
JOHN H. ROBERSON
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor, 1100 L Street
Washington, D.C. 20530
Tele: (202) 353-7972
Fax: (202) 514-8640

Of Counsel:

SCOTT D. AUSTIN
ELIZABETH A. HOLT
WILLIAM G. KANELLIS
AMANDA L. TANTUM
JOHN J. TODOR
SAMEER YERAWADEKAR

Attorneys for Defendant

**CERTIFICATE OF SERVICE**

I hereby certify that on this 5TH day of November, 2007, a copy of "DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE THE TESTIMONY OF DR. NEIL MURPHY RELATING TO PLAINTIFFS' NEW DAMAGE CLAIM" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ John H. Roberson
John H. Roberson