# EXHIBIT 2

**Long Island Savings, FSB v. U.S No.: 92-517C January 11, 2005**

**Heritage Reporting Corporation**

**Page 1 to Page 72**

CONDENSED TRANSCRIPT AND CONCORDANCE
PREPARED BY:

*HERITAGE REPORTING CORPORATION*
*1220 L Street, N.W.*
*Suite 600*
*Washington, DC 20005*
*Phone: 202-628-4888*
*FAX: 202-371-0935*

Page 1

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

LONG ISLAND SAVINGS, FSB )
AND THE LONG ISLAND SAVINGS )
BANK OF CENTERREACH, FSB, )
Plaintiff, )
) Docket No.: 92-517C
v. )
UNITED STATES, )
Defendant. )

Courtroom 6
National Courts Building
717 Madison Place, N.W.
Washington, D.C.
Tuesday,
January 11, 2005

The parties met, pursuant to notice of the Court, at 9:31 a.m.

BEFORE: HONORABLE CHARLES F. LETTOW
Judge

APPEARANCES:
For the Plaintiff:
RICHARD C. TUFARO, Esquire
WILLIAM WALLACE, Esquire
ANDREW LEBLANC, Esquire
Milbank, Tweed, Hadley & McCloy, LLP
1825 Eye Street, N.W.
Washington, D.C. 20006
(202) 835-7569

Page 2

APPEARANCES: (Cont'd.)
For the Defendant:
JEROME A. MADDEN, Esquire
JEFFREY INFELISE, Esquire
TIMOTHY ABRAHAM, Esquire
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
1100 L Street, N.W.
Washington, D.C. 20530
(202) 353-6503

Page 3

P R O C E E D I N G S
(9:31 a.m.)

THE CLERK: All rise. The United States Court of Federal Claims is now in session, the Honorable Charles F. Lettow presiding.

THE COURT: Good morning. Please be seated. The case before the Court is Long Island Savings Bank and the Long Island Savings Bank of Centerreach v. United States, No. 92-517.

For the record, Mr. Tufaro, would you introduce yourself and your colleagues for Plaintiff?

MR. TUFARO: I will, Your Honor. Richard Tufaro, of counsel from Milbank Tweed; William Wallace, a law partner of Milbank Tweed; Andy Leblanc, an associate.

THE COURT: Mr. Madden, if you would do the same thing as counsel for Defendant?

MR. MADDEN: Good morning, Your Honor. With me today is Jeff Infelise and Mr. Timothy Abraham.

THE COURT: All right. Mr. Infelise, Mr. Abraham, welcome.

Now to start. We have, as far as the Court can tell, one carryover matter from our associated in limines, and that is -- let me find it; here it is -- Defendant's expedited motion to order the production

Page 4

of tax returns, order the redeposition of Anthony DiCostanzo and compel Mr. DiCostanzo – I apologize – to answer questions at his deposition.

I take it from Plaintiff's recently filed response that has been addressed fully to all parties' satisfaction.

MR. WALLACE: I believe so, Your Honor. We produced the tax returns, and we produced the witness, and he has been deposed.

THE COURT: Mr. Madden, is that so?

MR. MADDEN: Yes, sir. He has been deposed. We do have the documents we need, and Mr. Wolf has those documents.

Just so we're clear, we expect him to testify about the rate of tax that would be applied to whatever award was taxable and the taxability itself of any subsequent award, so those two issues would be addressed so we're clear on that and the Plaintiffs are clear on that.

THE COURT: Is your motion now moot? Has it been satisfied?

MR. MADDEN: It has been satisfied, Your Honor.

THE COURT: All right. Thank you.

MR. TUFARO: Your Honor?

Page 17

simply an effort to try and put in context. I mean, I haven't actually timed it. I did an outline, but my sense was that it might be tight to get it done in 30 minutes.

THE COURT: Let's try.

MR. TUFARO: All right. I'll work with that.

THE COURT: This other trial that took almost as long as this one is going to take had consolidated Plaintiffs in it as well and each separate property with different circumstances, a whole array of temporary takings issues in it really on which there's not a lot of precedence. Counsel managed to get that done in a half an hour quite satisfactorily.

MR. TUFARO: All right.

THE COURT: You just have to focus on what you want to talk about, but that helps because once you focus that will definitely provide a guide to the Court of what's really going to be at issue between the parties.

MR. TUFARO: On Item 4, we are proposing the following dates for posttrial briefing and closing arguments, recognizing that your schedule may require some other dates.

Page 18

I have to say that in part these dates are to accommodate my own personal obligations with graduation and a wedding coming on June 25.

THE COURT: Well, congratulations.

MR. TUFARO: I appreciate the government having accommodated me that way.

THE COURT: Congratulations. The only caveat the Court has is that on the 20th of June the Court is scheduled to begin a trial in a spent nuclear fuel case involving the Tennessee Valley Authority, and I do not think we can count on that case being finished by the 30th. I would hate to break up that trial.

If that is so, do the parties have a date that they would propose besides the 30th that fits with your own schedules?

MR. TUFARO: I think the only issue was the parties thought if they could get it done prior to the Fourth of July weekend rather than rush it up on the Fourth of July, but then after that I think it's probably the Court's convenience as to the next available date.

Is that fair?

THE COURT: Mr. Madden?

MR. MADDEN: Yes, that's fair, Your Honor.

