# EXHIBIT 7

**GLOBE SAVINGS BANK v. U.S No. 91-1550C July 2, 2004**

**Heritage Reporting Corporation**

**Page 1 to Page 106**

CONDENSED TRANSCRIPT AND CONCORDANCE
PREPARED BY:

*HERITAGE REPORTING CORPORATION*
*1220 L Street, N.W.*
*Suite 600*
*Washington, DC 20005*
*Phone: 202-628-4888*
*FAX: 202-371-0935*

Page 1

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

GLOBE SAVINGS BANK, et al., )
Plaintiffs. )
v. ) Docket No.: 91-1550C
UNITED STATES, )
Defendant. )

National Courts Building
717 Madison Place, N.W.
Washington, D.C.
Monday,
July 2, 2004

The parties met, pursuant to notice of the Court, at 9:00 a.m.

BEFORE: HONORABLE CHARLES F. LETTOW
Judge

APPEARANCES:
For the Plaintiffs:
MELVIN C. GARBOW, Esquire
HOWARD N. CAYNE, Esquire
WALTER ZENNER, Esquire
IDA BOSTIAN, Esquire
Arnold & Porter, LLP
555 - 12th Street, N.W.
Washington, D.C. 20004
(202) 942-5000

Page 2

APPEARANCES (continued):
For the Defendant:
LUKE P. LEVASSEUR, Esquire
JOHN KANE, Esquire
SCOTT AUSTIN, Esquire
BRIAN MIZAGUCHI, Esquire
ALEXIA RENGO, Esquire
MICHAEL JOHNSON, Esquire
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
1100 L Street, N.W., 8th Floor
Washington, D.C. 20005
(202) 616-0464

Page 3

PROCEEDINGS
(9:00 a.m.)
THE CLERK: All rise. The United States Court of Federal Claims is now in session, the Honorable Charles Lettow presiding.
THE COURT: Good morning. Please be seated.
ALL: Good morning, Your Honor.
THE COURT: The case before the Court this morning is Globe Savings Bank v. United States, No. 91-1550C. It's good to see everyone again. Mr. Garbow, would you introduce yourself and your colleagues for Plaintiff?
MR. GARBOW: Good morning, Your Honor. I'm Melvin Garbow from Arnold & Porter here in Washington, D.C. With me is my partner, Howard Cayne, –
THE COURT: Welcome.
MR. GARBOW: – Water Zenner, –
THE COURT: Mr. Zenner.
MR. GARBOW: – and Ida Bostian.
MR. BOSTIAN: Good morning, Your Honor.
THE COURT: Ms. Bostian.
MR. GARBOW: And Ms. Bostian has been the lead counsel in our group on a number of these pretrial matters, and with the Court's permission, I would like to have Ms. Bostian lead the discussion

Page 4

this morning.
THE COURT: Certainly. Ms. Bostian has been busy, as we can all attest. Mr. Levasseur?
MR. LEVASSEUR: Yes, Your Honor. Good morning.
THE COURT: Good morning.
MR. LEVASSEUR: Luke Levasseur for the United States, and with me this morning are my colleagues, Mr. John Kane, –
MR. KANE: Good morning, Your Honor.
THE COURT: Good to see you again, Mr. Kane.
MR. LEVASSEUR: – Scott Austin, –
MR. AUSTIN: Good morning, Your Honor.
THE COURT: Mr. Austin.
MR. LEVASSEUR: – and Brian Mizaguchi.
THE COURT: Mizaguchi. Okay. Welcome.
MR. GARBOW: Your Honor, because my back was turned, I overlooked two of my colleagues who have been important parts of the case, Alexia Rengo and Michael Johnson.
THE COURT: Welcome, Mr. Johnson, and Ms. Rengo. Is that correct? Thank you.
Have the parties consulted with each other about the pretrial agenda and proposed form that

Page 29

we're trying to avoid having to call her if we can. And we're hoping that we'll be able to lay a foundation and get these documents in through witnesses, but there are a few that we think should be noncontroversial documents, exhibits, that we think we can lay the foundation, the authenticity would be stipulated to, and we could do without a sponsoring witness, in which case we would like to have the opportunity to do that.

Also, I think this is a slightly different point, but it's sort of the same procedural issue as to what procedure we would follow if the Court would allow us to do that, we wanted to inquire, and this did not make it onto the agenda, but wanted to inquire about the procedure for seeking to admit the deposition of Jack Brehill, which the Court has previously ruled on.

THE COURT: Mr. Levasseur?

MR. LEVASSEUR: Your Honor, Ms. Bostian did raise this issue about exhibits without a sponsoring witness, and it's true, I think, that the primary reason that we would call Ms. Renz would just be to sit on the stand and to authenticate documents or try to get them in evidence that way. If they sent us a proposal, we would consider such stipulation, but the

Page 30

Department's view is that the documents need to be sponsored into evidence by witnesses. A foundation needs to be laid for documents before they become evidence in the case.

And the bigger concern is document dumps. It happened in other cases where the plaintiff will try to move in a large number of documents, and occasionally it is allowed, and they come into evidence, and then all of a sudden in a post-trial brief you see a citation to some part of the document that was never raised at trial, never discussed at trial, and then all of a sudden it becomes the key issue. This is not some hypothetical concern that the Department of Justice has. In some of the cases, the appeals have been entirely different than the actual trials, and we think that's improper.

We don't like data dumps, and we don't like document dumps. We don't think they are fair to the Court because the Court isn't being addressed with the actual substance of materials that the parties are going to say is important in the post-trial briefs and in their closing arguments.

So that is our standing opposition to the potential of having large numbers of documents dumped into evidence without a sponsoring witness, and that's

Page 31

our position. That's why we don't approve of admitting documents without a witness. In a proposal, we might consider it, but I don't know what our response would be ultimately. But our general position is that documents need to be sponsored into evidence by a witness.

