**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| HOMER J. HOLLAND,<br>STEVEN BANGERT, co-executor of the<br>ESTATE OF HOWARD R. ROSS, and<br>FIRST BANK,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | No. 95-524<br>(Judge George W. Miller) |

**DEFENDANT'S MOTION *IN LIMINE* TO PRECLUDE**
**ALL EVIDENCE BASED UPON ANY LOST PROFITS CLAIM**

Pursuant to the Court's order of October 5, 2007, defendant, the United States, respectfully submits this motion to preclude the introduction of all testimony and exhibits based upon any lost profits claim, given plaintiffs' assertion that, in exchange for the right to issue a retained earnings theory of damages, they were abandoning lost profits claims in this case. In their contentions of fact and law, plaintiffs suggest that they will present a new lost profits damage theory, purportedly constructed in response to Dr. Thakor's report. This new lost profits theory goes beyond any of plaintiffs' prior damages theories and is not supported by any witness. For plaintiffs to advance such a calculation now, without the benefit of any expert testimony by either party, is both improper and prejudicial, especially given plaintiffs' earlier representations that they were abandoning their lost profits claims in this case.

On March 20, 2007, plaintiffs moved to revise and supplement their damages claims by replacing their lost profits claim with Dr. Holland's new retained earnings theory. See Pl. Mot. Revise and Supp. Their Damages Claims (Mar. 20, 2007). Recognizing that this claim came

after the close of expert discovery, plaintiffs stated that, "[i]f the court grants this motion, and in order to streamline trial preparation and proceedings, Plaintiffs also intend to forego their claim for the lost profits that River Valley would have earned by leveraging the breached regulatory capital to add incremental income-earning assets (other than San Antonio Federal Savings Bank) in the years following the breach." Id. at 1.

In their reply brief, plaintiffs reiterated their disavowal of their lost profits claim, stating that, "[a]s Plaintiffs stated during the March 12, 2007 Status Conference, and in their March 20, 2007 filing, should the Court permit Plaintiffs to submit a retained earnings claim, Plaintiffs intend to set aside their claim for lost leverage profits, reducing Plaintiffs' claims for damages by roughly $31 million." Pl. Reply in Support of Mot. to Revise and Supp. their Damages Claims (Mar. 27, 2007) at 7-8; see also Transcript of Mar. 12, 2007 telephonic status conference at 17-18 ("But we would intend not to present the lost profits based on incremental growth from interest-earning assets."), 39 (Bergman). Plaintiffs further argued that their new retained earnings theory would not prejudice the Government because we would be "provided a full and fair opportunity to depose Plaintiffs' expert and prepare a rebuttal report before trial." Pl. Reply (Mar. 27, 2007) at 6.

The Court granted plaintiffs' motion and permitted Dr. Holland's retained earnings theory. We produced the expert report of Dr. Anjan Thakor in response to Dr. Holland's retained earnings theory. See DX 1492. In his report, Dr. Thakor states that one defect, among others, of Dr. Holland's retained earnings theory is that it is akin to a defective lost profits claim because it assumes that River Valley could have leveraged the contractual capital lost due to the breach

without detailing the investment opportunities River Valley would have pursued or accounting for the additional risk such additional investments would entail. Id. at 20 ¶ 35.

Now, however, in their pretrial brief, plaintiffs suddenly claim, once again, that the breach "cost River Valley millions in lost profits" through lost growth. Pl. Cont. at 31-34 ¶¶ 85-99. Not only do plaintiffs revive the factual claim that River Valley had lost profits, but they also suggest an entirely new damages theory to support these lost profits. Plaintiffs suggest that at trial they will attempt to use the River Valley leverage ratio and other "information from which River Valley's net interest margin can be determined" in Dr. Thakor's report to introduce a brand-new lost profits claim. See Pl. Cont. at 45-47 ¶¶ 152-56. "Dr. Thakor's report and exhibits (as well as other evidence to be introduced at trial) provides a basis to compute (1) River Valley's actual postbreach leverage ratio, (2) River Valley's actual post-breach net interest margin, and (3) River Valley's actual post-breach marginal tax rate. Accordingly, Dr. Thakor's analysis provides a reasonable basis to compute the profits River Valley would have earned had the government not breached." Id. at 45-46 ¶ 153 (emphasis added). Plaintiffs have thus reversed their repeated earlier representations to the Court that would "forego their claim for the lost profits that River Valley would have earned" in exchange for being permitted to advance their new retained earnings theory out of time. Pl. Mot. (Mar. 20, 2007) at 1 (emphasis added); see also Pl. Reply (Mar. 27, 2007) at 7-8.

