# EXHIBIT 5

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

CERTIFIED COPY

BANK OF AMERICA, FSB, )
et al., )
)
Plaintiffs, )
)
vs. ) Case No. 95-660C
)
UNITED STATES OF AMERICA, )
)
Defendant. )
---------------------------)
HOMER J. HOLLAND and HOWARD)
R. ROSS, )
)
Plaintiffs, )
)
vs. ) Case No. 95-524C
)
THE UNITED STATES OF )
AMERICA, )
)
Defendant. )

AMERICAN CAPITAL CORPORATION)
and TRANSCAPITAL FINANCIAL )
CORPORATION )
Plaintiff, )
)
vs. ) Case No. 95-523C
)
THE UNITED STATES, )
)
Defendant. )

Deposition of RONALD NEAL KARR
(Taken by Plaintiff)
Chicago, Illinois
July 12, 2000

Reported by: Robin Tokarz-Chimniak
CSR No. 084-001999

MATERIAL REDACTED

Q. The institutions you just mentioned that involved supervisory goodwill -- LaSalle Talman, River Valley, TransOhio -- were they internally at the OTS, did you classify these all as problem institutions at the time?

A. No.

Q. Do they have a particular classification, for your internal supervisory purposes?

A. Well, as I recall, when I came to Chicago, LaSalle Talman was not considered a problem institution at all. TransOhio was. It was having significant operating problems.

River Valley was recovering and headed in the right direction.

The one in Tennessee needed to raise some capital, which it did -- Franklin, I think, was the name of that shop.

MATERIAL REDACTED

Q. Now, when you say "River Valley," are you referring to one institution or two institutions?

A. I'm referring to one.

Q. Do you recall that there were two institutions that had "River Valley" in their name at that time that were subject to the jurisdiction of the Chicago office?

A. I don't recall that.

Q. Specifically which institution are you referring to when you say "River Valley"?

A. The one in Peoria. That was owned and operated by Homer Holland.

Q. And Howard Ross?

A. And Howard Ross.

MATERIAL REDACTED

MATERIAL REDACTED

Q. Mr. Karr, do you know whether the supervisory agreement on River Valley was still in effect when you joined the office?

A. I believe it was, but I'm not positive.

Q. What is your understanding -- what is

your understanding of your office's policies -- or under what circumstances would your office seek to impose a supervisory agreement upon an institution in the Chicago region?

A. Every case is different -- every case has its own unique issues. You have to look at each case and the issues that are there.

Supervisory agreements are typically put in a case because there are safety and soundness concerns at that institution that need to be corrected, and you want to make sure that the board of directors is obligated and has made an agreement to do so.

MATERIAL REDACTED