**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| HOMER J. HOLLAND,<br>STEVEN BANGERT, co-executor of the<br>ESTATE OF HOWARD R. ROSS,<br>AND FIRST BANK | ) | |
| Plaintiffs, | ) | No. 95-524 C |
| v. | ) | (Judge G. Miller) |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S "MOTION *IN LIMINE* TO PRECLUDE ALL EVIDENCE BASED UPON ANY LOST PROFITS CLAIM"**

Plaintiffs respectfully oppose Defendant's motion to "preclude all evidence based upon any lost profits claim."

Contrary to Defendant's assertions, Plaintiffs seek neither to "reviv[e]" Dr. Holland's previous lost profits calculations, nor to offer any new or undisclosed expert opinion at trial, nor to present any "new damages theories from whole cloth."[1] Instead, as described in the paragraphs of Plaintiffs' Memorandum of Contentions of Fact and Law that Defendant pinpoints as the basis for its motion,[2] Plaintiffs will demonstrate that the recently disclosed lost-profits opinions and analysis of Defendant's putative expert witness Anjan Thakor support plaintiffs' case in at least three important ways. *First*, the Dr. Thakor's analysis demonstrates the reasonableness of Dr. Holland's estimate of the costs River Valley incurred in allocating retained earning to support the portion of its balance sheet that the contracted-for regulatory capital would have supported had the government not breached. *Second*, Dr. Thakor's opinions and formulae

[1] *See* Def.'s Mot. *in limine* at 4-5.

[2] *See id*. at 3 (citing Plaintiffs' Mem. of Contentions at ¶¶ 152-56).

— in combination with readily available facts recited in Dr. Thakor's own report and known to River Valley's managers — establish a reasonable basis for determining the additional profits River Valley would have earned but for the breach. *Third*, Dr. Thakor's analysis — and the lost profits it establishes — provide a basis for a "jury verdict" award of damages.

Plaintiffs are fully entitled to explore the implications of Defendant's expert analysis at trial, and to present arguments based on data and calculations that Defendant's expert has sponsored. Furthermore, as a former owner and director of the River Valley thrifts, Dr. Holland is entitled to testify as a fact witness concerning River Valley's management goals and investment practices, can provide relevant testimony concerning the reasonableness of Dr. Thakor's assessments of River Valley's profitability, and, indeed, is entitled to present a fact-based lost profits claim.[3] As the Seventh Circuit held in the 1979 *Cates* decision, "testimony of the owner of a business . . . as to the amount of damages he suffered by way of lost profits may be used as the basis for an award of consequential damages."[4] Moreover, the Federal Circuit has made clear that an award of "jury verdict" damages, supported by evidence "sufficient to enable

---

[3] *See, e.g., Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1174-76 (3d Cir. 1993) (upholding presentation of lay witness testimony of business owner in lost profits case who "in view of [his] experience in the [] business … was qualified to predict how well [the business] could have been expected to do" but for the breach); *see also Teen-Ed, Inc. v. Kimball Int'l, Inc.*, 620 F.2d 399, 403 (3d Cir. 1980) ("The modern trend favors the admission of [lay] opinion testimony provided that it is well founded on personal knowledge and susceptible to cross-examination."); *Cates v. Morgan Portable Bldg. Corp.*, 591 F.2d 17, 22 (7th Cir. 1979) (reversing trial court's damages award and remanding for consideration of the testimony of a plaintiff-business owner whose "prior knowledge of and experience in the . . . business" was relevant to determining lost-profits); *see also MCI Telecommunications Corp. v. Wanzer*, 897 F.2d 703, 706 (4th Cir. 1990) (material error that required reversal and new trial on the issue of lost profits to exclude the lay witness testimony of an employee of a business who would have presented "calculation[s] based on the records of [the business] kept and prepared by her in her capacity as [its] bookkeeper.")

[4] *Cates*, 591 F.2d at 22 (internal quotation marks and citation omitted).

a court … to make a fair and reasonable approximation" are appropriate in the *Winstar* cases.[5] Here as in *Bluebonnet*, if the Court finds "clear proof of injury" but "no more reliable method for computing damages,"[6] then the Court is permitted to decide upon its own damages award, supported by all the evidence presented at trial. A calculation of River Valley's but-for-the breach profitability based on Defendant's own expert's analysis and Dr. Holland's fact testimony concerning River Valley's management could provide one basis, among others, for such an award.

The relief Defendant seeks — "to preclude plaintiffs from offering any evidence relating to lost profits at trial,"[7] — is so broad and ill-defined that, if granted, would appear to bar Plaintiffs from even questioning Dr. Thakor concerning his assessments that Dr. Holland's retained earnings analysis "require[s] a lost profits model" and that his approach to calculating retained earnings damages "is conceptually similar to a lost-profits model."[8] Plaintiffs are entitled to examine those purported expert opinions of Dr. Thakor, among others, at trial, and to present evidence and arguments based on the "Lost Profits" formula Dr. Thakor sets forth in his expert report.[9] Accordingly, Defendant's motion should be denied.

