**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| HOMER J. HOLLAND,<br>STEVEN BANGERT, co-executor of the<br>ESTATE OF HOWARD R. ROSS,<br>AND FIRST BANK | ) | |
| Plaintiffs, | ) | No. 95-524 C |
| v. | ) | (Judge G. Miller) |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S "MOTION TO PRECLUDE EXPERT TESTIMONY RELATED TO THREE UNDISCLOSED DAMAGES THEORIES"**

Plaintiffs respectfully submit the following opposition to Defendant's motion to "preclude expert testimony at trial" concerning the quantum of damages associated with River Valley's breach-caused inability to acquire SAFSB.

Contrary to Defendant's assertions, Plaintiffs have complied with all relevant obligations to disclose the basis for their calculations of First Bank's SAFSB damages: no expert testimony is required to prove SAFSB's actual earnings following the breach, and Dr. Holland's expert opinion concerning SAFSB's bargain purchase value was disclosed, as required, in a February 22, 2005 expert report this Court authorized Dr. Holland to issue.[1] Accordingly, Court of Federal Claims Rule 37(c) and any *Winstar* procedural orders relating to the non-disclosure of expert opinions are irrelevant here, and do not bar evidence concerning SAFSB's earnings.

[1] *See* Order of Jan. 14, 2005; PX 604 (Corrected Second Expert Report of Dr. Homer J. Holland at ¶¶ 8 & 9); Def.'s Mot. *in limine* at 2 (acknowledging that Dr. Holland disclosed his expert opinion concerning the bargain purchase value of SAFSB lost to River Valley in his Feb. 22. 2005 expert report).

Furthermore, Plaintiffs presented the three quantifications of First Bank's SAFSB damages that Defendant complains are "new" in Plaintiffs' Motion for Partial Summary Judgment filed on September 21, 2005 -- *more than two years ago*.[2] The government's contention that it is "prejudiced" by having to present a trial defense to these calculations is baseless.

### A. Proof of SAFSB's $45 Million in Actual Earnings Between 1992-2005 Requires No Expert Testimony

Proof of SAFSB's actual earnings between 1992-2005 -- the profits that River Valley but for the breach would have earned during that period -- requires no expert testimony, and Plaintiffs do not intend to present an expert to sponsor evidence of those earnings at trial. Rather, as set forth in Plaintiffs' 2005-2006 summary judgment briefing, and in their Memorandum of Contentions of Fact and Law, SAFSB's earnings are evidenced by contemporaneous federal tax returns filed by Western Capital Holdings, Inc. -- the entity that acquired SAFSB when the breach prevented River Valley from doing so.[3]

Defendant seems to suggest, without any reference to authority, that Plaintiffs must present expert testimony to support all aspects of its damages claims, including its quantification of SAFSB's earnings. That proposition is not correct,[4] and is contradicted by the Federal Circuit's expressed preference for historical evidence of loss, where available, over expert projection of damages.[5] As the Federal Circuit and its predecessor

[2] *See* Pl's Mot. for Partial Summ. Judgment, dated September 21, 2005 at 11-23.

[3] *See id.* at 18-20; Pl's Mem of Contentions of Fact and Law at ¶¶ 119-132.

[4] *See e.g., Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1174-76 (3d Cir. 1993) (fact witness testimony and documentary evidence provide a proper basis for an award of lost profits, and no expert opinion is required to prove damages for breach of contract).

[5] *See, e.g., Glendale Fed. Bank, FSB*, 378 F.3d 1308, 1312 (Fed. Cir. 2004) (emphasizing preference for proof of "real losses sustained").

court have held, the earnings an enterprise actually generated in the hands of a third party is "the best available proof on which to base an estimate of plaintiff's loss" of earnings from that same enterprise.[6]

Because Plaintiffs will not present expert testimony concerning the quantification of SAFSB's earnings between 1992-2005, Plaintiffs had no duty under Rule 26 or otherwise to "disclose expert testimony" on this issue, and Defendant's request for Rule 37 sanctions fails.[7] Moreover, Defendant has had years to prepare its trial defense to First Banks' damages claim based on SAFSB's actual earnings, and its assertion that it is only "now prepar[ing] to defend"[8] against this claim has no merit. In fact, Defendant devoted several pages of its summary judgment motion and reply to argument concerning the use of SAFSB's actual earnings as a measure of River Valley's lost SAFSB opportunity.[9]

### B. Defendant Concedes That SAFSB Earned at Least $35 Million For WCHI by 1995 and Could Have Realized Those Earnings by 1993

Likewise, Plaintiffs do not plan to present an expert to prove up SAFSB's pre-1995 earnings, and have breached no duty to disclose an expert opinion on this issue. That is because Defendant by stipulation *concedes* that SAFSB earned at least $35

[6] *Neely v. United States*, 285 F.2d 438, 443-44 (Ct. Cl. 1961) (emphasis added); *see also Cal. Fed.*, 395 F.3d 1263, 1268 (Fed. Cir. 2005) (citing *Neely*); *La Van v. United States*, 382 F.3d 1340, 1351 (Fed. Cir. 2004) (same).

[7] *See* RCFC 37(c) (predicating relief upon a showing that non-moving party "fail[ed] to disclose information required by RCFC 26(a) or 26(e)(1) or to amend a prior response to discovery as required by RCFC 26(e)(2)").

[8] *See* Def.'s Mot. *in limine* at 2 ("[Defendant] will suffer prejudicial harm if we must now prepare to defend against damages claims that were not disclosed in plaintiffs' expert reports").

