# EXHIBIT 4

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

\- - - - - - - - - - - - - - - X

HOMER J. HOLLAND AND HOWARD :
R. ROSS, :
Plaintiffs, :
v. : Case No. 95-524C
THE UNITED STATES, :
Defendant. :

\- - - - - - - - - - - - - - - X

ORIGINAL

Washington, D.C.

Monday, October 22, 2001

Videotaped deposition of S. LYNN STOKES, a witness herein, called for examination by counsel for Defendant in the above-entitled matter, pursuant to notice, the witness being duly sworn by SUSAN L. CIMINELLI, a Notary Public in and for the State of Virginia, taken at the offices of Arnold & Porter, 555 Twelfth Street, 9th Floor, Washington, D.C., at 8:59 a.m., Monday, October 22, 2001, and the proceedings being taken down by Stenotype by SUSAN L. CIMINELLI, RPR, CRR, and transcribed under her direction.

MATERIAL
REDACTED

Q. In the but-for world, would Holland and Ross have still financed the acquisition through American National Bank?

A. Well, in the but-for world, I think that River Valley, if my memory of the numbers serves me, I don't remember if I studied that particular in any great depth. My memory of the numbers was that River Valley would have had enough capital to make the acquisition without additional borrowings from American National.

MATERIAL
REDACTED

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

HOLLAND AND ROSS, )
Plaintiffs, )
- versus - ) No. 95-524C
) Senior Judge Smith
THE UNITED STATES, )
Defendant. )

ORIGINAL

October 23, 2001
Washington, D.C.

CONTINUED VIDEOTAPED DEPOSITION OF:

S. LYNN STOKES,

a witness in the above-entitled cause, called for examination by counsel for the Defendant, pursuant to notice and agreement of counsel as to time and place, held at 555 Twelfth Street, N.W., Washington, D.C., 20004-1206, commencing at 9:12 a.m., before Maria Pugliese, a Notary Public in and for the District of Columbia, when were present on behalf of the respective parties:

MATERIAL
REDACTED

I guess the only observation I would make is that since most of the built-in losses arose out of the STARS transactions, the transaction cost of realizing those losses would be relatively small.

MATERIAL
REDACTED

MATERIAL
REDACTED

Q Yesterday we discussed the possibility of, in the real world after the initial acquisition of San Antonio, merging it into River Valley.

Do you remember that discussion?

A Yes.

MATERIAL
REDACTED

Q Do you have any opinion as to whether or not that would have provided an impediment to River Valley acquiring San Antonio?
A I think I covered the waterfront on that in my report and said that, in my view, if they had had enough capital that there would have been no regulatory impediment to the acquisition.

Q So it's a function of capital?
A That's correct. And that's driven in large part by the fact that the regulators -- the regulators generally have two questions when it comes to are we gonna let you do a deal or not. And one is do we have enough money -- or do you have enough money, do you have enough capital; and the second one is, do we think you're -- you will provide quality management and have a reasonable business plan and not come back to be -- not come back to haunt us in the form of being a supervisory headache for us down the road.

And I think the fact that they allowed Holland and Ross to make the acquisition in the breach world answers that leg of the equation. And, so, the sole remaining issue, at this point in time, would have been a question of capital adequacy.

MATERIAL
REDACTED