**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| HOMER J. HOLLAND,<br>STEVEN BANGERT, co-executor of the<br>ESTATE OF HOWARD R. ROSS, and<br>FIRST BANK,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | No. 95-524<br>(Judge George W. Miller) |

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION *IN LIMINE* TO PRECLUDE ALL EVIDENCE BASED UPON ANY LOST-PROFITS CLAIM**

Defendant, the United States, respectfully submits its reply in support of its motion in limine to preclude all evidence based upon any lost-profits claim by plaintiffs.

Plaintiffs' opposition ("Pl. Opp.") fails to explain why the Court should permit them to contravene their repeated representations to this Court that they would not pursue a claim for lost profits in exchange for being permitted to file a retained earnings claim. Even if they had not made such representations, the Court should exclude the new claim because it amounts to an expert claim made through plaintiffs' counsel, presumably for tens of millions of dollars, that has not been properly disclosed prior to trial. Furthermore, as we discuss below, from what little explanation plaintiffs have given of their new theory, it is not supported by Dr. Thakor's report or any relevant evidence.

Plaintiffs do not identify any expert testimony they would introduce in support of such a claim, what calculations they would use, what evidence would support the claim, or even which

witnesses would testify in support of it, other than vague references to the use of Dr. Thakor's report and supposed "fact testimony" from "Dr. Holland and others." Pl. Opp. at 9. Plaintiffs also misrepresent Dr. Thakor's report as including "recently disclosed lost-profits opinions and analysis," Pl. Opp. at 3, while ignoring Dr. Thakor's statements in his report that Dr. Holland's retained earnings theory is akin to a fatally flawed lost-profits theory because it does not identify investment opportunities or account for increased risk to River Valley from any additional but-for assets. DX 1492 at 20 ¶ 35. Plaintiffs also claim, even more implausibly, that they can present any lost-profits evidence they wish through Dr. Holland, without prior disclosure, as supposed "fact testimony" because he was a shareholder of River Valley. The Court should reject this effort to introduce a new claim on the eve of trial without prior disclosure, and in contravention of plaintiffs' prior representations to the Court.

## ARGUMENT

### A. Plaintiffs Directly Contradict Their Prior Representations To The Court

Plaintiffs claim that their newly announced intention to present a lost-profits theory does not contradict their repeated representations to the Court that they would forego their earlier lost-profits claim in exchange for being permitted to file their retained earnings theory out of time. Instead of foreclosing any lost-profits claim, plaintiffs now claim that these representations only were "not to present the lost profits models sponsored by Dr. Holland in his 2001 and 2005 Expert Reports, and [that they] will not do so at trial." Pl. Opp. at 6. Plaintiffs' prior representations show, however, that plaintiffs unequivocally abandoned any lost-profits claim, not just one based upon Dr. Holland's prior expert reports. See Pl. Mot. to Revise and Supp. Their Damages Claims (Mar. 20, 2007) ("If the court grants this motion, and in order to

streamline trial preparation and proceedings, Plaintiffs also intend to forego their claim for the lost profits that River Valley would have earned by leveraging the breached regulatory capital to add incremental income-earning assets (other than San Antonio Federal Savings Bank) in the years following the breach."); Pl. Reply in Support of Mot. to Revise and Supp. their Damages Claims (Mar. 27, 2007) at 7-8; see also Transcript of Mar. 12, 2007 telephonic status conference at 17-18 ("But we would intend not to present the lost profits based on incremental growth from interest-earning assets."), 39 (Bergman).

Moreover, what little description plaintiffs gave of their new lost-profits claim in their response, i.e., an analysis of the "leverage, margin and tax status at the larger scale the contract capital would have permitted," Pl. Opp. at 6, is exactly the same topic that Dr. Holland's prior expert reports addressed. Plaintiffs' new lost-profits theory has even less detail than Dr. Holland's previous lost-profits theory because it does not identify the but-for investment opportunities that Dr. Holland attempted to address in his prior expert reports. Plaintiffs' new lost-profits theory, thus, not only seeks the same type of recovery as Dr. Holland's previous lost-profits models, but also uses the same analytical framework. Plaintiffs can not escape their prior unambiguous representations. The Court should therefore hold plaintiffs to their earlier representations and exclude any evidence related to this new lost-profits theory.

## B. Plaintiffs Misrepresent Dr. Thakor's Analysis

Dr. Thakor was retained in this case to provide a response to Dr. Holland's retained earnings claim, which plaintiffs submitted only after abandoning their lost-profits theory. Nevertheless, plaintiffs claim that Dr. Thakor's identification of analytical flaws in Dr. Holland's retained earnings claim constituted a "lost-profits opinions and analysis." Pl. Opp. at 1.

