**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**No. 95-524C**
**(Judge George W. Miller)**

---

**HOMER J. HOLLAND, STEVEN BANGERT, Co-Executor of the Estate of HOWARD R. ROSS, and FIRST BANK,**

**Plaintiffs,**

**v.**

**THE UNITED STATES,**

**Defendant.**

---

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION *IN LIMINE* TO EXCLUDE EXPERT TESTIMONY RELATED TO THREE UNDISCLOSED DAMAGES THEORIES**

---

**MICHAEL HERTZ**
**Deputy Assistant Attorney General**

**JEANNE E. DAVIDSON**
**Director**

**KENNETH M. DINTZER**
**Assistant Director**

**JOHN H. ROBERSON**
**Trial Attorney**
**Commercial Litigation Branch**
**Civil Division**
**Department of Justice**
**Attn: Classification Unit**
**8th Floor, 1100 L Street**
**Washington, D.C. 20530**
**Tele: (202) 353-7972**
**Fax: (202) 514-8640**

**OF COUNSEL:**

**SCOTT D. AUSTIN**
**ELIZABETH A. HOLT**
**WILLIAM G. KANELLIS**
**BRIAN A. MIZOGUCHI**
**AMANDA L. TANTUM**
**JOHN J. TODOR**
**SAMEER YERAWADEKAR**

**November 21, 2007**

**Attorneys for Defendant**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

ARGUMENT

I. Plaintiffs' Set Forth No Legitimate Basis For Opposing Our Motion And Offer No Justification For Their Failure To Disclose Expert Testimony . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. Plaintiffs' $45 Million SAFSB Claim Requires Expert Opinion Concerning A Wide Array Of Assumptions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

III. Plaintiffs' Arguments Concerning The $35 Million SAFSB-Related Claim Underscores That Plaintiffs Rely Upon Undisclosed Expert Opinion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

IV. Plaintiffs Have Not Disclosed Any Expert Testimony Concerning The Bases For A $1.3 Million Reduction To Dr. Holland's Previous Opinion Concerning The Quantum Of River Valley's Alleged SAFSB-Related Damages. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

Banks v. United States,
75 Fed. Cl. 294 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

MicroStrategy Inc. v. Bus. Objects, S.A.,
429 F.3d 1344 (Fed. Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

Southern States Rack and Fixture, Inc. v. Sherwin Williams Co.,
318 F.3d 592 (4th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6, 7, 16

Tritek Tech., Inc. v. United States,
63 Fed. Cl. 740 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

Zoltek Corp. v. United States,
71 Fed. Cl. 160 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

## FEDERAL RULES AND REGULATIONS

RCFC 26(a)(2)(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **HOMER J. HOLLAND,**<br>**STEVEN BANGERT, Co-Executor of the Estate of HOWARD R. ROSS, and FIRST BANK,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**THE UNITED STATES,**<br><br>**Defendant.** | ) | **Case No. 95-524C**<br><br>**(Judge George W. Miller)**<br><br>**(Winstar-Related Case)** |

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION *IN LIMINE* TO EXCLUDE EXPERT TESTIMONY RELATED TO THREE UNDISCLOSED DAMAGES THEORIES**

Defendant, the United States, respectfully submits its reply in support of its motion in limine to exclude expert testimony concerning three undisclosed damage claims related to plaintiffs' assertion that, but for the purported breach, River Valley III would have acquired San Antonio Federal Savings Bank ("SAFSB").

Plaintiffs oppose our motion by claiming that they intend to offer no expert testimony to support the three additional SAFSB-related lost profits claims. If that is truly the case, then plaintiffs have no basis to oppose our motion and our motion should be granted. Expert testimony is, however, required to support the three new SAFSB claims, and it for this reason that plaintiffs, setting aside the conceit that these new damage claims can be presented by the mere introduction of certain "factual evidence" and argument of counsel, oppose our motion.

