**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| HOMER J. HOLLAND,<br>STEVEN BANGERT, co-executor of the<br>ESTATE OF HOWARD R. ROSS,<br>AND FIRST BANK | ) | |
| Plaintiffs, | ) | No. 95-524 C |
| v. | ) | (Judge G. Miller) |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**PLAINTIFFS' MOTION**
**TO QUASH TRIAL SUBPOENA DIRECTED AT MARK KIPNIS**

Pursuant to Court of Federal Claims Rule 45(c), Plaintiffs hereby move to quash Defendant's subpoena directing Mr. Kipnis to appear at trial.[1] Defendant has not proffered any reasonable explanation why the testimony of Mr. Kipnis -- once a lawyer for River Valley not involved in any of the thrifts' operations or strategic decision-making -- would be relevant and not duplicative of the many hours of testimony Defendant states it intends to elicit from River Valley's principal directors and managers.[2] Indeed, as Mr. Kipnis testified repeatedly in his 2000 deposition which lasted less than half of one day, he was principally River Valley's Secretary, and had few responsibilities in that capacity other than to sign all of River Valley's official

[1] *See* Exhibit 1 attached.

[2] *See* Defendant's Witness List, dated Oct. 26, 2007 at 2, 5, 7, 9 (indicating that Defendant intends to examine former River Valley managers Steven Bangert, Susan Ells, Homer Holland, and Ronald Pikus for a total of 27 hours).

documents.[3] Further, at his deposition Mr. Kipnis had almost nothing to contribute on any of the several issues about which Defendant states it expects him to testify. Because Mr. Kipnis has little relevant -- and no non-duplicative -- testimony to provide, Defendant's asserted "need" for his testimony does not outweigh the undue burden upon Mr. Kipnis of being forced to travel from his Illinois home to appear at trial in Washington, DC.[4] Accordingly, pursuant to Rule 45(c), this Court should issue an order quashing Defendant's subpoena directed at Mr. Kipnis.[5]

Court of Federal Claims Rule 45 requires a party issuing a subpoena to "take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena."[6] In connection with that standard, Rule 45 directs that trial courts supervising the issuance of subpoenas "be generally sensitive to the costs imposed on third parties."[7] Indeed, "concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs' in Rule 45 inquiry."[8] In determining whether a subpoena imposes an undue burden upon a third party, the trial court should consider "whether the [testimony sought would be] unreasonably cumulative or duplicative; whether the [testimony sought would be] obtainable from some other

---

[3] *See* Kipnis Dep. Tr. (attached as Exhibit 2) at 10-12.

[4] *See Heat & Control, Inc. v. Hester Indus., Inc.*, 785 F.2d 1017, 1024 (Fed. Cir. 1986) ("the factors required to be balanced by the trial court in determining the propriety of a subpoena are the relevance of the [testimony] sought, the requesting party's need, and the potential hardship to the party subject to the subpoena.").

[5] *See Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 886 (9th Cir. 2002) (upholding trial court order quashing third party trial testimony subpoena where issuer of subpoena could not explain what relevant evidence the subpoenaed witness would provide); *Roberts v. Shawnee Mission Ford, Inc.*, 352 F.3d 358, 362 (8th Cir. 2004) (upholding trial court order quashing subpoena that sought duplicative information).

[6] RCFC 45(c)(1).

[7] *See Watts v. SEC*, 482 F.3d 501, 509 (D.C. Cir. 2007).

[8] *Id.* (quoting *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998).

source that is more convenient, less burdensome, or less expensive; and whether the burden or expense of the proposed [testimony] outweighs its likely benefit."[9] Upon finding that a subpoena "subjects a person to an undue burden" Court of Federal Claims Rule 45(c)(3)(A) directs that the court "shall quash … the subpoena."

Here, Defendant states that it intends to elicit testimony from Mr. Kipnis on a range of subjects about which he knows or remembers almost nothing and about which several other of Defendant's intended trial witnesses know comparatively much more. For example, Defendant states that it will call Mr. Kipnis "to testify concerning the operations of the River Valley thrifts," but Mr. Kipnis testified at his deposition that he had no responsibilities as River Valley's Secretary "other than signing the documents," and that he had no involvement in the negotiation of any of the deals for the acquisition of Galva, Home, Mutual, Republic or Peoria.[10] Likewise, though Defendant states that it intends to elicit testimony from Mr. Kipnis about "River Valley's opportunity to acquire SAFSB," Mr. Kipnis can offer very little on this subject, and provided only eight lines of testimony in response to Defendant's deposition questions "whether Mr. Kipnis knew how SAFSB became available for acquisition," or "why it was determined that River Valley would try to acquire it":

> Q: With respect to San Antonio Federal, do you recall how it became known that it was available to be acquired?
>
> A: No.
>
> Q: Do you recall why it was determined that it should be acquired?

