**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| HOMER J. HOLLAND,<br>STEVEN BANGERT, co-executor of the<br>ESTATE OF HOWARD R. ROSS, and<br>FIRST BANK,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | No. 95-524<br>(Judge George W. Miller) |

**DEFENDANT'S MOTION *IN LIMINE* TO STRIKE LOST-PROFITS DEMONSTRATIVES AND TO PRECLUDE EXPERT TESTIMONY**

Pursuant to the Court's order of September 6, 2007, defendant, the United States, respectfully submits this motion to preclude the introduction of all testimony and exhibits based upon plaintiffs' new lost-profits claim.

On Sunday, December 9, 2007, we received an email from plaintiffs' counsel, to which were attached six PDF files that plaintiffs apparently intend to present through the expert testimony of Dr. Holland. Five of these PDF files contain images of spreadsheet files that plaintiffs apparently intend to present in support of their new lost-profits claim. See Email and Attachments (attached as Exhibit A). These new demonstratives go beyond any of plaintiffs' prior damages theories. Moreover, the fact that plaintiffs are submitting the demonstratives in conjunction with Dr. Holland's testimony confirms that Dr. Holland will be testifying as an expert in connection with these claims rather than as a fact witness. Moreover, the demonstratives appear to contain several undisclosed expert opinions and other embedded assumptions that plaintiffs have not previously disclosed.

Accordingly, we respectfully request that the Court strike the demonstratives containing Dr. Holland's new lost-profits claims and exclude any testimony based upon these claims as prejudicial and irrelevant to plaintiffs' existing damages claims.

## I. The New Lost-Profits Claim Was Not Properly Disclosed

The five spreadsheet PDF files plaintiffs sent are in support of their new lost-profits theory, which plaintiffs purport to have fashioned in response to Dr. Thakor's expert report. We previously moved to exclude any evidence based upon this theory on the grounds that plaintiffs not only had not disclosed such a theory until their pretrial brief, but also represented to the Court that they would abandon their lost-profits claims in exchange for being permitted to advance their retained earnings theory. See Mot. In Limine To Exclude All Evidence Based Upon Any Lost Profits Claim (Oct. 31, 2007); see also RCFC 26(a)(2); Winstar Procedural Order No. 2; Discovery Plan (Aug. 11, 1997), Section V (requiring expert witnesses be disclosed within 30 days after the close of discovery and reports within 60 days after identification); RCFC App. A at ¶ 14 (requiring that parties' pre-trial briefs disclose, "sufficient detail to enable the court to resolve the case in its entirety by addressing each of the issues listed."). The Court denied this motion at the November 29, 2007 pretrial hearing. Although the Court denied our motion at the hearing, the spreadsheet files confirm that plaintiffs are pursuing a new lost-profits theory that they did not previously disclose. Therefore, the Court should strike the new demonstratives and preclude testimony regarding this new lost-profits theory for the same reasons that we set forth in our earlier motion in limine.

## II. The Demonstratives Contain Previously Undisclosed Expert Opinions

Plaintiffs' counsel sent the demonstrative spreadsheet files to us in a December 9, 2007 email in advance of Dr. Holland's testimony. Plaintiffs' counsel specified that the email contained demonstratives pursuant to this Court's September 6, 2007 order, which required that the parties disclose demonstratives 72 hours prior to their use. See Email (Dec. 9, 2007); Order (Sept. 6, 2007). The spreadsheet files were sent in conjunction with what appear to be textual demonstrative notes for use in Dr. Holland's expert testimony. Plaintiffs have thus effectively conceded that Dr. Holland will be testifying as an expert regarding these claims. This directly contradicts plaintiffs' prior representations to the Court that Dr. Holland would only be providing fact testimony, or lay opinion testimony, pursuant to Federal Rule of Evidence 701. See Pl. Opp. (Nov. 15, 2007) at 2 ("Dr. Holland is entitled to testify as a fact witness concerning River Valley's management goals and investment practices, can provide relevant testimony concerning the reasonableness of Dr. Thakor's assessments of River Valley's profitability, and, indeed, is entitled to present a fact-based lost profits claim.") (emphasis added).

