IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| HOMER J. HOLLAND, STEVEN BANGERT, co-executor of the ESTATE OF HOWARD R. ROSS, and FIRST BANK, | |
| Plaintiffs, | No. 95-524C |
| v. | (Judge George W. Miller) |
| THE UNITED STATES, | (Winstar-Related Case) |
| Defendant. | |

**DEFENDANT'S NOTICE OF FILING OF OFFER OF PROOF**

Pursuant to Rule 103 of the Federal Rules of Evidence and the Court's directive set forth on January 18, 2008, defendant, the United States, hereby provides notice of its offer of proof with respect to the surrebuttal testimony defendant's experts would have set forth at trial to respond to plaintiffs' rebuttal case if that testimony had been permitted by the Court.

On January 17, 2008, plaintiffs set forth a rebuttal case through one of their experts, Dr. Homer Holland. On January 18, 2008, we cross examined Dr. Holland with respect to his new opinions that formed the bases for plaintiffs' rebuttal case. Upon the conclusion of our cross examination, we requested, as we had previously, that we be permitted to set forth a surrebuttal case in order to present the responses of our experts to Dr. Holland's new rebuttal opinions. See Trial Tr. (Jan. 18, 2008) at 6057:6-6058:24; Trial Tr. (Jan. 16, 2008) at 5864:3-11, 5450:24-5451:3. The Court rejected our request to set forth surrebuttal testimony from our experts, and instructed us to provide any offer of proof as to what that testimony would have addressed in a notice of filing. Trial Tr. (Jan. 18, 2008) at 6058:20-24.

The testimony that our experts would have provided, which constitutes our offer of proof, are as follows:

**<u>Mr. Bankhead</u>:**

Mr. Barefoot Bankhead, a certified public accountant, would have testified that, as a matter of accounting, it is incorrect to opine, as Dr. Holland did, that different equity values for San Antonio Federal Savings Bank ("SAFSB") could have credibly been found to be both $10 million as set forth in audited financial statements and $40 million as set forth in SAFSB's internal mark-to-market calculations. Mr. Bankhead would have testified that such a range of equity valuations on the asset size of SAFSB is neither credible nor "reasonable."

Mr. Bankhead would have also opined that, as a matter of accounting, there was no choice (as Dr. Holland suggested) in eliminating negative goodwill if management's best estimate of value resulted in negative goodwill. Mr. Bankhead would have testified that, as a matter of accounting, negative goodwill cannot be eliminated merely because management does not want to reflect negative goodwill (for political or other reasons).

Finally, Mr. Bankhead would have testified that Dr. Holland's explanations concerning the permissibility of such a large range of equity valuations is in direct contravention of the purpose of audited financial statements. Mr. Bankhead would have testified that audited financial statements would be inherently unreliable if Dr. Holland's explanation, that SAFSB was not required to set forth its "best estimate" of the firm's equity value, was appropriate. Instead, because proper accounting requires reliability, Mr. Bankhead would have testified that SAFSB was required to set forth its best estimate of the firm's equity value in its audited financial statements.

**Dr. Carron:**

Dr. Andrew Carron's testimony would have addressed three main topics. First, Dr. Carron would have opined that Dr. Holland's analysis of the valuation of the Federal Savings and Loan Insurance Corporation ("FSLIC") preferred is unreliable. Dr. Carron would have demonstrated that Dr. Holland, who does not know how FSLIC derived its numerical assumptions, makes assumptions that are not on the face of the documents, while other explanations exist. For example, Dr. Carron would have testified that there is no evidence that the "net income" in the viability analysis of PX 148 is actually an "adjusted net income," (i.e., net income less the fixed dividend). As another example, Dr. Carron would have testified that, contrary to documentary evidence, Dr. Holland extends the analysis of the income sharing aspect of the preferred stock beyond ten years. Dr. Carron would have underscored that PX 148 expressly states that "[t]he viability analysis was performed for a period of ten years, therefore this analysis considers the income sharing benefit for a ten year period."

Second, Dr. Carron would have testified that, if the Court agreed with Dr. Holland's analysis and that the viability analysis of PX 148 extends beyond ten years, then the 40 basis point threshold should have been stepped down from 40 basis points to 15 basis points by year 15. Such a step down in basis points would affect Dr. Murphy's analysis of River Valley's valuation because Dr. Murphy explicitly uses 40 basis points in his valuation of River Valley I. Dr. Carron would have further testified that, if Dr. Murphy had lowered his 40-basis-point figure to a lower number, a lower valuation of River Valley I would have resulted (thus affecting both pre- and post-breach values, with pre-breach values affected more).

Third, Dr. Carron would have responded to Dr. Holland's claim that there was no basis for Dr. Carron's assumption of a 7 percent growth rate in earnings in years six through ten as set forth in Dr. Carron's demonstrative slide, DX 3558. Dr. Carron would have testified that Dr. Murphy used a 7 percent rate for the growth of assets and below the 40 basis point threshold earnings. Dr. Carron would have further testified that Dr. Holland himself, in his rebuttal demonstrative slide PX 4000, used a 7 percent growth in net income (in years seven through ten). Thus, Dr. Carron would have demonstrated that his use of a seven percent growth rate was reasonable.

**CONCLUSION**

The foregoing constitutes defendant's offer of proof. Given the foregoing, we request that the Court reconsider its determination that defendant be barred from presenting such surrebuttal testimony.

If the Government is not permitted to present a surrebuttal, we will be prejudiced as Dr. Holland offered testimony and analysis not presented either in his report or in plaintiffs' case in chief. Accordingly, our experts had no chance to address this testimony. Should the Court permit us to provide surrebuttal testimony, we would be prepared to promptly issue declarations from Mr. Bankhead and Dr. Carron addressing the matters set forth above. Alternatively, we would be prepared to call Mr. Bankhead and Dr. Carron to provide live testimony concerning these matters.

Respectfully submitted,

MICHAEL F. HERTZ
Deputy Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/ Kenneth M. Dintzer
KENNETH M. DINTZER
Assistant Director

/s/ John H. Roberson
JOHN H. ROBERSON
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor, 1100 L Street
Washington, D.C. 20530
Tele: (202) 353-7972
Fax: (202) 514-8640

Of Counsel:
SCOTT D. AUSTIN
Senior Trial Counsel
ELIZABETH A. HOLT
WILLIAM G. KANELLIS
BRIAN A. MIZOGUCHI
AMANDA L. TANTUM
JOHN J. TODOR
Trial Attorneys
Department of Justice

January 22, 2008

Attorneys for Defendant

**CERTIFICATE OF SERVICE**

I hereby certify that on January 22, 2008, a copy of the foregoing "DEFENDANT'S NOTICE OF FILING OF OFFER OF PROOF" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ John H. Roberson

John H. Roberson