IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| HOMER J. HOLLAND,<br>STEVEN BANGERT, co-executor of the<br>ESTATE OF HOWARD R. ROSS, and<br>FIRST BANK,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | No. 95-524C<br><br>(Judge George W. Miller)<br><br>(Winstar-Related Case) |

**DEFENDANT'S OUTLINE OF ITS OPPOSITION TO PLAINTIFFS' CLAIMS FOR DAMAGES**

MICHAEL F. HERTZ
Deputy Assistant Attorney General

JEANNE E. DAVIDSON
Director

KENNETH M. DINTZER
Assistant Director

JOHN H. ROBERSON
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor, 1100 L Street
Washington, D.C. 20530
Tele: (202) 353-7972
Fax: (202) 514-8640

Of Counsel:
SCOTT D. AUSTIN
Senior Trial Counsel
ELIZABETH A. HOLT
WILLIAM G. KANELLIS
BRIAN A. MIZOGUCHI
AMANDA L. TANTUM
JOHN J. TODOR
Trial Attorneys
Department of Justice

January 28, 2008

Attorneys for Defendant

Pursuant to the Court's order dated January 18, 2008, defendant, the United States, hereby provides an outline of our responses to the plaintiffs' January 23, 2008 filing.

# I. PLAINTIFFS' VARIOUS SAFSB-RELATED LOST PROFITS CLAIMS

## A. PLAINTIFFS' SAFSB CLAIMS FAIL THE TESTS OF CAUSATION

1. The Purported Injury Does Not Have A Close, Direct, And Inevitable Nexus Between The Breach And The Harm Alleged.

2. River Valley Mitigated Any Effect Of The Breach By Facilitating The Acquisition Of SAFSB Through WCHI.

3. An Award Of SAFSB-Related Damages Would Result In An Improper Windfall Recovery For Profits Already Obtained.

4. Plaintiffs Cannot Show That The Purported Inability Of River Valley To Obtain SAFSB Was Caused By The Government's Breach Of The Purported Contracts.

    a. The SAFSB Transaction Was An Independent, Collateral, And Remote Undertaking.

    b. The Inability Of River Valley To Consummate The SAFSB Transaction Was The Result Of Intervening Factors.

        i. ANB Refused To Loan The Necessary Funds To River Valley Due To FIRREA's Cross-Guarantee Provision.

        ii. River Valley Made Little Attempt To Find Other Lenders.

        iii. But For The Supervisory Agreement Imposed As A Result Of River Valley's Investment In High-Risk, Mortgage Derivative Securities, River Valley Had Sufficient Capital To Acquire SAFSB.

    c. Regulators Would Not Have Approved River Valley's Acquisition Of SAFSB Irrespective Of The Breach.

5. The Breach Did Not Cause Any SAFSB-Related Damages; Rather They Were Caused By An Increase In The Market Value Of SAFSB's Assets.

B. PLAINTIFFS' SAFSB CLAIMS FAIL THE TESTS OF FORESEEABILITY

C. PLAINTIFFS' SAFSB CLAIM FOR $47,335,862 IS SPECULATIVE

1. It Is Implausible That River Valley And First Bank Would Have Operated SAFSB As WCHI And Its Successor Did Through 2004.

a. River Valley's Fact Witnesses Disagree On How SAFSB Would Have Been Managed In The No-Breach World.

b. First Bank Had A Different Management Team Than WCHI/SAFSB.

D. PLAINTIFFS' SAFSB CLAIM FOR $46,414,530 IS SPECULATIVE

1. Mr. Rose's Testimony, The Sole Support For Plaintiffs' $46,414,530 Claim, Was Demonstrably Unreliable.

E. PLAINTIFFS' SAFSB CLAIM FOR $38,258,318 IS SPECULATIVE

1. Plaintiffs' Claim Is Inconsistent With Representations In WCHI's Audited Financial Statements.

2. The Economic/Fair Value Of SAFSB's Equity As Of The Date Of WCHI's Acquisition (August 14, 1992) Was $10.7 Million.

3. Plaintiffs Radically Overstate The "Bargain Purchase" Component To WCHI's Acquisition Of SAFSB.

a. The Value Of The Bargain Purchase Was $328,000, Not $29.963 Million, As Plaintiffs Claim.

b. The Speculative Nature Of Plaintiffs' $38.3 Million Claim Is Magnified By Plaintiffs' Assertion That The Value Of The Bargain Purchase Was $29.9 Million As Of The Date Of The SAFSB Acquisition, But Was $38.3 Million Just Six Weeks Later.

4. Plaintiffs Either Endorse Or Discount The Reliability Of Their Internal Mark-To-Market Valuations Depending Upon When It Is Convenient.

F. PLAINTIFFS' SAFSB CLAIM FOR $37,405,132 IS SPECULATIVE

1. River Valley Could Not Have Liquidated The Entire SAFSB Portfolio On December 31, 1993.

2. Considering Damages After The SAFSB Acquisition Is Inappropriate.

3. It Is Implausible That River Valley Would Have Operated SAFSB As WCHI Did Through 1993.

G. PLAINTIFFS' SAFSB CLAIM FOR $28,600,000 IS SPECULATIVE[1]
(See above at I.E.1, I.E.2, I.E.3, I.E.3.a, and I.E.3.b)

H. PLAINTIFFS' SAFSB CLAIM FOR $29,963,000 IS SPECULATIVE
(See above at I.E.1, I.E.2, I.E.3, I.E.3.a, and I.E.3.b)

## II. PLAINTIFFS' MITIGATION CLAIM (RETAINED EARNINGS)

A. DR. HOLLAND'S RETAINED EARNINGS THEORY FAILS AS A MATTER OF LAW

1. Retaining Earnings Did Not Cause Any Harm To River Valley.

a. Retained Earnings Are Not Harmful To A Thrift.

b. Plaintiffs Admit That, But For The Breach, They Would Have Retained Even More Earnings.

c. Dr. Holland Has Not Identified A But-For World.

d. As Even Plaintiffs' Fact Witness Acknowledged, The River Valley Thrifts' Contractual Capital Could Not Have Been Transferred To First Bank, Precluding Retained Earnings Damages After First Bank's Acquisition.

