# In the United States Court of Federal Claims

| | |
|---|---|
| HOMER J. HOLLAND,<br>STEVEN BANGERT, Co-Executor of<br>the Estate of HOWARD R. ROSS, and<br>FIRST BANK,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | No. 95-524 C<br><br>Filed August 27, 2008 |

**ERRATUM**

Pursuant to Rule 60(a) of the Rules of the United States Court of Federal Claims, the Court, *sua sponte*, corrects the Opinion filed August 26, 2008, in this case (docket entry 479) in the following respect: on page 5, in the fourth line from the bottom of the page, replace ". . . not to sue OTS . . ." with ". . . not to sue FDIC as manager of the FRF . . . ."

Attached is a substitute page 5 that incorporates the foregoing correction.

**IT IS SO ORDERED.**

s/ George W. Miller
GEORGE W. MILLER
Judge

The San Antonio Savings Association ("SASA"), a failing thrift located in Texas, was taken over by the Resolution Trust Corporation ("RTC") in 1991. DX 1559 at 2. Separately from the RTC's resolution of SASA, the RTC sought to sell the San Antonio Federal Savings Bank ("SAFSB"), a subsidiary of SASA. *Id.* Initially, Holland and Ross sought to have River Valley III acquire SAFSB. DX 1559 at ¶ 347. River Valley III, however, was unable to get adequate financing to pursue the SAFSB acquisition opportunity. *Id.* On January 31, 1992, Holland and Ross, together with several other investors, including Steven Bangert, John Rose, and Ronald M. Pikus, formed Western Capital Holdings, Inc. ("WCHI") to acquire SAFSB separately. DX 1559 at ¶ 349. On August 14, 1992, with the help of a loan from American National Bank, WCHI acquired SAFSB. DX 1559 at ¶ 351. On August 17, 1992, River Valley III and SAFSB entered into an agreement whereby River Valley III provided accounting, regulatory reporting, portfolio management, troubled asset disposition, capital and tax planning, mortgage loan servicing, and data processing services in exchange for a monthly fee paid by SAFSB. DX 1559 at ¶ 364. SAFSB made several dividend payments to WCHI between 1992 and 1995. DX 1559 at ¶ 366. These dividend payments were used to pay down the loan from American National Bank to WCHI. *Id.* In June 1996, WCHI sold the assets of SAFSB to the International Bank of Commerce, which subsequently liquidated the assets. DX 1559 at ¶ 386.

On August 14, 1991, Holland, Ross, and River Valley III entered into a settlement agreement with FDIC in its capacity as manager of the FSLIC Resolution Fund ("FRF"). *Holland v. United States*, 74 Fed. Cl. 225, 233 (2006). The settlement agreement provided for a payment of $50,000 from River Valley III to FDIC and a payment of $3,276,902.90 from FDIC to River Valley III. *Id.* In addition, the settlement agreement purported to "effect an accord and satisfaction of any and all obligations and liabilities of [the FDIC, Holland, Ross, and River Valley III] under the [a]ssistance [a]greements." *Id.* Thus, after the settlement agreement, plaintiffs no longer could assert a claim against FDIC or the FRF. However, the Court held that the Government's promises in the assistance agreements bound both the Federal Home Loan Bank Board ("FHLBB") and FSLIC. *Id.* at 252. The FDIC did not succeed to the liabilities of the FHLBB; instead, these liabilities were transferred to the Office of Thrift Supervision ("OTS"). *Id.* Accordingly, the Court held that, while the settlement agreement released the FDIC from any liability for breach of the assistance agreements, it did not release all agencies of defendant that might reasonably bear liability for the breach. *Id.* at 253. The Court later resolved the issue whether, pursuant to the law governing the settlement agreement, a release of FDIC from liability also released OTS from any liability for breach of the same contracts; the Court held that no such release was accomplished by the settlement agreement. *Holland*, 75 Fed. Cl. at 498. Instead, the Court found that the settlement agreement should be construed as a covenant by Holland, Ross, and River Valley III not to sue FDIC as manager of the FRF for breach of the assistance agreements. *Id.* Accordingly, defendant filed a counterclaim against plaintiffs for breach of the covenant not to sue. Def.'s Am. Answer to Pls.' Third Am. Compl. (docket entry 375). As noted above, the parties and the Court have not yet taken action to resolve defendant's counterclaim.