Page 19

I think as you get into August we run into some problems.

THE COURT: Oh, no. We're not going to do that.

MR. MADDEN: Any time in July would be fine with the government.

THE COURT: We're definitely not going to go into August. I see the problem, and it would be nice for counsel and the Court to have this done on the 30th of June or the 1st of July.

Let's leave it at the 30th of June or the 1st of July as a tentative matter. Let me kind of think about that. I have got to talk to counsel in the Tennessee Valley Authority case anyway.

MR. TUFARO: All right.

THE COURT: It will only slip at most – if you're not on vacation in the latter part of the week that begins with the Fourth of July, then we could do it toward the end of that week.

It's really a question. I'm sorry to put it in the form of a statement.

MR. TUFARO: We don't have plans currently, but the 30th was I think the Thursday of that week.

MR. MADDEN: Right.

MR. TUFARO: The 1st is Friday, correct?

Page 20

THE COURT: Right.

MR. MADDEN: I could do it on the 1st. That's not the best date for me, but any time. I can do it on July 1, and I can certainly do it the next week.

MR. TUFARO: And I'm free the next week too.

THE COURT: I hate to put you to the 5th, but at least the 7th or 8th we could do it, I take it?

MR. TUFARO: Yes, Your Honor.

THE COURT: All right. Again, the 30th is perfectly acceptable to the Court if we can get ourselves sorted through in the Tennessee Valley Authority trial.

MR. TUFARO: All right. On Item 5, Your Honor, the parties have agreed to use the rule that's used in these Winstar cases of notifying each other a week in advance, so I owe Mr. Madden our notice for next week's witnesses, which I will provide to him today.

THE COURT: All right. Thank you. Mr. Madden?

MR. MADDEN: Yes, Your Honor. I guess we'll have to wait for that.

MR. TUFARO: I can't deliver it now.

MR. MADDEN: The only issue on that really

Page 21

is that we would like on the list the deposition designations. We would like to know when they propose to read those transcripts into the record just to let us know when they're bringing the witnesses. We'd like them to include the deposition transcripts in the witness order.

THE COURT: That raises the question whether you've worked out among yourselves counterdesignations so that the whole thing can be read at one time –

MR. MADDEN: Right.

THE COURT: – in sequential order.

MR. MADDEN: To the extent that witnesses, and we've got to fine tune this, are our witnesses or are their witnesses, we intend to bring them in our case.

THE COURT: Bring the actual witness forward?

MR. MADDEN: Right. To the extent they're not on either list, we would read those in that situation. We have not counterdesignated them at this point.

THE COURT: You ought to think about that and make sure that you – if I recall correctly, I explicitly gave you leave to do that.

MR. MADDEN: Yes, you did, Your Honor. The

Page 22

witnesses that are not on either list that they propose to introduce through depositions, frankly, I'm not really sure what the relevance of those are.

THE COURT: Right. Okay. If you could make sure that you've thought about the possibility of counterdesignations so we do it at one time and not back and forth.

MR. MADDEN: We will do that.

THE COURT: Thank you.

MR. TUFARO: Your Honor, in terms of the letter, we identify the live witnesses and the order in which we intend to call them. We identify the order in which we propose to read the deposition transcripts, but we're going to try to use them to use the Court's time efficiently as sort of gap filler so that if we finish with an hour left in the day we would try to use the time to read depositions. It's going to be a little bit difficult to say precisely that we're going to read this one. It may be that because of the time that's available we'll use one that's a shorter read or one that's a longer read, but basically what we're doing is up front telling the order in which we currently propose to read the transcripts, all of them, and live witnesses that we intend to call for the coming week.

Page 23

THE COURT: Mr. Madden?

MR. MADDEN: From our standpoint, Your Honor, we'd like to know when they're going to be read because there are many objections to the testimony that we intend to raise.

All the suggestions that were privileged objections were preserved, so there are many objections as to foundation, relevance, former questions that we intend to raise, and we would like to know when they're going to – they can just say within a certain week we intend to use three or four of these depositions as fillers. That would be helpful.

THE COURT: Well, let's try it this way. Messrs. Tufaro and Madden, you've got something shy of five weeks here, but basically five weeks. I think we can adjust back and forth especially between the two week block if necessary by agreement of counsel. But, if you could just get an order and follow your nose through it I think we'll generally be better off even if we have a half an hour testimony or voir dire somebody and then go over to the next morning.

If you can work out a separate agreement among yourselves, that's fine. Otherwise we'll just

Page 24

take it in order and play along with the exercise.

MR. MADDEN: That's acceptable to the government, Your Honor. If I understand what he was saying, he would get the list, and we can have a live witness first, and then we're going to read a deposition, and then a live witness.

THE COURT: Yes. Let's just do that. Then we just don't have any surprises. All right.

MR. TUFARO: Item 6. The parties are invoking the exclusionary rule. We informed Defendant at our meeting on Wednesday that our clients are designating Mark Fuster as their representative. He is a former chief financial officer of the two institutions and currently a consultant to Astoria. Defendant was weighing whether it had any objections. I might note he will be our first witness.

THE COURT: Mr. Madden?

MR. MADDEN: Yes, Your Honor. I think it's always a risk when you have a client representative who's going to be a major fact witness to have at counsel table if he's going to testify, for example, last because he gets to hear all the testimony of everybody before him, and obviously the purpose of sequestration is so that doesn't happen, but they have