MS. BOSTIAN: Your Honor?

THE COURT: Yes, Ms. Bostian.

MS. BOSTIAN: Actually, I've just been reminded, one other issue is that at least one potential government witness has died since, not recently, but the offer of the S memo, apparently his dad, Mr. Neuberger, and so those are the types of things that, in reviewing the documents, we had to look at them and thought, oh, we're not sure about getting this in through a witness.

I can assure the Court and the Defendant that we're not thinking about a document dump. We also don't think that's a very good way to make our case, and so that is not our intention. We're talking about if there were no other practical way to get these exhibits in, to have a procedure by which we could do this with some discreet documents.

THE COURT: As Mr. Cayne and Mr. Johnson know, the Court is inclined to be a little bit of a

Page 32

stickler on evidence, in fact, more than a little bit. So I don't think I've yet accepted even a stipulation of the parties as to the admissibility of some documents. It just helps to have the things put in context.

If your witness is dead, if the ordinary person that you would call as the authenticating witness is dead, and the document – I don't even like old documents if they are 20 years' old. We had that discussion in American Federal. I don't just like admitting things because they happen, hypertechnically, to be over 20 years' old.

So if we can avoid having a document come in as – I won't say "unauthenticated" – as an unattested document through a witness who provides a foundation, let's try to do that.

MS. BOSTIAN: We certainly will, Your Honor.

THE COURT: All right.

MR. LEVASSEUR: With respect to the Reed Hill deposition, obviously, we opposed the entry, but it's going to come in, according to the Court's ruling, so exactly how – I don't think they have proposed a specific procedure, but I assume we can work something out.

THE COURT: Now, there, I gave you leave to

Page 33

cross-designate, even though I – to you these are not admissions, to put it mildly.
MR. LEVASSEUR: However they file it, we'll file a set of cross-designations.
THE COURT: Let's talk about that a minute or so because, at a given point in the trial, not at the end of the trial, if we could just have a proffer by the Plaintiff with whatever Mr. Levasseur and his colleagues, Ms. Bostian, have in mind to add, the Court would just take that. If you think it would be helpful to read those, to read the deposition, we'll do that; otherwise, the Court will just take the written materials because that's the form that they are admitted in.
MS. BOSTIAN: That sounds fine to us, Your Honor. I think we would anticipate probably just doing this between two live witnesses.
THE COURT: That's fine. Just work that out with Mr. Levasseur so that you've got – a cross-designation. I'm sorry about the cross-designation, but I'm doing that because, otherwise, I think the parties would be inclined to call Mr. Reed Hill, and that's fine with me if he testifies.
MR. LEVASSEUR: Your Honor, we haven't decided finally, but we may very well call Mr. Reed

Page 34

Hill, so, in a sense, the deposition would become extraneous because they would have an opportunity to cross him if we call him, and that very well may happen.
THE COURT: Well, I anticipate that. But still, the ruling stands. Let's just not take this at the very end of Plaintiffs' case. Let's fit it in.
MS. BOSTIAN: Thank you, Your Honor.
THE COURT: All right. Now, let's see. We've address the orphaned document. Now, if you do have a document, as I said, that you can't really eventually authenticate because you don't have a live witness anymore, let's get that squared away promptly. In fact, let's work on that so we don't do it during the trial. Let's try to do that by Wednesday or Thursday on our little, mini-hearings here if you can. It's completely understandable that there might be some documents that fall in that category, and there might ordinarily be just public records or things like that that you don't need a witness to authenticate. Let's see if we can deal with those there. We've talked about Mr. Reed Hill.
MS. BOSTIAN: Your Honor?
THE COURT: Ms. Bostian.
MS. BOSTIAN: I believe for all of the

Page 35

documents that we have in contemplation, the authenticity has been stipulated under the stipulation and order and under the separate stipulation that we filed in this case.
THE COURT: Right.
MS. BOSTIAN: I don't think that should be a problem. But we will get the Court any such documents by next Wednesday.
THE COURT: Okay. Thank you. Is there anything else in this little bundle under the proposed first item on your pretrial agenda that we haven't covered?
MS. BOSTIAN: No, Your Honor. I believe that's all at this point.
THE COURT: All right. Mr. Levasseur?
MR. LEVASSEUR: I think that's fine, Your Honor.
THE COURT: Okay. Next, Ms. Bostian.
MS. BOSTIAN: Well, Your Honor, if we can proceed to number two, and I'm actually going to defer to my colleague, Walt Zenner, on this motion which I believe the Defendant and the Plaintiffs both would like to resolve at this time, Defendant's motion seeking two procedural orders regarding Mr. Williams's testimony.

Page 36

THE COURT: Now, I deferred ruling on that just to make sure I got all of the papers in. We talked about it tangentially last week, but I think we're in a shape now to address it. Mr. Zenner?
MR. ZENNER: Well, Your Honor, it's the government's motion, so I would suggest that Mr. Levasseur address it first.
THE COURT: But I just want to ask you. You have now – let me find it – let's just talk about what I have. I have the government's motion filed June 14th and your response, Mr. Zenner, filed the 28th. Is that correct?
MR. ZENNER: Yes, Your Honor.
THE COURT: Okay. Thank you. Mr. Levasseur?
MR. LEVASSEUR: Yes, Your Honor. That's correct. Do you want me to address the substance of it?
THE COURT: If you would.
MR. LEVASSEUR: Okay. Your Honor, obviously, the case – we're going to Kansas to hear the testimony largely of Mr. Williams. Mr. Williams is the CEO of the company. He is the principal expert witness. He is the only expert witness who actually calculates a damages claim, purports to calculate a