The prejudice to defendant of these newly suggested lost profits calculations is self-evident. Plaintiffs have not said what calculations they would advance, what assumptions would be involved, or what damages figure would result. We have had no opportunity to discover whether Dr. Holland, or any other witness, intends to testify as to these calculations at trial.

Plaintiffs do not even identify what unspecified "other evidence to be introduced at trial" would support such an analysis. Pl. Cont. at 45-46 ¶ 153. Our experts will have no opportunity to explore either these calculations or the assumptions underlying them, and will have no opportunity to respond with assessments of their own.

This attempt to revive plaintiffs' lost profits claims violates the Rules of this Court and the Winstar Discovery Plan, both of which require that any expert opinions be fully disclosed well in advance of trial. *See* RCFC 26(a)(2); Winstar Procedural Order No. 2; Discovery Plan (Aug. 11, 1997), Section V (requiring expert witnesses be disclosed within 30 days after the close of discovery and reports within 60 days after identification). Appendix A to the Rules of this Court also requires that the parties' statements of issues contain the issues developed through discovery, not new theories concocted from whole cloth on the eve of trial. See App. A at ¶ 14 (requiring that parties' pre-trial briefs disclose, "A statement of the issues of fact and law to be resolved by the court. The issues should be set forth in sufficient detail to enable the court to resolve the case in its entirety by addressing each of the issues listed.").

Under the law of this Circuit, this Court should refuse to consider damages theories, such as plaintiffs' here, that were not properly disclosed. Smith Int'l, Inc. v. Hughes Tool Co., 718 F.2d 1573, 1580 (Fed. Cir. 1983); Hughes Communications Galaxy, Inc. v. United States, 47 Fed. Cl. 236 (2000), aff'd, 271 F.3d 1060 (Fed. Cir. 2001). In Hughes, this Court rejected a new damages theory, a takings claim, that the plaintiff sought to introduce through post-trial briefing when the plaintiff "did not present evidence on that theory at trial." Hughes, 47 Fed. Cl. at 238 n.4. By the same token, plaintiffs' new damages theories should be similarly rejected because no evidence has been identified that could be used to support them at trial.

In the Winstar context, the Court in Citizens Federal Bank, F.S.B. v. United States, 52 Fed. Cl 561, 566 (2002), rejected the plaintiff's reliance damages theory, which the plaintiff introduced only at summary judgment briefing, as "a totally new and as-yet-explored area of recovery." Even when new damages theories have been permitted, they have been introduced through supplemental expert reports well before trial. See, e.g., Citizens Fed. Bank, F.S.B. v. United States, 59 Fed. Cl. 507, 512-13 (2004) (supplemental report for cost of replacement capital theory); Hansen Bancorp, Inc. v. United States, 51 Fed. Cl. 737, 738 (2002) (supplemental report for stock value theory). Indeed, in this case the Court has extended numerous opportunities to plaintiffs to amend their damages claim, but this does not excuse them from the obligation to present any such damages theories through expert testimony. Plaintiffs' new lost-profits damage theory does not meet these disclosure standards.[1]

Plaintiffs essentially concede this point by merely stating that their analysis of Dr. Thakor's data provides a "reasonable basis to compute the profits River Valley would have earned had the government not breached," and by failing to provide any expert opinion concerning damages. Pl. Cont. at 45-46 ¶ 153. Indeed, plaintiffs provide no evidence that their back-of-the-envelope calculations – whatever they may be – are accurate, because they are using them to craft new damages theories from whole cloth. Through these new calculations,