---

[5] *See* Pl's Mem. of Contentions of Fact and Law, dated Sept. 25, 2007 at 59, ¶ 40; *Bluebonnet Sav. Bank, FSB v. United States*, 466 F.3d 1349, 1359 (Fed. Cir. 2006) (upholding award of jury verdict damages); *see also LaSalle Talman Bank, FSB v. United States*, 317 F.3d 1363, 1374 (Fed. Cir. 2003) (Once the fact of damage is established and "when damages are hard to estimate, the burden of imprecision does not fall on the innocent party."); *First Federal Lincoln Bank v. United States*, 73 Fed. Cl. 633, 649 (2006) (applying jury verdict approach to determine appropriate damages award based on lost franchise value).

[6] *Bluebonnet*, 466 F.3d at 1359.

[7] *See* Def.'s Mot. *in limine* at 1.

[8] *See* DX 1492 (Expert Witness Report of Dr. Anjan V. Thakor) at ¶ 35 & n. 15.

[9] *See id.*, Exhibit 4.

### A. Dr. Thakor's Expert Report Not Only Raises the Issue of Lost Profits But Also Includes a Simple Formula for Computing River Valley's "Lost Profits"

In his expert report submitted on July 28, 2007, Dr. Thakor raises several purported criticisms of Dr. Holland's retained earnings damages analysis. Among these critiques is Dr. Thakor's opinion that Dr. Holland's retained earnings theory is comparable to a lost profits theory. According to Dr. Thakor, Dr. Holland's opinion that River Valley could have leveraged even more "if the contract regulatory capital were available to River Valley *in addition* to the retained earnings," "require[s] [the support of ] a lost profits model."[10] Dr. Thakor further states that Dr. Holland's "computational approach [in assessing retained earnings damages] is conceptually similar to a lost profits model."[11]

In connection with that opinion, Dr. Thakor has sponsored a straightforward algebraic formula that he says would compute River Valley's "Expected After Tax-Return From Leveraging Intangible Capital" — which Dr. Thakor himself calls "Lost Profits."[12] The formula is quite straightforward, and it requires the input of only a few simple facts that are readily available in the record. According to Dr. Thakor, one can compute River Valley's "Lost Profits" by multiplying (1) River Valley's leverage ratio, times (2) the difference between River Valley's expected return on assets and its expected cost of debt (*i.e.*, its expected net interest margin), times (3) one minus River Valley's marginal tax rate, times (4) the amount of forgone "Intangible Capital."[13]

As stated in Plaintiffs' Memorandum of Contentions of Fact and Law, the application of Dr. Thakor's formula to River Valley's historical financial records (cited by Dr. Thakor in his

[10] *Id.* at ¶ 35.

[11] *Id.*

[12] *Id.* at Exhibit 4.

[13] *See id.*; Pl's Mem of Contentions of Fact and Law at ¶ 152.

expert report) shows that River Valley's "Lost Profits" are at least equal to the costs Dr. Holland determined that River Valley incurred in partially mitigating the effects of the breach by allocating retained earnings to perform the function the contracted-for regulatory capital would have performed had the government not, by its breach, eliminated it from River Valley's books.[14] If one assumes that River Valley 'bought back' some of its lost profits by allocating retained earnings to function as a replacement for the breached capital, then Dr. Thakor's formula establishes that such mitigation was reasonable because the cost of the mitigation was less than the amount of recovered profit. Alternatively, if one assumes that River Valley should have had *both* the contracted-for capital *and* the retained earnings, then Dr. Thakor's formula establishes a reasonable estimate of the additional profits River Valley should have earned but because of the breach did not.

Dr. Thakor's report includes all of the data one would need to input into his formula in order to compute River Valley's "Lost Profits." Dr. Thakor's report shows that in the actual post-breach world, River Valley leveraged its capital approximately 18 times (*i.e.*, River Valley's assets totaled about 18 times its capital and, equivalently, the institution's capital was about 5.5% of its assets).[15] Dr. Thakor's Exhibit 7 shows that River Valley's post-breach core capital ratio grew from just over 3% (about a 30x leverage ratio) in 1991 to just under 7% (about a 15x leverage ratio) in 1993 (the last year of the supervisory agreement) before settling at just under 5.5% (about an 18x leverage ratio).[16] Dr. Thakor also includes in his report information from which River Valley's net interest margin can be determined — exhibits showing both (1) River

[14] *See* Pl's Mem of Contentions of Fact and Law at ¶ 154-55.