[9] *See* Def.'s Cross-Motion for Summ. Judgment dated Dec. 5, 2005 at 67-71; Def.'s Summ. Judgment Reply dated Feb. 24, 2006 at 30-39.

million between 1992 and 1995,[10] and through its own expert admits that at least $35 million in unrealized gains on SAFSB's books were readily available as income in 1993.[11]

In the parties' Joint Stipulations of Fact dated Dec. 31, 2003, Defendant concedes that "cumulative cash dividends paid by SAFSB to WCHI amounted to $1.5 million, $6.5 million, $10.25 million, and $16.75 million for the years ended December 31, 1992, 1993, 1994, and 1995 respectfully."[12] At least this same $35 million in profits would have been generated by the almost identical management group operating SAFSB from within River Valley and those cash dividends paid to River Valley -- not WCHI -- but for the breach. The parties' stipulation -- and not the opinion of an undisclosed expert -- provides one of several bases for this Court to award First Bank at least $35 million as damages for the breach-caused lost opportunity for River Valley to acquire SAFSB.

Similarly, Defendant's Expert Paul A. Griffin testified at his deposition that $35 million in unrealized gains "were sitting on the books of San Antonio [Federal Savings Bank]" at the end of 1993 and agreed that these gains could have been recognized "very simply and easily" at that time.[13] This party admission, which Plaintiffs have designated for admission as substantive trial evidence, provides further support for awarding First Bank at least $35 million in lost SAFSB profits.

---

[10] *See* Joint Stipulation of Facts ("JSF"), dated December 31, 2004, ¶ 366.

[11] Deposition of Defendant's Expert Paul A. Griffin, Feb. 12, 2002 [Docket # 403-2] at Tr. 346:19-347:16, 357:17-358:1.

[12] JSF ¶ 366.

[13] *See* Deposition of Defendant's Expert Paul A. Griffin, Feb. 12, 2002 [Docket # 403-2] at Tr. 357:17-358:1.

### C. Dr. Holland's Opinion Concerning SAFSB's Bargain Purchase Value Was Timely Disclosed in 2005

In January 2005, this Court granted Plaintiffs permission to submit a revised damages opinion by Dr. Holland "that [] accurately reflects the damages of River Valley rather than the damages of Messrs. Holland & Ross."[14] Dr. Holland timely issued that report in February 2005, quantifying River Valley's damages as a result of losing the opportunity to acquire SAFSB.[15] As Defendant acknowledges, Dr. Holland opined that WCHI was able to purchase SAFSB for $29.963 million less than its actual value, and that "but for the breach River Valley would have received the entire economic benefit ($29.963 million) of the purchase of SAFSB."[16] Thus, the government has been on notice of this claim for well over two years, and Plaintiffs have complied with all conceivable obligations to disclose Dr. Holland's expert opinion on this matter. Indeed, as this Court held over a year ago in rejecting Defendant's Motion to Strike Dr. Holland's 2005 Expert Report "it is not clear [] what prejudice the Report has caused (or is causing) defendant" because "[t]he Report was served approximately seven months before the filing of First Bank's motion for partial summary judgment and approximately seventeen months before the [then-scheduled April 2006] trial date."[17] There remains no basis under Rule 37 or otherwise for excluding Dr. Holland's testimony concerning SAFSB's bargain purchase value.

---

[14] Order of Jan. 14, 2005.

[15] PX 604 (Corrected Second Supplemental Expert Report of Dr. Homer J. Holland at 4-5).

[16] *Id.* at 5; Def.'s Mot. *in limine* at 3.

[17] Order of March 1, 2006 at 2.

Defendant complains that in his 2005 expert report, Dr. Holland sets off his SAFSB damages calculation by an amount of tax and interest expense that River Valley may have incurred in the but for world in connection with earning SAFSB's profits, and worries that Dr. Holland may not apply these offsets in his trial testimony concerning damages.[18] But Defendant questioned Dr. Holland concerning these calculations at length during a three day deposition, and is free to confront him with his deposition testimony at trial in a manner consistent with the Federal Rules of Evidence. In any event, it is not possible for Dr. Holland to testify concerning any tax or interest expense offset to First Bank's SAFSB damages without first providing his long-disclosed opinion that "but for the breach River Valley would have received the entire economic benefit ($29.963 million) of the purchase of SAFSB."[19] As discussed, there is no basis for excluding that testimony from trial. Accordingly, Defendant's motion *in limine* should be denied.

[18] *See* Def.'s Mot. *in limine* at 3-4.

[19] PX 604 (Dr. Holland's Corrected Second Supplemental Expert Report) at 5.

Respectfully submitted,

/s/ David B. Bergman
David B. Bergman
ARNOLD & PORTER, LLP
555 Twelfth Street, N.W.
Washington, D.C. 20004-1206
(202) 942-5000 (tel.)
(202) 942-5999 (fax)

Counsel for plaintiffs
Holland and Ross and First Bank.

*Of Counsel*:
Melvin C. Garbow
Howard N. Cayne
Michael A. Johnson
Joshua P. Wilson
ARNOLD & PORTER, LLP
555 Twelfth Street, N.W.
Washington, D.C. 20004-1206

*Co-counsel for First Bank*:
Donald J. Gunn, Jr., Esq.
Sharon R. Wice, Esq.
Gunn and Gunn
First Bank Building
Creve Coeur
11901 Olive Blvd., Suite 312
P.O. Box 419002
St. Louis, Missouri 63141
(314) 432-4550 (tel.)
(314) 432-4489 (fax)

Dated: November 15, 2007

**CERTIFICATE OF SERVICE**

I certify that on this 15th day of November 2007, I caused the foregoing **PLAINTIFFS' OPPOSITION TO DEFENDANT'S "MOTION TO PRECLUDE EXPERT TESTIMONY RELATED TO THREE UNDISCLOSED DAMAGES THEORIES"** to be filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

Dated: November 15, 2007 /s/ Joshua P. Wilson
Joshua P. Wilson