Dr. Thakor's report does not do so. For plaintiffs to claim that their new lost-profits theory is simply a response to Dr. Thakor's analysis of Dr. Holland's lost-profits claim is flatly contradicted by the fact that Dr. Thakor was responding to the retained earnings claim, not any lost-profits claim. Furthermore, in support of this claim, plaintiffs misrepresent the nature of Dr. Thakor's criticisms of Dr. Holland's retained earnings theory.

Plaintiffs first claim that "Dr. Thakor's analysis demonstrates the reasonableness of Dr. Holland's estimate of the cost River Valley incurred in allocating retained earning[s] to support the portion of its balance sheet that the contracted-for regulatory capital would have supported had the government not breached." Pl. Opp. at 1. Plaintiffs admit, however, that Dr. Thakor stated that for Dr. Holland to claim damages from retaining earnings, Dr. Holland would have had to demonstrate leveraging "<u>in addition to</u> the retained earnings." Pl. Opp. at 4 (emphasis added). The concept of retaining earnings in a bank with the same size is thus conceptually incompatible with a but-for-analysis requiring a larger bank.

Plaintiffs attempt to circumvent this flaw in their claim by misrepresenting Dr. Thakor's report as including a "lost-profits analysis." Pl. Opp. at 1. Plaintiffs do not point to any damages figure from Dr. Thakor's analysis, and still do not supply their own. Instead, plaintiffs claim that they will present an analysis at trial based upon an "algebraic formula" in Exhibit 4 to Dr. Thakor's report, and will somehow input what they describe (without any support) as "a few simple facts" from Exhibit 4 and Exhibit 7 of Dr. Thakor's report to reach this figure. Pl. Opp. at 4. Such a purported analysis suffers from several debilitating flaws, even ignoring plaintiffs' previous representations to the Court that they would abandon such a lost-profits analysis.

First, the underlying figures that plaintiffs cite – i.e., River Valley's leverage ratio, net interest margin, marginal tax rate, amount of intangible capital, and core capital levels – all come from River Valley's own data. Plaintiffs have no basis to claim, as they do, that they should be able to present an analysis without any expert report because Dr. Thakor's report was "recently disclosed," Pl .Opp. at 1, when the data they seek to use comes from their own records. The Court should reject such an attempted circumvention of the Court's rules requiring written disclosure of expert opinions prior to trial. See RCFC 26(a)(2); Winstar Procedural Order No. 2; Discovery Plan (Aug. 11, 1997), Section V; RCFC Appendix A, ¶ 14.

Furthermore, the Court should reject plaintiffs' claim that Dr. Thakor "sponsored" a lost-profits calculation. Pl. Opp. at 4. Dr. Thakor explicitly stated in his report that Dr. Holland's retained earnings theory could not be used to support a lost-profits analysis. DX 1492 at 20 ¶ 35. Specifically, Dr. Holland's retained earnings theory failed to identify the specific investment opportunities River Valley would have pursued, and did not account for additional risk to River Valley from a larger balance sheet. Id. The "straightforward algebraic formula" plaintiffs claim they will use at trial, Pl. Opp. at 4, makes no account for either of these criticisms by Dr. Thakor. If Dr. Thakor were addressing a lost-profits model that had actually been presented by plaintiffs, Dr. Thakor may have further criticisms. Nevertheless, even without further analysis, plaintiffs have not accounted for these two analytical flaws.

Dr. Thakor also explained – in a critical part of his report that plaintiffs ignore – that the retained earnings theory Dr. Holland put forth was inconsistent as a theoretical matter with a lost-profits analysis. Dr. Thakor explained that the retained earnings theory assumes that River Valley would not have retained the earnings absent the breach, but a lost-profits theory assumes

that River Valley would have retained the same earnings and used them to leverage the but-for bank. DX 1492 at 20 ¶ 35. Dr. Thakor's explanation of the difference between retained earnings and lost-profits claims in no way supports a lost-profits claim, but merely explains the difference between the two. Dr. Thakor's explanation of this difference, along with the factors that Dr. Holland did not address that would be required for any such lost-profits claim, does not entitle plaintiffs to fashion a new lost-profits claim at trial. The fact that Dr. Thakor pointed out flaws in Dr. Holland's retained earnings theory does not excuse plaintiffs from disclosing their damages claims prior to trial, much less their prior representations that they would bring no lost-profits claim at trial.