As we detail below, plaintiffs' additional SAFSB theories are based upon a host of assumptions, premises, and calculations that can only be presented through expert opinion, many of which directly contradict prior expert testimony issued by plaintiffs' experts. These expert

opinions have not been disclosed, as plaintiffs have made a deliberate tactical choice to not disclose the full bases for these new damage theories. Furthermore, plaintiffs ignore their burden to prove that their undisclosed expert testimony is justified and harmless. As we demonstrate, it is neither. Moreover, to bolster their claim that no expert testimony is needed, plaintiffs cite certain facts that supposedly support their new claims. For example, plaintiffs claim that proof of the $45 million damage claim can be obtained by merely adding the profits set forth in SAFSB's corporate parent's tax returns. But those tax returns also include income not derived from SAFSB, a fact that plaintiffs ignore. Moreover, plaintiffs cite a joint stipulation of fact as factual support for their $35 million damage claim. As we demonstrate below, however, plaintiffs have misread the stipulation of fact while clearly ignoring the underlying factual documents that flatly contradict their reading of the stipulation. Indeed, these "facts" cited by plaintiff only underscore that "fact evidence" does not support these claims and that expert opinion will be required to explain the bases for these new claims. Because plaintiffs have not disclosed the underlying expert assumptions and opinions supporting their three additional SAFSB-related damage claims, and have ignored our objections to such unsupported claims, this Court should preclude plaintiffs from now offering expert testimony concerning these theories at trial.

## ARGUMENT

### I. Plaintiffs' Set Forth No Legitimate Basis For Opposing Our Motion And Offer No Justification For Their Failure To Disclose Expert Testimony

On September 21, 2005, plaintiffs filed a summary judgment motion with respect to damages. In that motion, for the first time in this litigation and well after the close of expert discovery, plaintiffs set forth three additional SAFSB-related damage claims. Pl. Mot. For

Partial Summ. J. (Sept. 21, 2005) at 11-23. In our response to that motion, we noted that these claims were improperly asserted by argument of counsel alone and we set forth three expert declarations detailing a number of foundational problems with plaintiffs' theories (which we further detail below). See Def. Resp. to Pl. Mot. for Summ. J. (Dec. 5, 2005) at 77-78 and Ex. 8 Decl. of Andrew S. Carron (Dec. 5, 2005) (annexed hereto as Ex. A), Ex. 9 Decl. of W. Barefoot Bankhead (Dec. 5. 2005) (annexed hereto as Ex. B), and Ex. 20 Decl. of Dr. Paul A. Griffin (Dec. 5, 2005) (annexed hereto as Ex. C). Following our response, plaintiffs did not issue any expert opinion addressing the many assumptions necessarily required to set forth such damage claims. Nor have plaintiffs issued any expert opinion or declaration prior to trial to explain these additional theories of damages, even though, earlier this year they were given a third opportunity to set forth revised expert damage opinions. Instead, with respect to these additional SAFSB claims, plaintiffs chose to ignore their obligations to properly disclose expert testimony.

Plaintiffs now oppose our motion to preclude any expert testimony concerning the three additional SAFSB-related damage claims, claiming that, to present these new damage claims at trial, no expert testimony is required. Pl. Op. at 2. If true, then plaintiffs would not, of course, have any reason or basis to oppose our motion to preclude expert testimony. Expert testimony is, however, required. For example, when parsed, plaintiffs' argument is not that their $45 million SAFSB claim does not require any expert testimony, but merely that no expert testimony is required "concerning the quantification of SAFSB's earnings between 1992-2005." Pl. Op. at 3 (emphasis added). As we will discuss below, that premise is incorrect. Setting that quantification issue aside, however, there can be no doubt that the notion of SAFSB-related damages continuing until 2005 is necessarily contingent upon a wide array of expert opinion

concerning how, in a non-breach world, SAFSB would have been owned and operated. Similarly, plaintiffs' base their $35 million SAFSB claim upon a host of assumptions that can only be articulated through expert opinion.