---

[9] *Id.* (citing Fed. R. Civ. P. 26(b)(1)-(2)) (internal quotation marks omitted).

[10] Kipnis Dep. Tr. at 9-12, 27-29.

> A: I believe that they thought that they were acquiring assets that had substantially more value than the purchase price that the government was asking, in their minds, and that they could then also take those institutions and run them profitably, grow them, and create more value. So they bought it for two reasons I think.[11]

By contrast, Defendant questioned intended trial witnesses Bryan Daniels, John Rose, Homer Holland, Steve Bangert, Ron Pikus, and the late Howard Ross extensively on the subject of the SAFSB acquisition during their depositions, and Defendant states that it intends to present over 28 hours of trial testimony from these 6 witnesses.

Mr. Kipnis knows similarly little about the other intended trial testimony topics listed by Defendant. His responses to the three questions he was asked concerning his knowledge regarding "compensation received by River Valley executives" were "no," "no," and "no recollection."[12] Asked whether "he recalled anything relating to the creation of River Valley Holdings, Inc.," Mr. Kipnis provided a 5 line answer that he qualified by explaining that he did not know "whether he [was] guessing or recalling." Mr. Kipnis was equally uncertain whether he was "guessing or recalling" in providing a 6 line answer to Defendant's question concerning dividend payments by River Valley.[13] Even if Mr. Kipnis had anything more than speculation to offer concerning the subjects about which Defendant wants him to testify, Defendant does not assert that information concerning *any* of these topics is uniquely within Mr. Kipnis's possession. Rather, Defendant apparently intends to examine Mr. Kipnis concerning almost exactly the same topics as it intends to explore with River Valley's several more knowledgeable managers.

---

[11] *Id.* at 72-73.

[12] Kipnis Dep. Tr. at 62-63.

[13] *Id.* at 63-64.

In contrast to whatever marginal probative benefit Mr. Kipnis's limited and duplicative testimony might provide, Defendant's subpoena imposes real and substantial burdens on Mr. Kipnis. Apart from the expense and imposition associated with traveling from Illinois to Washington, DC, Mr. Kipnis is also in the midst of a crisis period for himself and his family. In connection with a matter entirely unrelated to his work for River Valley, Mr. Kipnis was recently convicted of two counts of mail fraud and is due to be sentenced by the federal court in Chicago on December 10, 2007.[14] Defendant's subpoena would require Mr. Kipnis to travel away from his family during this obviously stressful and difficult time.

Because Mr. Kipnis can provide very little if any information relevant to the damages issues on trial, and because Defendant's subpoena imposes upon him substantial and unjustified burdens, this Court should quash Defendant's subpoena pursuant to Rule 45(c).

---

[14] *See* Exhibit 3.

Respectfully submitted,

/s/ David B. Bergman
David B. Bergman
ARNOLD & PORTER, LLP
555 Twelfth Street, N.W.
Washington, D.C. 20004-1206
(202) 942-5000 (tel.)
(202) 942-5999 (fax)

Counsel for plaintiffs
Holland and Ross and First Bank.

*Of Counsel*:
Melvin C. Garbow
Howard N. Cayne
Michael A. Johnson
Joshua P. Wilson
ARNOLD & PORTER, LLP
555 Twelfth Street, N.W.
Washington, D.C. 20004-1206

*Co-counsel for First Bank*:
Donald J. Gunn, Jr., Esq.
Sharon R. Wice, Esq.
Gunn and Gunn
First Bank Building
Creve Coeur
11901 Olive Blvd., Suite 312
P.O. Box 419002
St. Louis, Missouri 63141
(314) 432-4550 (tel.)
(314) 432-4489 (fax)

Dated: November 28, 2007

**CERTIFICATE OF SERVICE**

I certify that on this 28th day of November 2007, I caused the foregoing **PLAINTIFFS' MOTION TO QUASH TRIAL SUBPOENA DIRECTED AT MARK KIPNIS** to be filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

Dated: November 28, 2007 /s/ Joshua P. Wilson
Joshua P. Wilson