Plaintiffs' demonstrative spreadsheet files, on the other hand, do not contain factual statements by Dr. Holland, but rather expert analyses. Specifically, they appear to be analyses of but-for profitability using part of an equation from Dr. Thakor's report that was meant to explain the flawed methodology of the retained earnings cost of mitigation model in Dr. Holland's Third Supplemental Expert Report. Some of the spreadsheet files also use inputs from Dr. Holland's expert report concerning retained earnings damages, further underscoring that these demonstratives contain expert testimony from Dr. Holland. The content of the PDF files thus

confirms that the demonstratives are for use with a new expert theory, not fact testimony. The Court should therefore prohibit the witness from opining about these damages.

Moreover, one of the two expert damages theories set forth in the demonstratives contradicts the representations plaintiffs made to the Court in response to our motion in limine. Plaintiffs represented that their new lost profits claims would rely solely upon the equation in Exhibit 4 to Dr. Thakor's expert report and "a few simple facts" – River Valley's leverage ratio, net interest margin, and tax rate – which plaintiffs claimed to derive from Dr. Thakor's report. See Pl. Opp. (Nov. 15, 2007) at 4 ("(1) River Valley's leverage ratio, times (2) the difference between River Valley's expected return on assets and its expected cost of debt (*i.e.*, its expected net interest margin), times (3) one minus River Valley's marginal tax rate, times (4) the amount of forgone 'Intangible Capital.'"). One of the two demonstratives, which purports to measure "Dr. Thakor's Lost Profits Formula Applied To Breach Excluded Capital," appears to apply such an analysis, however flawed.

Plaintiffs, however, continue with further analysis in the demonstrative that they conceded in their response to our motion in limine would require the Court to "assume" further facts regarding River Valley's retained earnings. Plaintiffs stated that the Court would need to "assume" either that the "mitigation" of retaining earnings was reasonable, or that the River Valley could "have had *both* the contracted-for capital *and* the retained earnings." Pl. Opp. (Nov. 15, 2007) at 4. Plaintiffs' analysis of the lost profits from the retained earnings "functioning to replace contractual capital," which uses the retained earnings balances taken from Dr. Holland's expert report, appears to be their effort to show what the Court would have to "assume" to conclude that Dr. Holland's retained earnings claim is reasonable. See

Demonstrative ("Dr. Thakor's Formula Applied To Retained Earnings Functioning To Replace Regulatory Capital."). Plaintiffs thus essentially concede that the Court would need to make additional assumptions – requiring expert testimony that plaintiffs intend to present through Dr. Holland – to award plaintiffs' new lost-profits claim.

## III. The Demonstratives Contain Prejudicial And Inconsistent Damages Theories

We have only been able to perform a preliminary analysis of these demonstratives, coming as they do on the eve of Dr. Holland's testimony. Nevertheless, even this preliminary examination reveals that the demonstratives set forth not just one, but two previously undisclosed damages theories. The first of these analyses is purported to be based upon the equation in Exhibit 4 of Dr. Thakor's report, which illustrated the component of Dr. Holland's cost of mitigation theory that was attributable to profits from leverage for River Valley's existing balance sheet. Plaintiffs extrapolate this equation to an expanded balance sheet that would have been generated by leveraging River Valley's contractual capital at the same ratio as River Valley's core capital ratio to reach a calculation of "lost profits per Dr. Thakor's formula." See Demonstrative ("Dr. Thakor's Lost Profits Formula Applied To Breach Excluded Capital"). The second analysis appears to apply River Valley's actual leverage ratio to River Valley's actual balance of "retained earnings functioning to replace regulatory capital" to reach a calculation of "profits bought back through retained earnings." See Demonstrative ("Dr. Thakor's Formula Applied To Retained Earnings Functioning To Replace Regulatory Capital.").