---

[1] While plaintiffs' claim for $28.6 million and $29.9 million are not set forth in Plaintiffs' Outline Of Subjects For Closing Argument (Jan. 23, 2008), counsel for plaintiffs have informed us that they have not abandoned those claims. Accordingly, we intend to briefly address those during closing argument, in addition to the previously undisclosed SAFSB claims for $38.2 million, $37.4 million, $47.3 million, and $46.4 million. These claims were asserted by plaintiffs for the first time in this case on January 23, 2008. We object to these new theories and/or calculations of damages pursuant to Rule 26(a)(2)(B) of the Rules of the Court of Federal Claims and Winstar Procedural Order No. 2: Discovery Plan at § V(A)(4 (Aug. 7, 1997, Ct. Fed. Cl.).

e. Plaintiffs' Retained Earnings Damages Were Not Reasonably Foreseeable At The Time Of Contracting.

2. Plaintiffs' Measure Of Damages For Retained Earnings Is Not Reasonably Certain.

a. River Valley's *Ex Post* Cost Of Capital Should Be Measured By The Actual Dividends Paid.

b. A Retained Earnings Award Would Result In A Double Recovery To River Valley's Shareholders.

i. Double Recovery With First Bank Purchase Price.

ii. Double Recovery With SAFSB Acquisition.

c. Dr. Holland's Retained Earnings Methodology Is Flawed And Unreliable.

i. Dr. Holland's Retained Earnings Calculation Is Purely Hypothetical, As It Is Not Based Upon Actual Costs Or Actual Benefits.

ii. Dr. Holland's Analysis Is Neither A Proper *Ex Ante* Nor Actual Experience Analysis.

iii. Dr. Holland Overstates The Amount Of Contractual Capital To Be Replaced.

iv. Dr. Holland Understates The Benefits Of Tangible Capital.

v. Dr. Holland Effectively Imposes Prejudgment Interest.

B. PLAINTIFFS CANNOT PROPERLY SEEK BOTH MITIGATION AND LOST PROFITS DAMAGES

III. **PLAINTIFFS' CLAIM FOR LOST VALUE**

A. DR. MURPHY'S METHODOLOGY DOES NOT PURPORT TO MEASURE LOST PROFITS AT THE TIME OF THE BREACH

B. DR. MURPHY EFFECTIVELY SEEKS DAMAGES FOR THE LOSS OF THE NON-CONTRACTUAL PEORIA GOODWILL

C. DR. MURPHY'S METHODOLOGY PRODUCES UNRELIABLE RESULTS

1. First Bank's Lost Value Calculation Is At Odds With Contemporaneous Direct Valuations.

a. The Lawrence Barr Valuation Indicated A Lower Value For River Valley I As Of July 1988 Than The Value Dr. Murphy Proposes.

b. River Valley's Own Mark-To-Market Values Contradict The Valuations Dr. Murphy Proposes.

c. River Valley's Own Market Value of Portfolio Equity Calculations Contradict The Valuations Dr. Murphy Proposes.

d. No River Valley Document Supports Dr. Murphy's Conclusions.

2. Dr. Murphy's Lost Value Model Is Based Upon FSLIC And FDIC Valuations That Do Not Reflect The Market Value Of The Preferred Stock.

a. The FSLIC Lacked The Capacity To Determine The Economic Value Of The Preferred Stock.

b. The Preferred Stock Acquired By The FSLIC At The Time Of The River Valley Acquisitions Constituted Assistance.

3. Dr. Murphy's Use Of The Gordon Growth Model Was Inappropriate.

3. Dr. Murphy's Extrapolation To River Valley II Of The Purported Lost Value To River Valley I Is Unreliable.

D. THE ALLEGED DIMINISHED VALUE WAS NOT CAUSED BY THE PURPORTED BREACH

1. Many Other Factors Besides A Loss Of Goodwill Affected The River Valley Thrifts, Which Remained In Capital Compliance.

2. The Thrifts' High-Risk MBS And Other Mortgage-Related Assets Caused The Regulatory Criticisms Of The Thrift.

3. Numerous Non-Breach Factors Caused The Shrinkage.

E. The Purported Diminished Value Was Not Foreseeable By The Government.

Respectfully submitted,

MICHAEL F. HERTZ
Deputy Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/ Kenneth M. Dintzer
KENNETH M. DINTZER
Assistant Director

/s/ John H. Roberson
JOHN H. ROBERSON
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor, 1100 L Street
Washington, D.C. 20530
Tele: (202) 353-7972
Fax: (202) 514-8640

Of Counsel:
SCOTT D. AUSTIN
Senior Trial Counsel
ELIZABETH A. HOLT
WILLIAM G. KANELLIS
BRIAN A. MIZOGUCHI
AMANDA L. TANTUM
JOHN J. TODOR
Trial Attorneys
Department of Justice

January 28, 2008

Attorneys for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on January 28, 2008, a copy of the foregoing "DEFENDANT'S OUTLINE OF ITS OPPOSITION TO PLAINTIFFS' CLAIMS FOR DAMAGES" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ John H. Roberson

John H. Roberson