[1] Other Circuits confronting the issue also have rejected new damages theories not properly disclosed before trial. See, e.g., Marschand v. Norfolk and W. Railway Co., 81 F.3d 714, 716 (7th Cir. 1996) ("[T]he factfinder need not consider any claim or theory not raised in the pretrial order."); Phoenix Canada Oil Co. Ltd. v. Texaco, Inc., 842 F.2d 1466, 1475-76 (3d Cir. 1988) ("After a decade managing this enormous dispute, the district court acted within its discretion to reject a claim for consequential damages asserted after trial but not in the pretrial order."); see also Mayer v. Gottheiner, 382 F. Supp. 2d 635, 637 n.1 (D.N.J. 2005) (claims not raised in pretrial order deemed waived) (citing Phoenix Canada).

plaintiffs' counsel seeks to testify as an expert – without disclosing any report before trial, and without any opportunity for the Government to test their opinion through cross-examination or to introduce additional evidence. Plaintiffs have essentially announced their intention to conduct trial by ambush.

In the event that plaintiffs claim that we already had notice of the existence of their now-abandoned lost profits claim, that claim, too, is unsupported. Even a cursory comparison of these calculations with Dr. Holland's original report and supplemental reports shows that they are not based upon the same figures or calculations. Dr. Holland's original lost profits claims included an effort to identify the specific investment opportunities River Valley would have pursued but-for the breach, but plaintiffs have shown no such compunction here. These new suggested calculations are thus a material departure from even Dr. Holland's original lost-profits claim.

Nor can plaintiffs plausibly claim that they were only aware of the existence of the data or calculations underlying Dr. Thakor's analysis until they received Dr. Thakor's report. All of the figures plaintiffs cite as originating in Dr. Thakor's report – River Valley's leverage ratio, net interest margin, and marginal tax rate – actually <u>come from plaintiffs' own data</u>. Moreover, Dr. Thakor did not state that any of the analyses he performed could or should support a lost-profits claim. Dr. Thakor's only calculation in the section cited by plaintiffs, which was also performed using River Valley's own data, was to show how the retained earnings lowered the institution's levered cost of equity capital. <u>See</u> DX 1492 at 20 ¶ 35 & n.4. Even more fundamentally, the very flaws that Dr. Thakor identified in Dr. Holland's equation of retained earnings with lost profits – the lack of "the specific identification of the investment opportunities that River Valley would have pursued if the breach had not occurred" and the failure to account for "additional

risk" – are also inherent in plaintiffs' suggested calculations. See DX 1492 at 20 ¶ 35; Pl. Cont. at 45-46 ¶ 153.

Although the parties spent, literally, years conducting discovery and preparing for trial based upon Dr. Holland's original lost profits claim, plaintiffs made the deliberate strategic decision to abandon it in favor of the retained earnings claim. Now, on the eve of trial, plaintiffs have stated in their pretrial brief not only that they are attempting a back-door calculation of lost profits solely through representation of counsel, but also that they intend to do so without reference to any witness or evidence. This is an attempted circumvention of this Court's rules and plaintiffs' prior representations to this Court, and should be rejected.

We respectfully request that the Court preclude plaintiffs from offering any evidence relating to any lost profits claim at trial.

Respectfully submitted,

MICHAEL F. HERTZ
Deputy Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/ Kenneth M. Dintzer
KENNETH M. DINTZER
Assistant Director

/s/ John H. Roberson
JOHN H. ROBERSON
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor, 1100 L Street
Washington, D.C. 20530
Tele: (202) 353-7972
Fax: (202) 514-8640
Attorneys for Defendant

Of Counsel:

SCOTT D. AUSTIN
ELIZABETH A. HOLT
WILLIAM G. KANELLIS
BRIAN A. MIZOGUCHI
AMANDA L. TANTUM
JOHN J. TODOR
Trial Attorneys
Department of Justice

November 5, 2007

**CERTIFICATE OF SERVICE**

I hereby certify that on this 5th day of November, 2007, a copy of the foregoing document was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ John H. Roberson
John H. Roberson