[15] *Id.* at ¶ 154.

[16] *Id*. (citing DX 1492 at Exh. 7).

Valley's average yield on tangible assets,[17] and (2) River Valley's average cost of funds.[18] Dr. Thakor's report shows that in the actual post-breach world, River Valley generated net interest margins substantially exceeding 2% (200 basis points) — indeed, often exceeding 4% (400 basis points) — annually. Dr. Thakor also supplies an assessment of River Valley's marginal tax rate, which he contends is zero.[19] Dr. Holland, as the owner of the business, is entitled to establish through his testimony that absent the government's breach, River Valley would have been able to maintain the same leverage, margin, and tax status at the larger scale the contract capital would have permitted.

Accordingly, Defendant's own expert Dr. Thakor's data and analyses provide a basis for evaluating River Valley's actual post-breach profitability, and further, provide a framework through which Dr. Holland may present fact testimony that will establish the amount of profits the government's breach caused River Valley to lose.

### B. Plaintiffs Are Entitled to Question Dr. Thakor Concerning His Lost Profits Formula and to Present Fact Witness Testimony Concerning the Subject of that Analysis

Defendant argues in its motion that Plaintiffs are attempting to "revive" their prior lost profits claims. That is not correct. Though Plaintiffs have *always* asserted that the "breach cost River Valley millions in lost profits,"[20] and intend to prove that fact, in part, by demonstrating that the breach caused River Valley to forgo the profitable SAFSB acquisition, Plaintiffs agreed not to present the lost profits models sponsored by Dr. Holland in his 2001 and 2005 Expert Reports, and will not do so at trial.

[17] *Id.* (citing DX 1492 at Exh. 19A).

[18] *Id*. (citing DX 1492 at Exh. 12).

[19] *See* Deposition Testimony of Dr. Anjan V. Thakor at p. 285-86 (attached as Exhibit 1).

[20] *See* Def.'s Mot. *in limine* at 3 (citing Pl's Mem of Contentions at ¶¶ 85-99).

But Defendant has chosen to make River Valley's lost profits a trial issue — contending through its expert that a lost profits analysis is relevant to Dr. Holland's mitigation-cost analysis:

> [I]f in fact, the argument is that there's a cost to River Valley because it lost the ability to have both the retained earnings and the regulatory capital, then the question is: Why was that a cost?
>
> So it was a cost because if I had the additional capital, I could have leveraged more; could have grown more; I could have acquired another bank. … And to me, that's a lost profits argument.
>
> You can't have an argument which says that the loss and the value was because of the lost opportunity to make money, to make profits, because we didn't have the ability to leverage, because we lost the regulatory capital, and not do a lost profits analysis….

Deposition of Dr. Anjan V. Thakor at pp. 168-69 (attached as Exhibit 1).

Plaintiffs are entitled to rebut this opinion, and intend to do so by, among other things, demonstrating that Dr. Holland's retained earnings mitigation analysis is reasonable in its own terms, without any required showing of but-for-the breach growth opportunities. But Defendant has invited — indeed demanded — testimony and evidence concerning River Valley's but for the breach profitability, and Plaintiffs intend to present such testimony and evidence at trial through fact witness and documents.

### C. The Cases Defendant Cites Barring Undisclosed Expert Opinions and Damages Theories Are Irrelevant

As grounds for precluding "all testimony and exhibits" concerning lost profits at trial, Defendant asserts that Plaintiffs are "obligated to present [their] damages theories through expert testimony."[21] No authority supports this proposition and it is simply not correct. Federal Rule of Evidence 701 allows lay witnesses with knowledge to testify as to opinions and inferences which are "rationally based on the perception of a witness" and "helpful to a clear understanding of the witnesses' testimony or the determination of a fact in issue." Following this Rule, the Federal

[21] *See* Def.'s Mot *in limine* at 5.

Courts of Appeals have regularly upheld lost profits awards based on relevant fact witness testimony[22] and have reversed trial courts for excluding the opinions of lay witnesses with the requisite knowledge and experience to provide admissible damages evidence.[23]

For example, in *Lightning Lube*, the Third Circuit upheld a jury verdict award of lost profits based upon the trial testimony of a business owner who "in view of [his] experience in the [] business … was qualified to predict how well [the business] could have been expected to do" but for the breach.[24] Specifically, the Third Circuit approved a lost profits calculation based on the plaintiff-business owner's prediction of future revenue based on his knowledge and record evidence of the past sale and operation of his motor oil service franchises.[25] Likewise in *Cates*, the Seventh Circuit ruled that a motel owner-plaintiff suing for the profits lost when a contractor breached its promise to build an addition to the motel was entitled to provide fact testimony concerning the motel's historical profits and occupancy rates, and that the lower court committed reversible error in refusing to consider this evidence at trial.[26]

Indeed, even where a witness might qualify as an expert on a damages issue, but was not identified or disclosed as an expert prior to trial, that circumstance does not prevent the witness from testifying on the basis of personal knowledge and experience on that same damages issue at trial.[27] In the *Teen Ed* case, the Third Circuit ruled that "the fact that [a fact witness,] Zeitz [,] might have been able to qualify as an expert witness on the use of accepted accounting principles in the calculation of business loans should not have prevented his testifying on the basis of his

---

[22] *See, e.g.*, *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d at 1174-76.