Plaintiffs also claim that, "[i]f one assumes that River Valley 'bought back' some of its lost profits by allocating retained earnings to function as a replacement for the breached capital, then Dr. Thakor's formula establishes that such mitigation was reasonable because the cost of mitigation was less than the amount of recovered profit." Pl. Opp. at 5. This claim departs even farther from their previous claims than their pretrial brief. Plaintiffs point to no analysis, by any witness, of what they mean by saying that the earnings "bought back" lost profits, or how such an analysis would be performed. Plaintiffs also point to no testimony, expert or otherwise, to support the "assumption" that earnings somehow "bought back" lost profits. If plaintiffs wished to make such a claim, the time to do so was when they submitted Dr. Holland's retained earnings report, not in a response to our motion in limine on the eve of trial.

Plaintiffs also cite Dr. Thakor's deposition testimony, in which Dr. Thakor explained that Dr. Holland's retained earnings theory is flawed because Dr. Holland did not explain why the retained earnings prevented River Valley from earning additional profits. Pl. Opp. at 6-7; Thakor

Dep. at 168-69. The fact that Dr. Thakor identified this analytical flaw in Dr. Holland's retained earnings theory, however, does not entitle plaintiffs to create a new lost-profits analysis at trial.

Lastly, we note that Dr. Thakor's criticism that Dr. Holland's "computational approach is conceptually similar to a lost profits model" is separate and distinct from Dr. Thakor's other criticisms of Dr. Holland's model. DX 1492 at 20 ¶ 35, Exh. 4. We believe that Dr. Thakor's other criticisms, such as the fact that River Valley's shareholders received their capital appreciation upon River Valley's sale to First Bank, are amply sufficient in their own right to demonstrate the flaws in Dr. Holland's reasoning, as this Court and the Federal Circuit have recognized in a case advancing a similar retained earnings theory. See Bank of Am., FSB v. United States, 67 Fed. Cl. 577 (2005), aff'd sub nom., Bank of Am., FSB v. Doumani, 495 F.3d 1366, 1373 (Fed. Cir. 2007). Thus, should the Court conclude that Dr. Thakor's criticisms in Paragraph 35 and Exhibit 4 to his report concerning Dr. Holland's computational approach entitle plaintiffs to respond with their new lost-profits claim, we would voluntarily choose not to present these criticisms rather than engaging in this new lost-profits claim.

### C. Plaintiffs' Projected "Fact Witness Testimony" Is An Improper Circumvention Of The Court's Rules

In addition to questioning Dr. Thakor, plaintiffs also announce that they will present what they describe as "fact witness testimony" from "Dr. Holland and others" in support of their new lost-profits claim. Pl. Opp. at 8-9. Plaintiffs claim that Dr. Holland, because he was a shareholder of River Valley, is entitled to present "lay opinion testimony" pursuant to Federal Rule of Evidence 701, and thus the "'disclosure standards' of Rule 26(a)(2) and Winstar Procedural Order No. 2 cited by Defendant are inapplicable and irrelevant." Pl. Opp. at 9.

Contrary to plaintiffs' claims, the fact that Dr. Holland was a shareholder of River Valley does not make the disclosure standards of this Court "inapplicable and irrelevant." Plaintiffs claim to base their new lost-profits claim upon Dr. Thakor's expert report, and acknowledge that it would require the Court to "assume" actions by River Valley and apply formulas that they derive from Dr. Thakor's report to determine River Valley's but-for profitability. All of these actions are squarely within the province of expert testimony. The Court should therefore reject plaintiffs' attempt to disregard the Court's disclosure standards on the eve of trial, using an undisclosed damages model and resulting in an undisclosed damages figure.

Dr. Holland has submitted three expert reports in this case already – two following the close of the expert discovery period. If, as plaintiffs now claim, Dr. Holland could have presented this testimony as a lay opinion witness, then Dr. Holland would not have needed to submit any of these reports. Instead, plaintiffs have treated Dr. Holland as an expert, and have submitted his opinions as they would with any other expert. Having a plaintiff-expert submit opinions from the witness stand with no prior disclosure – as plaintiffs now argue they should be permitted to do – flies in the face of this Court's rules and the Winstar procedural orders, all of which are designed to prevent the trial by ambush that plaintiffs now seek to advance. See RCFC 26(a)(2); Winstar Procedural Order No. 2; Discovery Plan (Aug. 11, 1997), Section V; RCFC Appendix A, ¶ 14 (requiring "sufficient detail to enable the court to resolve the case in its entirety by addressing each of the issues listed"); see also 8 Wright and Miller, Fed. Prac. and Proc. Civ.2d § 2031.1 ("Courts have had to be alert to efforts to smuggle expert testimony into the case without complying with these requirements by characterizing it as lay testimony.").