The fact that plaintiffs' improperly asserted these additional SAFSB-related damage theories by argument of counsel alone two years ago does not change the fact that these damage claims require expert opinion that must be disclosed in a written opinion prior to trial. The flaw in plaintiffs' argument is that they equate attorney argument with expert disclosure. They are not the same. Indeed, if they were, there would be no requirement for pretrial expert disclosure; damage theories could simply be briefed in argument prior to trial. For good reason, this is not the rule. See Winstar Procedural Order No. 2: Discovery Plan at § V(A)(4 (Aug. 7, 1997, Ct. Fed. Cl.); RCFC 26(a)(2)(B).

Plaintiffs, however, deliberately chose not to provide expert testimony in support of the additional SAFSB-related claims, thus avoiding the proper disclosure and ventilation of their expert theories and assumptions prior to trial through pre-trial expert reports and deposition. Plaintiffs' cannot now be rewarded for gamesmanship whereby they intentionally disregard expert disclosure requirements, present expert theories by argument of counsel, and then oppose our motion to preclude expert testimony, all with the apparent intent of waiting until trial to disclose the full bases for their new damage theories. Such a tack is fundamentally unfair and in violation of the required pre-trial disclosures of this Court, and all other Federal Courts. See, e.g., MicroStrategy Inc. v. Bus. Objects, S.A., 429 F.3d 1344 (Fed. Cir. 2005) (affirming the exclusion of plaintiffs' additional damage theories for failure to identify the factual basis and methodology prior to trial); Southern States Rack and Fixture, Inc. v. Sherwin Williams Co., 318

F.3d 592, 593, 599 (4th Cir. 2003) (affirming exclusion of expert testimony concerning a new expert opinion prior to trial).

Contrary to plaintiffs' suggestion, Dr. Holland's previous expert reports concerning SAFSB-related damages did not disclose the bases for the new damage claims in the amount of $45 million (for damages calculated between 1992 and 2004), or $35 million (for damages as of December 31, 1993). These claims are nowhere to be found in Dr. Holland's previous reports. See Ex. D Corrected Expert Report and Decl. of Dr. Homer J. Holland (July 27, 2001) at 58-62; Ex. E Second Supplemental Expert Report and Decl. of Dr. Homer J. Holland (Feb. 22, 2005) at 4-5. Nor, of course, did his prior report issued in February 2005, which deducted $1.3 million for avoided alternative minimum tax ("AMT") and interest expenses, explain why those offsets should now not be deducted. See Ex. E Second Supplemental Expert Report and Decl. of Dr. Homer J. Holland (Feb. 22, 2005) at 4-5.

Moreover, given our challenge to plaintiffs' attempt to introduce expert opinion at trial concerning theories of damages which have not been disclosed through any expert report or opinion, plaintiffs have not met their burden of demonstrating that the introduction of previously undisclosed testimony was justified or harmless. See Zoltek Corp. v. United States, 71 Fed. Cl. 160, 167-68 (2006) ("The burden is on the violating party to prove that the violation was justified or harmless"); Tritek Tech., Inc. v. United States, 63 Fed. Cl. 740, 750 (2006) ("The burden is on the party facing sanctions to prove that the violation was justified or harmless"). Indeed, in their opposition to our motion in limine, plaintiffs offer no analysis of the factors concerning substantial justification or harmlessness as set forth by the Court of Appeals for the Federal Circuit in MicroStrategy, 429 F.3d at 1357, or the Court of Appeals for the Fourth Circuit in

Southern States, 318 F.3d at 599. See Def. Mot. (Nov. 2, 2007) at 5-7 (discussing the factors the court considers to determine whether a failure to disclose was justified or harmless). This Court, however, following MicroStrategy and Southern States, has noted a number of factors that should be considered in deciding whether a party's non-disclosure of expert testimony, or other required evidentiary disclosures, are justified or harmless. See Banks v. United States, 75 Fed. Cl. 294, 298 (2007); Zoltek, 71 Fed. Cl. at 167-68; Tritek, 63 Fed. Cl. at 750. Although this Court has noted variations of the factors to consider, the factors include "1) the importance of the information withheld; (2) the prejudice or surprise to the party against whom the evidence is offered; (3) the likelihood of disruption of the trial; (4) the possibility of curing the prejudice; (5) the explanation for the failure to disclose; and (6) the presence of bad faith or willfulness in not disclosing the evidence." Zoltek, 71 Fed. Cl. at 168.