Both of these damages models contain numerous embedded assumptions that we have not seen before or had the opportunity to explore with Dr. Holland or any of plaintiffs' other witnesses. Plaintiffs claim to base these new damages claims upon "Dr. Thakor's formula" from

Exhibit 4 of his report, but Dr. Thakor also stated in his report that this equation was only meant to illustrate how Dr. Holland's analysis functioned on River Valley's existing balance sheet. DX 1492 at 20 ¶ 35. Dr. Thakor explicitly stated that this analysis was not appropriate for a lost-profits analysis because of the failure to identify specific investment opportunities and the additional risk that a larger balance sheet would have created for River Valley. Id. Because Dr. Thakor explicitly stated that he was not providing any expert opinion that River Valley could have maintained these levels of but-for profitability, plaintiffs are intending to provide such expert testimony through Dr. Holland without prior disclosure. We have not had the opportunity to question any of River Valley's witnesses regarding these topics at deposition or trial. Plaintiffs' new demonstratives are therefore prejudicial.

Furthermore, the calculations in the demonstratives illustrate the prejudice they cause. The only citations plaintiffs make in their demonstratives are to figures regarding the capital ratio, retained earnings, retained earnings balance, and tax rate from River Valley's existing balance sheet, using Dr. Holland's and Dr. Thakor's expert reports. As we pointed out in our previous motion in limine, all of these figures come from River Valley's own data. Moreover, plaintiffs now apparently are presenting an analysis of an expanded balance sheet using "breach excluded capital." Plaintiffs thus still do not explain what evidence, other than Dr. Holland's projected trial testimony, would support either River Valley's but-for growth plans or what assets they would have added to the balance sheet. Such a lack of disclosure is inherently prejudicial.

Plaintiffs have not explained how, if at all, these new damages models would coincide with their other, existing, damage claims. This further prejudices our ability to cross-examine Dr. Holland regarding these new damages models.

## IV. Plaintiffs Have Not Disclosed The Calculations Underlying The New Models

Although secondary to the prejudicial concerns mentioned above, plaintiffs also have not furnished the spreadsheets underlying the new lost-profits models. The PDF files have the Microsoft Excel file extension, ".xls," in their titles, so it is clear that they are spreadsheet files. Although plaintiffs state the purported basis for their calculations, the actual spreadsheet files may contain other information regarding the assumptions embedded in the models that plaintiffs should have disclosed. Even if it is possible for us to replicate the calculations in the spreadsheets, the actual files may contain other information, and it is prejudicial for us to be required to reverse-engineer the spreadsheets on the eve of Dr. Holland's cross-examination given our other time demands. Plaintiffs requested the spreadsheet files underlying Dr. Thakor's report following his deposition, and we provided them to plaintiffs. Therefore, even if the Court should deny our motion to strike the demonstratives, the Court should instruct plaintiffs to provide us with the underlying spreadsheet files.

## CONCLUSION

For these reasons, we respectfully request that the Court strike the demonstratives containing Dr. Holland's new lost-profits claims and exclude any testimony based upon these claims as prejudicial and irrelevant to plaintiffs' existing damages claims.

Respectfully submitted,

MICHAEL F. HERTZ
Deputy Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/ Kenneth M. Dintzer
KENNETH M. DINTZER
Assistant Director

/s/ John H. Roberson
JOHN H. ROBERSON
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor, 1100 L Street
Washington, D.C. 20530
Tele: (202) 353-7972
Fax: (202) 514-8640
Attorneys for Defendant

Of Counsel:
SCOTT D. AUSTIN
Senior Trial Counsel
ELIZABETH A. HOLT
WILLIAM G. KANELLIS
BRIAN A. MIZOGUCHI
AMANDA L. TANTUM
JOHN J. TODOR
Trial Attorneys
Department of Justice

December 10, 2007

**CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of December 2007, a copy of the foregoing document was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ John H. Roberson
John H. Roberson