[23] *See Cates*, 591 F.2d at 22; *MCI*, 897 F.2d at 706; *Teen-Ed.*, 620 F.2d at 403.

[24] *Lightning Lube*, 4 F.3d at 1174.

[25] *Id.* at 1174-75.

[26] *Cates*, 591 F.2d at 21-22.

[27] *See Teen Ed*, 620 F.2d at 403-04.

knowledge of [certain business] records about how lost profits could be calculated from the data contained therein," and that the exclusion of his testimony required a new trial on damages.[28]

Here, Plaintiffs will rely on the already disclosed opinions and analyses of Defendant's own expert, Dr. Thakor, and fact witness testimony by Dr. Holland and others to provide evidence of River Valley's but-for the breach profitability. Because Plaintiffs do not need to and will not present any new expert testimony, the "disclosure standards" of Rule 26(a)(2) and *Winstar* Procedural Order No. 2 cited by Defendant are inapplicable and irrelevant.

Furthermore, the cases that Defendant cites barring the trial presentation of claims "not raised in the pretrial order"[29] are inapposite.[30] Plaintiffs have throughout this litigation maintained their right to present evidence of loss that would permit this Court to issue jury verdict damages, and in their pretrial Memorandum of Contention of Fact and Law presented their intention to make such a claim at trial.[31] Furthermore, as Plaintiffs intend to demonstrate River Valley's but for the breach profitability through Defendant's own expert and through the fact testimony of one of River Valley's principals whom Defendant has deposed at length, Defendant cannot claim any prejudice or surprise.

* * *

For the foregoing reasons, Defendant's Motion *in limine* should be denied.

---

[28] *Id.*

[29] *See* Def.'s Mot. *in limine* at 4, 5 n.1 citing (*Smith Int'l, Inc. v. Hughes Tool Co.*, 718 F.2d 1573, 1580 (Fed. Cir. 1983); *Marschand v. Norfolk and W. Railway Co.*, 81 F.3d 714, 716 (7th Cir. 1996); *Phoenix Canada Oil Co. Ltd v. Texaco, Inc.*, 842 F.2d 1466, 1475-76 (3d Cir. 1988); *Mayer v. Gottheiner*, 382 F. Supp. 2d 635, 637 n.1 (D.N.J. 2005)).

[30] Equally irrelevant is the *Hughes* case Defendant cites, in which Defendant admits the Court *did not preclude any trial evidence* but rather barred a plaintiff from making a claim through post-trial briefing that was not raised at trial. *See* Def.'s Mot. *in limine* at 4 (citing *Hughes Communications Galaxy, Inc. v. United States*, 47 Fed. Cl. 236, 238 n.4 (2000)).

[31] *See* Pl's Mem. of Contention of Fact and Law at p. 50, ¶ 40.

Respectfully submitted,

/s/ David B. Bergman
David B. Bergman
ARNOLD & PORTER, LLP
555 Twelfth Street, N.W.
Washington, D.C. 20004-1206
(202) 942-5000 (tel.)
(202) 942-5999 (fax)

Counsel for plaintiffs
Holland and Ross and First Bank.

*Of Counsel*:
Melvin C. Garbow
Howard N. Cayne
Michael A. Johnson
Joshua P. Wilson
ARNOLD & PORTER, LLP
555 Twelfth Street, N.W.
Washington, D.C. 20004-1206

*Co-counsel for First Bank*:
Donald J. Gunn, Jr., Esq.
Sharon R. Wice, Esq.
Gunn and Gunn
First Bank Building
Creve Coeur
11901 Olive Blvd., Suite 312
P.O. Box 419002
St. Louis, Missouri 63141
(314) 432-4550 (tel.)
(314) 432-4489 (fax)

Dated: November 15, 2007

**CERTIFICATE OF SERVICE**

I certify that on this 15th day of November 2007, I caused the foregoing **PLAINTIFFS' OPPOSITION TO DEFENDANT'S "MOTION *IN LIMINE* TO PRECLUDE ALL EVIDENCE BASED UPON ANY LOST PROFITS CLAIM"** to be filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

Dated: November 15, 2007 /s/ Joshua P. Wilson
Joshua P. Wilson