Plaintiffs' new lost-profits theory provides neither the disclosure nor "sufficient detail" to explain what they will present at trial.

Plaintiffs' claim that we "cannot claim any prejudice or surprise" because we have previously deposed Dr. Holland regarding his prior expert reports, Pl. Opp. at 9, is also unfounded. Plaintiffs claim that their new lost-profits theory is not based upon Dr. Holland's prior expert reports, and, furthermore, state that they "agreed not to present the lost profits models sponsored by Dr. Holland in his 2001 and 2005 Expert Reports, and will not do so at trial." Pl. Opp. at 6. If, as plaintiffs claim, Dr. Holland's new lost-profits testimony is unrelated to his prior reports, then his prior deposition testimony is not relevant to the new claim.

Further, plaintiffs claim this new testimony from Dr. Holland should be permitted as "lay opinion testimony" pursuant to Federal Rule of Evidence 701. Pl. Opp. at 7-8. We do not question whether, in principle, a business owner could testify at trial as to the value of his business, but this is not the case here. Plaintiffs state that Dr. Holland will "establish" that "River Valley would have been able to maintain the same leverage, margin and tax status" as plaintiffs derive from Dr. Thakor's report and deposition. Pl. Opp. at 6. These analyses are not based upon Dr. Holland's factual experience, but rather an analysis of Dr. Thakor's expert report. Plaintiffs also contradict Dr. Holland's prior factual representations by suggesting that Dr. Holland will testify that River Valley's marginal tax rate after the breach was zero, even though he stated in his expert report that it would be 35 percent. Pl. Opp at 6; DX 1492 at 32 ¶ 58.

None of the cases plaintiffs cite involve a plaintiff-business owner constructing a damages model based upon another expert witness's report. Furthermore, such a procedure is inherently prejudicial in that plaintiffs now claim the fact that Dr. Holland was a shareholder in

River Valley entitles them to have him construct a lost-profits model without any prior disclosure. Worse still, such evidence is based upon Dr. Thakor's report, who was responding to Dr. Holland's report regarding a different claim.

**D. Plaintiffs' New Lost-Profits Claim Is Not Appropriate For A "Jury Verdict"**

Plaintiffs also state that their new lost-profits evidence, whatever it is, provides a basis for a "jury verdict" award of damages. Pl. Opp. at 2. This ignores, however, the fact that plaintiffs specifically disavowed their lost-profits theory in exchange for being able to submit their retained earnings theory. Plaintiffs' new lost-profits theory is not a set of facts the Court might conceivably consider in creating a "jury verdict," but rather a new model in its own right. Whether or not any of the underlying data concerning River Valley's operations is relevant, plaintiffs' use of that data to create a lost-profits theory is not relevant.

Moreover, plaintiffs' argument explains too much. If plaintiffs could avoid the effect of their disavowal because of the possibility of "jury verdict" awards, then their earlier representations to this Court that they would abandon a lost-profits claim in exchange for the right to bring an out-of-time retained earnings theory were illusory. Under plaintiffs' reasoning, no evidence could be excused from trial, regardless of whether a party had promised not to introduce it, because it could conceivably support a "jury verdict." The rules of this Court do not permit such a result. Plaintiffs' new lost-profits claim thus is not properly before this Court, and therefore not appropriate for consideration for any "jury verdict" claim.

**CONCLUSION**

For these reasons, we respectfully request that the Court grant our motion in limine and exclude all evidence by plaintiffs relating to any lost-profits claim.

Respectfully submitted,

MICHAEL F. HERTZ
Deputy Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/ Kenneth M. Dintzer
KENNETH M. DINTZER
Assistant Director

/s/ John H. Roberson
JOHN H. ROBERSON
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor, 1100 L Street
Washington, D.C. 20530
Tele: (202) 353-7972
Fax: (202) 514-8640
Attorneys for Defendant

Of Counsel:
SCOTT D. AUSTIN
Senior Trial Counsel
ELIZABETH A. HOLT
WILLIAM G. KANELLIS
BRIAN A. MIZOGUCHI
AMANDA L. TANTUM
JOHN J. TODOR
Trial Attorneys
Department of Justice
November 21, 2007

**CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of November, 2007, a copy of the foregoing document was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ John H. Roberson
John H. Roberson