None of these factors support the introduction of undisclosed expert opinion here. The importance of the non-disclosures is obvious, given that the additional damage theories increase plaintiffs' damage claims by between $1.3 million and $17 million. The prejudice or surprise is evident due to the lack of sufficient explanation of the many assumptions and bases of these new damage claims (as we detail below). The likelihood of disruption at trial and the possibility of curing the prejudice is found here because it is now too late for plaintiffs to issue supplemental expert reports detailing the many assumptions and bases underlying these new claims, and it is too late for us to depose their experts with regard to such reports. Furthermore, plaintiffs offer no explanation for their failure to disclose the myriad of underlying expert opinions to these damage claims. Finally, considering the last factor – the bad faith or willfulness in disclosing the evidence – there can be no doubt that, given our objection to the new damage theories two years

ago and plaintiffs failure after that to offer any supplemental expert opinions to explain these new theories, plaintiffs' non-disclosure here has been willful and deliberate. Accordingly, there is no justification for plaintiffs' failure to disclose expert opinion concerning the three additional SAFSB-related damages claim, and the presentation of new expert opinion should be precluded. See Southern States, 318 F.3d at 599.

## II. Plaintiffs' $45 Million SAFSB Claim Requires Expert Opinion Concerning A Wide Array Of Assumptions

Contrary to plaintiffs' assertions in their response, their $45 million claim for SAFSB-related expectancy damages is premised upon a wide array of matters that require expert testimony. Indeed, in declarations responding to plaintiffs' counsels' arguments, our experts noted a number of problems and issues that plaintiffs can address only through expert opinion.

For example, although plaintiffs now assert that, but for the breach, River Valley III would have acquired SAFSB, plaintiffs provide no expert opinion stating that, in a nonbreach world, River Valley III would have sold SAFSB to First Bank in January 1995. Yet, this is a necessary condition to First Bank's claim that it was harmed as the successor in interest to River Valley III. In fact, Dr. Holland's existing expert opinion contradicts this assumption, thus defeating plaintiffs' new SAFSB related claims. Dr. Holland has opined that, but for the breach, SAFSB would have been acquired by River Valley and would have then been spun off to Dr. Holland and Mr. Ross, prior to the First Bank acquisition. See Ex. B Decl. of W. Barefoot Bankhead (Dec. 5, 2005) at 6 ¶ 7(c) (citing Corrected Expert Report and Decl. of Dr. Homer J. Holland (July 27, 2001) at 59 n. 120 (Ex. D), and Holland Dep. (Nov. 2, 2001) at 382:20-383:18) (annexed hereto Ex. F). Based upon Dr. Holland's existing expert opinion, First Bank can have

no claim for the loss of the SAFSB-related lost profits following its acquisition of River Valley because, irrespective of the breach, First Bank would not have been the recipient of SAFSB's assets. Thus, without new expert opinion explaining the apparent contradictions, the new claim lacks foundation. If Dr. Holland's previous opinion is retracted, however, then plaintiffs must issue new expert opinions at trial to supersede Dr. Holland's prior expert testimony.

The $45 million SAFSB claim suffers other infirmities of non-disclosure. For example, plaintiffs claim is based upon an assumption that SAFSB's balance sheet remains the same in both the actual and but-for worlds throughout its existence. Ex. B Decl. of W. Barefoot Bankhead (Dec. 5, 2005) at 5 ¶ 7(b). Contrary to this requisite assumption, Dr. Holland has previously stated that "'in the 'but for' world we would have accelerated the recognition of taxable income' in San Antonio [i.e. SAFSB] by, among other things, liquidating assets more rapidly." Id. at 6 ¶ 7(b) (citing Corrected Expert Report and Declaration of Dr. Homer J. Holland (July 27, 2001) at 60 n. 122) (Ex. D). Thus, plaintiffs' $45 million claim also requires the retraction of Dr. Holland's prior expert testimony concerning SAFSB's operation. Accordingly, contrary to plaintiffs' argument, new expert testimony will be required.