**Todor, John (CIV)**

---

**From:** Roberson, John (CIV)
**Sent:** Sunday, December 09, 2007 9:51 AM
**To:** Jeffrey Yushchak; Austin, Scott (CIV); Davis, Monica (CIV); Dintzer, Kenneth (CIV); Gnarra, Patricia (CIV); Holt, Elizabeth (CIV); Jacques, Jeffrey (CIV); Kanellis, William (CIV); Mizoguchi, Brian (CIV); Presley, Richard (CIV); Rexrode, David (CIV); Roberson, John (CIV); Tantum, Amanda (CIV); Todor, John (CIV); Yerawadekar, Sameer (CIV)
**Subject:** FW: Holland v. U.S.
**Attachments:** Microsoft Word - 2014947_6_DOC.pdf; 2017210_3_XLS.pdf; 2017210_3_XLS.pdf; 2017210_3_XLS.pdf; 2017210_3_XLS.pdf; 2017210_3_XLS.pdf

---

**From:** Michael_Johnson@aporter.com [mailto:Michael_Johnson@aporter.com]
**Sent:** Sunday, December 09, 2007 9:48 AM
**To:** Roberson, John (CIV)
**Subject:** Holland v. U.S.

John,

Pursuant to paragraph 7 of the September 6, 2007 pretrial order in this case, attached to this e-mail please find six pdf files containing demonstrative exhibits plaintiffs may use on or after Wednesday, December 12 with our witness Dr. Homer Holland.

-Mike

# Dr. Thakor's Lost Profits Formula (Exh. 4 to his Report)

| | | | | |
|---|---|---|---|---|
| Debt-equity ratio | x | [Unlevered expected return on equity - Expected return on debt] | x | [1 - Marginal tax rate] |
| Debt/Equity | x | Margin | x | After-tax rate |

*After-Tax Return*
*From Leveraging Intangible Capital*
*(Lost Profits)*

# Dr. Thakor's Lost Profits Formula* Applied to Breach Excluded Capital

Debt-equity ratio x [Unlevered expected return on equity - Expected return on debt] x [1 - Marginal tax rate]