Furthermore, if plaintiffs' assumption is that First Bank acquires a nonbreach River Valley that includes SAFSB, in order for the nonbreach SAFSB's operations to exactly mirror the operations of the actual SAFSB, First Bank would have to sell SAFSB's assets and liabilities to the International Bank of Commerce in 1996, as SAFSB's corporate parent, Western Capital Holdings, Inc. ("WCHI"), did in the actual world. Ex. B Decl. of W. Barefoot Bankhead (Dec. 5, 2005) at 6 ¶ 7(d); see Joint Stipulation of Facts (Dec. 31, 2003) ("JSF") at ¶ 386. Plaintiffs have provided no expert opinion explaining how or why an entirely different ownership group and

management team (i.e. First Bank) would have chosen the identical disposition strategy that WCHI did. Furthermore, because WCHI continued to manage certain SAFSB assets and liabilities that were not sold in 1996, it is also speculative to assume that First Bank would have managed these assets and liabilities through 2004 in exactly the same fashion as occurred in the actual world.

Other issues of non-disclosed expert opinion or testimony abound. Plaintiffs make the unsupported claim that the tax returns of WCHI, and another successor "liquidating trust" entity, Western Capital Liquidating Trust ("WCLT"), demonstrate the lost profits of SAFSB. This is not the case. As Dr. Carron explains, looking at taxable income is different than looking at economic gains. Id. at 10-11. The properly considered relevant concepts are cash flow and market value, which are not necessarily captured in tax returns. Indeed, Dr. Carron demonstrates that there is significant dissonance between tax, accounting, and economic concepts. With respect to WCHI's income, the dissonance so great that, in some years, the different measures do not even agree as to whether WCHI experienced a gain or a loss. Id. at ¶ 11, Ex. 2. Furthermore, plaintiffs provide no explanation how it is that there could be a direct dollar-for-dollar correspondence between SAFSB's purported profits and the tax returns of WCHI and WCLT (which include income not derived from SAFSB's operations). Plaintiffs, however, disclose no expert opinion addressing these critical issues.

## III. Plaintiffs' Arguments Concerning The $35 Million SAFSB-Related Claim Underscores That Plaintiffs Rely Upon Undisclosed Expert Opinion

In opposing our motion in limine, plaintiffs make a number of incorrect statements, underscoring that, without further expert explanation, there is no basis for their $35 million

damage claim, which is based upon a hypothetical sale of SAFSB assets to an undisclosed third party as of December 31, 1993. Plaintiffs argue, citing a joint stipulation of fact filed in December 2003, that we have conceded that SAFSB paid cash dividends to WCHI between 1992 and 1995 totaling $35 million, and thus (although it does not follow as a matter of logic) we have conceded that SAFSB had profits of $35 million by December 1993. Pl. Op. at 4. Specifically, citing JSF ¶ 366, plaintiffs state that "Defendant concedes that 'cumulative cash dividends paid by SAFSB to WCHI amounted to $1.5 million, $6.5 million, $10.25 million, and $16.75 million for the years ended December 31, 1992, 1993, 1994, and 1995 respectively.'" (emphasis added). Id. Plaintiffs then argue that "[a]t least the same $35 million in profits would have been generated by the almost identical management group operating SAFSB from within River Valley." Id.

Plaintiffs' argument is flatly incorrect. Plaintiffs have disregarded the meaning of the word "cumulative," (and they have failed to review the underlying source documents to this stipulated fact). Thus, while $1.5 million in dividends were paid in 1992, only an additional $5 million were paid in 1993 (for cumulative dividends of $6.5 million), only $3.75 million in dividends were paid in 1994 (for cumulative dividends of $10.25 million), and only $6.5 million in dividends were paid though 1995 (for cumulative dividends of $16.75 million). Therefore, not only did SAFSB not pay $35 million in dividends by 1993, it did not pay more than $17 million in dividends, cumulatively, by 1995. Thus, the very figures cited by plaintiffs' counsel do not support their claim for lost profits of $35 million as of December 1993. Nevertheless, plaintiffs argue that, given JSF ¶ 366, no expert opinion is necessary to support their $35 million claim. Pl. Op. at 4. Because the facts themselves offer no support to their damage claim, however, it is

apparent that plaintiffs will require (currently undisclosed) expert testimony – if it can be found – to explain how it is that $6.5 million in dividends issued by 1993, plus $10.25 million in dividends that were not issued until 1994 and 1995, could represent $35 million in lost profits to River Valley as of December 1993.