Debt/Equity x Margin x After-tax rate

*After-Tax Return*
*From Leveraging Intangible Capital*
*(Lost Profits)*

**Actual Values for River Valley**

| Date [1] | Core Capital Ratio [2] | Debt Equity Ratio [3] = (1/[2])-1 | Asset Yield [4] | Cost of Funds [5] | Margin [6] = [4] - [5] | Tax Rate per Dr. Thakor [7] | After Tax Rate [8] = 1 - [7] | After Tax Return [9] = [3]x[6]x[8] | Breach Excluded Regulatory Capital [10] | "Lost Profits" Per Dr. Thakor's Formula [11] =[9]x[10] |
|---|---|---|---|---|---|---|---|---|---|---|
| 3/31/90 | 0.0337 | 28.67 | 0.0245 | 0.0206 | 0.0039 | 0.0361 | 0.9639 | 0.1078 | $19,955,570 | $2,151,012 |
| 6/30/90 | 0.0335 | 28.85 | 0.0264 | 0.0206 | 0.0058 | 0.0361 | 0.9639 | 0.1613 | $19,812,500 | $3,195,629 |
| 9/30/90 | 0.0340 | 28.41 | 0.0243 | 0.0206 | 0.0037 | 0.0361 | 0.9639 | 0.1013 | $19,669,250 | $1,993,057 |
| 12/31/90 | 0.0374 | 25.74 | 0.0235 | 0.0206 | 0.0029 | 0.0361 | 0.9639 | 0.0719 | $19,526,000 | $1,404,810 |
| 3/31/91 | 0.0470 | 20.28 | 0.0274 | 0.0176 | 0.0098 | 0.0361 | 0.9639 | 0.1915 | $19,382,750 | $3,712,517 |
| 6/30/91 | 0.0517 | 18.34 | 0.0278 | 0.0176 | 0.0102 | 0.0361 | 0.9639 | 0.1803 | $19,239,500 | $3,469,614 |
| 9/30/91 | 0.0598 | 15.72 | 0.0286 | 0.0176 | 0.0110 | 0.0361 | 0.9639 | 0.1667 | $19,096,250 | $3,183,404 |
| 12/31/91 | 0.0646 | 14.48 | 0.0264 | 0.0176 | 0.0088 | 0.0361 | 0.9639 | 0.1228 | $18,953,000 | $2,327,863 |
| 3/31/92 | 0.0793 | 11.61 | 0.0279 | 0.0155 | 0.0124 | 0.0361 | 0.9639 | 0.1391 | $18,809,750 | $2,615,510 |
| 6/30/92 | 0.0673 | 13.86 | 0.0236 | 0.0155 | 0.0081 | 0.0361 | 0.9639 | 0.1085 | $16,952,214 | $1,839,961 |
| 9/30/92 | 0.0671 | 13.90 | 0.0225 | 0.0155 | 0.0070 | 0.0361 | 0.9639 | 0.0941 | $16,808,964 | $1,582,457 |
| 12/31/92 | 0.0656 | 14.24 | 0.0161 | 0.0155 | 0.0006 | 0.0361 | 0.9639 | 0.0086 | $16,665,714 | $143,010 |
| 3/31/93 | 0.0635 | 14.75 | 0.0152 | 0.0107 | 0.0045 | 0.0361 | 0.9639 | 0.0643 | $16,522,464 | $1,062,819 |
| 6/30/93 | 0.0661 | 14.13 | 0.0169 | 0.0107 | 0.0062 | 0.0361 | 0.9639 | 0.0848 | $15,695,214 | $1,330,569 |
| 9/30/93 | 0.0680 | 13.71 | 0.0201 | 0.0107 | 0.0094 | 0.0361 | 0.9639 | 0.1245 | $15,551,964 | $1,936,447 |
| 12/31/93 | 0.0666 | 14.02 | 0.0191 | 0.0107 | 0.0084 | 0.0361 | 0.9639 | 0.1138 | $15,408,714 | $1,753,726 |
| 3/31/94 | 0.0583 | 16.15 | 0.0172 | 0.0103 | 0.0070 | 0.0361 | 0.9639 | 0.1082 | $15,265,464 | $1,651,851 |
| 6/30/94 | 0.0533 | 17.76 | 0.0124 | 0.0103 | 0.0022 | 0.0361 | 0.9639 | 0.0368 | $14,389,357 | $529,660 |
| 9/30/94 | 0.0543 | 17.42 | 0.0166 | 0.0103 | 0.0064 | 0.0361 | 0.9639 | 0.1066 | $14,246,107 | $1,518,642 |
| | | | | | | | | | | |
| | | | | | | | | | TOTAL | $37,402,558 |

Sources:
* * Thakor Report Exhibit 4
* [2] Thakor Report Exhibit 7
* [3] Leverage ratio is reduced by one to reflect conversion of capital-to-assets ratio to debt-to-equity ratio
* [4] Thakor Rep. Exh. 16-19 Backup A
* [5] Thakor Rep. Exh. 12
* [7] Thakor Dep. (9/4/2007) at 38
* [10] Holland 3rd Supp. Rep. Exhibit E

## Dr. Thakor's Formula* Applied to Retained Earnings Functioning to Replace Regulatory Capital

| | | | | |
|---|---|---|---|---|
| Debt-equity ratio | x | Unlevered expected return on equity - Expected return on debt | x | 1 - Marginal tax rate |
| Debt/Equity | x | Margin | x | After-tax rate |