In their opposition motion, plaintiffs also state that they intend to rely upon the deposition testimony of our expert, Dr. Paul Griffin, whom we have called to discuss tax-related matters. Pl. Op. at 4. Plaintiffs' $35 million claim is comprised of $24.6 million, corresponding to the alleged gains that could have been recognized had River Valley acquired SAFSB and sold its entire loan portfolio on December 31, 1993, and $10 million in damages, corresponding to an alleged increased taxable gain representing loan accretion since the date of the 1992 acquisition. Ex. C Decl. of Dr. Paul A. Griffin (Dec. 5, 2005) at 5 ¶ 7, 6 ¶ 10. The $24.6 million figure is derived from WCHI's audited financial statements where the excess of the fair value over the carrying value for loans receivable was reported as $24.6 million as of December 31, 1993. This figure is an unrealized and off-balance sheet accounting gain accruing after August 14, 1992, in the books of SAFSB. Id. at ¶ 7. That is, this $24 million figure is an estimate, as there was no actual liquidation on December 31, 1993. Moreover, as Dr. Griffin explained in his deposition, there are always risks and uncertainties when accounting for fair values. DX 1421 at 193:12-196:25 (annexed as Ex. G). Therefore, even assuming that, in the no breach world, River Valley had acquired SAFSB and had decided to liquidate SAFSB's loan portfolio on December 31, 1993, there is uncertainty regarding whether the fair value estimated in the audited financial statements reflect what would have been realized in a liquidation of the SAFSB loan portfolio.

With respect to the additional $10 million in loan accretion, plaintiffs have misstated Dr. Griffin's deposition testimony, as Dr. Griffin's December 5, 2005 Declaration demonstrates. Dr. Griffin stated that "plaintiffs' amount is not a reliable measure of the additional potential gain that might have been reported in the consolidated tax returns of the River Valley companies had River Valley included SAFSB (under plaintiffs' no-breach scenario) in those years." Ex. C Decl. of Dr. Paul A. Griffin (Dec. 5, 2005) at 5 ¶ 8 (emphasis added). Dr. Griffin explained that "[t]he reason is that such additional income but for the breach should be based on the difference between the expected proceeds (assume fair value) and the tax basis in the SAFSB assets sold (now in the books of plaintiffs' no-breach River Valley). Asset tax bases, however, are not typically disclosed in GAAP financial reports. . . ." Id. at ¶¶ 8-9.

Because asset tax bases are not disclosed in GAAP financial reports, Dr. Griffin opined that these asset tax bases, "must be estimated or obtained elsewhere." Id. at ¶ 9. Asserting such estimated asset tax bases requires, therefore, expert opinion. Although Dr. Griffin estimated that, under one approach, this additional income could conceivably be $6.8 million through December 31, 1993, as opposed to the $10 million in plaintiffs' claim (id. at 6 ¶ 11), he also opined that, in a nonbreach setting, "which is the relevant setting . . . it is unclear that River Valley would have used the same structure to purchase SAFSB" [as was used by WCHI in the actual world]. Id. at 6 ¶ 11. If a non-taxable structure were to have been used, those additional gains "could, in fact, be zero, to the extent that tax basis equals expected cash proceeds at the assumed date of disposition." Id. at 7 ¶ 12.

As Dr. Griffin's testimony underscores, even assuming plaintiffs' hypothetical sale of SAFSB's assets in December 1993, there are a number of intricate tax-related considerations that must be addressed by plaintiffs – all of which require expert testimony.

Furthermore, in arguing that they intend to present no "expert to prove up SAFSB's pre-1995 earnings, and have breached no duty to disclose an expert opinion on this issue," (Pl. Op. at 3), plaintiffs fail to address the fact that their $35 million SAFSB-related damage claim is based upon a whole host of other assumptions, requiring expert opinion, none of which have been disclosed.