*After-Tax Return*
*From Leveraging Intangible Capital*
*(Lost Profits)*

**Actual Values for River Valley**

| Date | Core Capital Ratio | Debt Equity Ratio | Asset Yield | Cost of Funds | Margin | Tax Rate per Dr. Holland | After Tax Rate | After Tax Return | Retained Earnings Functioning to Replace Regulatory Capital | Profits "Bought Back" with Retained Earnings |
|---|---|---|---|---|---|---|---|---|---|---|
| [1] | [2] | [3] = (1/[2])-1 | [4] | [5] | [6] = [4] - [5] | [7] | [8] = 1 - [7] | [9] = [3]x[6]x[8] | [10] | [11] =[9]x[10] |
| 3/31/90 | 0.0337 | 28.67 | 0.0245 | 0.0206 | 0.0039 | 0.35 | 0.65 | 0.0727 | $4,927,318 | $358,155 |
| 6/30/90 | 0.0335 | 28.85 | 0.0264 | 0.0206 | 0.0058 | 0.35 | 0.65 | 0.1088 | $5,238,103 | $569,734 |
| 9/30/90 | 0.0340 | 28.41 | 0.0243 | 0.0206 | 0.0037 | 0.35 | 0.65 | 0.0683 | $5,675,426 | $387,804 |
| 12/31/90 | 0.0374 | 25.74 | 0.0235 | 0.0206 | 0.0029 | 0.35 | 0.65 | 0.0485 | $6,510,652 | $315,871 |
| 3/31/91 | 0.0470 | 20.28 | 0.0274 | 0.0176 | 0.0098 | 0.35 | 0.65 | 0.1292 | $7,843,096 | $1,013,029 |
| 6/30/91 | 0.0517 | 18.34 | 0.0278 | 0.0176 | 0.0102 | 0.35 | 0.65 | 0.1216 | $9,689,992 | $1,178,398 |
| 9/30/91 | 0.0598 | 15.72 | 0.0286 | 0.0176 | 0.0110 | 0.35 | 0.65 | 0.1124 | $11,532,036 | $1,296,376 |
| 12/31/91 | 0.0646 | 14.48 | 0.0264 | 0.0176 | 0.0088 | 0.35 | 0.65 | 0.0828 | $12,653,555 | $1,048,029 |
| 3/31/92 | 0.0793 | 11.61 | 0.0279 | 0.0155 | 0.0124 | 0.35 | 0.65 | 0.0938 | $14,107,347 | $1,322,818 |
| 6/30/92 | 0.0673 | 13.86 | 0.0236 | 0.0155 | 0.0081 | 0.35 | 0.65 | 0.0732 | $14,546,283 | $1,064,672 |
| 9/30/92 | 0.0671 | 13.90 | 0.0225 | 0.0155 | 0.0070 | 0.35 | 0.65 | 0.0635 | $15,351,824 | $974,613 |
| 12/31/92 | 0.0656 | 14.24 | 0.0161 | 0.0155 | 0.0006 | 0.35 | 0.65 | 0.0058 | $14,726,630 | $85,217 |
| 3/31/93 | 0.0635 | 14.75 | 0.0152 | 0.0107 | 0.0045 | 0.35 | 0.65 | 0.0434 | $16,236,750 | $704,312 |
| 6/30/93 | 0.0661 | 14.13 | 0.0169 | 0.0107 | 0.0062 | 0.35 | 0.65 | 0.0572 | $15,449,500 | $883,214 |
| 9/30/93 | 0.0680 | 13.71 | 0.0201 | 0.0107 | 0.0094 | 0.35 | 0.65 | 0.0840 | $15,306,250 | $1,285,199 |
| 12/31/93 | 0.0666 | 14.02 | 0.0191 | 0.0107 | 0.0084 | 0.35 | 0.65 | 0.0767 | $15,163,000 | $1,163,756 |
| 3/31/94 | 0.0583 | 16.15 | 0.0172 | 0.0103 | 0.0070 | 0.35 | 0.65 | 0.0730 | $15,019,750 | $1,095,986 |
| 6/30/94 | 0.0533 | 17.76 | 0.0124 | 0.0103 | 0.0022 | 0.35 | 0.65 | 0.0248 | $14,186,500 | $352,137 |
| 9/30/94 | 0.0543 | 17.42 | 0.0166 | 0.0103 | 0.0064 | 0.35 | 0.65 | 0.0719 | $14,043,250 | $1,009,505 |
| | | | | | | | | | | |
| | | | | | | TOTAL PROFITS RECAPTURED BY MITIGATION THROUGH 9/94 = | | | | $16,108,826 |
| | | | | | | | | | | |
| | | | | | | | TOTAL COST OF MITIGATION THROUGH 9/94 = | | | $7,088,706 |