Our experts, in properly disclosed declarations, discussed a number of these assumptions. For example, as Dr. Carron notes, plaintiffs offer no expert opinion as to why a hypothetical sale of SAFSB to an undisclosed buyer would occur at the end of 1993 as opposed to some other time between 1992 and 2004. Ex. A Carron Decl. (Dec. 5. 2005) at ¶ 19; see also Ex. B Decl. of W. Barefoot Bankhead (Dec. 5, 2005) at 9 ¶ 10 (c), 12-14 (noting, for example, that by the time of First Bank's acquisition of River Valley immediately after the end of 1994, the implied mark-to-market gain in SAFSB's loan portfolio had been reduced to $13 million). Nor do they explain how the increase in SAFSB's mark-to-market valuation – the measure of damages in plaintiffs' new $35 million SAFSB claim – was not caused by the movement of interest rates and their effect upon the thrift. Ex. A Carron Decl. (Dec. 5, 2005) at ¶¶ 20-24. The lack of such explanation is fatal to plaintiffs' claim. See Def. Contentions of Fact and Law (Oct. 26, 2007) at 96-98. Furthermore, plaintiffs offer no explanation how such damages could be foreseeable, given that the mark-to-market value of SAFSB at any time after its acquisition was dependent on the existing interest rates and there was great volatility (and, accordingly, great unpredictability)

in interest rates in the period prior to, and especially following SAFSB's acquisition. Ex. A Carron Decl. (Dec. 5, 2005) at ¶ 21; Def. Contentions of Fact and Law (Oct. 26, 2007) at 99-100.

Furthermore, Dr. Carron demonstrates that plaintiffs' counsel incorrectly stated in their summary judgment motion that SAFSB's marked-to-market assets were worth $40.344 million at the time of its acquisition by WCHI. Ex. A Carron Decl. (Dec. 5, 2005) at ¶ 13-15; Pl. Mot. For Partial Summ. J. (Sept. 21, 2005) at 21. SAFSB's mark-to-market equity was actually $10,708,613 upon the acquisition. Ex. A Carron Decl. (Dec. 5, 2005) at ¶¶ 15, 16. In fact, plaintiffs offer no new expert opinion explaining how it is that a previous joint stipulation of fact filed by plaintiffs, stating that SAFSB's market value was only about $10 million at the time of the acquisition, is incorrect. Id. at ¶¶ 16-17 & n.8 (citing JSF ¶ 361).

As Dr. Carron opines, and as JSF ¶ 361 confirms, there was a small amount of excess value over the purchase price at the time of the SAFSB purchase, just $328,000, which was recognized as negative goodwill. JSF ¶ 361 ("At the time of closing, SAFSB's assets, liabilities, and shareholders' equity on a GAAP, fair market value basis were $189,317,000, $178,936,000, and $10,381,000, respectively, including a small reduction of assets of $328,000 for negative accounting goodwill (the excess of the fair market value of the net assets for accounting purposes over the purchase price.")). Plaintiffs offer no expert testimony concerning why this stipulation is now not true.

Furthermore, even assuming a sale of all of SAFSB's assets and liabilities as of December 1993, plaintiffs offer no opinion explaining how, in a nonbreach world, SAFSB's loan portfolio would have remained exactly the same in both the actual and but for worlds through this period of time. Ex. B Bankhead Decl. (Dec. 5, 2005) at 8 ¶ 10(b).