Sources:
- * Thakor Report Exhibit 4
- [2] Thakor Report Exhibit 7
- [3] Leverage ratio is reduced by one to reflect conversion of capital-to-assets ratio to debt-to-equity ratio
- [4] Thakor Rep. Exh. 16-19 Backup A
- [5] Thakor Rep. Exh. 12
- [7] Holland 3rd Supp. Rep. at para. 45
- [10] Holland 3rd Supp. Rep. Exhibit D

# Dr. Thakor's Lost Profits Formula* Applied to Breach Excluded Capital

| | | | | | | |
|---|---|---|---|---|---|---|
| Debt-equity ratio | x | Unlevered expected return on equity - Expected return on debt | x | 1 - Marginal tax rate |
| Debt/Equity | x | Margin | x | After-tax rate |

*After-Tax Return*
*From Leveraging Intangible Capital*
*(Lost Profits)*

| Actual Values for River Valley | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Date [1] | Core Capital Ratio [2] | Debt Equity Ratio [3] = (1/[2])-1 | Asset Yield [4] | Cost of Funds [5] | Margin [6] = [4] - [5] | Tax Rate per Dr. Thakor [7] | After Tax Rate [8] = 1 - [7] | After Tax Return [9] = [3]x[6]x[8] | Breach Excluded Regulatory Capital [10] | "Lost Profits" Per Dr. Thakor's Formula [11] =[9]x[10] |
| | | | | | | | | | | |
| 3/31/90 | 0.0337 | 28.67 | 0.0245 | 0.0206 | 0.0039 | 0.0361 | 0.9639 | 0.1078 | $19,955,570 | **$2,151,012** |
| | | | | | | | | | | |
| | | | | | | | | | TOTAL | **$2,151,012** |

Sources:
- * Thakor Report Exhibit 4
- [2] Thakor Report Exhibit 7
- [3] Leverage ratio is reduced by one to reflect conversion of capital-to-assets ratio to debt-to-equity ratio
- [4] Thakor Rep. Exh. 16-19 Backup A
- [5] Thakor Rep. Exh. 12
- [7] Thakor Dep. (9/4/2007) at 38
- [10] Holland 3rd Supp. Rep. Exhibit B

# Dr. Thakor's Formula* Applied to Retained Earnings Functioning to Replace Regulatory Capital

| Debt-equity ratio | x | Unlevered expected return on equity - Expected return on debt | x | 1 - Marginal tax rate |
|---|---|---|---|---|
| Debt/Equity | x | Margin | x | After-tax rate |

*After-Tax Return*
*From Leveraging Intangible Capital*
*(Lost Profits)*

| Actual Values for River Valley | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Date [1] | Core Capital Ratio [2] | Debt Equity Ratio [3] = 1/[2] | Asset Yield [4] | Cost of Funds [5] | Margin [6] = [4] - [5] | Tax Rate per Dr. Holland [7] | After Tax Rate [8] = 1 - [7] | After Tax Return [9] = [3]x[6]x[8] | Retained Earnings Functioning to Replace Regulatory Capital [10] | Profits "Bought Back" with Retained Earnings [11] =[9]x[10] |
| 3/31/90 | 0.0337 | 28.67 | 0.0245 | 0.0206 | 0.0039 | 0.35 | 0.65 | 0.0727 | $4,927,318 | $358,155 |
| | | | | | | TOTAL PROFITS RECAPTURED BY MITIGATION THROUGH 3/90 = | | | | $358,155 |
| | | | | | | | TOTAL COST OF MITIGATION THROUGH 3/90 = | | | $123,899 |

Sources:
- * Thakor Report Exhibit 4
- [2] Thakor Report Exhibit 7
- [3] Leverage ratio is reduced by one to reflect conversion of capital-to-assets ratio to debt-to-equity ratio
- [4] Thakor Rep. Exh. 16-19 Backup A
- [5] Thakor Rep. Exh. 12
- [7] Holland 3rd Supp. Rep. at para. 45
- [10] Holland 3rd Supp. Rep. Exhibit D