## IV. Plaintiffs Have Not Disclosed Any Expert Testimony Concerning The Bases For A $1.3 Million Reduction To Dr. Holland's Previous Opinion Concerning The Quantum Of River Valley's Alleged SAFSB-Related Damages

In their response brief, plaintiffs essentially admit that Dr. Holland intends to provide new expert opinion concerning his previously asserted SAFSB-related damage claim (contrary to their initial claim that no new expert testimony will be asserted at trial). This new opinion disavows Dr. Holland's prior expert report and opinion issued in February 2005 in which Dr. Holland claimed to set forth the purported damages of River Valley. In their September 2005 summary judgment brief, plaintiffs ignored Dr. Holland's $1.3 million deduction to account for avoided AMT and interest expenses. See Ex. E Corrected Second Supplemental Expert Report and Decl. of Dr. Homer J. Holland (Feb. 22, 2005) at 5 ¶ 9. Previously, in his expert February 2005 expert report, Dr. Holland claimed that the "tax consequences of the acquisition are easily determined," and he proceeded to deduct $635,000 for the avoided AMT tax. Id. Similarly, he deducted $719,000 for avoided interest expenses on funds that were actually used for the purchase of SAFSB. Id. Dr. Holland cited to Table 2 of his initial report in July 2001 for the quantification of the $719,000 avoided interest expense. Id. at 5 ¶ 9 n.8 (citing Corrected Expert Report and Decl. of Dr. Homer J. Holland (July 27, 2001) at 61 Table 2 (Ex. D)). Dr. Holland concluded that the "Total After-Tax Profit River Valley Lost as a Result of Being Prevented by the Breach from Acquiring SAFSB" totaled $28.609 million. Ex. E Holland Second Supplemental Expert Report (Feb. 22, 2005) at 5 ¶ 9.

Now, without any new expert disclosure explaining how or why Dr. Holland's opinion has changed, plaintiffs argue that Dr. Holland's $1.3 million in offsets should not be taken into account, and that, rather than $28.609 million in SAFSB damages, $29.963 million in damages

are appropriate. In their reply brief to their summary judgment motion, plaintiffs did not explain the bases for the additional $1.3 million in damages. Nor did they disclose the bases in their opposition to our motion in limine. They merely acknowledge that their new theory contradicts the previously disclosed expert opinion, and state that we are "free to confront him with his deposition testimony at trial." Pl. Op. at 6.

Thus, even now plaintiffs hold to their strategy of non-disclosure of expert testimony, arguing that the non-disclosure here, which expressly contradicts Dr. Holland's previous expert report on this issue, can be cured by cross examination at trial. By making this argument, plaintiffs admit that Dr. Holland will be offering new testimony contradicting his previous opinion, and increasing his damage claim by $1.3 million. As the Court of Appeals for the Fourth Circuit notes, however, "the ability to simply cross-examine an expert concerning new opinion at trial is not the ability to cure." Southern States, 318 F.3d at 598. Moreover, here, as in Southern States, plaintiffs cannot "explain why it did not supplement its discovery responses when it knew of" the new opinion. Id. Indeed, plaintiffs have been on notice of our objection to their new damages $29.963 million opinion since we filed our response to their summary judgment motion in December 2005. Yet, plaintiffs yet have not offered any explanation for the change in opinion, and again refuse to set forth the bases in their opposition to our motion in limine. Thus, plaintiffs have simply chosen the path of pretrial non-disclosure of expert opinion. This deliberate tactic cannot be condoned by this Court. It is fundamentally unfair.

## CONCLUSION

For these reasons, and for the reasons set forth in our initial brief, we respectfully request that our motion in limine be granted and that expert testimony concerning the three undisclosed SAFSB damage theories described above be precluded at trial.

Respectfully submitted,

MICHAEL F. HERTZ
Deputy Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/ Kenneth M. Dintzer
KENNETH M. DINTZER
Assistant Director

/s/ John H. Roberson
JOHN H. ROBERSON
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor, 1100 L Street
Washington, D.C. 20530
Tele: (202) 353-7972
Fax: (202) 514-8640

Attorneys for Defendant

Of Counsel:
SCOTT D. AUSTIN
ELIZABETH A. HOLT
WILLIAM G. KANELLIS
BRIAN A. MIZOGUCHI
AMANDA L. TANTUM
JOHN J. TODOR
SAMEER YERAWADEKAR

November 21, 2007

**CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of November 2007, a copy of the foregoing "DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION IN LIMINE TO EXCLUDE EXPERT TESTIMONY RELATED TO THREE UNDISCLOSED DAMAGES THEORIES" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ John H. Roberson
John H. Roberson